Seth M. Galanter*
National Center for Youth Law
712 H Street NE, Suite 32020
Washington, DC 20002
Ph: (202) 868-4781
Fax: (510) 835-8099
Email: sgalanter@youthlaw.org

Adele P. Kimmel (CA Bar No. 126843)
Alexandra Z. Brodsky*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
Fax: (202) 232-7203
Email: akimmel@publicjustice.net
        abrodsky@publicjustice.net

Adrienne Spiegel (CA Bar No. 330482)
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
Ph: (510) 622-8150
Fax: (202) 232-7203
Email: aspiegel@publicjustice.net

Linda M. Correia*
Lauren A. Khouri*
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington DC 20036
Ph: (202) 602-6500
Fax: (202) 602-6501
Email: lcorreia@correiaputh.com
        lkhouri@correiaputh.com

*pro hac vice motions forthcoming

Counsel for Plaintiff The Women's Student Union

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

THE WOMEN'S STUDENT UNION,

     *Plaintiff*,

     v.

U.S. DEPARTMENT OF EDUCATION,

     *Defendant*.

Civil Action No. _____

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**
**ADMINISTRATIVE PROCEDURE ACT CASE**

     Plaintiff, The Women's Student Union, brings this action against the U.S. Department of Education seeking to set aside its 2020 Regulations – promulgated under the authority of then-Secretary Betsy DeVos – that reduce federal protections students enrolled in public school have from sexual harassment, including sexual violence, under Title IX of the Education Amendments of 1972.

**INTRODUCTION**

     1.     Sexual harassment, including sexual violence, has been too common an experience of students at public schools across the country. Women and LGBTQ students are more likely to experience such harassment than other student populations.

     2.     Sexual harassment poses an obstacle to students' ability to learn and thrive in school. When young people are sexually harassed by classmates or teachers, they avoid school and develop mistrust of educational institutions. Their academic performance suffers. They often drop classes or leave school altogether. And this is to say nothing of the lasting physical and psychological harm from sexual harassment.

3.     Students experience these injuries not due to the harassment alone, but often because their schools fail to respond to the harassment promptly and appropriately.

4.     Just like young people at schools across the country, many high school students enrolled in California's Berkeley Unified School District experience sexual harassment.

5.     For example, at Berkeley High School, students are often told they must either share a classroom with a student who sexually assaulted them off campus – or the victim must leave the class. Even when learning takes place primarily online, as it does this school year due to COVID-19, victims are required to be in small video "breakout rooms" with their harasser.

6.     Such unchecked harassment is not inevitable. Title IX of the Education Amendments of 1972, which prohibits sex discrimination in schools that receive federal funds, is a critical federal law that students have long relied on as a tool for getting schools to address sexual harassment.

7.     For decades, the U.S. Department of Education, which is the primary federal agency charged with enforcing Title IX, informed schools that they were responsible under Title IX for responding to any sexual harassment of students that they knew or should have known about, so long as the harassment was sufficiently serious that it adversely affects a student's ability to participate in or benefit from the school's program.

8.     In 2020, under the leadership of then-Secretary Betsy DeVos, the Department issued Regulations that purported to effectuate Title IX but, in fact, weakened key protections for those who experience sexual harassment and disincentivized school districts from learning about or responding to sexual harassment experienced by their students. See 85 Fed. Reg. 30,026 (May 19, 2020) (codified at various places in 34 C.F.R. Pt. 106).

9.      Without adequate justification or explanation, the Department undermined the existing sexual harassment framework by changing the "what," "where," "when," and "how" of its prior interpretations of Title IX.

10.     *What*: The 2020 Regulations constrict what misconduct constitutes unlawful sexual harassment that schools need to respond to under Title IX. Harassment can no longer trigger a school's responsibilities to a victim merely due to its severity or its pervasiveness – both must be present.

11.     *Where*: The 2020 Regulations exclude from Title IX coverage sexual harassment of students by other students or faculty if the harassment took place off school grounds and was not part of a school program (such as a field trip). The fact that the harmful effects of the harassment are experienced by students while at school and diminish their educational opportunities is no longer sufficient.

12.     *When*: The 2020 Regulations restrict when a school district is obligated to investigate and redress sexual harassment under Title IX. Now, the school district must only act when certain delimited school employees have actual knowledge of the harassment. The Regulations completely eliminate a school district's responsibility when it should have known about the harassment, but did not actually know.

13.     *How*: The 2020 Regulations alter how the Department will assess whether a school district complied with its obligation to investigate and redress harassment under Title IX. Instead of asking whether the school had taken prompt and effective steps reasonably calculated to end the harassment, eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its effects, the Regulations require only that the school provide remedies designed to restore or preserve equal access to the student who complained about the harassment. And instead of asking whether a school had met its obligations under Title IX, the Department

now asks only whether the school acted with deliberate indifference, i.e., in a clearly unreasonable way.

14.    The 2020 Regulations reduce schools' incentives and hinder their abilities to take preventive or remedial action, and will therefore cause even more women and LGBTQ students to experience sexual harassment.

15.    These regulatory changes are denying students the legal protections of Title IX that they previously enjoyed, and are denying WSU the benefit of having the Department investigate and redress many types of harassment its members and other students have experienced and are currently experiencing at Berkeley High School.

## PARTIES

16.    Plaintiff, The Women's Student Union (WSU), is an approved student body association of the Berkeley Unified School District of Berkeley, California. WSU's mission includes reducing sexual harassment experienced by students of Berkeley High School by (1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination, including sexual harassment; and (2) providing training to the student body about their rights and responsibilities under school policy, state law, and federal law. WSU also seeks to address other barriers to success and wellbeing for young women and non-binary students at Berkeley High School.

17.    Defendant is the U.S. Department of Education. The Department implements Title IX through issuing regulations and guidance documents and is tasked with administrative enforcement of Title IX, 20 U.S.C. § 1682. Its principal address is 400 Maryland Avenue, S.W., Washington, D.C. 20202.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because it arises under federal law, e.g., Title IX of the Education Amendments of 1972 and the Administrative Procedure Act (APA). This Court also has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2) because a department of the United States is a defendant.

## VENUE

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(C) because WSU resides (i.e., maintains its principal place of business, *id*. § 1391(c)(2)) in this District and no real property is involved in the action.

## INTRADISTRICT ASSIGNMENT

20.     Venue is proper in either the San Francisco or Oakland Division pursuant to Civil Local Rule 3 2(d) because this action arises in Alameda County.

## ALLEGATIONS

21.     Title IX of the Education Amendments of 1972 provides, subject to certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX defines "program or activity" in relevant part as "all of the operations" of a school, "any part of which is extended Federal financial assistance." 20 U.S.C. § 1687.

22.     For more than 45 years, this federal law has given students a critical civil rights tool to fight sex discrimination and promote equal access to educational benefits and opportunities. While these protections extend to all students, they have been particularly beneficial to girls and women, who had been historically excluded from many educational programs and opportunities.

23.     It is settled by multiple decisions of the U.S. Supreme Court that Title IX's prohibition against sex discrimination includes protection against sexual harassment that can be enforced in federal court by injured students through an implied private right of action for compensatory damages and injunctive relief. *See Davis v. Monroe Cty Bd. of Educ.*, 526 U.S. 629 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998); *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979). In order to recover damages in a court action, a private plaintiff must show that a school district had actual knowledge of the harassment and acted with deliberate indifference.

24.     But Title IX is also administratively enforced by federal agencies that disburse funds to educational institutions. Congress "authorized and directed" federal agencies that provide financial assistance to education programs or activities to "effectuate the provisions of" Title IX "by issuing rules, regulations, or orders of general applicability." 20 U.S.C. § 1682. While such rules, regulations, or orders are not always enforceable through the private right of action, violations can result in the Department withholding federal education funds. 20 U.S.C. § 1682. To avoid the threat of fund termination, school districts almost always are willing to settle with the Department during or after an administrative investigation by agreeing to address sexual harassment through individual relief and systemic change.

25.     For decades, and through multiple Administrations, the U.S. Department of Education, through its Office for Civil Rights, has been the primary federal agency charged with enforcing Title IX administratively and has issued consistent guidance to school districts about how it interpreted Title IX in the context of sexual harassment.

26.     Among the Department's Guidances are two that went through notice and comment – Sexual Harassment Guidance, 62 Fed. Reg. 12,034 (Mar. 13, 1997) ("1997 Guidance"); Revised Sexual Harassment Guidance, 66 Fed. Reg. 5,512 (Jan. 19, 2001), available

*Plaintiff's Complaint for Injunctive and Declaratory Relief – 7*

at https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html ("2001 Guidance") – and a series of others issued by both Democratic and Republic Administrations, including:

- *Sexual Harassment: It's Not Academic* (1988),

  https://files.eric.ed.gov/fulltext/ED330265.pdf.

- Dear Colleague Letter (Jan. 25, 2006),

  https://www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.html.

- Dear Colleague Letter: Harassment and Bullying (Oct. 26, 2010),

  https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.html.

- Dear Colleague Letter on Sexual Violence (Apr. 4, 2011),

  https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.

- Questions and Answers on Title IX and Sexual Violence (Apr. 29, 2014),

  https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.

- Q&A on Campus Sexual Misconduct (Sept. 22, 2017),

  https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf.

27.     The Department's harassment Guidances concerning sexual harassment consistently rejected the view that the standards adopted by courts to determine whether a private damages action could be brought against a school should be incorporated into the administrative enforcement process it oversees.

28.     Although they varied in their level of detail and emphasis, these Guidances informed schools of the Department's consistent view that:

(1) unlawful "sexual harassment" means unwelcome conduct that denies or limits a student's ability to participate in or benefit from the school's program based on sex and can include conduct that is severe, persistent, or pervasive – in other

words, sufficiently serious that it adversely affects a student's ability to participate

in or benefit from the school's program;

(2) schools are required to address all harassing conduct that creates a hostile

environment in an education program or activity, even if the conduct occurs

outside an education program or activity;

(3) schools are responsible for any sexual harassment of students that they knew or,

in the exercise of reasonable care, should have known about; and

(4) schools must take prompt and effective action to end the unlawful harassment,

prevent it from recurring, and remedy its effects.

29.    Other than the definition of sexual harassment, all these requirements also applied

to all other forms of sex discrimination prohibited by Title IX, such as guidance counselors

steering students of different sexes to different classes, teachers grading students more or less

harshly on the basis of sex, or retaliation for raising concerns of sex discrimination.

30.    All these requirements were also consistent with the Department's Guidances

concerning schools' responsibilities under Title VI of the Civil Rights Act of 1964, Section 504

of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990 to

address race- and disability-based harassment, including:

- Racial Incidents and Harassment Against Students at Educational Institutions;

  Investigative Guidance, 59 Fed. Reg. 11,448 (Mar. 10, 1994),

  https://www2.ed.gov/about/offices/list/ocr/docs/race394.html.

- Dear Colleague Letter on Prohibited Disability Harassment (July 25, 2000),

  https://www2.ed.gov/about/offices/list/ocr/docs/disabharassltr.html.

- Dear Colleague Letter: Harassment and Bullying (Oct. 26, 2010),

  https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.html.

31.     The Department's harassment Guidances around race and disability consistently rejected the view that the standards adopted by courts to determine whether a private damages action could be brought against a school should be incorporated into the administrative enforcement process it oversees.

32.     The Department continues to apply its traditional standards to students' claims of race and disability harassment. But, after the Department's 2020 Regulations, the same is not true for sexual harassment.

33.     Without adequate justification or explanation, the Department's 2020 Regulations – under then-Secretary Betsy DeVos – reduce protections to students from sexual harassment with regard to each of these elements by narrowly redefining "sexual harassment," "program or activity," and "notice," and limiting its examination of whether schools had met their remedial obligations.

34.     Indeed, the Department acknowledged in the preamble to the 2020 Regulations that schools under the new Regulations will be required to engage in fewer investigations of sexual harassment, and thus will find fewer violations and provide fewer remedies. This was viewed as feature, not a flaw, of the Regulations.

35.     Although the Department refused to acknowledge it, the inevitable result of fewer investigations and fewer remedies will be an increase in the amount of sexual harassment, as would-be harassers will no longer be deterred by fear of being caught and disciplined, or have the opportunity to learn to change their behavior thanks to an educational intervention. Yet the Department never grappled with the tradeoff between increased sexual harassment and the purported benefits it attributed to the Regulations.

36.     With the changes adopted by the 2020 Regulations, the Department provides less protection to students who experience sexual harassment than to students who experience other

forms of sex discrimination prohibited under Title IX, as well as race discrimination (including harassment) prohibited under Title VI and disability discrimination (including harassment) prohibited under the Rehabilitation Act and the Americans with Disabilities Act. The Department offered no justification or evidence that would support a weaker standard for sexual harassment relative to all other forms of discrimination and harassment.

### *Limiting what constitutes sexual harassment under Title IX.*

37.     The 2020 Regulations adopted a novel and narrow definition of "sexual harassment" that is inconsistent with Title IX's text and purpose, and excludes multiple forms of misconduct that interfere with equal access to educational opportunities.

38.     The 2020 Regulations define sexual harassment as conduct on the basis of sex that is unwelcome conduct determined by a reasonable person to be so "severe, pervasive, *and* objectively offensive that it effectively denies a person equal access to the recipient's education program or activity." 34 C.F.R. 106.30 (emphasis added).

39.     Without adequate justification or explanation, this new definition substantially departs from the traditional definition for sexual harassment (and race- and disability-based harassment) that the Department has instructed schools to apply for more than two decades.

40.     The Department previously defined unlawful sexual harassment as unwelcome conduct of a sexual nature that "is sufficiently severe, persistent, *or* pervasive to limit a student's ability to participate in or benefit from an education program or activity." (emphasis added).

41.     Under this traditional definition, the Department applied a sliding scale: a single or isolated incident of sexual harassment could, if sufficiently severe, constitute unlawful sexual harassment without being repetitive or ongoing in nature, whereas less severe but ongoing or pervasive conduct that limited a student was also considered to be unlawful harassment prohibited by Title IX.

42.     Under the 2020 Regulations, however, a school is no longer required to investigate and remedy an egregious but isolated incident of sexual harassment under Title IX because such harassment is no longer sufficiently "pervasive" to fall within the Rule's narrowed definition of sexual harassment. Misconduct such as indecent exposure, a request for sexual favors, some kinds of unwanted touching, and sharing of sexual images and videos are likely all excluded under the 2020 Regulations. Yet this conduct can produce the very exclusionary effects that the text of Title IX proscribes.

43.     Conversely, misconduct that is pervasive but not independently severe – such as some persistent sexual comments about a student's body – would likewise be excluded. This conduct, too, can produce the very exclusionary effects that the text of Title IX proscribes.

44.     The 2020 Regulations further narrow sexual harassment to conduct that "effectively denies a person equal access" to education. Title IX protects students from being "excluded from participation in," "denied the benefits of," and "subjected to discrimination under" a program or activity. 20 U.S.C. § 1681(a). Nonetheless, contrary to the statutory text, and without a reasoned explanation, the Regulations provide that only students who are "effectively denied" access are protected from misconduct.

45.     Only a small portion of sexual harassment of students is reported to school authorities. Students often choose not to report because they think the harassment is not serious enough or that no one would do anything to help. The 2020 Regulations' narrowed definition of "sexual harassment" will undoubtedly reduce reporting even further as students reasonably fear that schools will not provide any meaningful response if they file a report.

*Limiting where Title IX's protections apply*

46.     The 2020 Regulations adopted a novel and narrow definition of "program or activity" for sexual harassment that is inconsistent with Title IX's text and purpose, and excludes multiple forms of misconduct that interfere with equal access to educational opportunities.

47.     This definition is inconsistent with the definition the Department uses for all other forms of sex discrimination, and for race or disability discrimination (including harassment).

48.     In the context of sexual harassment, a school is only responsible for sexual harassment "in" its "program or activity;" and "program or activity" is defined to "include[ ] locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs, and also includes any building owned or controlled by a student organization that is officially recognized by a postsecondary institution." 34 C.F.R. § 106.44(a).

49.     Without adequate justification or explanation, this new definition substantially departs from the traditional definition for sexual harassment that the Department has instructed schools to apply. The Department previously required schools to investigate harassment that occurred or originated off campus to determine whether the effects of that harassment are affecting a student's access to a school's program or activity.

50.     This new definition is not in accordance with the statute. Title IX does not require that the harassment take place "in" an education program or activity. Title IX is not concerned with where the underlying conduct occurred, but whether the person is "denied the benefits of, or [is] subjected to discrimination under any education program or activity."

51.     Sexual harassment can often occur in the first instance outside the "substantial control" of a school but nonetheless can deny students educational benefits and exclude them from equal participation. Focusing on the location of the harassment, and not its effects on the

student, leads to absurd results. For example, a school would have no responsibility to respond under the 2020 Regulations when a student or teacher sexually assaults another student so long as the assault occurred off school grounds and not during a school activity. And yet, even if the conduct results in the student becoming too afraid to attend the class taught by, or shared with, the victim's assailant, the 2020 Regulations immunize the school from any responsibility.

52.     Online harassment is another circumstance where the 2020 Regulations would lead to absurd results. Such online sexual harassment is particularly prevalent in high schools. Yet, under the 2020 Regulations, whether a school must respond to such misconduct will depend on whether the device used to harass is school-owned or privately-provided, whether the device is using the school's Wi-Fi or not, or whether the device is on or off school grounds when the harassing message is sent. From the student on the receiving end, however, the effect is the same. This is especially true during the COVID-19 pandemic, since remote learning has further blurred the line between harassment "in" and "out" of school. And harassers will learn that they can avoid accountability at school by simply targeting students using personal devices off school grounds.

53.     Only a small portion of sexual harassment of students is reported to school authorities. The 2020 Regulations' narrowed definition of "program or activity" will leave students uncertain about whether their school will investigate their complaint, particularly when those students are unlikely to know the location of the harasser or the device used. This will undoubtedly reduce reporting even further.

### Limiting when a school district is responsible for sexual harassment effecting students in its programs

54.     The 2020 Regulations adopted a novel requirement of "actual knowledge" for sexual harassment that is inconsistent with Title IX's text and purpose, and will exclude from

Title IX's coverage significant amounts of misconduct that interfere with equal access to educational opportunities.

55.     This requirement is inconsistent with the requirement the Department uses for all other forms of sex discrimination, and for race or disability discrimination (including harassment).

56.     The 2020 Regulations provide that elementary and secondary schools will only be responsible for addressing sexual harassment when a school employee has "actual knowledge" of the harassment or allegations of the harassment. 34 C.F.R. §§ 106.30(a), 106.44(a).

57.     Without adequate justification or explanation, this new requirement substantially departs from the traditional position of the Department, which required schools to address sexual harassment if almost any school employee either "knew or should reasonably have known" about a student-on-student incident or an employee-on-student incident that occurred outside the context of the employee's provision of aid, benefits, and services to students.

58.     Under the 2020 Regulations, schools will lack the incentives to develop systems to detect sexual harassment and to encourage students to report sexual harassment. To the contrary, schools and their employees will be incentivized to avoid having "actual knowledge" of sexual harassment so that they are not required to address it – even if they believe or have reason to believe that a student is experiencing the adverse effects of harassment.

### Limiting how the Department will determine whether a school district has appropriately responded to sexual harassment under Title IX

59.     The 2020 Regulations adopted truncated and exceedingly deferential requirements about the remedies a school needs to provide after it determines there has been unlawful sexual harassment that are inconsistent with Title IX's text and purpose, and do not address the school-wide effects that can result from such harassment.

60.     The 2020 Regulations require a school to provide students who experienced unlawful sexual harassment and complained about it "remedies designed to restore or preserve equal access" and may impose "disciplinary sanctions" on a student found responsible for harassment after following an elaborate grievance procedure. 34 C.F.R. § 106.45(b)(1)(i). The Regulations further provide that the Department will find a school violated its remedial obligations only if it responded in a manner that is "deliberately indifferent." 34 C.F.R. § 106.44(a). The Department will find a school is deliberately indifferent only "if its response to sexual harassment is clearly unreasonable in light of the known circumstances." *Id.*

61.     Without adequate justification or explanation, these new limitations substantially depart from the traditional position of the Department, which required schools, after a finding of unlawful sexual harassment, to take prompt and effective steps reasonably calculated to end the harassment, eliminate the hostile environment, prevent its recurrence, and, as appropriate, remedy its effects.

62.     The Department does not impose these limitations for all other forms of sex discrimination, or for race or disability discrimination (including harassment).

63.     Just addressing the harm caused by unlawful sexual harassment to the student who complains is insufficient. Interventions for an entire class or school may be necessary to eliminate the hostile environment created by the harassment that only a single student complained of. Such remedies serve to eliminate the effects the discrimination had on the program, not just the parties to a specific complaint.

64.     The 2020 Regulations permit a school to respond unreasonably to complaints of sexual harassment, so long as its response is not "clearly" unreasonable. This safe harbor for schools is inappropriately restrictive and will lead to more inappropriate responses to known harassment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Injuries Caused by the 2020 Regulations*

65.    While each of the challenged 2020 Regulations on its own is contrary to the text and purpose of Title IX and, without adequate justification or explanation, at odds with the Department's traditional interpretation, their cumulative effect will lead to students experiencing more sexual harassment and receiving fewer remedies.

66.    Under these provisions, schools are not responsible for responding to sexual harassment unless the sexual harassment qualifies as "severe, pervasive, and objectively offensive;" the harassment takes place on school grounds (or in an education program), regardless of where its effect is felt; and a school employee has actual knowledge of the harassment. Even then, students will no longer be entitled to the full range of remedies that they and their classmates may need to continue their education free from discrimination. And the school may act with indifference to the harassment, as long as it avoids being "deliberately indifferent."

67.    The 2020 Regulations vastly change the incentives of schools to prioritize preventing and deterring sexual harassment. Under the challenged provisions, a school's failure to effectively prevent and promptly respond to sexual harassment will be much less likely to carry any consequences. In fact, a school may be incentivized to avoid learning about the harassment its students experience, in order to avoid triggering any obligations under the Regulations.

68.    The 2020 Regulations also discourage students from filing complaints with their schools in the first place by creating uncertainty about what conduct will trigger a school's obligation under Title IX to investigate and respond to sexual harassment.

69.    The Department itself acknowledged that the 2020 Regulations would reduce investigations of sexual harassment by 50% in K-12 schools. But nowhere does the Department

conclude that a substantial reduction in investigations will result in less sexual harassment or more "effective" protections against sexual harassment. Nor could it.

70.    To the contrary, the 2020 Regulations will result in more students being subjected to sexual harassment because it narrows the scope of Title IX's protections.

71.    The Department itself, in the preamble to the 2020 Regulations, recognized that "weak sanctions against sexual violence perpetrators and weak laws and policies related to sexual violence and sex equality are associated with a greater likelihood of perpetration." 85 Fed. Reg. at 30,070.

72.    Because fewer incidents of sexual harassment will be investigated under the 2020 Regulations, the likelihood of this harassment being detected and addressed will also be reduced. These decreases will have an appreciable impact on a school's ability to deter future and repeated sexually harassing conduct.

73.    The Department, however, arbitrarily refused to conclude that the 2020 Regulations would have any effect on the underlying number of incidents of sexual harassment. It thus declined to consider the costs that would be borne by students and schools due to the increase in harassment, despite the fact that such incidents have concrete and obvious costs. The Department deliberately refused to grapple with what it was sacrificing in order to achieve its intended benefits.

74.    By ignoring the increased harassment and the attendant increased costs, the Department entirely failed to consider an important aspect of the problem that the statute was designed to address.

### Additional Injuries Caused by the 2020 Regulations Specifically to WSU

75.    The 2020 Regulations have already impaired and will continue to impair WSU's ability to bring Title IX violations to the attention of the Department for redress. This is because

the Regulations deny WSU the opportunity of the Department's Office for Civil Rights to investigate and resolve WSU's Title IX complaints against its school district.

76.     The Office for Civil Rights' regulations require it to investigate any administrative complaint it receives from a member of the public that indicates discrimination. The regulations provide that a "responsible Department official or his designee *will* make a prompt investigation whenever a … complaint … indicates a possible failure to comply with this part. 34 C.F.R. 100.7(c) (emphasis added); *see* 34 C.F.R. 106.71 (Title IX regulation incorporating the procedural provisions of the Department's Title VI regulations). If the investigation "indicates a failure to comply" with the regulations, the Office for Civil Rights "will so inform the recipient and the matter will be resolved by informal means whenever possible." 34 C.F.R. 106.7(c).

77.     In February 2021, WSU filed an administrative complaint against Berkeley Unified School District with the Department's Office for Civil Rights. That complaint alleged violations of Title IX that, under the 2020 Regulations, are no longer cognizable. The allegations include:

- Permitting harassment that is severe but not pervasive, including unwelcome exposure to others' genitalia.

- Permitting harassment that is pervasive but not severe, including students' circulation of sexualized images of a classmate and regular comments by groups of students, usually young men, concerning the appearances and sexual histories of their classmates, usually young women.

- Failing to take steps to discover and remediate instances of commonplace harassment, such as that occurring in Zoom "breakout rooms," digital spaces in

which small groups or dyads of students converse on video without a teacher present.

- Failing to investigate and address harassment that occurs off campus but impacts survivors' education, including sexual assaults committed by students with whom the victims share classes and, during COVID-19, harassing messages sent and received through students' personal phones while students share online classrooms.

- Failing at times to respond to sexual harassment in a prompt and effective manner, and instead, for example, tolerating the open presence of an informal club dedicated to sexually harassing students and placing the burden on victims to avoid contact with their harassers and even transfer out of shared classes, especially when the underlying harassment occurred off campus.

- Failing to take action that addresses all the persons adversely affected by sexual harassment, not just the complainant.

78. Without a doubt, the Department's Office for Civil Rights will not investigate WSU's administrative complaint, and will not provide any relief to WSU and its members, because the 2020 Regulations no longer make it unlawful for purposes of administrative enforcement for the Berkeley Unified School District to disregard sexual harassment that is severe but not pervasive (or pervasive but not severe); sexual harassment that originates outside the school's "program or activity," even though it impacts students' ability to participate in the school's program or activity; and sexual harassment that the school should reasonably know about, but of which it lacks actual knowledge. Even for cognizable sexual harassment that the school knows about, the 2020 Regulations do not require complete relief and, in fact, allow the

school to respond unreasonably to the harassment, so long as its response is not clearly unreasonable.

79.     The refusal of the Department's Office for Civil Rights to open WSU's complaint for investigation in its entirety denies WSU the right it had prior to the 2020 Regulations to have its administrative complaint investigated.

80.     Because WSU cannot count on the Office for Civil Rights to investigate the Berkeley Unified School District and spur changes to its policies and practices, to achieve its mission and attend school free from discrimination, WSU has no choice but to take actions that are both more time consuming and less effective, such as conducting their own investigations into patterns of harassment at Berkeley Unified School District and meeting with school administrators. These efforts have reduced the amount of time WSU can spend on its other efforts, such as developing consent education materials and expanding access to menstrual hygiene products.

81.     But for the Department's 2020 Regulations, WSU's complaint would be opened for investigation by the Office for Civil Rights.

82.     Even if the Office for Civil Rights were to open some or all of the allegations of WSU's complaint for investigation, the Department's 2020 Regulations do not require and, in fact, discourage Berkeley Unified School District from taking actions that were previously required under the Department's prior interpretations of Title IX and that WSU wishes its school to take.  The 2020 Regulations themselves thus deprive WSU of a critical bargaining tool as it seeks to achieve these changes at Berkeley Unified School District as part of WSU's organizational purpose.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CLAIM

### *Violations of Administrative Procedure Act, 5 U.S.C. § 706(2)(A) & (C)*

83.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

84.     The 2020 Regulations are not in accordance with law and short of statutory right because the Department adopted provisions that are contrary to the text and purpose of Title IX.

85.     The 2020 Regulations are arbitrary and capricious because the Department changed its longstanding prior interpretations without sufficient justification for the change and, in some instances, without displaying awareness that it was changing its view.

86.     The 2020 Regulations are arbitrary and capricious because the Department failed to consider important aspects of the problem, including that the Regulations discourage students from filing complaints about sexual harassment with their schools and discourage schools from learning about sexual harassment experienced by their students.

87.     The 2020 Regulations are arbitrary and capricious because, contrary to the evidence and in conflict with its own rationale about the effect of the regulations on school and student behavior, the Department refused to find that the provisions would increase the amount of sexual harassment that students would experience. The Department thus disregarded a factor that Title IX itself made highly relevant and failed to consider an important aspect of the problem.

88.     The 2020 Regulations are arbitrary and capricious because, without a satisfactory explanation, the Department imposed special limitations, procedures, and obstacles for sexual harassment claims that do not apply to any other sex discrimination claims under Title IX or to race- and disability-based discrimination (including harassment) claims under Title VI, the Rehabilitation Act, and the Americans with Disabilities Act.

89.     The 2020 Regulations are arbitrary and capricious because the Department failed to consider important aspects of the problem, including the disparate effect that the Regulations will have on women and girls and LGBTQ students.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Declare that Defendant's 2020 Regulations are unlawful.

B.  Enter a preliminary and permanent injunction holding unlawful and setting aside the Regulations as arbitrary or capricious; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or otherwise not in accordance with law.

C.  Award Plaintiff its reasonable costs and attorneys' fees incurred in the prosecution of this action; and

D.  Award such other equitable and further relief as the Court deems just and proper.

Date: March 8, 2021                                Respectfully submitted,


                                                    __/s/ Adele P. Kimmel____
Seth M. Galanter*                                   Adele P. Kimmel (CA Bar No. 126843)
National Center for Youth Law                       Alexandra Z. Brodsky*
712 H Street NE, Suite 32020                        Public Justice
Washington, DC 20002                                1620 L Street NW, Suite 630
Ph: (202) 868-4781                                  Washington, DC 20036
Fax: (510) 835-8099                                 Ph: (202) 797-8600
Email: sgalanter@youthlaw.org                       Fax: (202) 232-7203
                                                    Email: akimmel@publicjustice.net
                                                            abrodsky@publicjustice.net

Linda M. Correia*
Lauren A. Khouri*
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington DC 20036
Ph: (202) 602-6500
Fax: (202) 602-6501
Email: lcorreia@correiaputh.com
          lkhouri@correiaputh.com

Adrienne Spiegel (CA Bar No. 330482)
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
Ph: (510) 622-8150
Fax: (202) 232-7203
Email: aspiegel@publicjustice.net

*pro hac vice motions forthcoming*