**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
PATRICK K. SWEETEN, (*pro hac vice motion forthcoming*)
  E-Mail: Patrick.Sweeten@oag.texas.gov
KATHLEEN T. HUNKER, (*pro hac vice motion forthcoming*)
  E-Mail: Kathleen.Hunker@oag.texas.gov
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548
Telephone: 512.936.1414
Facsimile: 512.936.0545

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
MICHAEL K. JOHNSON, CA Bar No. 130193
  E-Mail: Michael.Johnson@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260
Attorneys for Intervenor-Defendant
KEN PAXTON IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF TEXAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

|  |  |
|---|---|
| THE WOMEN'S STUDENT UNION, | Case No. 3:21-cv-01626-EMC |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF TEXAS'S MOTION TO INTERVENE AS DEFENDANT** |
| vs. | |
| U.S. DEPARTMENT OF EDUCATION, | |
| Defendant. | Judge: Hon. Edward M. Chen |
| and | |
| STATE OF TEXAS, | **Date:** **May 20, 2021** |
| [Proposed] Intervenor-Defendant. | **Time:** **1:30 p.m.** |
|  | **Crtrm:** **5, 17th Floor** |


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

STATEMENT OF ISSUES ..................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

LEGAL STANDARD ..........................................................................................................4

ARGUMENT .......................................................................................................................5

I.      The Court Should Grant Intervention As Of Right. ............................................5

      A.      Texas' Motion Is Timely. ...........................................................5

      B.      As A Provider Of Public Education, Texas Has Significant Protectable Interests Directly Affected By This Litigation. ...........................6

      C.      Disposition Of This Action Would Impair Or Impede Texas' Ability To Protect Its Interests. ...........................................9

      D.      None Of The Parties Adequately Represent Texas' Interests. ................10

II.     In The Alternative, The Court Should Permit Permissive Intervention. ..............12

CONCLUSION ...................................................................................................................13



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page**

## FEDERAL COURT CASES

*Arakaki v. Cayetano,*
 324 F.3d 1078 (9th Cir. 2003) ................................................................................ 6, 10

*Bates v. Jones,*
 904 F. Supp. 1080 (N.D. Cal. 1995) ............................................................................ 10

*Bresgal v. Brock,*
 637 F. Supp. 271 (D. Or. 1985), *aff'd as modified*, 833 F.2d 763 (9th Cir. 1987), 843
 F.2d 1163 (9th Cir. 1987) ............................................................................................ 4

*Builders Ass'n of Greater Chi. v. City of Chicago,*
 170 F.R.D. 435 (N.D. Ill. 1996) .................................................................................. 7

*California ex rel. Lockyer v. United States,*
 450 F.3d 436 (9th Cir. 2006) ....................................................................................... 9

*California v. Health & Human Services,*
 330 F.R.D. 248 (N.D. Cal. 2019) ...................................................................... 4, 8, 9, 12

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
 647 F.3d 893 (9th Cir. 2011) ....................................................................................... 9

*Daggett v. Comm'n on Gov't Ethics,*
 172 F.3d 104 (1st Cir. 1999) ....................................................................................... 4

*Doe v. Univ. of Scis.,*
 961 F.3d 203 (3d Cir. 2020) ....................................................................................... 8

*E.E.O.C. v. Nat'l Children's Ctr., Inc.,*
 146 F.3d 1042 (D.C. Cir. 1998) .................................................................................. 12

*Edwards v. City of Houston,*
 78 F.3d 983 (5th Cir. 1996) ....................................................................................... 4

*Feller v. Brock,*
 802 F.2d 722 (4th Cir. 1986) ..................................................................................... 10

*Forest Conservation Council v. U.S. Forest Serv.,*
 66 F.3d 1489 (9th Cir. 1995) ..................................................................................... 10

*Hecox v. Little,*
 479 F. Supp. 3d 930 (D. Idaho 2020) ........................................................................... 6

*Humane Soc. of U.S. v. Clark,*
 109 F.R.D. 518 (D.D.C. 1985) ................................................................................... 13

*Int'l Paper Co. v. Inhabitants of Town of Jay, Me.,*
 887 F.2d 338 (1st Cir. 1989) ..................................................................................... 12

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*,
    382 U.S. 205 (1965) ..................................................................................................... 10

*Jack Marine Int'l Services Ltd. v. Tilman Enterprises Inc., 18-CV-00693-BLF*,
    2018 WL 1258211 (N.D. Cal. Mar. 12, 2018) ......................................................... 6

*Kamakahi v. Am. Soc'y for Reprod. Med., 11-CV-01781-JCS*,
    2015 WL 1926312 (N.D. Cal. Apr. 27, 2015) ......................................................... 5

*Kukui Gardens Corp. v. Holco Capital Group, Inc.*,
    261 F.R.D. 523 (D. Haw. 2009) ............................................................................... 4

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) .................................................................................. 4

*Mot. to Stay Briefing Schedule, Commonwealth of Pennsylvania v. Devos*,
    1:20-cv-01468-CJN  (D.D.C. Feb. 3, 2021) ............................................................ 11

*Ninth Circuit. Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) .................................................................................... 5

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ................................................................................. 10

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
    960 F.3d 603 (9th Cir. 2020)..................................................................................... 12

*Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*,
    775 F. Supp. 353 (D. Or. 1991) ............................................................................... 13

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) .................................................................................... 4

*Raytek, Inc. v. Omega Eng'g, Inc., C-93-20188 RMW PVT*,
    1993 WL 404088 (N.D. Cal. Sept. 22, 1993)............................................................ 5

*Retiree Support Group of Contra Costa Cnty. v. Contra Costa Cnty.*,
    315 F.R.D. 318 (N.D. Cal. 2016) ............................................................................. 5

*Scholl v. Mnuchin*,
    483 F. Supp. 3d 822 (N.D. Cal. 2020) ..................................................................... 12

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001)................................................................................. 8, 9

*Swan v. Peterson*,
    6 F.3d 1373 (9th Cir.1993)........................................................................................ 10

*Syngenta Seeds, Inc. v. County of Kauai*,
    CIV. 14-00014BMK, 2014 WL 1631830 (D. Haw. Apr. 23, 2014) .......................... 9

*Texas. See S.E.C. v. Navin*,
    166 F.R.D. 435 (N.D. Cal. 1995) ............................................................................. 9

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Title IX. See Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
   960 F.3d 253 (5th Cir. 2020) ................................................................. 7

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) .................................................................. 10, 11

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ................................................................. 4

*United States v. Blue Lake Power, LLC*,
   215 F. Supp. 3d 838 (N.D. Cal. 2016) .................................................... 5

*Venegas v. Mitchell*,
   495 U.S. 82 (1990) ............................................................................. 12

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) .......................................................... 12, 13

*W. Energy All. v. Zinke*,
   877 F.3d 1157 (10th Cir. 2017) ........................................................... 10

*WildEarth Guardians v. U.S. Forest Serv.*,
   573 F.3d 992 (10th Cir. 2009) ............................................................. 11

*Wilderness Soc. v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ............................................................. 10

## FEDERAL RULES AND REGULATIONS

Fed. R. Civ. P. 24(a) ................................................................................. 1
Fed. R. Civ. P. 24(b) ................................................................................. 1
Fed. R. Civ. P. 24(c) ................................................................................. 5
Fed. R. Civ. P. 24(b)(1)(B) ....................................................................... 12

## CONSTITUTIONAL PROVISIONS

Tex. Const. art. VII, § 1 ............................................................................. 6

## ADDITIONAL AUTHORITIES

*https://tea.texas.gov/sites/default/files/comp_annual_biennial_2020.pdf.* ..................... 6

Agency, *Enrollment in Texas Public Schools 2019-20 at 1* ,
   https://tea.texas.gov/sites/default/files/enroll_2019-20.pdf. (Aug. 12, 2020) ................... 6

*Candice Jackson, OCR, U.S. Dept. of Educ., Dear Colleague Letter* (Sept. 9, 2017),
   https:// www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf ................... 2

2011 *Dear Colleague Letter." Id*; *The Biden Plan To End Violence Against Women*,
   JOEBIDEN.COM, https://joebiden.com/vawa/ (last visited Mar. 24, 2021) ................... 11

Greta Anderson, *More Title IX Lawsuits by Accusers and Accused, Insider Higher Ed* ,
   https://www.insidehighered.com/news/2019/10/03/students-look-federal-courts-
   challenge-title-ix-proceedings (Oct. 3, 2019) ................................................. 8


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Janet Napolitano, *"Only Yes Means Yes": An Essay on University Policies Regarding Sexual Violence and Sexual Assault*, 33 YALE L. & POL'Y REV. 387, 394–395 (2015) .......... 7, 8

Joe Biden, *Statement on the Trump Administration Rule to Undermine Title IX and Campus Safety* (May 6, 2020), https://medium.com/@JoeBiden/statement-by-vice-president-joe-biden-on-the-trump-administration-rule-to-undermine-title-ix-and-e5dbc545daa ................................................................................................................... 3

Jonathan Taylor, Milestone: 600+ *Title IX/Due Process Lawsuits in Behalf of Accused Students, Title IX for All* (Apr. 1, 2020), https://www.titleixforall.com/milestone-600-title-ix-due-process-lawsuits-in-behalf-of-accused-students....................................................... 7, 8

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, (May 19, 2020).......................................................................... 1

Press Release, U.S. Dept. of Educ., *Vice Present Biden Announces New Administration Efford to Help Nation's Schools Address Sexual Violence* (Apr. 4, 2011), https://www.ed.gov/news/press-releases/vice-president-biden-announces-new-adminstration-effort-help-nations-schools-ad. ............................................................... 2

*Russlynn Ali, OCR, U.S. Dept. of Educ., Dear Colleague Letter: Sexual Violence*, http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf. (Apr. 4, 2011)............. 1

Taylor Mooney, *How Betsy DeVos plans to change the rules for handling sexual misconduct on campus,* CBS NEWS  (Nov. 24, 2019) ................................................................. 1

Tex. Educ. Agency, 2020 *Comprehensive Biennial Report on Texas Public Schools* at 297 (Dec. 4, 2020) (reporting that Texas received $5.3 billion dollars for K-12 education*), https://tea.texas.gov/sites/default/files/comp_annual_biennial_2020.pdf.* .......................... 6

Tex. Educ. Agency, *Enrollment in Texas Public Schools 2019-20* at 1 (Aug. 12, 2020), https://tea.texas.gov/sites/default/files/enroll_2019-20.pdf.. ................................................. 6

*Tex. Higher Educ. Coordinating Bd., 2020 Texas Public Higher Education Almanac at 28, 47,* https://reportcenter.highered.texas.gov/agency-publication/almanac/2020-texas-public-higher-education-almanac/. (Sept. 28, 2020) ................................................................ 6

*The Biden Agenda for Women,* JOEBIDEN.COM, https://joebiden.com/womens-agenda/ (last visited Mar. 24, 2021) ........................................................................................... 2, 3, 11

*The Biden Plan To End Violence Against Women*, https://joebiden.com/vawa/  (last visited Mar. 24, 2021) ....................................................................................................... 2

*Recalibrating Regulation of Colleges and Universities* at 14 (Feb. 12, 2015), *available at* https://www.acenet.edu/Documents/Higher-Education-Regulations-Task-Force-Report.pdf........................................................................................................................ 7, 9

*Title IX/Due Process Lawsuits in Behalf of Accused Students, Title IX for All*, https://www.titleixforall.com/milestone-600-title-ix-due-process-lawsuits-in-behalf-of-accused-students. (Apr. 1, 2020) ............................................................................... 8

*U.S. Dept. of Educ., Questions and Answers on Title IX and Sexual Violence*, https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf. (Apr. 24, 2014) .......... 1



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Press Release, U.S. Dept. of Educ., Vice President Biden Announces New Administration Effort to Help Nation's Schools Address Sexual Violence,*
https://www.ed.gov/news/press-releases/vice-president-biden-announces-new-administration-effort-help-nations-schools-ad ............................................................................ 2



# INTRODUCTION

The State of Texas ("Texas") respectfully moves to intervene in defense of the Department of Education's ("the Department") Final Rule addressing Title IX obligations, which took effect on August 14, 2020.[1] Texas submits this motion because, as common provider of education, Texas has a compelling interest in the Department issuing clear, practical regulatory guidance, which enables the State to combat sexual harassment without sacrificing its commitment to either free speech or due process, nor its receipt of federal funds. The Biden Administration, however, has expressed open hostility to the provisions in the Final Rule that do just that and has taken early steps towards the Final Rule's repeal. In light of these actions, Texas cannot trust that the Department will provide a robust defense of the Final Rule or adequately represent its significant protectable interests.

# STATEMENT OF ISSUES

(1) Whether the State of Texas has a right to intervene under Rule 24(a) of the Federal Rules of Civil Procedure; and,

(2) Whether, in the alternative, the State of Texas should be permitted to intervene under the Federal Rules of Civil Procedure 24(b).

# FACTUAL BACKGROUND

During the Obama Administration, the Department issued its deeply misguided and controversial 2011 Dear Colleague Letter[2] and 2014 Questions and Answers on Title IX Sexual Violence ("2014 Question and Answers").[3] Although neither underwent notice and comment rulemaking, the two guidance documents put recipients in a no-win situation where either conforming or failing to conform to the guidance documents would expose them to significant risk of litigation.[4] Then-Vice-President Joe Biden played a key role in the development and

---

[1] *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020).
[2] *Russlynn Ali, OCR, U.S. Dept. of Educ., Dear Colleague Letter: Sexual Violence* (Apr. 4, 2011), http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.
[3] U.S. Dept. of Educ., *Questions and Answers on Title IX and Sexual Violence* (Apr. 24, 2014), http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf.
[4] *See, e.g.*, Taylor Mooney, *How Betsy DeVos plans to change the rules for handling sexual misconduct on campus*, CBS NEWS (Nov. 24, 2019) ("Prior to 2011, the number of lawsuits filed against universities for failing to provide due process in Title IX cases averaged one per year. It is (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF TEXAS'S MOTION TO INTERVENE

1   implementation of the Obama Administration's policies on sexual harassment,[5] including the

2   changes the administration advanced regarding Title IX. The former vice president, in fact, stood as

3   the Obama Administration's spokesperson for the Dear Colleague Letter, announcing its publication

4   to students at the University of New Hampshire in Durham. *See* Press Release, U.S. Dept. of Educ.,

5   *Vice President Biden Announces New Administration Effort to Help Nation's Schools Address*

6   *Sexual Violence* (Apr. 4, 2011), https://www.ed.gov/news/press-releases/vice-president-biden-

7   announces-new-administration-effort-help-nations-schools-ad.

8       The Dear Colleague Letter and 2014 Questions and Answers had a detrimental impact on

9   publicly funded education across the country, including in Texas. Not only did the two guidance

10  documents introduce significant confusion as to academic institutions' obligations under Title IX,

11  but they also incentivized academic institutions to violate students' constitutional rights in order to

12  avoid incurring liability. Thus, in response to growing criticism, the Department, under the Trump

13  Administration, rescinded both the Dear Colleague Letter and the 2014 Questions and Answers in

14  2017.[6] It soon became apparent, however, that the withdrawal could not repair the damage caused

15  by the two guidance documents on its own. The Department therefore issued on May 19, 2020 the

16  Final Rule that is the subject of this action. The Final Rule, for the first time, clearly demarcated the

17  outer boundaries of federal fund recipients' obligations under Title IX with respect to sexual

18  harassment. It thereby reduced their risk of liability and resolved the dilemma of how to enforce

19  Title IX without sacrificing the rights of either the victims of sexual harassment or the accused.

20      From the moment it was announced, the former vice president opposed the Department's

21  new guidance. He repeatedly (and erroneously) characterized the Final Rule as "a green light to

22  ignore sexual violence." *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden.com/

23

24

25  expected there will be over 100 such lawsuits filed in 2019 alone."), *https://www.cbsnews. com/news/title-ix-sexual-misconduct-on-campus-trump-administration-changing-obama-rules-cbsn-documentary/.*

26  [5] Unless otherwise stated, the term "sexual harassment" encompasses all forms of sexual

27  harassment, including sexual violence and sexual assault. Likewise, unless otherwise stated, the term, "academic institutions" encompasses all entities covered by the new Final Rule issued by the Department, including schools, colleges, and universities, both primary and secondary.

28  [6] *See* Candice Jackson, OCR, U.S. Dept. of Educ., *Dear Colleague Letter* (Sept. 9, 2017), https:// www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF
TEXAS'S MOTION TO INTERVENE

womens-agenda/ (last visited Mar. 24, 2021), And he assured his supporters on the campaign trail that he intended to advance the same objectives for Title IX as he did during the Obama Administration should he be elected to the presidency. According to his website, a Biden Administration would restore the 2011 Dear Colleague Letter and curtail, if not repeal outright, reforms contained in the Final Rule. *See The Biden Plan To End Violence Against Women*, JOEBIDEN.COM, https://joebiden.com/vawa/ (last visited Mar. 24, 2021). Indeed, a common refrain of his campaign was that the Department under a Biden Administration would put a "quick end" to the Final Rule. *E.g.* Joe Biden, *Statement on the Trump Administration Rule to Undermine Title IX and Campus Safety* (May 6, 2020), https://medium.com/@JoeBiden/statement-by-vice-president-joe-biden-on-the-trump-administration-rule-to-undermine-title-ix-and-e5dbc545daa.

The former vice president was successful in his run for the White House. He entered office on January 20, 2021, where he and his administration took immediate steps to cabin its defense of the Final Rule. In particular, his administration instructed the Department to seek an abeyance in *Commonwealth of Pennsylvania v. Devos*, a parallel case, which challenges the Final Rule under the Administrative Procedure Act. *See* Mot. to Stay Briefing Schedule, 1:20-cv-01468-CJN (D.D.C. Feb. 3, 2021). The motion was filed with the support of the plaintiffs in that action and stated that the Department's new leadership intended "to review the underlying rule at issue in this case." *Id.* The implication, of course, is that the federal government is likely to change its position regarding the Final Rule. As further evidence of this about-face, President Biden issued an Executive Order specifically charging the new Secretary of Education to review the Final Rule for "consistency" with Biden Administration's stated Title IX policy. The Secretary has instruction "to consider suspending, revising or rescinding" any portion of the Final Rule it deems inconsistent.

The Biden Administration, in sum, is openly hostile to the Final Rule and therefore Texas' significant protectable interests. Yet, at the same time, it controls the Department's approach to Title IX, up to and including the Department's defense of the Final Rule and the resolution of lawsuits challenging the Final Rule's validity. Recognizing this fact, Texas moved to intervene in *Commonwealth of Pennsylvania* on January 19, 2021, which the D.C. District Court granted. Texas has now learned that the Women's Student Union ("Plaintiff") initiated a separate legal action on

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF TEXAS'S MOTION TO INTERVENE

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

March 8, 2021, claiming that the Final Rule is both arbitrary and capricious. Texas files this motion to intervene in response.

## LEGAL STANDARD

The Federal Rules provide two mechanisms for third-party intervention in a lawsuit: intervention of right under Rule 24(a) and permissive intervention under Rule 24(b). For intervention of right to apply, the movant must demonstrate that: (1) the motion is timely; (2) the movant has a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) the movant's interest is not adequately represented by the existing parties. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). "In determining whether intervention is appropriate, courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "[T]he inquiry" into Rule 24(a) is therefore "flexible one, which focuses on the particular facts and circumstances surrounding each application" *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996). "[I]ntervention must be "measured by a practical rather than technical yardstick." *Id.*; *see also California v. Health & Human Services*, 330 F.R.D. 248, 252 (N.D. Cal. 2019) (stating that intervention should not turn on "technical distinctions").

To qualify for permissive intervention, the movant must show: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). As its name would suggest, permissive intervention is an inherently discretionary enterprise provided the movant meets the abovementioned requirements. *Kukui Gardens Corp. v. Holco Capital Group, Inc.*, 261 F.R.D. 523, 534 (D. Haw. 2009). The Ninth Circuit has generally endorsed "liberal construction in favor of applications for intervention." *Bresgal v. Brock*, 637 F. Supp. 271, 272 (D. Or. 1985), *aff'd as modified*, 833 F.2d 763 (9th Cir. 1987), opinion amended and superseded, 843 F.2d 1163 (9th Cir. 1987). A liberal approach to intervention is especially appropriate "where the subject matter of the lawsuit is of great public interest, the intervenor has a real stake in the outcome and the intervention may well assist the court in its determination through . . . the framing of issues." *Daggett v. Comm'n on Gov't Ethics*, 172

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9071-6900.1                                  4                    Case No. 3:21-cv-01626-EMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF TEXAS'S MOTION TO INTERVENE

1  F.3d 104, 116–17 (1st Cir. 1999) (Lynch, J., concurring).

2       Texas meets the requirements for both intervention as of right and permissive intervention.

3  Pursuant to Rule 24(c), Texas' proposed answer is submitted herewith as Exhibit A.

4  **ARGUMENT**

5  **I.     The Court Should Grant Intervention As Of Right.**

6       **A.     Texas' Motion Is Timely.**

7       Plaintiff commenced this action on March 8, 2021. Texas filed its motion to intervene on

8  April 7, 2021, less than a month after Plaintiff submitted its complaint with this Court. Based on

9  this timeline, there can be no doubt that the motion is timely. *See Raytek, Inc. v. Omega Eng'g, Inc.*,

10  C-93-20188 RMW PVT, 1993 WL 404088, at *2 (N.D. Cal. Sept. 22, 1993) ("Generally, the earlier

11  a party seeks intervention, the more likely it will be granted."). When evaluating timeliness, courts

12  in this jurisdiction look to three factors: (1) the stage of the proceeding at which an applicant seeks

13  to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay. *Retiree*

14  *Support Group of Contra Costa Cnty. v. Contra Costa Cnty.*, 315 F.R.D. 318, 321 (N.D. Cal. 2016).

15  Here, Texas has sought intervention at the earliest stage of litigation. The Defendant has yet to

16  appear before this Court, and no substantive briefings and proceedings have occurred. *See United*

17  *States v. Blue Lake Power*, LLC, 215 F. Supp. 3d 838, 842 (N.D. Cal. 2016). Texas, in short, did

18  not delay filing its motion but instead acted promptly once it became aware that its significant

19  protectable interests in the Final Rule were at risk.

20       Texas' promptness also means that there is no reasonable risk that its intervention would

21  prejudice the existing parties or subject them to undue delay—the "most important consideration"

22  in a court's timeliness analysis, according to the Ninth Circuit. *Smith v. Los Angeles Unified Sch.*

23  *Dist.*, 830 F.3d 843, 857 (9th Cir. 2016). As this Court has previously held, "[i]n the context of a

24  timeliness analysis, prejudice is evaluated based on the difference between timely and untimely

25  intervention—not based on the work Defendants would need to do regardless of when [Texas]

26  sought to intervene." *Kamakahi v. Am. Soc'y for Reprod. Med.*, 11-CV-01781-JCS, 2015 WL

27  1926312, at *4 (N.D. Cal. Apr. 27, 2015). Texas filed its motion at the earliest point possible, well

28  before the parties litigated any of the issues raised by the Complaint or entered into agreements that

LEWIS BRISBOIS BISGAARD & SMITH LLP
ATTORNEYS AT LAW

could be affected by Texas' entry into the case. If any difficulty arises from Texas' intervention, it stems from including an additional party, not from the date Texas submitted its motion.[7]

For this reason, courts have routinely designated as timely motions that are filed by prospective intervenors within the first few months of the litigation's commencement. *E.g. Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003), as amended (May 13, 2003); *Hecox v. Little*, 479 F. Supp. 3d 930, 956 (D. Idaho 2020); *Jack Marine Int'l Services Ltd. v. Tilman Enterprises Inc.*, 18-CV-00693-BLF, 2018 WL 1258211, at *1 (N.D. Cal. Mar. 12, 2018); *Eashoo v. Iovate Health Scis. U.S.A., Inc.*, CV 15-01726-BRO (JWX), 2015 WL 12696036, at *4 (C.D. Cal. May 26, 2015). This Court should do the same here.

## B.     As A Provider Of Public Education, Texas Has Significant Protectable Interests Directly Affected By This Litigation.

Texas administers a system of primary and secondary public education that is funded by both state and federal money. Tex. Educ. Agency, 2020 *Comprehensive Biennial Report on Texas Public Schools* at 297 (Dec. 4, 2020) (reporting that Texas received $5.3 billion dollars for K-12 education)*, https://tea.texas.gov/sites/default/files/comp_annual_biennial_2020.pdf*. The Texas Constitution charges the Texas Legislature "to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." Tex. Const. art. VII, § 1. Pursuant to this charge, Texas funds, regulates, and oversees the second largest system of K–12 public education in the nation, serving over 5.4 million students across 1,200 school districts. Tex. Educ. Agency, *Enrollment in Texas Public Schools 2019-20* at 1 (Aug. 12, 2020), https://tea.texas.gov/sites/default/files/enroll_2019-20.pdf.

Texas also funds, supports, and administers a robust network of higher education. Texas is home to 119 public postsecondary institutions, including 37 universities and 82 two-year colleges and technical schools. *See* Tex. Higher Educ. Coordinating Bd., *2020 Texas Public Higher Education Almanac* at 28, 47 (Sept. 28, 2020), https://reportcenter.highered.texas.gov/agency-

---

[7] Texas' intervention, if anything, will avert a potential disruption to this case should the federal government withdraw its support of the Final Rule and refuse to defend it, which the Biden Administration's recent actions suggest is likely. *See infra* Part I.D.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

publication/almanac/2020-texas-public-higher-education-almanac/. While most states have just one or two public university systems, Texas has six. The largest of these systems—the University of Texas—has 14 separate locations that educate approximately 240,000 students each year. *See About The University of Texas System*, THE UNIVERSITY OF TEXAS SYSTEM, https://www.utsystem .edu/about (last visited Jan. 15, 2021). All told, the State's entire network of higher education enrolled just shy of 1.7 million students in 2019. *See* Tex. Higher. Educ. Coordinating Bd., at 13.

Because Texas receives federal funding from the Department for primary and secondary education, Texas and its public primary and secondary education systems are subject to Title IX and the regulations effectuating Title IX, such as the Final Rule. Likewise, each of the institutions in Texas' systems of higher education receives federal funding and, as a result, is subject to the Final Rule as well. This means that Texas and its academic institutions have an obligation to investigate and enforce alleged violations of Title IX. *See Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020) (recognizing public institutions of higher education as "arms" and "instrumentalities" of the State). Texas is intensely interested in the Final Rule as a result. Indeed, its interests are the "mirror-image" of Plaintiff's interests. While Plaintiff alleges that it "[is] being injured by the [Final Rule]," Texas "w[ould] be injured by [the Final Rule's] invalidation." *Builders Ass'n of Greater Chi. v. City of Chicago*, 170 F.R.D. 435, 440 (N.D. Ill. 1996).

First, the Final Rule clarified the definition of sexual harassment as well as the conditions that must be met before a recipient's obligations under Title IX are activated. Invalidating the Final Rule would create uncertainty, harming the Texas institutions regulated under Title IX. *See infra* Part I.C. Earlier guidance had caused a great deal of confusion regarding recipients' legal responsibilities under Title IX.[8] Recipients did not know how to comply with the new mandates or whether failure to do so would incur legal consequences. *See* Janet Napolitano, *"Only Yes Means Yes": An Essay on University Policies Regarding Sexual Violence and Sexual Assault*, 33 YALE L.

---

[8] The Task Force on Federal Regulation of Higher Education specifically identified the Dear Colleague Letter and 2014 Question and Answers as guidance documents that were meant to eliminate uncertainty but only led to more confusion. *See Recalibrating Regulation of Colleges and Universities* at 14 (Feb. 12, 2015), *available at* https://www.acenet.edu/Documents/Higher-Education-Regulations-Task-Force-Report.pdf.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF TEXAS'S MOTION TO INTERVENE

1  & POL'Y REV. 387, 394–395 (2015).

2  In an abundance of caution, many academic institutions, including those funded by Texas,

3  elected to revise their policies to cover a greater range of conduct and make it easier for

4  administrators to arrive at a determination of guilt. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 213 (3d

5  Cir. 2020) (describing the pressure universities faced as a result of the Dear Colleague Letter). But

6  that led to litigation. Hundreds of lawsuits have been filed since the Dear Colleague Letter was

7  issued—a sizeable number of which academic institutions lost or settled. *See* Second, the Final Rule

8  reduced Texas' risk of liability. While previous guidance had supported an improperly broad view

9  of Title IX liability, the Final Rule fixed those issues. By confining Title IX liability to proper limits

10 set by statute, the Final Rule benefits Texas. If it were invalidated, Texas institutions would be

11 subject to litigation expenses, which, in turn, would lead to higher compliance costs and diversion

12 of resources.

13 In short, earlier guidance put Texas academic institutions between a rock and a hard place.

14 Not following the guidance would risk federal enforcement actions, but following the guidance

15 would lead to lawsuits, litigation expenses, and ultimately monetary settlements. *Id.*; *see also* Greta

16 Anderson, *More Title IX Lawsuits by Accusers and Accused*, INSIDER HIGHER ED (Oct. 3, 2019),

17 https://www.insidehighered.com/news/2019/10/03/students-look-federal-courts-challenge-title-ix-

18 proceedings (describing the "high cost of addressing sexual misconduct. . . a lose-lose situation for

19 universities"). The Final Rule, by contrast, resolves the dilemma. It provides clear guidance limiting

20 Texas' liability and reducing expected litigation expenses.

21 These interests support intervention. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d

22 810, 818 (9th Cir. 2001) ("It is generally enough that the interest asserted is protectable under some

23 law, and that there is a relationship between the legally protected interest and the claims at issue.").

24 In *California v. Health & Human Services*, the State of Oregon sought to intervene in a lawsuit

25 challenging federal regulations related to the contraception mandate. 330 F.R.D. at 253. This Court

26 concluded that the regulations' impact on Oregon's finances, public health, and sovereignty

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF
TEXAS'S MOTION TO INTERVENE

1   constituted significant protectable interests as defined by Rule 24(a).[9] *Id.* Setting aside the Final

2   Rule would have similar implications for Texas. Thus, if Oregon satisfied Rule 24(a)'s second

3   prong, then so too does Texas. *See S.E.C. v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal. 1995) (describing

4   the purpose of the interest test as "involving as many apparently concerned persons as is compatible

5   with efficiency and due process").

6       **C.    Disposition Of This Action Would Impair Or Impede Texas' Ability To**

7               **Protect Its Interests.**

8           Texas "would be substantially affected in a practical sense by the determination made" in

9   this action; it therefore "should, as a general rule, be entitled to intervene" *Sw. Ctr. for Biological*

10  *Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). As explained above, the Final Rule provides

11  important benefits to Texas, its schools, and its citizens. It both limits the scope of potential Title IX

12  liability and also provides clarity that helps schools follow the law. But Plaintiff asks this Court to

13  deprive Texas of those benefits by "setting aside" the Final Rule. *See* ECF 1 at 23. Those "practical

14  consequences" are more than sufficient to show impairment of Texas' interests. *Nat. Res. Def.*

15  *Council v. Norton*, 1:05CV01207 OWW TAG, 2006 WL 39094, at *10 (E.D. Cal. Jan. 5, 2006); *see*

16  *also California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found

17  that appellants have a significant protectable interest, we have little difficulty concluding that the

18  disposition of this case may, as a practical matter, affect it."). When a movant benefits from a

19  regulation, invalidation of that regulation would necessarily impair the movant's interests. *See, e.g.*,

20  *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011); *Sw. Ctr.*

21  *for Biological Diversity* 268 F.3d at 822; *see also* Syngenta *Seeds, Inc. v. County of Kauai*, CIV. 14-

22  00014BMK, 2014 WL 1631830, at *5 (D. Haw. Apr. 23, 2014) (stating that if intervenors have a

23

24  ――――――――――――――――
    [9] Although this Court determined that Oregon had sufficient interest in the challenged regulations,
25  it found that Oregon, who wished to join as a Plaintiff, would not be impeded from protecting its
    interest by the disposition of the lawsuit since the state could file a separate action, seeking
26  injunctive relief. *Health & Human Services,* 330 F.R.D. at 253. Texas, who seeks join the above-
    caption action as defendant, does not have that option. Should Plaintiff's claims succeed, Texas
27  cannot revitalize the Final Rule or recover the benefits it enjoyed under the Final Rule by filing its
    own petition with the courts. In any event, this Court granted Oregon's motion under Rule 24(b),
28  finding permissive intervention appropriate even when state could not establish intervention as of
    right. *Id.* at 254–55.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

protectable interest in the protections offered by a regulation, "it naturally follows that the invalidation of the [regulation] would impair those interests").

Relegation to the status of amicus curiae would not enable Texas to protect their interests in this case and "is not an adequate substitute for participation as a party." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967); *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995), abrogated on other grounds by *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). In such a scenario, no party would provide a comprehensive defense of the Final Rule to this Court. Texas would not be able to file motions or appeal if necessary. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 215–216 (1965) (discussing the difference between party and amicus status). Texas also would lack the ability to introduce an issue or defense not raised by the parties. *Swan v. Peterson*, 6 F.3d 1373, 1383 & n. 10 (9th Cir.1993). For the reasons stated below, Texas and the federal government do not share the same interests. *See infra* Part I.D. There is in fact evidence that the Department does not intend to defend the Final Rule whatsoever. Texas will likely be the sole party then defending the Final Rule in its entirety, making it essential that its arguments be part of the Court's deliberations. "Participation by [Texas] as amicus curiae is not sufficient to protect against these practical impairments." *Feller v. Brock*, 802 F.2d 722, 730 (4th Cir. 1986). Texas should be granted intervenor status.

### D.    None Of The Parties Adequately Represent Texas' Interests.

The federal government will neither adequately represent Texas's interests nor provide an adequate defense of the Final Rule. Rule 24(a)'s inadequate representation requirement is not onerous. *See Bates v. Jones*, 904 F. Supp. 1080, 1087 (N.D. Cal. 1995). On its own, "the change in the Administration raises 'the possibility of divergence of interest' or a 'shift' during litigation," sufficient to satisfy Rule 24(a). *W. Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017). As the Biden Administration's recent actions illustrate, a change in Administration often precedes substantial shifts in federal positions, and these shifts mean the Department's interests are unlikely to overlap with intervenor Texas' interest. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), as amended (May 13, 2003) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9071-6900.1                                     10                          Case No. 3:21-cv-01626-EMC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF TEXAS'S MOTION TO INTERVENE

538 n.10 (1972)) (stating that the movant's "minimal" burden is "satisfied if [movants] could demonstrate that representation of their interests '*may be*' inadequate") (emphasis added).

The Biden Administration has expressed open hostility to the Final Rule. During the campaign, President Biden repeatedly (and erroneously) characterized the Final Rule as "a green light to ignore sexual violence." *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden .com/womens-agenda/ (last visited Mar. 24, 2021). He promised to put a "quick end" to the Final Rule and stated that he would "restore [earlier] Title IX guidance for colleges, including the 2011 *Dear Colleague Letter.*" *Id*; *The Biden Plan To End Violence Against Women*, JOEBIDEN.COM, https://joebiden.com/vawa/ (last visited Mar. 24, 2021). Nor has the President limited his opposition to the Final Rule to mere words. Almost immediately after taking office, the Department, acting in close coordination with the plaintiff-states, sought an abeyance in another case challenging the Final Rule "so that Department leadership to review the underlying rule at issue in this case." *See* Mot. to Stay Briefing Schedule, *Commonwealth of Pennsylvania v. Devos*, 1:20-cv-01468-CJN (D.D.C. Feb. 3, 2021). The White House also issued an Executive Order specifically charging the new Secretary of Education to review the Final Rule for "consistency" with Biden Administration's stated Title IX policy. The Executive Order further instructs the Secretary "to consider suspending, revising or rescinding" any portion of the Final Rule it deems inconsistent.

Not only are these statements and actions evidence of an unavoidable, fundamental divide between Texas and the federal government, but the Biden Administration's unabashed opposition raises a strong possibility that the federal government will either fail to defend the Final Rule or omit from its defense key arguments. *See WildEarth Guardians v. U.S. Forest Serv*., 573 F.3d 992, 997 (10th Cir. 2009) (recognizing that government policy is not static and may shift). Even had the federal government not committed an about-face, it would have been hard-pressed to accurately capture Texas' interest as a common provider of education, subject to Title IX and the Final Rule's revisions. *Cf. Trbovich*, 404 U.S. at 539 (concluding that government cannot adequately represent private parities because it is entrusted with protecting vital public interests). However, at least under the Trump Administration, the Department had a stake in providing a robust defense of the Final Rule. Here, the Biden Administration has voiced its opposition to it. Texas is therefore entitled to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9071-6900.1                                    11                        Case No. 3:21-cv-01626-EMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF
TEXAS'S MOTION TO INTERVENE

1   intervene as of right, and this Court should permit intervention here.

2   **II.      In The Alternative, The Court Should Permit Permissive Intervention.**

3         As set forth in Section I, *supra.*, Texas easily meets the requirements for intervention as of

4   right. But even if it did not, this Court should exercise its "wide latitude" and permit Texas to

5   intervene in this action under Rule 24(b) instead. *Oakland Bulk & Oversized Terminal, LLC v. City

6   of Oakland*, 960 F.3d 603, 619 (9th Cir. 2020). Texas satisfies all three threshold requisites for

7   permissive intervention. *Health & Human Services*, 330 F.R.D. at 252, 254 (N.D. Cal. 2019)

8   (permitting the State of Oregon to intervene in action challenging a federal agency's final rules).

9   First, Texas has an independent ground for subject matter jurisdiction, as this action raises a federal

10  question, and Texas would establish federal-question jurisdiction independent of Plaintiff's ability

11  to do so. *Id.*; *see also Int'l Paper Co. v. Inhabitants of Town of Jay, Me.*, 887 F.2d 338, 347 (1st Cir.

12  1989) (holding that independent jurisdiction exists when the state seeks to defend the statute against

13  a challenge based on federal law). Second, Texas' motion is timely. As explained above, Texas filed

14  its motion within a month of Plaintiffs initiating this legal action. *See supra* Part I.A. Accordingly,

15  Texas has not delayed, much less prejudiced any of the existing parties. Third, Texas' position in

16  support of the Final Rule involves common questions of law and fact. *E.E.O.C. v. Nat'l Children's

17  Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) (noting courts typically "afforded this requirement

18  considerable breadth"). Both "the main action" and Texas' defense center on whether the Final Rule

19  is consistent with Title IX and the Administrative Procedures Act. Fed. R. Civ. P. 24(b)(1)(B). Those

20  common questions of law and fact are sufficient for permissive intervention. *See Health & Human

21  Services*, 330 F.R.D. at 254 (N.D. Cal. 2019).

22        Finally, the Court should exercise its discretion to permit intervention because Texas seeks

23  to defend interests that will otherwise go unprotected in the proceeding. As the Ninth Circuit has

24  recognized, permissive intervention is concerned with "the fairest and most efficient method of

25  handling a case." *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), aff'd sub nom. *Venegas v.

26  Mitchell*, 495 U.S. 82 (1990). In making this determination, the courts look to additional factors,

27  which include whether the movant's interests are adequately represented. *Id.*; *see also Scholl v.

28  Mnuchin*, 483 F. Supp. 3d 822, 825 (N.D. Cal. 2020) (listing relevant factors). Texas is a common

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-9071-6900.1                                    12                        Case No. 3:21-cv-01626-EMC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF
TEXAS'S MOTION TO INTERVENE

provider of education, whose schools, universities, and other academic programing are subject to Title IX. But unlike the Biden Administration, Texas believes that the Final Rule will not only facilitate enforcement of Title IX but also discourage unconstitutional practices that have violated the rights of individuals accused of misconduct. Texas therefore can provide a broad-based defense of the Final Rule from this perspective, enabling the Court to fully assess its validity through adversarial proceedings, despite the new Administration's change of position on the merits. *See Oregon Envtl. Council v. Oregon Dep't of Envtl. Quality*, 775 F. Supp. 353, 359 (D. Or. 1991) (basing its decision on "whether the intervenor would contribute to a full development of the underlying issues in the suit"); *see also Humane Soc. of U.S. v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985) (judging it appropriate "[i]n light of the 'scope and complexity of plaintiffs' challenge,'" to have absent interests "directly represented"). Absent Texas' intervention, multiple defenses to Plaintiff's charge that the Department violated the Administrative Procedure Act will be left undeveloped—and that is assuming that the Biden Administration defends the Final Rule at all.

The remaining factors—i.e. the possibility of undue delay, judicial economy, and the nature of movant's interest—are addressed earlier in Texas' arguments, *see supra* Part I.A–B, and likewise are "clearly weighed in favor of permissive intervention." *Skaggs*, 867 F.2d at 530.

## CONCLUSION

For the foregoing reasons, the State of Texas respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a) or, in the alterative, for permissive intervention under Rule 24(b).

DATED: April 7, 2021                                   Respectfully submitted.

                                        LEWIS BRISBOIS BISGAARD & SMITH LLP

                                        */s/ Michael K. Johnson*
                                        Michael K. Johnson
                                        Attorneys for Defendant
                                        KEN PAXTON IN HIS OFFICIAL
                                        CAPACITY AS  ATTORNEY GENERAL
                                        OF TEXAS

                                        Patrick K. Sweeten
                                        Deputy Attorney General



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF
TEXAS'S MOTION TO INTERVENE

for Special Litigation
Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Grant Dorfman
Deputy First Assistant Attorney General
William T. Thompson
Deputy Chief, Special Litigation Unit
Kathleen T. Hunker
Special Counsel
Attorneys for Defendant
KEN PAXTON IN HIS OFFICIAL
CAPACITY AS  ATTORNEY GENERAL
OF TEXAS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF
TEXAS'S MOTION TO INTERVENE

**CERTIFICATE OF SERVICE**
*The Women's Student Union v. U.S. Department of Education, et al.*
USDC-ND, San Francisco Division, Case No. 3:21-cv-01626-EMC

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On April 7, 2021, I served the following document:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INTERVENOR-DEFENDANT STATE OF TEXAS'S MOTION TO INTERVENE**

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to all persons registered by the Court to receive Notifications of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  April 7, 2021                    */s/ Sandra Hayes*
                                          Sandra Hayes

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*The Women's Student Union v. U.S. Department of Education, et al.*
USDC-ND, San Francisco Division, Case No. 3:21-cv-01626-EMC

# EXHIBIT   A
### ( [proposed] Answer )

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
PATRICK K. SWEETEN, (*pro hac vice motion forthcoming*)
    E-Mail: Patrick.Sweeten@oag.texas.gov
KATHLEEN T. HUNKER, (*pro hac vice motion forthcoming*)
    E-Mail: Kathleen.Hunker@oag.texas.gov
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548
Telephone: 512.936.1414
Facsimile: 512.936.0545

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
MICHAEL K. JOHNSON, CA Bar No. 130193
    E-Mail: Michael.Johnson@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260
Attorneys for Intervenor-Defendant
KEN PAXTON IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF TEXAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| THE WOMEN'S STUDENT UNION, | Case No. 3:21-cv-01626-EMC |
| Plaintiff, | **ANSWER OF [PROPOSED] INTERVENOR-DEFENDANT STATE OF TEXAS** |
| vs. | |
| U.S. DEPARTMENT OF EDUCATION, | Judge: Hon. Edward M. Chen |
| Defendant. | |
| and | |
| STATE OF TEXAS, | |
| [Proposed] Intervenor-Defendant. | |

Putative Intervenor-Defendant, the State of Texas, respectfully files this Answer to Plaintiff's Complaint for Injunctive and Declaratory Relief Administrative Procedure Act Case, ECF 1 ("Complaint").



1  Pursuant to Federal Rules of Civil Procedure, Texas denies each and every allegation

2  contained in the Complaint except for those expressly admitted herein. The headings and paragraphs

3  below directly correlate to the sections and numbered paragraphs of the Complaint. Those titles are

4  reproduced in this Answer for organizational purposes only, and Texas does not admit any matter

5  contained therein.

6  Texas responds to the specifically numbered allegations of the First Amended Complaint as

7  follows:

8  **INTRODUCTION**

9  1.  Texas admits that some percentage of students experience sexual harassment,

10  including sexual violence, at public schools. Texas, however, lacks sufficient knowledge or

11  information to form a belief about the truth of the remaining allegations contained in Paragraph 1;

12  on that basis, it denies the allegations in their entirety.

13  2.  Texas admits that sexual harassment can have adverse consequences. Texas,

14  however, lacks sufficient knowledge or information to form a belief about the truth of the remaining

15  allegations contained in Paragraph 2; on that basis, it denies the allegations in their entirety.

16  3.  Texas denies the allegations in Paragraph 3 of the Complaint.

17  4.  Texas lacks sufficient knowledge or information about California's Berkeley Unified

18  School District to form a belief about the truth of the allegations in Paragraph 4; on that basis, it

19  denies the allegations in their entirety.

20  5.  Texas lacks sufficient knowledge or information about Berkeley High School to form

21  a belief about the truth of the allegations in Paragraph 5; on that basis, it denies the allegations in

22  their entirety.

23  6.  Texas admits that Title IX of the Education Amendments of 1972 applies to schools

24  that receive federal funds but denies the remaining allegations in Paragraph 6 of the Complaint.

25  7.  Texas admits that the U.S. Department of Education enforces Title IX. The

26  remaining allegations in Paragraph 7 purport to characterize the Department of Education's prior

27  guidance, which speaks for itself. To the extent that the remainder of this Paragraph contains any

28  allegations requiring a response, Texas denies them in their entirety.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

8.      Texas admits that the Department of Education, under then-Secretary Betsy Devos, issued regulations in 2020 that purport to effectuate Title XI. Texas denies the remaining allegations in Paragraph 8, including Plaintiff's characterization of the Final Rule, which speaks for itself.

9.      Paragraph 9 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

10.      Paragraph 10 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

11.      Paragraph 11 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

12.      Paragraph 12 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

13.      Paragraph 13 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

14.      Paragraph 14 purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

15.      Paragraph 15 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   To the extent that this Paragraph contains any allegations requiring a response, Texas denies them

2   in their entirety. Additionally, Texas lacks sufficient knowledge or information about the Women's

3   Student Union ("WSU") and Berkeley High School to form a belief about the truth of the allegations

4   in the second half of Paragraph 15; on that basis, it denies the allegations in their entirety.

5                                            **PARTIES**

6        16.    Texas lacks sufficient knowledge or information about WSU to form a belief about

7   the truth of the allegations in Paragraph 16; on that basis, it denies the allegations in their entirety.

8        17.    Texas admits the allegations in Paragraph 17 of the Complaint.

9        18.    Paragraph 18 contains assertions of law, conclusory statements, and/or argument to

10  which no response is required. To the extent that this Paragraph contains any allegations requiring

11  a response, Texas admits that the Defendant is a department of the United States. Texas also admits

12  that Plaintiff purports to bring claims that arise under Title IX of the Education Amendments of

13  1972 and the Administrative Procedure Act (APA) but denies that any violation of law has occurred.

14  Texas denies all other allegations in Paragraph 18, except where previously admitted.

15                                           **VENUE**

16       19.    Paragraph 19 contains assertions of law, conclusory statements, and/or argument to

17  which no response is required. To the extent that this Paragraph contains any allegations requiring

18  a response, Texas lacks sufficient knowledge or information about where WSU resides to form a

19  belief about the truth of the allegations contained in Paragraph 19; on that basis, it denies the

20  allegations in their entirety.

21                                   **INTRADISTRICT ASSIGNMENT**

22       20.    Texas lacks sufficient knowledge or information to form a belief about the truth of

23  the allegations in Paragraph 20; on that basis, it denies the allegations in their entirety.

24                                        **ALLEGATIONS**

25       21.    Paragraph 21 contains assertions of law, conclusory statements, and/or argument to

26  which no response is required. It also purports to characterize legal authority, which speaks for itself.

27  To the extent that this Paragraph contains any allegations requiring a response, Texas denies them

28  in their entirety.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

22.     Paragraph 22 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize legal authority, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

23.     Paragraph 23 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize legal authority, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

24.     Texas admits that Title IX is administratively enforced by federal agencies. The remaining allegations in Paragraph 24 either contain assertions of law, conclusory statements, and/or argument to which no response is required, or purport to characterize legal authority, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety, except where previously admitted. Texas also lacks sufficient knowledge or information to form a belief about the truth of the allegations in the last sentence of Paragraph 24; on that basis, it denies the allegations in their entirety.

25.     Texas admits that the U.S. Department of Education, through its Office for Civil Rights, enforces Title IX. The remaining allegations in Paragraph 25 either contain assertions of law, conclusory statements, and/or argument to which no response is required, or purport to characterize the Department's prior guidance, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety, except where previously admitted.

26.     Texas admits that the Sexual Harassment Guidance, 62 Fed. Reg. 12,034 (Mar. 13, 1997) and the Revised Sexual Harassment Guidance, 66 Fed. Reg. 5,512 (Jan. 19, 2001) underwent notice and comment rulemaking. Texas also admits that the listed guidance documents were issued by both Democratic and Republican administrations. The remaining allegations in Paragraph 26 purport to characterize the Department's prior guidance, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety, except where previously admitted.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

27.     Paragraph 27 purports to characterize the Department's prior guidance, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

28.     Paragraph 28 purports to characterize the Department's prior guidance, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

29.     Paragraph 29 purports to characterize Title IX and other legal authority, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

30.     Paragraph 30 purports to characterize legal authority, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

31.     Paragraph 31 purports to characterize the Department's guidance concerning race and disability, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

32.     Texas denies the allegations in first sentence of Paragraph 32. The remaining allegations either purport to characterize the Final Rule, which speaks for itself, or contains assertions of law, conclusory statements, and/or argument to which no response is required. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

33.     Texas admits that the Final Rule was promulgated under then-Secretary Betsy DeVos but denies the allegation that the Department failed to provide adequate justification or explanation. The remaining allegations in Paragraph 33 purport to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety, except where previously admitted.

34.     Paragraph 34 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    To the extent that this Paragraph contains any allegations requiring a response, Texas denies them
2    in their entirety.

3          35.     Texas denies the allegations in Paragraph 35 of the Complaint.

4          36.     Texas denies the allegations in Paragraph 36 of the Complaint.

5             ***Limiting what constitutes sexual harassment under Title IX.***

6          37.     Paragraph 37 contains assertions of law, conclusory statements, and/or argument to
7    which no response is required. It also purports to characterize the Final Rule and Title IX, which
8    speak for themselves. To the extent that this Paragraph contains any allegations requiring a response,
9    Texas denies them in their entirety.

10         38.     Paragraph 38 purports to characterize the Final Rule, which speaks for itself. To the
11   extent that this Paragraph contains any allegations requiring a response, Texas denies them in their
12   entirety.

13         39.     Texas denies the allegation that the Department failed to provide adequate
14   justification or explanation. The remaining allegations in Paragraph 39 either purport to characterize
15   the Final Rule and the Department's prior guidance, which speak for themselves, or contains
16   assertions of law, conclusory statements, and/or argument to which no response is required. To the
17   extent that this Paragraph contains any allegations requiring a response, Texas denies them in their
18   entirety.

19         40.     Paragraph 40 contains assertions of law, conclusory statements, and/or argument to
20   which no response is required. It also purports to characterize the Department's prior guidance and
21   other legal authority, which speak for themselves. To the extent that this Paragraph contains any
22   allegations requiring a response, Texas denies them in their entirety.

23         41.     Paragraph 41 contains assertions of law, conclusory statements, and/or argument to
24   which no response is required. It also purports to characterize the Department's prior guidance and
25   other legal authority, which speak for themselves. To the extent that this Paragraph contains any
26   allegations requiring a response, Texas denies them in their entirety.

27         42.     Paragraph 42 contains assertions of law, conclusory statements, and/or argument to
28   which no response is required. It also purports to characterize the Final Rule, which speaks for itself.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   To the extent that this Paragraph contains any allegations requiring a response, Texas denies them

2   in their entirety.

3       43.     The first sentence of Paragraph 43 contains assertions of law, conclusory statements,

4   and/or argument to which no response is required. It also purports to characterize the Final Rule and

5   Title IX, which speak for themselves. To the extent that this sentence contains any allegations

6   requiring a response, Texas denies them in their entirety. Texas further denies the allegation in the

7   second sentence of Paragraph 43.

8       44.     Paragraph 44 contains assertions of law, conclusory statements, and/or argument to

9   which no response is required. It also purports to characterize the Final Rule and Title IX, which

10  speak for themselves. To the extent that this Paragraph contains any allegations requiring a response,

11  Texas denies them in their entirety.

12      45.     Texas denies the allegations in Paragraph 45 of the Complaint.

13                      ***Limiting where Title IX's protections apply***

14      46.     Paragraph 46 contains assertions of law, conclusory statements, and/or argument to

15  which no response is required. It also purports to characterize the Final Rule and Title IX, which

16  speak for themselves. To the extent that this Paragraph contains any allegations requiring a response,

17  Texas denies them in their entirety.

18      47.     Paragraph 47 contains assertions of law, conclusory statements, and/or argument to

19  which no response is required. It also purports to characterize the Final Rule and other legal

20  authority, which speak for themselves. To the extent that this Paragraph contains any allegations

21  requiring a response, Texas denies them in their entirety.

22      48.     Paragraph 48 contains assertions of law, conclusory statements, and/or argument to

23  which no response is required. It also purports to characterize the Final, which speaks for itself. To

24  the extent that this Paragraph contains any allegations requiring a response, Texas denies them in

25  their entirety.

26      49.     Texas denies the allegation that the Department failed to provide adequate

27  justification or explanation. The remaining allegations in Paragraph 49 either purport to characterize

28  the Final Rule and the Department's prior guidance, which speak for themselves, or contains

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4832-9087-9460.1                8                Case No. 3:21-cv-1644-MMC
                        CERTIFICATE OF SERVICE

1  assertions of law, conclusory statements, and/or argument to which no response is required. To the

2  extent that this Paragraph contains any allegations requiring a response, Texas denies them in their

3  entirety.

4       50.     Paragraph 50 contains assertions of law, conclusory statements, and/or argument to

5  which no response is required. It also purports to characterize the Final Rule and Title IX, which

6  speak for themselves. To the extent that this Paragraph contains any allegations requiring a response,

7  Texas denies them in their entirety.

8       51.     Texas denies the allegations in the first two sentences of Paragraph 51. The

9  remaining allegations either purport to characterize the Final Rule, which speaks for itself, or

10  contains assertions of law, conclusory statements, and/or argument to which no response is required.

11  To the extent that this Paragraph contains any allegations requiring a response, Texas denies them

12  in their entirety.

13       52.     Paragraph 52 contains assertions of law, conclusory statements, and/or argument to

14  which no response is required. It also purports to characterize the Final Rule, which speaks for itself.

15  To the extent that this Paragraph contains any allegations requiring a response, Texas denies them

16  in their entirety.

17       53.     Texas denies the allegations in Paragraph 53 of the Complaint.

18       ***Limiting when a school district is responsible for sexual harassment***

19       ***effecting students in its programs***

20       54.     Paragraph 54 contains assertions of law, conclusory statements, and/or argument to

21  which no response is required. It also purports to characterize the Final Rule, which speaks for itself.

22  To the extent that this Paragraph contains any allegations requiring a response, Texas denies them

23  in their entirety.

24       55.     Paragraph 55 contains assertions of law, conclusory statements, and/or argument to

25  which no response is required. It also purports to characterize the Final Rule and other legal

26  authority, which speak for themselves. To the extent that this Paragraph contains any allegations

27  requiring a response, Texas denies them in their entirety.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

56.     Paragraph 56 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

57.     Texas denies the allegation that the Department failed to provide adequate justification or explanation. The remaining allegations in Paragraph 57 purports to characterize the Final Rule, the Department's prior guidance, and other legal authority, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

58.     Texas denies the allegations in Paragraph 58 of the Complaint.

### *Limiting how the Department will determine whether a school district has appropriately responded to sexual harassment under Title IX*

59.     Paragraph 59 purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

60.     Paragraph 60 purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

61.     Texas denies the allegation that the Department failed to provide adequate justification or explanation. The remaining allegations in Paragraph 61 either contain assertions of law, conclusory statements, and/or argument to which no response is required or purport to characterize the Department's prior guidance and other legal authority, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

62.     Paragraph 62 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule and other legal authority, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

63.     Texas denies the allegations in Paragraph 63 of the Complaint.

64.     Paragraph 64 purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

### *Injuries Caused by the 2020 Regulations*

65.     Texas denies the allegation that the Department failed to provide adequate justification or explanation. The remaining allegations in Paragraph 65 either contain assertions of law, conclusory statements, and/or argument to which no response is required, or purport to characterize the Final Rule, Title IX, and the Department's prior guidance, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

66.     Paragraph 66 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

67.     Paragraph 67 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

68.     Texas denies the allegations in Paragraph 68 of the Complaint.

69.     Paragraph 69 purports to characterize the Department's statements regarding the Final Rule, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety. Texas also denies Plaintiff's characterization of the Department's statements.

70.     Texas denies the allegations in Paragraph 70 of the Complaint.

71.     Paragraph 71 purports to characterize the Final Rule's preamble, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.



72.     Texas denies the allegations in Paragraph 72 of the Complaint.

73.     Paragraph 73 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

74.     Texas denies the allegations in Paragraph 74 of the Complaint.

### *Additional Injuries Caused by the 2020 Regulations Specifically to WSU*

75.     Paragraph 75 purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas lacks sufficient knowledge or information about WSU to form a belief about the truth of the allegations in Paragraph 75; on that basis, it denies the allegations in their entirety.

76.     Paragraph 76 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize multiple regulations, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

77.     Texas lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 77; on that basis, it denies the allegations in their entirety.

78.     Paragraph 78 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

79.     Paragraph 79 contains assertions of law, conclusory statements, and/or argument to which no response is required. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

80.     Texas lacks sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 80; on that basis, it denies the allegations in their entirety.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

81.     Paragraph 81 contains assertions of law, conclusory statements, and/or argument to which no response is required. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

82.     The first sentence in Paragraph 82 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that the sentence contains any allegations requiring a response, Texas denies them in their entirety. Texas also denies the second sentence in Paragraph 82.

## CLAIM

### *Violations of Administrative Procedure Act, 5 U.S.C. § 706(2)(A) & (C)*

83.     Texas repeats and reaffirms its answers to each and every allegation contained in the paragraphs above and incorporates the same herein as though fully set forth.

84.     Paragraph 84 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule and Title IX, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

85.     Paragraph 85 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

86.     Paragraph 86 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

87.     Paragraph 87 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.



88.     Paragraph 88 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule and other legal authority, which speak for themselves. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

89.     Paragraph 88 contains assertions of law, conclusory statements, and/or argument to which no response is required. It also purports to characterize the Final Rule, which speaks for itself. To the extent that this Paragraph contains any allegations requiring a response, Texas denies them in their entirety.

**PRAYER FOR RELIEF**

Paragraphs (A)–(D) of this section contain Plaintiff's recitation of the relief sought in this action, assertions of law, conclusory statements, and/or argument to which no response is required. To the extent that Paragraphs (A)–(D) contain any allegations requiring a response, Texas denies those allegations in their entirety. Texas further denies that Plaintiff is entitled to any relief from this Court.

**DEFENSES AND AFFIRMATIVE DEFENSES**

1.     Plaintiff has failed to state a claim upon which relief can be granted.

2.     Some or all of the relief Plaintiff seeks would violate the First, Fifth, or Fourteenth Amendments of the United States Constitution.

3.     Texas reserves the right to amend these defenses or raise additional defenses as they become known to Texas during the development of this case.

**DEFENDANT'S PRAYER**

For the foregoing reasons, Texas asks the Court to enter judgment that Plaintiff takes nothing, dismiss Plaintiff's suit with prejudice, assess costs against Plaintiff, and award Defendant all other relief the Court deems appropriate.

*///*

*///*

*///*

*///*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DATED:_____                      Respectfully submitted.

                                        LEWIS BRISBOIS BISGAARD & SMITH LLP


                                        Michael K. Johnson
                                        Attorneys for Defendant
                                        KEN PAXTON IN HIS OFFICIAL
                                        CAPACITY AS ATTORNEY GENERAL
                                        OF TEXAS


                                        Patrick K. Sweeten
                                        Deputy Attorney General
                                        for Special Litigation
                                        Ken Paxton
                                        Attorney General of Texas
                                        Brent Webster
                                        First Assistant Attorney General
                                        Grant Dorfman
                                        Deputy First Assistant Attorney General
                                        William T. Thompson
                                        Deputy Chief, Special Litigation Unit
                                        Kathleen T. Hunker
                                        Special Counsel
                                        Attorneys for Defendant
                                        KEN PAXTON IN HIS OFFICIAL
                                        CAPACITY AS ATTORNEY GENERAL
                                        OF TEXAS