**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
PATRICK K. SWEETEN, (*pro hac vice motion forthcoming*)
   E-Mail: Patrick.Sweeten@oag.texas.gov
KATHLEEN T. HUNKER, (*pro hac vice motion forthcoming*)
   E-Mail: Kathleen.Hunker@oag.texas.gov
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548
Telephone: 512.936.1414
Facsimile: 512.936.0545

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
MICHAEL K. JOHNSON, CA Bar No. 130193
   E-Mail: Michael.Johnson@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260
Attorneys for Intervenor-Defendant
KEN PAXTON IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF TEXAS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| THE WOMEN'S STUDENT UNION, | Case No. 3:21-cv-01626-EMC |
| Plaintiff, | **COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE** |
| vs. | |
| U.S. DEPARTMENT OF EDUCATION, | Judge: Hon. Edward M. Chen |
| Defendant. | **Date:   May 20, 2021** |
| and | **Time:   1:30 p.m.** |
| STATE OF TEXAS, | **Crtrm:   5, 17th Floor** |
| [Proposed] Intervenor-Defendant. | |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

Page

ARGUMENT ................................................................................................................. 1

I.    Texas does not need Article III standing to intervene as defendant, but it has standing in any event. ............................................................................. 1

II.   Texas Has A Right To Intervene Under Rule 24(A)(2). .................................. 5

    A.    Texas has a significantly protectable interest related to this case. ......... 5

    B.    There are no reasonable alternatives to intervention that would protect Texas' interests. ....................................................................... 6

    C.    The Department is not capable of representing Texas' interests or providing an adequate defense of the regulations. .................................. 8

III.   In The Alternative, The Court Should Grant Permissive Intervention. .......... 13

CONCLUSION ............................................................................................................. 15



# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allentown Mack Sales & Serv., Inc. v. NLRB.*,
   522 U.S. 359 (1998) ........................................................................................ 12

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) .................................................................... 5, 11

*Cal. Trucking Ass'n v. Becerra*,
   433 F. Supp. 3d 1154 (S.D. Cal. 2020), *rev'd on other grounds*, *Cal.
   Trucking Ass'n v. Bonta*, -- F.3d --, 2021 WL 1656283 (9th Cir.
   Apr. 28, 2021) ................................................................................................. 4

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) .......................................................................... 4

*California ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006) ....................................................................... 5, 6

*California v. Health & Human Services*
   330 F.R.D. 248, 253 (N.D. Cal. 2019) ........................................................... 5

*California v. Wheeler*,
   467 F. Supp. 3d 864 (N.D. Cal. 2020)........................................................... 12

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ....................................................................... 9, 11

*Commonwealth of Pennsylvania v. DeVos*,
   1:20-cv-01468-CJN (D.D.C. Feb. 4, 2021) ............................................... 13, 14

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ........................................................................................ 3

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
   960 F.3d 253 (5th Cir. 2020) ........................................................................ 3, 5

*Doe v. Univ. of Scis.*,
   961 F.3d 203 (3d Cir. 2020) ............................................................................ 7

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Franciscan All., Inc. v. Azar*,
    414 F. Supp. 3d 928 (N.D. Tex. 2019) ............................................................. 1, 2

*Freedom from Religion Found., Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) ...................................................................... 13, 15

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
    188 F. Supp. 3d 986 (E.D. Cal. 2016) .................................................................. 2

*In re Charles Schwab Corp. Sec. Litig.*,
    C 08-01510 WHA, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) ....................... 7

*Int'l Fur Trade Fed'n v. City & County of San Francisco*,
    20-CV-00242-RS, 2020 WL 6931066 (N.D. Cal. Apr. 17, 2020) ................... 10

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ................................................................................ 3

*Marsh v. Oregon Nat. Res. Council*,
    490 U.S. 360 (1989) .............................................................................................. 2

*Maya v. Centex Corp.*
    658 F.3d 1060, 1070 (9th Cir. 2011) .................................................................... 4

*Mehr v. Fed'n Internationale de Football Ass'n*,
    115 F. Supp. 3d 1035 (N.D. Cal. 2015) ............................................................... 3

*MHC Fin. Ltd. P'ship v. City of San Rafael*
    C-00-3785C-00-3785 VRW, 2006 WL 8431310, at *9 (N.D. Cal.
    Jan. 27, 2006 .................................................................................................... 2, 3

*New York v. United States Dep't of Educ.*,
    20-CV-4260 (JGK), 2020 WL 3962110 (S.D.N.Y. July 10, 2020) ................. 13

*Oliver v. Univ. of Tex. Sw. Med. Sch.*,
    3:18-CV-1549-B, 2019 WL 536376 (N.D. Tex. Feb. 11, 2019) .......................... 4

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) ................................................................................ 9

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) ................................................................................ 3

*Plummer v. Univ. of Houston*,
    860 F.3d 767 (5th Cir. 2017) ................................................................................ 4

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-2729-6233.1                                    iii                    Case No. 3:21-cv-01626-EMC
COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE

*Ruiz v. Estelle*,
    161 F.3d 814 (5th Cir. 1998) ............................................................................ 1

*S.E.C. v. Private Equity Mgmt. Group, Inc.*,
    CV 09-2901 PSG (EX), 2009 WL 2488044 (C.D. Cal. Aug. 10,
    2009) ................................................................................................................... 8

*S.F. NAACP v. S.F. Unified Sch. Dist.*,
    59 F. Supp. 2d 1021 (N.D. Cal. 1999) .............................................................. 8

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983) .......................................................................... 12

*Scholl v. Mnuchin*,
    483 F. Supp. 3d 822 (N.D. Cal. 2020) ............................................................ 14

*Sissom v. Univ. of Tex. High Sch.*,
    927 F.3d 343 (5th Cir. 2019) ............................................................................ 5

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)...................................................................................... 1

*State v. U.S. Dep't of Homeland Sec.*,
    19-CV-04975-PJH, 2020 WL 1557424 (N.D. Cal. Apr. 1, 2020) .................... 14

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017)...................................................................................... 1

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) ........................................................................................ 10

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ..................................................................... 6

*United States v. Alisal Water Corp.*
    370 F.3d 915, 921 (9th Cir. 2004) .................................................................... 7

*United States v. City of Los Angeles, Cal.*,
    288 F.3d 391 (9th Cir. 2002) .......................................................................... 13

*United States v. Dunifer*
    99F. Supp. 1235, 1239 (N.D., Cal. 1998)......................................................... 2

*Victim Rights Law Center (VRLC) v. Cardona*,
    No. 1:20-cv-11104 (D.Mass)............................................................... 11, 12, 13

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-2729-6233.1

iv

Case No. 3:21-cv-01626-EMC

COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE

*Virginia House of Delegates v. Bethune-Hill*,
    139 S. Ct. 1945 (2019) ........................................................................... 1, 2

*Walsh v. Hodge*,
    975 F.3d 475 (5th Cir. 2020) ................................................................ 4

*Yellowstone Coalition v. Lewis*,
    628 F.3d 1143 (9th Cir. 2010) .............................................................. 2

**Federal Statutes**

*Health & Human Servs*, 330 F.R.D. ............................................................ 5, 6, 13

**Other Authorities**

Rule 24(b) ........................................................................................ 15



## **ARGUMENT**

**I.**      **Texas does not need Article III standing to intervene as defendant, but it has standing in any event.**

Generally, plaintiffs, not defendants, bear the burden of demonstrating standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) (noting that the burden falls on the party invoking the court's jurisdiction). In accordance with this principle, a party who "intervene[s] in support of *defendants* in the trial court" does "not need to establish standing" due to its "defensive posture." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019). After all, an intervenor needs to establish standing only "to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Estates, Inc.,* 137 S. Ct. 1645, 1651 (2017); *see also Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998) ("Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so."). And Texas, as an intervenor-defendant, would not be seeking any relief. "The term 'relief' is linked to affirmative claims, not defenses." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 938 n.3 (N.D. Tex. 2019).

Plaintiff does not assert that intervenor-defendants, as a rule, require standing. Plaintiff instead asserts that Texas specifically must demonstrate standing because: (1) Texas seeks relief beyond that requested by Plaintiff; (2) Texas raises an affirmative defense; and (3) Texas seeks to preserve its right to appeal. ECF 27 at 5–7. As an initial matter, Texas is not seeking relief for purposes of intervention. *See Franciscan All., Inc.*, 414 F. Supp. 3d at 938 n.3. A defendant asking for litigation "costs" and related "relief" is not "seeking relief" for purposes of intervention because it is not invoking the jurisdiction of the court independent of the plaintiff-initiated litigation. But even if Texas had sought relief, Plaintiff would be wrong. The court's

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

analysis looks at the relief requested by all parties, not just Plaintiff. *See Bethune-Hill*, 139 S. Ct. at 1952. Texas is seeking no more than what any reasonable defendant would seek. Plaintiff makes no effort to show that the Department, which has not yet filed an answer, will seek less.

As for Plaintiff's second contention, Texas' assertion that Plaintiff's requested relief violates the Constitution addresses the elements of Plaintiff's cause of action; it therefore does not constitute an affirmative defense. *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 188 F. Supp. 3d 986, 991 (E.D. Cal. 2016). However, even if it were an affirmative defense, raising an affirmative defense is not an attempt to seek relief. It is an attempt to prevent the plaintiff from obtaining relief. It thus does not trigger a requirement to prove standing. *See Franciscan All., Inc.*, 414 F. Supp. 3d at 938 n.3.

Plaintiff cites two non-binding cases requiring standing for an affirmative defense, but both rulings were issued before *Bethune-Hill* and do not apply to the facts at hand. In *United States v. Dunifer*, the court required standing because the affirmative defense required the litigation of issues not encompassed in the plaintiff's case-in-chief. 997 F. Supp. 1235, 1239 (N.D. Cal. 1998), *aff'd on other grounds*, 219 F.3d 1004 (9th Cir. 2000). That is not the case here. Plaintiff raises an Administrative Procedure Act (APA) claim, arguing that four provisions in the Final Rule are arbitrary and capricious. To evaluate that claim, the reviewing court "must consider whether the [Department's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989). The relevant factors include the constitutionality of alternative rules and compliance with federal law. *See*, *e.g.*, *Greater Yellowstone Coalition v. Lewis*, 628 F.3d 1143, 1146–50 (9th Cir. 2010). Hence, Texas' defense raises issues that must be resolved as part of Plaintiff's case-in-chief.

Plaintiff also cites to *MHC Fin. Ltd. P'ship v. City of San Rafael*, but that case considered a statute-of-limitations defense, which is "a personal right" specific to the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

defendant, who had waived it. C-00-3785 VRW, 2006 WL 8431310, at *9 (N.D. Cal. Jan. 27, 2006). In this case, Texas raises constitutional limitations on governmental activity, not a personal benefit intended for but waived by the federal government. In any event, courts consider standing on a claim-by-claim basis. *Mehr v. Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1055 (N.D. Cal. 2015) (*citing DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Should Texas lack standing to raise an affirmative defense or pursue a certain type of relief, that would not preclude Texas from proceeding on the remainder.

As for Plaintiff's third contention, Texas seeks intervention because the Department has an invested interest in entering a collusive settlement and is therefore unlikely to defend the challenged regulations at trial. *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (denying intervention because movant's only expressed interest in the litigation was to ensure appellate review). It does not need to prove appellate standing unless and until it moves to appeal.

The Court, however, need not answer these questions because Texas has Article III standing. Public institutions of higher education in Texas constitute "arms" and "instrumentalities" of the State, which Plaintiff does not contest. *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257 (5th Cir. 2020). Each of these institutions receives federal funding and, as a result, is subject to Title IX, along with any effectuating regulations, including the challenged provisions of the Final Rule. Plaintiff does not refute this fact either. Texas, in other words, is subject to the Final Rule and "the direct object of regulatory action challenged as unlawful." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 655 (9th Cir. 2011). Standing in such scenarios is presumed. *Id.*

Enjoining the four challenged regulations will have a concrete, immediate effect on Texas. Plaintiff does not contest that by enjoining the regulations, this Court would increase recipients', and thereby Texas', obligations and liability under Title IX. Its Complaint in fact objects to the challenged regulations precisely because the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-2729-6233.1                                    3                          Case No. 3:21-cv-01626-EMC
COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE

regulations "narrowed" the definition of "sexual harassment" and "program or activity," relieving recipients of certain responsibilities. ECF 1 ¶¶ 37, 38, 46, 48. If this Court were to grant the requested injunction, Texas would again be tasked with these responsibilities. For instance, it would have to investigate alleged incidents of sexual misconduct that currently fall outside of its duty, such as online harassment or harassment that occurs at locations not within an academic institution's substantial control. Investigating and adjudicating these incidents will require Texas to incur additional costs. Such costs of compliance are an injury-in-fact giving rise to Article III standing. *Cal. Trucking Ass'n v. Becerra*, 433 F. Supp. 3d 1154, 1160 (S.D. Cal. 2020), *rev'd on other grounds*, *Cal. Trucking Ass'n v. Bonta*, -- F.3d --, 2021 WL 1656283, at *1 (9th Cir. Apr. 28, 2021).

Moreover, Plaintiffs' requested injunction would have collateral consequences for Texas. As Texas explains in its motion, an alternative rule will result in increased litigation from both victims and the accused and in academic institutions revising their policies in ways that violate the Constitution. ECF 19-1 at 7–8. In light of the prevalence of these policies, and in light of the growing frequency of litigation in this space,[1] Texas will suffer these harms with "reasonable probability."[2]  *California v. Azar*, 911 F.3d 558, 571 (9th Cir. 2018) ("Just because a causal chain links the states to the harm does not foreclose standing."); *see also Maya v. Centex Corp*., 658 F.3d 1060, 1070 (9th Cir. 2011) ("A causation chain does not fail simply because it has several links, provided those links are not hypothetical or tenuous.") (internal quotation marks omitted). The costs of litigation are an additional injury-in-fact, as

---

[1] See Jonathan Taylor, Milestone: 700+ Title IX/Due Process Lawsuits by Accused Students, Title IX for All (May 13, 2020), https://titleixforall.com/milestone-700-title-ix-due-process-lawsuits-by-accused-students/.

[2]  *See, e.g., Walsh v. Hodge*, 975 F.3d 475, 478 (5th Cir. 2020); *Plummer v. Univ. of Houston*, 860 F.3d 767, 770 (5th Cir. 2017), as revised (June 26, 2017); see also *Oliver v. Univ. of Tex. Sw. Med. Sch.*, 3:18-CV-1549-B, 2019 WL 536376, at *13 (N.D. Tex. Feb. 11, 2019).

(footnote continued)


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-2729-6233.1                                    4                          Case No. 3:21-cv-01626-EMC
COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE

1   are the costs of liability for policies that violate students' constitutional rights.[3]

2   **II.    Texas Has A Right To Intervene Under Rule 24(A)(2).**

3           Texas satisfies the four-part test stipulated in Federal Rule of Civil Procedure

4   24(a)(2)[4].  This Court should therefore grant Texas' motion to intervene as of right.

5           **A.    Texas has a significantly protectable interest related to this case.**

6           Texas is a common provider of education, whose "arms" and

7   "instrumentalities" receive federal funds. *Daniel*, 960 F.3d at 257. It is subject to the

8   challenged regulations and will suffer a concrete financial injury if the regulations are

9   enjoined as well as a host of collateral consequences that will have a deleterious

10  impact on the State, its citizens, and the quality of education that Texas provides.

11  *Supra* at Part I. Accordingly, Texas holds a number of protected interests that will be

12  affected by the resolution of Plaintiff's claim. *See Arakaki v. Cayetano*, 324 F.3d

13  1078, 1084 (9th Cir. 2003), as amended (May 13, 2003). In arguing otherwise,

14  Plaintiff appears to miscomprehend Texas' relationship with public institutions of

15  higher education, which are "inarguably" state agencies. *Sissom v. Univ. of Tex. High*

16  *Sch.*, 927 F.3d 343, 348 (5th Cir. 2019). Plaintiff also gets bogged down in technical

17  distinctions at the expense of "practical and equitable considerations," which are the

18  nucleus of the court's Rule 21(a)(2) analysis. *Arakaki*, 324 F.3d at 1083; *see*

19  *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)

20  (rejecting notion that Rule 24(a)(2) requires a specific legal or equitable interest).

21          In *California v. Health & Human Services*, State of Oregon sought to intervene

22  in a lawsuit challenging federal regulations related to the contraception mandate. 330

23  _____

24  [3] If, contrary to Texas's argument, the Court concludes that intervention is improper due to the
    generic language in Texas's proposed answer seeking "costs" and "all other relief the Court deems

25  appropriate," Texas is willing to delete that language and forgo such requests.

26

27  [4] Texas sought intervention within one month of the Complaint being filed and before the
    Department appeared. Its motion is timely, which neither party contests.

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

F.R.D. 248, 253 (N.D. Cal. 2019). This Court concluded that the regulations' impact on Oregon's finances, public health, and sovereignty constituted significant protectable interests. *Id.* Setting aside the four challenged regulations would have similar implications for Texas. The rationale for intervention is even stronger here, as Texas, by means of its public universities, would be bound to take certain actions to remain compliant with Title IX if an injunction were granted. Yet Plaintiff has not explained why the court's reasoning in *Health & Human Services* should not control. At the end of the day, Texas will suffer a practical impairment as result of the pending litigation should Plaintiff's claim succeed. It therefore satisfies the requirement that it have significantly protectable interests.

**B.    There are no reasonable alternatives to intervention that would protect Texas' interests.**

As a general matter, if a proposed intervenor has a significant protectable interest, courts have "little difficulty concluding" that the disposition of the case "may, as a practical matter, affect it." *California ex rel. Lockyer*, 450 F.3d at 442. The regulations at issue in Plaintiff's complaint provide important benefits to Texas, as explained above. An adverse ruling, which enjoins these regulations, would eliminate these benefits and force Texas to assume additional duties and liability under Title IX. Courts *may* make an exception when the movant has at its disposal alternative avenues of relief. *See UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 415 (N.D. Cal. 2004) (noting that the availability of alternatives is "hardly dispositive"). But for the exception to apply, the alternative forum must be reasonable and allow the movant the opportunity to "mount a robust defense" of its interests. *Id.* In its opposition to Texas' motion, Plaintiff claims that Texas has two alternatives avenues by which to obtain relief. Neither of the two options Plaintiff identifies, however, would redress Texas' impairment; nor are they reasonable.

First, Plaintiff argues that "if the Court strikes down the four provisions WSU challenges, and the Department initiates rulemaking to replace those provisions,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Texas will have the opportunity to make its views known in the notice and comment period." ECF 27 at 17. As Plaintiff indicates with its phrasing, the availability of this option is speculative. There is no guarantee that the Department will initiate rulemaking in response to the resolution of this lawsuit. However, even if the Department did initiate rulemaking, the notice and comment period is open to all interested persons. Texas' comments would be submitted alongside thousands of others. The option is a far cry from the court-run proceeding available in *United States v. Alisal Water Corp*., which Plaintiff cites in support. 370 F.3d 915, 921 (9th Cir. 2004); *see also In re Charles Schwab Corp. Sec. Litig.,* C 08-01510 WHA, 2011 WL 633308, at *4 (N.D. Cal. Feb. 11, 2011) (noting that movant's objection was previously heard and considered by the court at a hearing). In addition, notice and comment rulemaking takes years. Plaintiff has not explained how Texas will remedy its impaired interests during the interim.

Second, Plaintiff claims that Texas can pursue administrative remedies in the event one of its academic institutions is believed to be non-compliant and at risk of losing federal funds. ECF 27 at 17. This supposed remedy is almost completely non-responsive to the harms that Texas would experience should the four challenged provisions be enjoined. Under the status quo, Texas academic institutions have a smaller likelihood of triggering a federal enforcement action. Indeed, Texas has sought intervention, in part, to prevent Plaintiff from expanding recipients' potential liability by means of its lawsuit, so Plaintiff's proposed remedy demands that Texas participate in a proceeding that it sought to avoid and that would not have been necessary but for disposition of this lawsuit. In any event, the proposed remedy only addresses the worst-case scenario: the possible loss of federal funds. It does nothing to redress the collateral consequences of expanding liability under Title IX, such as private litigation, monetary judgments, and the (often unconstitutional) changes that publicly funded institutions make to their sexual harassment policies to avoid the stigma of noncompliance. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 213 (3d Cir. 2020)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-2729-6233.1                                    7                        Case No. 3:21-cv-01626-EMC
COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE

(describing the pressure universities faced as a result of earlier Title IX policies).

Relegation to the status of amicus curiae also would not provide a satisfactory means of protecting Texas' interests. The above-captioned suit bears characteristics of sue and settle litigation, where an advocacy or interest group files a lawsuit against a like-minded agency for the purpose of negotiating a collusive settlement.[5] Even if that was not Plaintiff's original intention, the Biden Administration has established its willingness to undermine the federal government's defense of Trump Administration policies, when doing so enabled it to circumvent the need for notice and comment rulemaking. *See* Press Release, U.S. Dep't. of Homeland Security, *DHS Secretary Statement on the 2019 Public Charge Rule* (March 9, 2021) (withdrawing from the defense of the 2019 public charge rule, thereby allowing an adverse judgment to go into effect), https://www.dhs.gov/news/2021/03/09/dhs-secretary-statement-2019-public-charge-rule. As amici, Texas' participation would be limited. Not only would it be precluded from filing motions or introducing an issue or defense not raised by the parties, but it also would lack standing to object to a collusive settlement or to appeal. *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1033 (N.D. Cal. 1999); *cf. S.E.C. v. Private Equity Mgmt. Group, Inc.*, CV 09-2901 PSG (EX), 2009 WL 2488044, at *6 n.5 (C.D. Cal. Aug. 10, 2009) (describing amicus curiae "as non-parties who can only provide general information and assistance" to the court). Texas would have no means of defending the status quo.

Should the challenged provisions be enjoined, Texas would be unable to revitalize the Final Rule or recover the benefits it enjoyed under the Final Rule. Intervention is the only way Texas may sufficiently protect its interests.

**C.     The Department is not capable of representing Texas' interests or providing an adequate defense of the regulations.**

---

[5] *See* A Time to Reform: Oversight of the Activities of the Justice Department's Civil, Tax, and Environment and Natural Resources Divisions and the U.S. Trustee Program, *Hearing Before the Subcomm. on Regulatory Reform, Commercial & Antitrust Law of the H. Comm. on the Judiciary*, 115th Cong. 2 (2017) (statement of Andrew M. Grossman, Partner, Baker & Hostetler LLP).



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

The Biden Administration (erroneously) views the Final Rule, including the challenged provisions, as a "a green light to ignore sexual violence and strip survivors of their civil rights under Title IX." *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden.com/womens-agenda/ (last visited May 11, 2021). It has promised to put the Final Rule "to a quick end," *Id.,* and more importantly, it has taken immediate and unmistakable strides to fulfill that promise. *See* ECF 19-1 at 10–11. Nevertheless, the parties contend that Texas must rely on the Department to represent Texas' interests in defending the Final Rule simply because the Department is a governmental entity and has the nominal designation of being the named defendant in this action. Rule 24(a)(2), however, does not require that the courts close their eyes to reality, nor does the case law in this jurisdiction. The Ninth Circuit recognizes a presumption of adequate representation when "the government is acting on behalf of a constituency that it represents," but it also has held that an intervenor may rebut this presumption with a "clear showing" to the contrary. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). Texas has made such a showing here.

As the Department acknowledges, "[t]he most important factor" in determining whether adequate representation exists is "how the [intervenor's] interest compares with the interests of existing parties." ECF 28 at 2 (quoting *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950–51 (9th Cir. 2009)). Applying that factor here, the analysis clearly falls on the side of intervention. The Department is charged with implementing the Biden Administration's Title IX policy. To that end, it has been instructed by the Administration to conduct a thorough review of the Final Rule and suspend, revise, or rescind any portion that the Department finds inconsistent with the Biden Administration's objectives.[6] Exec. Order No. 14021 (Mar. 8, 2021). This

---

[6] Pursuant to the March 8, 2021 Executive Order, the Department issued a letter, stating that the Department intends to hold a hearing as part of its review and anticipates filing a proposed (footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

review comes on the heels of President Biden's pledge to repeal the Final Rule and reinstitute the Dear Colleague Letter.[7] The Department therefore has a stake in seeing the four challenged provisions fail, which "would preclude [the Department's] vigorous defense of the" regulations. *Int'l Fur Trade Fed'n v. City & County of San Francisco*, 20-CV-00242-RS, 2020 WL 6931066, at *2 (N.D. Cal. Apr. 17, 2020) (inquiring whether government defendants have "a conflict of interest").

Texas, in contrast, is a common provider of education, directly subject to Title IX, that has greatly benefited from the challenged provisions because they reduce liability and remove the incentive for Texas academic institutions to violate the due process and free speech rights of their students and faculty. As Texas explained in its motion, even prior to the change in presidential administration, the Department would have been hard-pressed to represent Texas' full interests. Texas, after all, incurs a financial cost when carrying out its obligations under Title IX and the Final Rule. Not only does the Department not share in this financial burden, but the Department also represents constituencies whose interests may be at odds with Texas' need to conserve taxpayer money. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 539 (1972). The federal government's about-face on Title IX policy has only widened that divide. There is now an unavoidable, fundamental split between Texas and the Department, whereby the Department has an incentive to compromise its defense of the challenged provisions, if not abandon its defense of the provisions altogether, and Texas does not.

Plaintiff responds to this obvious divergence of interest by mischaracterizing

---

rulemaking to amend the Department's Title IX regulations. Suzanne B. Goldberg, U.S. Dep't. of Educ., *Letter to Students, Educators, and other Stakeholders re Executive Order 14021* (Apr. 6, 2021), https://www2.ed.gov/about/offices/list/ocr/correspondence/stakeholders/2020406-titleix-eo-14021.pdf

[7] *E.g.* Joe Biden, *Statement on the Trump Administration Rule to Undermine Title IX and Campus Safety* (May 6, 2020), https://medium.com/@JoeBiden/statement-by-vice-president-joe-biden-on-the-trump-administration-rule-to-undermine-title-ix-and-e5dbc545daa



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-2729-6233.1     10     Case No. 3:21-cv-01626-EMC

COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE

1   Texas' argument as a mere "belief that the Defendant will make different legal

2   strategic decisions." *See* ECF 27 at 19.  However, if that was the extent of Texas'

3   motivation, then Texas would have sought intervention in the other cases challenging

4   the Final Rule when they were initially filed. Instead, Texas left the defense of the

5   Final Rule to the Department, then under the control of the Trump Administration,

6   and relied on amicus briefs to supplement the Department's arguments when

7   necessary. Texas only moved to intervene in those cases and here when it became

8   apparent that the Department's priorities had changed in the wake of the election.

9   Texas' argument, in other words, is not that the Department will adopt a different

10   approach to litigation than Texas would have. Texas' argument is that the Department

11   is "unable or unwilling to pursue vigorously all available arguments in support of"

12   Texas' interests in light of the Biden Administration's ongoing effort to repeal and

13   revise the Final Rule. *Montana Wilderness Ass'n*, 647 F.3d at 900. Texas in fact

14   asserts that the Department is unlikely to defend the challenged provisions at all

15   because an injunction would allow the Department to achieve its policy objectives

16   without going through notice and comment rulemaking. *See* ECF 19–1 at 11.

17       Rather than confronting this argument head-on, Plaintiff instead spends three

18   paragraphs theorizing about possible legal strategies that Texas might take. *See* ECF

19   19–20. Even assuming *arguendo* that Plaintiff described Texas' litigation strategy

20   accurately,[8] it has no bearing on this Court's consideration of Texas' motion.

21   Adequate representation turns on the parties and the proposed intervenor's interests.

22   *See Arakaki*, 324 F.3d at 1086 (stating that the courts looks at whether the parties

23   "interest[s] [are] such that it will undoubtedly make all of a proposed intervenor's

24   arguments"). Plaintiff counters that the Department has continued its defense of the

25   Final Rule in *Victim Rights Law Center (VRLC) v. Cardona*, No. 1:20-cv-11104

---

[8] Plaintiff theorizes that Texas intends to advance a legal strategy based on constitutional arguments—an assumption it spun from a single line of text within Texas' answer that identifies the First, Fifth, and Fourteenth Amendments as possible affirmative defenses. *See* ECF 19–20.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

(D.Mass), which raises similar claims as the one at issue here. But the argument is unpersuasive. The court in *VRLC* conducted a full trial on the merits months before the change in administration. The parties merely wait for the court to issue its final judgment. Should the *VRLC* court rule in favor of the plaintiffs, the Department need only let the adverse judgement stand for the relevant provisions in the Final Rule to be effectively repealed. It therefore suits the federal government's new policy agenda for the Department to adopt a wait and see approach and withdraw from the Final Rule's defense in *VRLC* only after obtaining a ruling.

The Biden Administration in fact adopted this exact strategy to get rid of the 2019 public charge rule. *See* Press Release, U.S. Dep't. of Homeland Security, *DHS Secretary Statement on the 2019 Public Charge Rule* (March 9, 2021), https://www.dhs.gov/news/2021/03/09/dhs-secretary-statement-2019-public-charge-rule. There, the Department of Homeland Security ordered DOJ to dismiss pending appeals in multiple circuits, which permitted a judgment from the Northern District of Illinois, vacating the 2019 public charge rule, to go into effect. *Id.* Crucially, the announcement came one month after the President ordered a review of the policy. The same danger is present here. Absent Texas' intervention, there is nothing preventing the Department from ordering DOJ to enter into a settlement agreement with Plaintiff that enjoins the challenged provisions. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 529 (9th Cir. 1983) (finding inadequate representation because agency had a conflict of interest and DOJ did not act "totally independent of the administration's concerns"). [9]

For these reasons, Texas' motion can be distinguished from the two motions

---

[9] It should also be noted that any argument establishing the challenged provisions as reasonable, effective, or beneficial to students undermines the Department's effort to overhaul the Final Rule since it provides evidence that changing the policy, as Biden Administration urges, is irrational. *See Allentown Mack Sales & Serv., Inc. v. NLRB*., 522 U.S. 359, 374 (1998) (requiring administrative agencies to in "reasoned decisionmaking" that is both "logical and rational"); *see also California v. Wheeler*, 467 F. Supp. 3d 864, 872 (N.D. Cal. 2020).



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4828-2729-6233.1     12     Case No. 3:21-cv-01626-EMC

COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE

filed by the Foundation for Individual Rights in Education (FIRE) in *VRLC* and *New York v. United States Dep't of Educ.*, 20-CV-4260 (JGK), 2020 WL 3962110 (S.D.N.Y. July 10, 2020). In both of those instances, FIRE sought intervention well before the current administration assumed office, when the Department and FIRE shared the "same ultimate objective." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011). A better touchstone is *Commonwealth of Pennsylvania v. DeVos*, where the D.C. District Court granted Texas motion because it filed the motion "near the time its interests diverged from the Department of Education" 1:20-cv-01468-CJN (D.D.C. Feb. 4, 2021). The evidence of the Department's hostility to the Final Rule has only grown more compelling since then. Both the Biden Administration and the Department have taken specific and deliberate steps towards the Final Rule's appeal. The Biden Administration additionally has shown a willingness to withdraw from the defense of its predecessor's policies when doing so enables it to evade notice and comment rule making. Hence, this is not an occasion where the proposed intervenor's only support is a change in administration and campaign statements. *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002) (noting that campaign statements and a change in administration are "insufficient by themselves"). The totality of the Biden Administration's actions establish that the federal government is unable adequately represent Texas. Any presumption to the contrary has been rebutted.

## III.   <u>In The Alternative, The Court Should Grant Permissive Intervention</u>.

Neither party has presented a credible argument as to why this Court should deny permissive intervention. As recently as two years ago, this Court allowed the State of Oregon to intervene in a similar challenge under the APA against federal regulations related to the contraception mandate. *See Health & Human Servs*, 330 F.R.D. at 255 (allowing Oregon to permissively intervene in a state challenge under the APA against federal rules). Many of the considerations that this Court found


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

persuasive in that case apply here as well. Additionally, the D.C. District Court granted Texas' motion to intervene in a parallel suit contesting the Final Rule. *See Commonwealth of Pennsylvania v. DeVos*, 1:20-cv-01468-CJN (D.D.C. Feb. 4, 2021). The rationale for granting intervention here is even stronger, as Texas filed its motion much earlier in the litigation, and the Biden Administration has since initiated the process for repealing the Final Rule. *See Scholl v. Mnuchin*, 483 F. Supp. 3d 822, 825 (N.D. Cal. 2020) (listing timeliness and adequate representation as relevant factors).

Allowing Texas to intervene also would not unduly delay or prejudice the parties in this suit. Texas' intervention, if anything, would avert a potential disruption to this case should the federal government withdraw its support of the Final Rule and refuse to defend it, which the Biden Administration's recent actions regarding the 2019 public charge rule suggest is likely. *See infra* Part I.C. Plaintiff frets that Texas may turn this litigation into "a referendum on the constitutional bounds of sexual harassment law or a freewheeling policy debate." ECF 27 at 23. However, its fears are a product of its own imagination. Plaintiff has no basis to assume that Texas will tender any specific argument, including the assertion "that any alternative to the 2020 Regulations would be unconstitutional." *Id.* In any event, Plaintiff's complaint rests on the assertion that the four challenged regulations are arbitrary and capricious. It goes without saying that constitutional and policy considerations bear on the question of whether a government agency acted rationally when promulgating policy. *See State v. U.S. Dep't of Homeland Sec.*, 19-CV-04975-PJH, 2020 WL 1557424, at *2 (N.D. Cal. Apr. 1, 2020) (requiring agency to consider "all relevant factors"). Thus, if Texas were to raise such arguments, they would build naturally from Plaintiff's own assertions. There would be no prejudice.

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Finally, the Department alleges that Texas has not identified a common question of law, but this allegation is in fact a jurisdictional argument in disguise. The Department argues that because "no plaintiff could bring an APA claim against any entity other than the federal government," Texas could not be a defendant in this case. ECF 28 at 4. While usually a party seeking to intervene must demonstrate an independent jurisdictional basis, the Ninth Circuit has previously held that "the jurisdictional requirement . . . [is meant to] prevent the enlargement of federal jurisdiction in such cases only where a proposed intervenor seeks to bring new state law claims," and that "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) (concluding that a district court erred when it denied a private citizen permissive intervention as a defendant in an Establishment Clause claim on the basis of standing). Because Texas does not seek to raise additional claims, the Department's argument is unavailing. *See Id.* Hence, this Court would be well within its discretion to grant Texas' intervention under Rule 24(b).

**<u>CONCLUSION</u>**

The State of Texas respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a) or, in the alterative, for permissive intervention under Rule 24(b).

DATED: May 13, 2021                              Respectfully submitted.

LEWIS BRISBOIS BISGAARD & SMITH LLP

*/s/ Michael K. Johnson*
Michael K. Johnson
Attorneys for Defendant
KEN PAXTON IN HIS OFFICIAL CAPACITY AS  ATTORNEY GENERAL OF TEXAS



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Patrick K. Sweeten
Deputy Attorney General
for Special Litigation
Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Grant Dorfman
Deputy First Assistant Attorney
General
William T. Thompson
Deputy Chief, Special Litigation Unit
Kathleen T. Hunker
Special Counsel
Attorneys for Defendant
KEN PAXTON IN HIS OFFICIAL
CAPACITY AS  ATTORNEY
GENERAL OF TEXAS



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## CERTIFICATE OF SERVICE
### *The Women's Student Union v. U.S. Department of Education, et al.*
USDC-ND, San Francisco Division, Case No. 3:21-cv-01626-EMC

STATE OF CALIFORNIA, COUNTY OF SACRAMENTO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 2020 West El Camino Avenue, Suite 700, Sacramento, CA 95833. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On May 13, 2021, I served the following document:

**COMBINED REPLY IN SUPPORT OF TEXAS' MOTION TO INTERVENE**

The document was served by the following means:

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to all persons registered by the Court to receive Notifications of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  May 13, 2021

*/s/ Sandra Hayes*

Sandra Hayes

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW