**CONSOVOY MCCARTHY PLLC**
William S. Consovoy*
    E-Mail: will@consovoymccarthy.com
Bryan K. Weir
    E-Mail: bryan@consovoymccarthy.com
Cameron T. Norris*
    E-mail: cam@consovoymccarthy.com
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Telephone: (703) 243-9423
Counsel for [Proposed] Intervenor-Defendants
Speech First, Inc. and Independent Women's Law Center

**COOPER & KIRK, PLLC**
Charles J. Cooper**
    E-mail: ccooper@cooperkirk.com
Brian W. Barnes**
    E-mail: bbarnes@cooperkirk.com
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
Counsel for [Proposed] Intervenor-Defendants
Foundation for Individual Rights in Education
        *Pro Hac Vice
        **Motion to Appear Pro Hac Vice Forthcoming

*Additional Counsel for Proposed Intervenors Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| The Women's Student Union,<br><br>    *Plaintiff*,<br><br>    v.<br><br>U.S. Department of Education,<br><br>    *Defendant*,<br><br>Foundation for Individual Rights in Education, Independent Women's Law Center, Speech First, Inc.,<br><br>    *[Proposed] Intervenor-Defendants* | Case No. 3:21-cv-01626-EMC<br><br>**PROPOSED INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Judge: Hon. Edward M. Chen<br><br>**Date:    July 15, 2021**<br>**Time:    1:30 p.m.**<br>**Crtrm:  5, 17th Floor** |

REPLY IN SUPPORT OF MOTION TO INTERVENE

1

**ARGUMENT**

2

**I.     Movants Do Not Need Article III Standing to Intervene as Defendants, But Have**
3      **Standing Nonetheless.**

4           Plaintiff argues that "Movants lack Article III standing, and so cannot intervene by right in

5    WSU's suit." Pl. Opp. at 8. As outlined by proposed-intervenor Texas, Movants need not establish

6    Article III standing to intervene as defendants. *See Virginia House of Delegates v. Bethune-Hill*,

7    139 S. Ct. 1945, 1952 (2019) (a party who "intervene[s] in support of *defendants* in the trial court"

8    does "not need to establish standing" due to its "defensive posture."). The Supreme Court has been

9    clear that an intervenor need only demonstrate independent Article III standing "if it pursues relief

10   that is broader than or different from the party invoking the court's jurisdiction." *Little Sisters of*

11   *the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (citing *Town*

12   *of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)). Moreover, the Ninth Circuit has

13   held that "[w]here the proposed intervenor in a federal-question case brings no new claims, the

14   jurisdictional concern drops away." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836,

15

16   844 (9th Cir. 2011). Here, where it is Plaintiff invoking the court's jurisdiction, while Movants seek

17   to intervene as defendants and bring no independent claims for relief in a federal-question case, no

18   independent Article III standing analysis is required.

19

20           Nevertheless, Movants can establish Article III standing. The Supreme Court has made

21   plain that a "concrete and demonstrable injury to [an] organization's activities—with the

22   consequent drain on the organization's resources—constitutes far more than simply a setback to

23   the organization's abstract social interests" and thus suffices for standing. *Havens Realty Corp. v.*

24   *Coleman,* 455 U.S. 363, 379 (1982); *see also Sierra Club v. Trump*, 963 F.3d 874, 884 (9th Cir.

25

26   2020) ("An organization has standing to sue on its own behalf when it suffers "both a diversion of

27   its resources and a frustration of its mission." (quoting *La Asociacion de Trabajadores de Lake*

28   *Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010))). Movants provide various

Case No 3:21-cv-01626-EMC
REPLY IN SUPPORT OF MOTION TO INTERVENE

services to students accused of sexual harassment who are in university misconduct proceedings. If the Final Rule is invalidated and schools return to their pre-rule procedures, Movants will be forced once again to allocate additional resources to providing such services, diverting resources away from other activities. That is enough to establish that if Plaintiff prevails in this lawsuit, Movants will sustain a "concrete and demonstrable injury" under *Havens Realty* and its progeny.

Plaintiff argues that Movants' organizational injuries are too speculative because "shifting of resources back would only arrive at the end of highly speculative 'chain of possibilities,'" and future disciplinary proceedings are "far too tenuous to support standing." Pl. Opp. at 3, 8. But Plaintiff's own complaint alleges that the Final Rule will lead schools to "engage in fewer investigations of sexual harassment, and thus will find fewer violations and provide fewer remedies," Compl. ¶ 34—an allegation that is essential for Plaintiff to establish its own standing. If Plaintiff has standing, then so do Movants.

Plaintiff also implies that injuries that depend upon the future conduct of a third party are always too speculative to qualify as an injury-in-fact under Article III, but Supreme Court and Ninth Circuit precedents say otherwise. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997); *Sierra Club v. Trump*, 963 F.3d 874, 886 (9th Cir.), *cert. granted*, 141 S. Ct. 618 (2020). As the Supreme Court recently explained, a litigant has standing where an injury is caused by "the predictable effect of Government action on the decisions of third parties." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). Here, the predictable effect of an invalidated Final Rule is a return of unconstitutional disciplinary hearings around the country and more of Movants' members facing such hearings.

## II.    Movants Have a Right to Intervene Under Rule 24(a)(2).

Movants have established all the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). Neither party contests the timeliness of Movants' motion, and the

other requirements are likewise satisfied.

### A.  Movants have a significant protectable interest in this case.

Movants have established a " 'significantly protectable' interest" in the subject of this action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177–78 (9th Cir. 2011) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Ninth Circuit precedent is clear that public interest groups satisfy this requirement for intervention as of right when a measure they supported is challenged. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). This understanding of the law is confirmed by *United States v. City of Los Angeles, Cal.*, a case Plaintiffs cite, in which the Ninth Circuit found a protectable interest even when an organization had only worked on an issue "generally," but had not engaged in advocacy specific to the measure at hand, 288 F.3d 391, 402 n.5 (9th Cir. 2002). Here, Movants have long been on the front lines of free speech and due process[1] issues on college campuses and directly engaged the Department during the rulemaking process, specifically urging the adoption of the *Davis* standard for defining sexual harassment. The *Davis* standard's inclusion in the Final Rule demonstrates the impact of Movants' involvement and significant interest in these issues.

Second, Plaintiff and Defendant challenge Movants' diversion-of-resources theory as speculative[2] and unsupported, respectively. Pl. Opp. at 10; Def. Opp. at 2. The Department also argues that Movants cannot establish an interest by incurring litigation costs. Def. Opp. at 2. These

---

[1] In a footnote, Plaintiff asserts that "[t]o the extent Movants' argument relies on their interest in members' due process rights, those are entirely disconnected from the claims at issue here." Pl. Opp. at 10 n.1. But the Complaint's prayer for relief asks the Court to throw out the Final Rule in its entirety—including the provisions that safeguard due process for the accused.

[2] Notably, Plaintiff never directly disputes that Movants' resource-related interest is the "mirror-image" of Plaintiff's. And it cannot, because "the same evidence that bolsters the [Plaintiff's] standing to sue also bolsters the case for intervention." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

REPLY IN SUPPORT OF MOTION TO INTERVENE

Case No 3:21-cv-01626-EMC

arguments miss the mark. Movants' opening brief outlines the direct impact of the Final Rule on Movants. With the Final Rule in place, Movants have shifted resources from costly efforts of challenging university policies and defending individual students in fundamentally unfair "sexual harassment" proceedings to furthering other aspects of their missions. The Department attempts to shoehorn Movants' organizational interests into the rule that expenses incurred from litigation and generalized advocacy do not qualify as an organizational injury-in-fact. *See Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 (1976); *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1100 (N.D. Cal. 2018). But Movants' organizational interest is not based upon the expenses that they have incurred in seeking to participate in this case but instead focuses on the natural result of an invalidated Final Rule: Movants will be forced to divert significant additional resources to helping students and faculty who are accused under vague and subjective sexual harassment policies and deprived of basic procedural protections.

Third, Plaintiff says that it is unable to conceive of a "relationship" between this litigation and the free speech and due process rights of Movants and their members. Pl. Opp. at 11. For years, Movants spent time and treasure on efforts to safeguard the free speech and due process rights of their members and other faculty and students. The promulgation of the Final Rule was a significant step in guaranteeing those rights on campuses around the country. Plaintiff's attack on the Final Rule and the Department's refusal to make constitutional arguments in its defense puts Movants' rights at stake in this case and establishes their interest under Rule 24(a)(2).

**B. Movants' interests may be impaired, as a practical matter, by the disposition of this case.**

Movants have also established that a disposition of this case in favor of Plaintiff will practically impair their interests. The Ninth Circuit, in similar circumstances, has found that where a proposed intervenor can show a significant protectable interest, there is "little difficulty concluding that the disposition of the case may, as a practical matter, affect it." *Citizens for*

REPLY IN SUPPORT OF MOTION TO INTERVENE

*Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (cleaned up). The Final Rule provides significant protections to Movants and their members, which they stand to lose by the direct legal operation of the outcome of a final judgment in Plaintiff's favor in this case. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). Plaintiff argues that Movants are "not entitled to mandatory intervention because they will have many other opportunities to protect their asserted interest." Pl. Opp. at 18. Specifically, Plaintiff asserts that Movants may participate in a future rulemaking and additional litigation if their significant protectable interests are eviscerated in this case. *Id.* at 18–19. But the point of Rule 24(a)(2) is to provide parties such as Movants with the ability to intervene in litigation and protect their interests *before* those interests are impaired.

Moreover, Plaintiff's suggestion that Movants could take part in a future Department rulemaking disregards the reality that, during a lengthy interim period, the return of unconstitutional disciplinary hearings would force Movants to divert significant resources to assisting university students and faculty who are accused under vague and subjective sexual harassment policies and deprived of basic procedural protections. Plaintiff offers no explanation for how Movants could remedy this impairment of their protectable interests.

### C. The Department does not adequately represent Movants' interests.

Despite the Department's arguments to the contrary, Movants and the Department do not share the same ultimate objective in this litigation. Although the Ninth Circuit recognizes a presumption of adequate representation where a proposed intervenor shares an ultimate objective with an existing party, *Geithner*, 644 F.3d at 841, and especially so "where the Department of Justice deploys its formidable resources" to defend government action, *Lockyer*, 450 F.3d at 444, a proposed intervenor can overcome the presumption by showing "distinctly different, and likely

REPLY IN SUPPORT OF MOTION TO INTERVENE

conflicting, interests" than those currently represented by the parties in suit, *id*.[3] While the Department may currently have a general objective of defending the Final Rule as it stands, Movants have a narrower interest in how and why the Final Rule is upheld. *See Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public."). Despite Plaintiff's efforts to generalize the parties' "objectives," the very real divergence between the Department's need to balance competing interests and Movants' more singular focus on defending the Final Rule is just the type of divergence of interests that courts have found to underpin inadequate representation. *See, e.g.*, *Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998); *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988); *Pennsylvania v. President of the United States*, 888 F.3d 52 (3d Cir. 2018).

Both the Department and Plaintiff also argue that even if Movants' legal position differs from that of the Department, this difference is insufficient to establish inadequate representation. The Department and Plaintiff are wrong. To be sure, the Department is correct that in *Lockyer*, the Ninth Circuit noted that the proposed intervenor's desire to argue for a broader statutory construction was not by itself sufficient to overcome the presumption of adequate representation. 450 F.3d at 444. But in the very next breath, the Ninth Circuit explained that a "very compelling showing" of inadequate representation would be made if a proposed intervenor could "demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *Id.* In *Lockyer*, the proposed intervenors sought to inject a constitutional argument that

---

[3] Although foreclosed by circuit precedent, Movants respectfully preserve the argument that no such presumption should exist. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties.").

was far broader than the limiting construction that the government proposed to employ to "assuage . . . constitutional doubts." *Id.* The Ninth Circuit found these divergent strategies "far more than differences in litigation strategy between the United States and the proposed intervenors"—it was a difference that went "to the heart of the defense of the [statute]." *Id.* at 444–45 (internal citations omitted). Movants' constitutional arguments likewise go to the heart of the defense of the Final Rule. Yet the Department has steadfastly refused to make them—presumably for the entirely understandable reason that it would prefer to avoid a court ruling that would establish that the Constitution significantly limits the Department's policy options in this area. That the Department would forgo a potentially meritorious defense of the Final Rule further shows that it does not adequately represent Movants' interests.

*Lockyer* also rebuts Plaintiff's assertion that principles of constitutional avoidance counsel in favor of denying intervention. By reversing the lower court's denial of intervention, the Ninth Circuit expressly allowed intervenors into a case so that they could raise a constitutional argument.

Lastly, Plaintiff's reliance on *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 94 (9th Cir. 2009), is misplaced. In *Perry*, the Court found that defendants were "willing to make the [proposed intervenors] arguments in support of Prop. 8 and will not neglect *any elements* to the defense of Prop. 8." *Id.* (emphasis added). Here, Movants allege—and the Department does not dispute—that their constitutional arguments will not be made in this litigation if the intervention motion is denied.

## III.   Alternatively, the Court Should Grant Movants Permissive Intervention.

Movants have also met the requirements for permissive intervention. As all parties agree, permissive intervention requires a proposed intervenor show "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82

REPLY IN SUPPORT OF MOTION TO INTERVENE

F.3d 825, 839 (9th Cir. 1996) (citing *Greene v. United States*, 996 F.2d 973, 978 (9th Cir.1993), *aff'd*, 64 F.3d 1266 (9th Cir.1995)). Plaintiff and Defendant only challenge the third requirement, that Movants' share a common question of law or fact. Pl. Opp. at 20; Def. Opp. at 6–7. Additionally, Plaintiff argues that adequate representation and undue delay or prejudice discourage permissive intervention. Pl. Opp. at 20–22. None of these arguments against permissive intervention is persuasive.

### A. Movants' defense shares a common question of law or fact with the main action.

The Department makes the puzzling argument that Movants "have no 'defense' that is common to the government, as no plaintiff could bring an APA claim against any entity other than the federal government." Def. Opp. at 7. But the logic of that argument implies that permissive intervention on the government's side is *never* appropriate in APA cases—a contention that is clearly wrong. *See, e.g.*, *Friant Water Auth. v. Jewell*, 2014 WL 6774019, at *5 (E.D. Cal. Dec. 1, 2014). The operative question is not whether a proposed intervenor-defendant could be sued in its own right, but whether the issues it proposes to raise share a common question of law or fact with the main action. Movants' defenses—which "squarely respond" to Plaintiff's claims—obviously share common questions with the main action. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

Plaintiff's argument on this issue fares no better. Plaintiff contends that Movants' arguments are too attenuated from the subject of the action. Pl. Opp. at 20. To support this position, Plaintiff points to *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 2012 WL 4717814, at *6 (N.D. Cal. Sept. 28, 2012), *aff'd*, 534 F. App'x 665 (9th Cir. 2013). But *Mishewal* is clearly distinguishable. There, after first granting intervention, the court dismissed the intervenor-defendants from the case when the complaint was amended to drop the claim that had been the

REPLY IN SUPPORT OF MOTION TO INTERVENE

basis for intervention. *Id.* at *4. It is unsurprising that a Court would find attenuated from the case defenses that focused on claims the plaintiff was no longer pressing. Here, however, Movants' constitutional defense responds directly to Plaintiff's effort to invalidate the Final Rule. As such, the defense shares a common question of law or fact with the main action.

**B.  Movants will cause no undue delay or prejudice in this litigation.**

Movants' intervention, at the early stages of this case, would cause no delay or prejudice to the parties in this litigation. Plaintiff's argument to the contrary is unavailing. As outlined in Movants' opening brief, granting permissive intervention would not create any delay—let alone *undue* delay—because Movants seek to join the case at this early stage and agree to be bound by Defendant's briefing schedule. To defend its position, Plaintiff relies on out-of-context quotations from *Apple Inc. v. Iancu*, 2021 WL 411157, at *5 (N.D. Cal. Feb. 5, 2021), while ignoring the obvious differences between that case and this one. *Apple* concerned a group of proposed-intervenor-*plaintiffs* who sought to inject new claims and a demand for an injunction against the defendant in an existing action even though they had the "option to bring a separate action" against the defendant. *Id.* at *6. Movants here, in contrast, seek to intervene as defendants to raise an important constitutional defense that the Department will not present. Requiring Plaintiff to prove its case and rebut reasonable constitutional defenses would not cause undue delay or prejudice.

**C.  Movants have shown that the Department will not represent its interests.**

As explained above, Movants have established that the Department is neither prepared nor willing to make an argument that the First Amendment required it to use the *Davis* standard in its definition of "sexual harassment" or that the Due Process Clause mandates the procedural protections the Final Rule guarantees to accused students. Because Movants have narrower interests than the Department, and the Department maintains an interest in preserving the scope of its discretion, it is simply not the case that the Department adequately represents Movants in this

REPLY IN SUPPORT OF MOTION TO INTERVENE

1  litigation.

2  <center>**CONCLUSION**</center>

3  For the foregoing reasons, the motion to intervene should be granted.

4

5  Dated: June 21, 2021                              Respectfully submitted,

6                                                     */s/ Cameron T. Norris*

7  Bradley A. Benbrook (No. 177768)              William S. Consovoy*
   Stephen M. Duvernay (No. 250957)             Bryan K. Weir (CA Bar. #310964)
8  BENBROOK LAW GROUP, PC                        Cameron T. Norris*
   400 Capitol Mall                              CONSOVOY MCCARTHY PLLC
9  Suite 2530                                    1600 Wilson Blvd., Ste. 700
   Sacramento, CA 95814                          Arlington, VA 22209
10 (916)447-4900                                 (703) 243-9423
   brad@benbrooklawgroup.com                     will@consovoymccarthy.com
11 steve@benbrooklawgroup.com                    bryan@consovoymccarthy.com
                                                 cam@consovoymccarthy.com
12
    */s/   Charles J. Cooper*                     *Counsel for Speech First, Inc. and*
13                                                *Independent Women's Law Center*

    Charles J. Cooper**
14  Brian W. Barnes**
    COOPER & KIRK, PLLC
15  1523 New Hampshire Ave., NW
    Washington, D.C. 20036
16  (202) 220-9600
    ccooper@cooperkirk.com
17  bbarnes@cooperkirk.com

18  *Counsel for Foundation for*
    *Individual Rights in Education*
19          *Pro Hac Vice
            **Pro Hac Vice Forthcoming
20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO INTERVENE