BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>        Defendant. | Case No. 21-cv-1626-EMC<br><br>**Defendant's Motion to Dismiss**<br><br>Hon. Edward M. Chen<br>Hearing: August 5, 2021, 1:30 p.m.<br><br>Phillip Burton Federal Building & United States Courthouse, Courtroom 5, 17th Fl., 450 Golden Gate Ave.,<br>San Francisco, CA 94102 |

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Mot. Dismiss

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLEASE TAKE NOTICE that on August 5, 2021, at 1:30 p.m., in Courtroom 5 of the above-entitled court, at 450 Golden Gate Ave., California, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Federal Defendant the United States Department of Education will and hereby respectfully moves this Court to dismiss Plaintiff's Complaint. In accordance with the Local Rules of this Court, this motion is accompanied by a memorandum of points and authorities in support of the motion, and a proposed order.

Dated: July 1, 2021

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/ Benjamin T. Takemoto
BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>Defendant. | Case No. 21-cv-1626-EMC<br><br>**Defendant's Memorandum in support of Defendant's Motion to Dismiss**<br><br>Hon. Edward M. Chen<br>Hearing: August 5, 2021, 1:30 p.m.<br><br>Phillip Burton Federal Building & United States Courthouse, Courtroom 5, 17th Fl.,<br>450 Golden Gate Ave.,<br>San Francisco, CA 94102 |

1

## <u>TABLE OF CONTENTS</u>

2  INTRODUCTION ...........................................................................................................1

3  BACKGROUND ..............................................................................................................2

4  I.  The 2020 Rule.......................................................................................................2

5  II.  Procedural History and Recent Events ........................................................4

6  LEGAL STANDARDS .....................................................................................................5

7  ARGUMENT.....................................................................................................................5

8  I.  Plaintiff Lacks Standing to Sue.........................................................................5

9      A.  Plaintiff's Allegation of Possible Future Harm Is Too Speculative to
           Constitute Article III Injury .................................................................7

10

11     B.  Plaintiff May Not Establish Injury by Voluntarily Diverting Organizational
           Resources. ...........................................................................................8

12  II.  Plaintiff Fails to Assert a Ripe Claim .........................................................11

13  III.  Plaintiff's Claims Should Also Be Dismissed Because Plaintiff Has an Adequate
            Alternative Remedy Against the School District..............................................12

14

15  CONCLUSION................................................................................................................14

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Acura of Bellevue v. Reich*,
4      90 F.3d 1403 (9th Cir. 1996) ............................................................................................ 12

5 *Allen v. Wright*,
     468 U.S. 737 (1984).......................................................................................................... 7
6

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
7      632 F. App'x 905 (9th Cir. 2015) .................................................................................... 11

8 *Blunt v. Lower Merion Sch. Dist.*,
     767 F.3d 247 (3d Cir. 2014) ............................................................................................ 10
9

10 *Cetacean Cmty. v. Bush*,
     386 F.3d 1169 (9th Cir. 2004) .......................................................................................... 5
11

12 *Clapper v. Amnesty Int'l USA*,
     568 U.S. 398 (2013)..................................................................................................*passim*
13

*Cohn v. Brown*,
14      161 F. App'x 450 (6th Cir. 2005) ..................................................................................... 8

15 *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
     657 F.3d 936 (9th Cir. 2011) .......................................................................................... 11
16

17 *Coons v. Lew*,
     762 F.3d 891 (9th Cir. 2014) .......................................................................................... 12
18

19 *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*,
     396 F.3d 1265 (D.C. Cir. 2005)....................................................................................... 13
20

*Fair Emp. Council of Greater Wash. v. BMC Mktg. Corp.*,
21      28 F.3d 1268 (D.C. Cir. 1994)........................................................................................ 11

22 *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
     666 F.3d 1216 (9th Cir. 2012) .......................................................................................... 9
23

24 *Fair Hous. of Marin v. Combs*,
     285 F.3d 899 (9th Cir. 2002) ....................................................................................... 9, 10
25

26 *Fair Hous. of Marin v. Combs*,
     No. C 97–1247 MJJ, 2000 WL 365029 (N.D. Cal. Mar. 29, 2000) ................................. 10

27 *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*,
     887 F.3d 906 (9th Cir. 2018) ............................................................................................ 9
28

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009) ......................................................................................... 13

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ........................................................................................................... 8

*Know Your IX v. Devos,*
    No. CV RDB-20-01224, 2020 WL 6150935 (D. Md. Oct. 20, 2020) .................................. 4

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
    624 F.3d 1083 (9th Cir. 2010) ............................................................................... 8, 10, 11

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest,*
    No. SA CV 07-250 DOC (ANX), 2008 WL 11411732 (C.D. Cal. Aug. 18, 2008) ........... 10

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................................ 6, 7

*National Taxpayers Union, Inc. v. United States,*
    68 F.3d 1428 (D.C. Cir. 1995) ......................................................................................... 10

*National Wrestling Coaches Association v. Department of Education,*
    366 F.3d 930 (D.C. Cir. 2004) ......................................................................................... 13

*National Wrestling Coaches Association v. Department of Education,*
    383 F.3d 1047 (D.C. Cir. 2004) ....................................................................................... 13

*New York v. U.S. Dep't of Educ.,*
    477 F. Supp. 3d 279 (S.D.N.Y. 2020) ................................................................................ 4

*Pennsylvania v. Devos,*
    480 F. Supp. 3d 47 (D.D.C. 2020) ..................................................................................... 5

*Porter v. Jones,*
    319 F.3d 483 (9th Cir. 2003) ........................................................................................... 12

*Safer Chems., Healthy Fams. v. EPA,*
    943 F.3d 397 (9th Cir. 2019) ........................................................................................... 11

*Schmier v. U.S. Ct. of Appeals for the Ninth Cir.,*
    279 F.3d 817 (9th Cir. 2002) ............................................................................................. 6

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ........................................................................................................... 6

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) ............................................................................................................. 6

*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
   983 F.3d 411 (9th Cir. 2020) .................................................................................................. 7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...................................................................................................... 5, 6

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................................................... 12

*Texas v. United States*,
   523 U.S. 296 (1998) ........................................................................................................... 12

*Thomas v. Anchorage Equal Rts. Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ........................................................................................... 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
   454 U.S. 464 (1982) ............................................................................................................. 6

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................................. 9

*Wash. Env't. Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ............................................................................................. 9

*Women's Equity Action League v. Cavazos*,
   906 F.2d 742 (D.C. Cir. 1990) ........................................................................................... 13

**Statutes**

5 U.S.C. § 704 ........................................................................................................................ 12

20 U.S.C. § 1092 ...................................................................................................................... 2

20 U.S.C. § 1681 ...................................................................................................................... 1

20 U.S.C. § 1687 ...................................................................................................................... 2

34 U.S.C. § 12291 .................................................................................................................... 2

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................... 5

Federal Rules of Civil Procedure 12(b)(1) .............................................................................. 5

**Regulations**

34 C.F.R. 106.2 .................................................................................................................. 2

34 C.F.R. § 106.30 ......................................................................................................... 2, 3

34 C.F.R. § 106.44 ................................................................................................. 2, 3, 4, 14

34 C.F.R. § 106.45 ...................................................................................................... 3, 4

34 C.F.R. § 106.6 ............................................................................................................... 3

34 C.F.R. § 106.8 ............................................................................................................... 2

85 Fed. Reg. 30,026 (May 19, 2020) ......................................................................... 1, 2

86 Fed. Reg. 27,429 (May 20, 2021) ............................................................................... 5

Exec. Order No. 14,021, 86 Fed. Reg. 13,803 (Mar. 8, 2021) ....................................... 5

**Other Authorities**

U.S. Dep't of Education Office for Civil Rights, Case Processing Manual (effective Aug. 26, 2020),
    https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf ................................. 8

U.S. Department of Education's Office for Civil Rights Launches Comprehensive Review of Title IX
    Regulations to Fulfill President Biden's Executive Order Guaranteeing an Educational Environment
    Free from Sex Discrimination (Apr. 6, 2021), https://www.ed.gov/news/press-releases/department-
    educations-office-civil-rights-launchescomprehensive-review-title-ix-regulations-fulfill-president-
    bidens-executive-order-guaranteeingeducational-environment-free-sex-discrimination ...................... 5

## INTRODUCTION

Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  In 2020, the United States Department of Education for the first time issued a regulation treating sexual harassment, including sexual assault, as unlawful sex discrimination.  Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) [hereinafter 2020 Rule].

The 2020 Rule provides definitions of behavior that constitutes sexual harassment under Title IX and sets forth procedures for addressing such misconduct.  The Department also is undertaking a comprehensive review of the 2020 Rule and, after completing its review, anticipates publishing a notice of proposed rulemaking to amend the Department's Title IX regulations.  The Department's review aligns with its commitment to ensure that schools are fostering safe learning environments and providing students with a nondiscriminatory educational environment, including appropriate supports for students who have experienced sexual harassment.

The plaintiff in this case is the Women's Student Union, a "student body association of the Berkeley Unified School District of Berkeley, California" that seeks to reduce sexual harassment at Berkeley High School.  Compl. ¶ 16, ECF No. 1.  Plaintiff challenges the 2020 Rule on the theory that it violates the Administrative Procedure Act (APA).  Compl. ¶¶ 83-89.

A number of other courts considered challenges to the 2020 Rule shortly after it was promulgated.  None has thus far concluded that the 2020 Rule violates the APA or another federal law.  However, this case should be dismissed prior to reaching the merits because Plaintiff has failed to establish Article III standing.  Plaintiff's allegations are insufficient to demonstrate organizational standing because it may not establish injury through a voluntary diversion of its organizational resources, and its claims are unripe because it alleges only possible future harm that is insufficient to constitute Article III injury.  Additionally, to the extent that Plaintiff challenges discretionary actions that they speculate the Berkeley Unified School District (BUSD) may take (or not take) that are not required by the 2020 Rule, its claims should also be dismissed because Plaintiff has an adequate alternative remedy in the form of a suit against

the school district.  Accordingly, the Court lacks jurisdiction over Plaintiff's claims, and the Court should dismiss the Complaint in its entirety.

**BACKGROUND**

**I.      The 2020 Rule**

The 2020 Rule challenged by Plaintiff was issued by the Department on May 19, 2020 following notice-and-comment rulemaking. 85 Fed. Reg. 30,026 (May 19, 2020).  The 2020 Rule identifies sexual harassment as unlawful sex discrimination under Title IX and obligates schools to address sexual harassment, and provides specific requirements for recipients' investigative and grievance procedures.

The 2020 Rule defines sexual harassment actionable under Title IX to mean (1) a recipient's employee conditioning an educational benefit or service upon a person's participation in unwelcome sexual conduct; or (2) unwelcome sexual conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity; or (3) sexual assault, dating violence, domestic violence, or stalking (as defined in the Clery Act, 20 U.S.C. § 1092(f), and the Violence Against Women Act, 34 U.S.C. § 12291(a)).  34 C.F.R. § 106.30(a).

A recipient must respond to sexual harassment when (1) it has actual knowledge of sexual harassment or allegations of sexual harassment (2) that occurred within its education program or activity (3) against a person in the United States.  *Id.* § 106.44(a).  "[A]ctual knowledge" includes notice "to a recipient's Title IX Coordinator or any official of the recipient who has authority to institute corrective measures on behalf of the recipient." *Id.* § 106.30(a).[1]  Recognizing the unique circumstances of K-12 students, actual knowledge also includes notice to "any employee of an elementary and secondary school." *Id.* Title IX and existing regulations define a recipient's "program or activity" to include "all of the operations of" a school.  *See* 20 U.S.C. § 1687; 34 C.F.R. 106.2(h).  For purposes of addressing sexual harassment, the

---

[1] To ensure that a school's entire educational community has clear, accessible options for reporting to the school's Title IX Coordinator, the 2020 Rule requires schools to prominently display on school websites the contact information for the Title IX Coordinator, and to send notification of that information to students, employees, applicants, parents and legal guardians of K-12 students, and other groups. The 2020 Rule expressly declares that "any person" may report sex discrimination, including sexual harassment, whether or not the person reporting is the alleged victim, and that such reports may be made at any time, including during non-business hours. *See* 34 C.F.R. § 106.8.

2020 Rule further specifies that an "education program or activity" includes events, locations, and circumstances over which the recipient exercises substantial control, as well as buildings owned or controlled by student organizations officially recognized by a postsecondary institution.  34 C.F.R. § 106.44(a).  A recipient violates Title IX when its response to harassment is deliberately indifferent, meaning clearly unreasonable in light of the known circumstances.  *Id.*

The 2020 Rule also obligates recipients to take specific actions in order to meet the deliberate indifference standard.  A recipient's Title IX Coordinator must promptly contact the complainant to discuss the availability of supportive measures, consider the complainant's wishes with respect to supportive measures, and inform the complainant of the availability of supportive measures with or without the filing of a formal complaint.  Supportive measures are defined as "non-disciplinary, non-punitive individualized services" provided free of charge to the complainant "designed to restore or preserve equal access to the recipient's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the recipient's educational environment, or deter sexual harassment."  *Id.* § 106.30(a).  Supportive measures may also be provided to a respondent, but supportive measures *must* be offered to a complainant.  The recipient's Title IX Coordinator must also explain to the complainant how to file a formal complaint, *id.* § 106.44(a), and exercise discretion as to whether to sign a formal complaint in situations where the complainant chooses not to file, *id.* § 106.30(a) (defining "formal complaint").  Where state law permits parents or guardians to act on behalf of a minor child, they may file a formal complaint or otherwise act under the Final Rule.  *Id.* § 106.6(g).

Where a complainant files (or the Title IX Coordinator signs) a formal complaint of sexual harassment, the 2020 Rule requires a grievance process that must "[i]nclude reasonably prompt time frames for conclusion," *id.* § 106.45(b)(1)(v).  The 2020 Rule requires recipient to investigate the allegations of every formal complaint, *id.* § 106.45(b)(3)(i),[2] and provides requirements for those

---

[2] A recipient must dismiss a formal complaint where "the conduct alleged in the formal complaint would not constitute sexual harassment as defined in § 106.30 even if proved, did not occur in the recipient's education program or activity, or did not occur against a person in the United States." 34 C.F.R. § 106.45(b)(3)(i). Such a dismissal is only for purposes of Title IX and "does not preclude action under another provision of the recipient's code of conduct." *Id.*

investigations, *id.* § 106.45(b)(5)(ii)-(iii), (vi)-(vii).

Other principal features of the grievance process required by the 2020 Rule include that the process must "provid[e] remedies to a complainant where a determination of responsibility for sexual harassment has been made against the respondent," *id.* § 106.45(b)(1)(i), that recipients must "[i]nclude a presumption that the respondent is not responsible for the alleged conduct until a determination regarding responsibility is made at the conclusion of the grievance process," *id.* § 106.45(b)(1)(iv), that recipients must "follow[] a grievance process that complies with this section before the imposition of any disciplinary sanctions," *id.* § 106.45(b)(1)(i),[3] and that the grievance process must comprise an objective evaluation based on evidence, *id.* § 106.45(b)(1)(ii)-(iii). Questions and evidence about the complainant's prior sexual behavior are not relevant, with limited exceptions. *Id.* § 106.45(b)(6)(i)-(ii). A recipient must offer both parties an appeal from a determination or from the dismissal of a complaint or of allegations on certain bases. *Id.* § 106.45(b)(8)(i)-(ii). The 2020 Rule also requires postsecondary institutions to conduct live hearings with cross-examination, absent informal resolution. *Id.* § 106.45(b)(6)(i).

Under the 2020 Rule, a school may elect "whether the standard of evidence to be used to determine responsibility [in its grievance process] is the preponderance of the evidence standard or the clear and convincing evidence standard," provided that the same standard applies (1) for claims against students as against employees, and (2) to all formal complaints of sexual harassment. *Id.* § 106.45(b)(1)(vii); *see also id.* § 106.45(b)(7)(i).

## II.     Procedural History and Recent Events

This case joins four others, all brought in early summer 2020, challenging the 2020 Rule. *Know Your IX v. DeVos*, No. 1:20-cv-1224 (D. Md. filed May 14, 2020); *New York v. U.S. Dep't of Educ.*, No. 1:20-cv-4260 (S.D.N.Y. filed June 4, 2020); *Pennsylvania v. Cardona*, No. 1:20-cv-1468 (D.D.C. filed June 4, 2020); *Victim Rts. Law Ctr. v. Cardona*, No. 1:20-cv-11104 (D. Mass. filed June 10, 2020). None of those cases has yet resulted in success for the plaintiffs. Two cases have been dismissed. *See Know Your IX*, No. CV RDB-20-01224, 2020 WL 6150935 (D. Md. Oct. 20, 2020) (ordering the case dismissed after concluding that plaintiffs lacked standing); *New York*, 477 F. Supp. 3d 279 (S.D.N.Y. 2020) (denying

---

[3] Schools may immediately remove respondents on an emergency basis where appropriate. 34 C.F.R. § 106.44(c).

preliminary relief because, *inter alia*, plaintiffs did not establish a likelihood of success on the merits), subsequently voluntarily dismissed, *see* Stipulation of Voluntary Dismissal, ECF No. 103 (Nov. 4, 2020). One case remains pending. *See Victim Rts. Law Ctr.* (H'rg on Mot. for Prelim. Inj. & Trial on the Merits Sept. 2, 2020). And one case, which is currently stayed, remains pending after the court denied plaintiffs preliminary relief, *Pennsylvania*, 480 F. Supp. 3d 47 (D.D.C. 2020) (denying plaintiffs preliminary relief because, *inter alia*, plaintiffs did not establish a likelihood of success on the merits).

The Department is currently undertaking a review of the 2020 Rule. The President has directed the Secretary of Education to examine the 2020 Rule for consistency with Title IX of the Education Amendments of 1972 and existing federal policy. Exec. Order No. 14,021, 86 Fed. Reg. 13,803 (Mar. 8, 2021). As part of its implementation of the Executive Order, the Department announced a comprehensive review of the 2020 Rule, including a multi-day public hearing, Announcement of Public Hearing, 86 Fed. Reg. 27,429, 27,429-30 (May 20, 2021).[4] The Department anticipates publishing a notice of proposed rulemaking after hearing from the public and completing its review of the 2020 Rule.

## LEGAL STANDARDS

A suit brought by a plaintiff without standing, as is the case here, should be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). If the Court determines that jurisdiction exists, then the Court should dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), given the presence of an adequate alternative remedy to an APA suit.

## ARGUMENT

**I.    Plaintiff Lacks Standing to Sue.**

The "'irreducible constitutional minimum' of standing" provides that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

---

[4] Department of Education's Office for Civil Rights Launches Comprehensive Review of Title IX Regulations to Fulfill President Biden's Executive Order Guaranteeing an Educational Environment Free from Sex Discrimination (Apr. 6, 2021), https://www.ed.gov/news/press-releases/department-educations-office-civil-rights-launchescomprehensive-review-title-ix-regulations-fulfill-president-bidens-executive-order-guaranteeingeducational-environment-free-sex-discrimination.

1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "Federal courts do not exercise general legal oversight of the Legislative and Executive Branches," *Transunion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *6 (S. Ct. June 25, 2021), so the standing inquiry is especially rigorous where the "plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," *Defs. of Wildlife*, 504 U.S. at 562.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo, Inc*., 136 S. Ct. at 1548 (quoting *Defs. of Wildlife*, 504 U.S. at 560). Adherence to these requirements "tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action."  *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982).

The Supreme Court has long held that a "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself" to confer standing.  *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972); *accord Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*, 279 F.3d 817, 823 (9th Cir. 2002).  "[T]hat interest, unaccompanied by a showing that the application of [the 2020 Rule] ha[s] somehow personally and actually harmed [the plaintiff-organization], cannot alone constitute the injury-in-fact" required for standing.  *Schmier*, 279 F.3d at 823.  However sincere its interest, Plaintiff has not distinguished itself from other interest groups whose standing the Supreme Court repeatedly has rejected.  *See Simon v. E. Ky. Welfare Rts. Org*., 426 U.S. 26, 39-40 (1976) (holding that certain organizations, "which described themselves as dedicated to promoting access of the poor to health services, could not establish their standing simply on the basis of that goal"); *Sierra Club*, 405 U.S. at 739 (holding that "a large and long-established organization, with a historic commitment" to protecting the environment, could not establish standing on that basis alone).  It is well established that Article III does not permit lawsuits by organizations that "seek to do no more than vindicate their own value preferences through the judicial process."  *See Sierra Club*, 405 U.S. at 740. That is what Plaintiff seeks to do here.  Plaintiff alleges that in the event that the Department might not open and investigate a pending administrative complaint in its entirety and provide relief to WSU

members, Plaintiff will choose to take certain actions.  Compl. ¶¶ 77-81.  That allegation does not suffice to plead Article III injury.[5]

### A.    Plaintiff's Allegation of Possible Future Harm Is Too Speculative to Constitute Article III Injury.

As Plaintiff itself acknowledges, "'[a]llegations of *possible* future injury' are not sufficient" to satisfy the imminence requirement.  Pl.'s Intervention Opp. at 2 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).  To the contrary, "[w]here a party's standing rests on future harm, the 'threatened injury must be certainly impending to constitute injury in fact.'"  *Id*. (quoting *Clapper*, 568 U.S. at 409).  In *Clapper*, several organizations alleged that they were injured by an increased risk that the government would use its statutory authority to intercept their communications with foreign contacts.  *See Clapper*, 568 U.S. at 406.  The Supreme Court held that the feared surveillance was not imminent because it was contingent on several uncertain future events.  *See id.* at 410.

So too here.  Plaintiff fails to allege an injury that is certainly impending because the harm it pleads is contingent on uncertain future events.  Plaintiff contends that in February of this year, it filed an administrative complaint with the Department's Office for Civil Rights (OCR) alleging violations of Title IX.  Compl. ¶ 77.  Plaintiff's claimed injury is premised solely on the speculation that OCR might not investigate and resolve the administrative complaint to Plaintiff's satisfaction.  *See id*. ¶ 78 (speculating

---

[5] Plaintiff also briefly contends that even if OCR were to open some or all of the allegations in the administrative complaint for investigation, the 2020 Rule allegedly does not require the school district to take certain unspecified actions "required under the Department's prior interpretations of Title IX and that WSU wishes its school to take."  Compl. ¶ 82.  This contention fails to state an Article III injury.  As Plaintiff itself notes, "where the party that must establish standing is not 'the object of the government action or inaction [it] challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.'"  Pl.'s Opp. to Organizational Movants' Mot. to Intervene at 2, ECF No. 54 ("Pl.'s Intervention Opp.") (quoting *Defs. of Wildlife*, 504 U.S. at 562).  "Indeed, when, as here, the injury 'arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed.'  *Id*. at 3 (quoting *Defs. of Wildlife*, 504 U.S. at 562).  Plaintiff has "failed to make [this] showing[]," *id*., because "it is entirely speculative" whether the 2020 Rule "would lead the school to change its policies" in the manner preferred by Plaintiff.  *Allen v. Wright*, 468 U.S. 737, 758 (1984).  Moreover, Plaintiff's "wish[]" that its school take a particular action does not articulate a cognizable injury that is certainly impending.  Compl. ¶ 82.  Finally, as Plaintiff tacitly concedes, the paragraphs in the complaint under the heading "Injuries Caused by the 2020 Regulations," *id*. ¶¶ 65-74, fail to articulate any Article III injury that is "[s]pecific[] to WSU," rather than a generalized grievance.  *See Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 417 (9th Cir. 2020) (because an injury "must affect the plaintiff in a personal and individual way," "a plaintiff normally does not have standing where the only asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens") (citations and internal punctuation omitted).

that OCR "will not investigate WSU's administrative complaint, and will not provide any relief to WSU and its members").  But OCR has established procedures for reviewing complaints, which include an evaluation stage, investigation, and resolving complaints as appropriate, including through facilitated resolution of the parties or enforcement action.  *See generally* U.S. Dep't of Education Office for Civil Rights, Case Processing Manual (effective Aug. 26, 2020), https://www2.ed.gov/about/offices/list/ocr/ docs/ocrcpm.pdf.  Here, Plaintiff does not allege that OCR has dismissed its complaint or otherwise refused to proceed.  Instead, Plaintiff offers only speculation that OCR's ultimate resolution will be contrary to Plaintiff's preferred outcome.  Because the ultimate outcome of such a determination is not yet certain, Plaintiff's fears of possible future injury are entirely speculative.  *See Cohn v. Brown*, 161 F. App'x 450, 455 (6th Cir. 2005) (holding that an alleged injury from a pending case was speculative).  As in *Clapper*, speculation about future injury cannot provide the basis for standing now.  Moreover, even if Plaintiff were to be aggrieved by the decision ultimately reached on the administrative complaint, the appropriate remedy would be to pursue a claim against the school district, not to assert an APA claim against ED.  *See generally infra* Part III (explaining that Plaintiff's APA claim fails because it possesses an adequate alternative remedy to the extent that it challenges actions by its school that are not mandated by the 2020 Rule).

Thus, Plaintiff's "highly attenuated chain of possibilities[] does not satisfy the requirement that threatened injury must be certainly impending."  *Clapper*, 568 U.S. at 410.  Its attempt to leverage a pending administrative complaint into an Article III injury here fails because at most, Plaintiff presents "allegations of *possible* future injury" that "are not sufficient" to establish standing.  *Id.* at 409.

**B.    Plaintiff May Not Establish Injury by Voluntarily Diverting Organizational Resources.**

Instead of invoking associational standing, Plaintiff appears to proceed on the assumption that it may invoke a separate theory, organizational standing.  Under such a theory, "[a]n organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'"  *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (holding the alleged injury must be "more

than simply a setback to the organization's abstract social interests"); *see generally Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1224-27 (9th Cir. 2012) (Ikuta, J., concurring and dissenting) (assessing tension between the Circuit's recent organizational standing doctrine and Supreme Court precedent).  But that theory is not available to WSU for the simple reason that WSU has no legal existence (and thus could suffer no injury) separate from its members.  *See generally* Business Search, California Secretary of State, https://businesssearch.sos.ca.gov/ (no such entity registered with State of California).  Instead, the complaint describes WSU as a "student body association," Compl. ¶ 16—*i.e.*, a group of students with a common purpose.  Because it has no legal independent legal existence, it by definition cannot have itself suffered an injury that is separate from any injury to its members.  Plaintiff must invoke associational standing, which it notably has not sought to do.[6]

Plaintiff alleges that if the Department does not open and investigate its administrative complaint in its entirety and provide relief to WSU members, it will have "no choice but to take actions that [will be] both more time consuming and less effective, such as conducting their own investigations into patterns of harassment at Berkeley Unified School District and meeting with school administrators."  Compl. ¶ 80. This allegation fails to support organizational standing for at least three reasons.

First, as explained above, it is utterly speculative to assert that the Department will not investigate and resolve Plaintiff's administrative claim against the school district.  And organizations cannot establish standing by proactively taking actions "based on their fears of hypothetical future harm that is not certainly impending."  *Clapper*, 568 U.S. at 416.  "If the law were otherwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by making an expenditure based on a nonparanoid fear."  *Id*.  Just so here: if the Constitution merely required that Plaintiff allege that it "has no

_____

[6] Nor could Plaintiff assert associational standing, because to establish associational (also known as representational) standing, a plaintiff "must demonstrate that at least one of its members would otherwise have standing to sue in [the member's] own right," among other requirements.  *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 917-18 (9th Cir. 2018) (quoting *Wash. Env't. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013)).  Plaintiff cites no such member here.  This case is therefore distinguishable from *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  While the Supreme Court noted in that case that "an association may have standing in its own right to seek judicial relief from injury to itself," the case dealt exclusively with incorporated associations—*i.e.*, those having legal existence separate and apart from their members.

choice" but to take such actions, Compl. ¶ 80, then an enterprising plaintiff would be able to secure a lower standard for Article III standing simply by contending that it "has no choice" to engage in a particular expenditure based on some hypothetical harm that could result someday from a future application of an agency regulation.

Second, a plaintiff pleading diversion of resources as a basis for organizational standing must have been "injured by a necessity to divert resources from its normal activities to activities *outside* of its normal realm." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, No. SA CV 07-250 DOC (ANX), 2008 WL 11411732, at *6 (C.D. Cal. Aug. 18, 2008) (emphasis added), *aff'd*, 624 F.3d 1083 (9th Cir. 2010); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 285-86 (3d Cir. 2014) (holding that "additional expenditures . . . consistent with [an organization's] typical activities" do not confer standing). In other words, an organization "cannot convert its ordinary program costs into an injury in fact." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995).

Here, even if Plaintiff were to take actions such as "conducting . . . investigations into patterns of harassment" at the school district or "meeting with school administrators," Compl. ¶ 80, undertaking such actions would be entirely consistent with Plaintiff's normal activities. *See* Compl. ¶ 16 (asserting that Plaintiff's "mission includes reducing sexual harassment experienced by students of Berkeley High School by (1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination, including sexual harassment; and (2) providing training to the student body about their rights and responsibilities under school policy, state law, and federal law"). Engaging in such actions is an extension of Plaintiff's "regular—or 'core'—programs." *See Jimenez v. Tsai*, No. 5:16-cv-04434-EJD, 2017 WL 2423186, at *11 (N.D. Cal. June 5, 2017) (quoting *Fair Hous. of Marin v. Combs*, No. C 97–1247 MJJ, 2000 WL 365029, at *3 (N.D. Cal. Mar. 29, 2000), *aff'd*, 285 F.3d 899 (9th Cir. 2002)). Thus, nothing about such future actions would lie outside of Plaintiff's "normal realm." *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 (stating an organization "cannot manufacture the injury by . . . simply choosing to spend money"). And because taking action to reduce sexual harassment experienced by Berkeley students is Plaintiff's core mission, even in the event that Plaintiff were to decide to conduct an investigation into patterns of alleged harassment experienced by those students or meeting with school administrators, there will be no diversion of resources.

Third, an organization cannot establish cognizable injury "by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization . . . . It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem."  *Id.*; *see also Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 632 F. App'x 905, 908-09 (9th Cir. 2015) (Chhabria, J., concurring).  An organization "cannot manufacture standing by choosing to make expenditures on hypothetical future harm that is not certainly impending."  *Clapper*, 568 U.S. at 402.  Only if an organization shows that it was "forced" to divert resources to avoid an injury that would inhibit its ability to function has it met this requirement  *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc).  Here, Plaintiff fails to allege that it would suffer some other injury if it were to choose not to meet with school administrators or conduct investigations into alleged patterns of harassment of Berkeley students.  An organization may not establish standing "based solely on its own decision regarding resources allocation," *La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 n.4 (citing *Fair Emp. Council of Greater Wash. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1277 (D.C. Cir. 1994), and it is implausible that Plaintiff would be "forced" to take such actions to avoid an injury that would inhibit its ability to function.  *Comite de Jornaleros*, 657 F.3d at 943.  Without providing any factual allegations to explain why meeting with school administrators and conducting investigations would be necessary to avoid an injury to the organization, Plaintiff has not plausibly alleged that taking such future actions would constitute a diversion of resources conferring Article III standing.  *See La Asociacion de Trabajadores de Lake Forest*, 624 F.3d at 1088 (holding that an organization that failed to "assert any factual allegations regarding organizational standing in its complaint" failed to establish standing).

## II.    Plaintiff Fails to Assert a Ripe Claim.

The Court should also dismiss Plaintiff's claim as unripe.  "Ripeness doctrine is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies" and "to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Safer Chems., Healthy Fams. v. EPA*, 943 F.3d 397, 411 (9th Cir. 2019) (citations and internal punctuation omitted).  "The constitutional component of the ripeness inquiry is often treated under the

rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014) (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). "When addressing the sufficiency of a showing of injury-in-fact grounded in potential future harms, Article III standing and ripeness issues often 'boil down to the same question.'" *Id*. (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014)). "In that context, 'ripeness can be characterized as standing on a timeline,' and the analysis for both standing and ripeness is essentially the same." *Id*. (quoting *Thomas*, 220 F.3d at 1138).

"A case is not ripe where the existence of the dispute itself hangs on future contingencies that may or may not occur." *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003) (citation omitted); *see also Coons*, 762 F.3d at 898 (dismissing claim as unripe because "[s]peculative allegations with respect to" future agency action "that are 'wholly contingent upon the occurrence of unforeseeable events' are insufficient to satisfy the constitutional prong of our ripeness doctrine'" (quoting *Thomas*, 220 F.3d at 1141). As explained above, it is completely speculative to contend that the Department will not investigate and resolve Plaintiff's administrative claim against the school district. That is the epitome of an uncertain future contingency—"we have no idea whether or when" it will occur. *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal punctuation omitted); *see also Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408-09 (9th Cir. 1996) (plaintiff's challenge to agency's interim determination that plaintiff had violated certain laws was unripe because the agency had not yet rendered a final determination). The Court should thus dismiss the complaint because Plaintiff fails to state a ripe claim.

III.     **Plaintiff's Claims Should Also Be Dismissed Because Plaintiff Has an Adequate Alternative Remedy Against the School District.**

To the extent that Plaintiff is challenging discretionary actions that they speculate BUSD may take (or not take) that are not required by the 2020 Rule, Plaintiff's claims should also be dismissed because they have an adequate alternative remedy in the form of a lawsuit against BUSD.

The APA provides judicial review of "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added). Any injuries that Plaintiff may think it has, or will theoretically have in the future, based on BUSD's choices independent of the 2020 Rule are appropriately remedied by Plaintiff suing BUSD, not the Department.

Although Plaintiff might prefer to sue the Department for what it believes is inadequate regulation, "a private cause of action against a third party otherwise subject to agency regulation" constitutes an adequate alternative remedy. *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009) (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1271 (D.C. Cir. 2005)).

Such suits provide an adequate alternative remedy even if "individual actions against discriminators cannot redress the systemic lags and lapses by federal monitors about which they complain." *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990). "Suits directly against the discriminating entities may be more arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement." *Id*. "But under our precedent, situation-specific litigation affords an adequate, even if imperfect, remedy." *Id*.

The D.C. Circuit's decision in *National Wrestling Coaches Association v. Department of Education*, 366 F.3d 930 (D.C. Cir. 2004), is instructive. The plaintiffs in that case sought to challenge a guidance document in which the Department clarified its interpretation of Title IX and its regulations as they applied to intercollegiate athletics; the plaintiffs alleged that the Department's guidance caused schools to eliminate or cut their men's wrestling programs. *See id.* at 933-36. The panel held that "the availability of a private cause of action directly against universities that discriminate in violation of Title IX" constituted an adequate remedy that barred the plaintiffs' APA claim against the Department. *Id*. at 945-48. The panel's holding was later endorsed by seven judges in a *per curiam* statement concerning the denial of rehearing *en banc*. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 383 F.3d 1047, 1048 (D.C. Cir. 2004).

As previously discussed, Plaintiff's theory of legally cognizable harm is somewhat opaque, but it is clear that Plaintiff's complaint is at least partially predicated on discretionary actions by BUSD that are not mandated by the Rule. For example, Plaintiff states that it "elected to wait a semester [before filing this lawsuit] to see how its school district responded to the 2020 Regulations," Pl.'s Opp'n Mot. Hold Case Abeyance 1, ECF No. 51, which would have been unnecessary if Plaintiff objected to the 2020 Rule itself. *See also id.* at 6 ("It was only after [Plaintiff] saw how its school district responded to the new, lesser, requirements of the 2020 Regulations that it determined that going to court was appropriate.").

（Case 3:21-cv-01626-EMC Document 61 Filed 07/01/21 Page 23 of 24）

Likewise, Plaintiff's theory of harm is based on the allegations of the complaint that Plaintiff submitted to the Department's Office for Civil Rights, which included the allegation that BUSD was "[f]ailing to take steps to discover and remediate" sexual harassment that occurred in "Zoom 'breakout rooms'" during the school's remote learning programs.  Compl. ¶ 77.  But of course, the 2020 Rule requires schools to appropriately address sexual harassment that occurs in their "education program or activity," which the 2020 Rule defines to include "locations, events, or circumstances over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs."  34 C.F.R. § 106.44(a).[7]  In other words, to the extent that BUSD is not appropriately responding to sexual harassment occurring in its school's remote learning offerings, it is doing so both in violation of the 2020 Rule (and, consequently, Title IX).  *Compare also* Compl. ¶ 77 (alleging that Plaintiff's school is "placing the burden on victims to avoid contact with their harassers and even transfer out of shared classes"), *with* 34 C.F.R. § 106.44(a) (requiring Title IX coordinators to promptly contact complainants and affirmatively offer supportive measures).

Here, likewise, Plaintiff has an adequate alternative remedy in the form of a lawsuit directly against BUSD, *cf.* Compl. ¶ 23 (acknowledging the ability of students to bring private Title IX lawsuits against their schools), to address Plaintiff's concerns that BUSD will act inconsistently with Title IX, and any such claims against the Department are therefore not appropriately addressed through an APA lawsuit against the Department.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss this case for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted.

Dated: July 2, 2021                    Respectfully Submitted,

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

---

[7] The statutory and regulatory definitions of "program or activity" encompass "all of the operations of" such recipients, and such "operations" may certainly include computer and internet networks, digital platforms, and computer hardware owned or operated by, or used in the operations of, the recipient.  85 Fed. Reg. at 30,202.

Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

/s/ Benjamin T. Takemoto
BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*