John C. He (CA Bar No. 328382)
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
Ph: (510) 622-8150
Fax: (202) 232-7203
Email: jhe@publicjustice.net

*Listing continues on next page*

Counsel for Plaintiff The Women's Student Union

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE WOMEN'S STUDENT UNION, | **PLAINTIFF'S OPPOSITION TO THE DEPARTMENT OF EDUCATION'S MOTION TO DISMISS** |
| *Plaintiff,* | |
| v. | Civil Action No. 3:21-cv-01626-EMC |
| | Judge: Honorable Edward M. Chen |
| U.S. DEPARTMENT OF EDUCATION, | |
| *Defendant.* | Hearing: August 5, 1:30 PM (virtual) Courtroom 5, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102 |

1   Seth M. Galanter*
    National Center for Youth Law
2   712 H Street NE, Suite 32020
    Washington, DC 20002
3   Ph: (202) 868-4781
    Fax: (510) 835-8099
4   Email: sgalanter@youthlaw.org
5
    Adele P. Kimmel (CA Bar No. 126843)
6   Alexandra Z. Brodsky*
    Public Justice
7   1620 L Street NW, Suite 630
    Washington, DC 20036
8   Ph: (202) 797-8600
    Fax: (202) 232-7203
9   Email: akimmel@publicjustice.net
            abrodsky@publicjustice.net
10
11  Linda M. Correia*
    Lauren A. Khouri*
12  Correia & Puth, PLLC
    1400 16th Street NW, Suite 450
13  Washington DC 20036
    Ph: (202) 602-6500
14  Fax: (202) 602-6501
    Email: lcorreia@correiaputh.com
15          lkhouri@correiaputh.com
16
17  *admitted pro hac vice

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

    A.   ED's Administrative Enforcement Of Title IX Prior To The 2020 Regulations .......................................................................................................... 2

    B.   The Changes Rendered By The 2020 Regulations To ED's Administrative Enforcement Of Title IX ............................................................ 3

    C.   Injuries Resulting From The 2020 Regulations ................................................ 4

    D.   Post-Complaint Statements By The Biden Administration Regarding Reregulating ..................................................................................................... 6

I.    WSU Has Standing To Sue ED Because The 2020 Regulations Have Deprived It And Its Members Of A Pre-Existing Procedural Right To A Federal Investigation Of Its School District By ED ............................................................................................. 8

    A.   WSU Is Bringing This Suit In Both An Organizational and Representational Capacity ............................................................................. 8

        1.   WSU has a legal existence distinct from its members, and can experience its own injuries ......................................................... 8

        2.   WSU can sue as a representative of its members ........................... 10

    B.   ED Has Injured WSU In Both Its Organizational And Representational Capacities By Denying It A Procedural Right ......................................... 11

    C.   The Violation Of WSU's Procedural Right Could Impair The Concrete Interests of WSU And Its Members ............................................................. 14

    D.   WSU's And Its Members' Injuries Were Caused By The 2020 Regulations And Could Be Redressed If The 2020 Regulations Were Set Aside ................ 17

II.    WSU's Claim Is Ripe ............................................................................................ 18

III.   A Suit Against BUSD Alleging Violations Of Title IX Is Not An Adequate Remedy For ED's Constrictions Of Its Administrative Enforcement Of Title IX ............ 18

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Wright*,
  468 U.S. 737 (1984) ..................................................................................................... 16

*Baltimore & P. R. Co. v. Fifth Baptist Church*,
  108 U.S. 317 (1883) ..................................................................................................... 15

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ..................................................................................................... 19

*California Trucking Ass'n v. Bonta*,
  996 F.3d 644 (9th Cir. 2021) ....................................................................................... 10

*California v. Bernhardt*,
  460 F. Supp. 3d 875 (N.D. Cal. 2020) ......................................................................... 18

*Californians for Renewable Energy v. EPA*,
  No. 13-3292, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018) ....................... 13, 18, 20

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979) ....................................................................................................... 2

*Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Justice*,
  846 F.3d 1235 (D.C. Cir. 2017) ................................................................................... 19

*Committee for Full Employment. v. Blumenthal*,
  606 F.2d 1062 (D.C. Cir. 1979) .............................................................................. 12, 13

*Coons v. Lew*,
  762 F.3d 891 (9th Cir. 2014) ....................................................................................... 18

*Dao v. Faustin*,
  402 F. Supp. 3d 308 (E.D. Va. 2019) .......................................................................... 15

*Davis v. Monroe Cty. Bd. of Educ.*,
  526 U.S. 629 (1999) ....................................................................................................... 2

*Dellums v. Smith*,
  797 F.2d 817 (9th Cir. 1986) ....................................................................................... 13

*Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*,
  666 F.3d 1216 (9th Cir. 2012) ..................................................................................... 16

*Franklin v. Gwinnett Cty. Pub. Sch.*,
  503 U.S. 60 (1992) ......................................................................................................... 2

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998) ............................................................................................................... 2

*H&M Assocs. v. City of El Centro*,
   109 Cal. App. 3d 399 (Cal. App. 1980) ................................................................................. 9

*Johnson v. EEOC*,
   No. 94-c-6617, 1995 WL 374058 (N.D. Ill. June 21, 1995) ................................................. 13

*Joint Anti-Fascist Refugee Committee v. McGrath*,
   341 U.S. 123 (1951) .......................................................................................................... 8, 9

*Kilduff v. Cosential, Inc.*,
   289 F. Supp. 2d 12 (D. Conn. 2003) ................................................................................... 15

*League of Women Voters of California v. Kelly*,
   No. 17-CV-02665-LB, 2017 WL 3670786 (N.D. Cal. Aug. 25, 2017) ................................. 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................... 8, 13, 14, 15

*Mkt. Lofts Cmty. Assn. v. 9th St. Mkt. Lofts, LLC*,
   166 Cal. Rptr. 3d 469 (Cal. App. 2014) ................................................................................. 9

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015) ............................................................................................. 10

*Oklevueha Native American Church of Hawaii, Inc. v. Holder*,
   676 F.3d 829 (9th Cir. 2012) ............................................................................................... 10

*Rogers v. Loews L'Enfant Plaza Hotel*,
   526 F. Supp. 523 (D.D.C. 1981) ......................................................................................... 15

*S. California Darts Ass'n v. Zaffina*,
   762 F.3d 921 (9th Cir. 2014) ................................................................................................. 8

*Salmon Spawning & Recovery All. v. Gutierrez*,
   545 F.3d 1220 (9th Cir. 2008) ............................................................................................. 17

*Service Women's Action Network v. Mattis*,
   352 F. Supp. 3d 977 (N.D. Cal. 2018) ........................................................................... 10, 16

*Stricker v. Cessford Const. Co.*,
   179 F. Supp. 2d 987 (N.D. Iowa 2001) ............................................................................... 15

*SurvJustice Inc. v. DeVos*,
   No. 18-CV-00535-JSC, 2019 WL 1434144 (N.D. Cal. Mar. 29, 2019) ............................... 20

*Thomas v. Anchorage Equal Rights Comm'n,*
   220 F.3d 1134 (9th Cir. 2000) ..................................................................... 18

*TransUnion LLC v. Ramirez,*
   2021 WL 2599472 (U.S. June 25, 2021) ................................................. 8, 15, 16

*United States v. Mongol Nation,*
   370 F. Supp. 3d 1090 (C.D. Cal. 2019) .......................................................... 8

*United States v. UPS Customhouse Brokerage, Inc.,*
   575 F.3d 1376 (Fed. Cir. 2009).................................................................... 11

*Valentini v. Shinseki,*
   860 F. Supp. 2d 1079 (C.D. Cal. 2012) ......................................................... 15

*Virginia Coll., LLC v. SSF Savannah Properties, LLC,*
   93 F. Supp. 3d 1370 (S.D. Ga. 2015)............................................................ 15

*Vosburg v. Cty. of Fresno,*
   268 Cal. Rptr. 3d 591 (Cal. App. 2020)........................................................... 9

*Young v. Trump,*
   *506 F. Supp. 3d 921 (N.D. Cal. 2020) appeal filed, No. 21-15233 (Feb. 10, 2021)* ..... 11, 17, 18

## CONSTITUTIONS AND STATUTES

U.S. Const., Article III…………………………………………………………………*passim*

5 U.S.C. § 701 et seq. (Administrative Procedure Act)

   § 704....................................................................................................... 19

20 U.S.C. § 1681 et. seq. (Title IX of the Education Amendments of 1972)

   § 1681(a) .................................................................................................. 1

   § 1682....................................................................................................... 2

20 U.S.C.A § 1687 ........................................................................................ 2

Cal. Civ. Proc. Code § 369.5(a) ..................................................................... 9

Cal. Corp. Code § 18035................................................................................ 9

Cal. Corp. Code § 18200(a) ........................................................................... 9

Cal. Educ. Code § 48930 ............................................................................... 9

**REGULATIONS AND FEDERAL REGISTER**

34 C.F.R

§ 100.7(b) ...................................................................................................... 11

§ 100.7(c) ...................................................................................................... 11

§ 100.7(d)(1) ................................................................................................. 12

§ 106 ................................................................................................................ 3

§ 106.30(a) ...................................................................................................... 4

§ 106.30(a)(2) .................................................................................................. 4

§ 106.44(a) ...................................................................................................... 4

§ 106.71 ......................................................................................................... 11

41 Fed. Reg. 18,394 (May 3, 1976) ................................................................ 11

*Executive Order on Guaranteeing an Educational Environment Free from
Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity.*
Exec. Order No. 14021, 86 Fed. Reg. 13,803 (Mar. 8, 2021) ................................ 6, 7

U.S. Dep't. of Educ., *Nondiscrimination on the Basis of Sex in Education Programs
or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026
(May 19, 2020) ........................................................................................ 3, 17, 19

**OTHER AUTHORITIES**

14 Cal. Att'y Gen. Op. 210 (1949) ................................................................... 9

37 Cal. Att'y Gen. Op. 154 (1961) ................................................................... 9

Megha Krishnan, *Berkeley Unified School District addresses sexual harassment
concerns*, The Daily Californian (Dec. 13, 2020) ............................................... 21

Suzanne B. Goldberg, U.S. Dep't. of Educ., *Letter to Students, Educators, and other
Stakeholders re Executive Order 14021* (Apr. 6, 2021),
https://www2.ed.gov/about/offices/list/ocr/correspondence/stakeholders/20210406-
titleix-eo-14021.pdf ...................................................................................... 7

Unified Agenda of Regulatory and Deregulatory Actions, Spring 2021 (June 3, 2021),
https://www.reginfo.gov/public/jsp/eAgenda/StaticContent/202104/RiscPreamble.pdf
https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=1870-
AA16 ........................................................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

The U.S. Department of Education ("ED") does not dispute that its new Title IX regulations ("2020 Regulations") changed the standards by which it assessed a complaint filed in its administrative process to decide whether to open an investigation into a school's compliance with its Title IX regulatory obligations. Indeed, that was the purpose of the 2020 Regulations.

Prior to 2020, if The Women's Student Union ("WSU") had filed an administrative complaint alleging that its school district did not respond to harassment that was severe but not pervasive (or pervasive but not severe), harassment about which it should have known, or harassment that occurred off-campus but had effects on-campus, then ED would have been required to open the complaint for investigation. In assessing compliance, ED would have applied a strict liability standard.

Now, however, WSU has lost that procedural right to trigger an investigation of such harassment (and a remedy if the investigation found violations of the regulations) because ED will no longer entertain such claims in its administrative process; and, for any claims it does entertain, it will use a deliberate indifference standard to assess whether a violation has occurred. The loss of that procedural right is an injury sufficient to permit standing to WSU and its members because they have concrete interests in an educational environment that offers equal educational opportunities, free from disturbances caused by sexual harassment.

**BACKGROUND**

Title IX of the Education Amendments of 1972 provides, subject to certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX defines

"program or activity" in relevant part as "all of the operations" of a school, "any part of which is extended Federal financial assistance." 20 U.S.C.A § 1687.

### A.    ED's Administrative Enforcement Of Title IX Prior To The 2020 Regulations

The U.S. Supreme Court has long held that Title IX's prohibition against sex discrimination includes protection against sexual harassment that can be enforced in federal court by injured students through an implied private right of action for compensatory damages and injunctive relief. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639-40 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 281 (1998); *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 65-66 (1992); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 689 (1979). To recover damages in a court action, a private plaintiff must show that a school district had actual knowledge of the harassment and acted with deliberate indifference.

But Title IX is also administratively enforced by federal agencies that disburse funds to educational institutions. Congress "authorized and directed" federal agencies that provide financial assistance to education programs or activities to "effectuate the provisions of" Title IX "by issuing rules, regulations, or orders of general applicability." 20 U.S.C. § 1682. While such rules, regulation, or orders are not always enforceable through the private right of action, violations can result in a federal agency withholding federal education funds. *Id.* To avoid the threat of fund termination, school districts are almost always willing to settle with ED during or after an administrative investigation by agreeing to address sexual harassment through individual relief and systemic change.

For decades, and through multiple Administrations, ED, through its Office for Civil Rights, has been the primary federal agency charged with enforcing Title IX administratively and has issued consistent guidance to school districts about how it interpreted Title IX in the context of sexual harassment. ED's Guidances concerning sexual harassment consistently rejected the view

that the courts' standards for determining whether a private damages action could be brought

against a school should be incorporated into its administrative enforcement process.  Although the

Guidances varied in their level of detail and emphasis, they informed schools of ED's consistent

view that:

- unlawful "sexual harassment" means unwelcome conduct that denies or limits a student's ability to participate in or benefit from the school's program based on sex and can include conduct that is severe, persistent, or pervasive – in other words, sufficiently serious that it adversely affects a student's ability to participate in or benefit from the school's program;

- schools are required to address all harassing conduct that creates a hostile environment in an education program or activity, even if the conduct occurs outside an education program or activity;

- schools are responsible for any sexual harassment of students that they knew or, in the exercise of reasonable care, should have known about; and

- schools must take prompt and effective action to end the unlawful harassment, prevent it from recurring, and remedy its effects.

(Compl. ¶ 28, ECF 1).

## B.   The Changes Rendered By The 2020 Regulations To ED's Administrative Enforcement Of Title IX

In 2020, former Secretary of Education Elisabeth DeVos promulgated the 2020

Regulations concerning how the Department would judge schools' responses to sexual harassment

in evaluating federal administrative civil rights complaints.  *See Nondiscrimination on the Basis*

*of Sex in Education Programs or Activities Receiving Federal Financial Assistance,* 85 Fed. Reg.

30,026 (May 19, 2020) (codified at various places in 34 C.F.R. § 106).  The 2020 Regulations

constitute a dramatic departure from the Department's long-standing interpretation of Title IX in

evaluating federal administrative sexual harassment complaints, as well as its continued standards

for race and disability-based harassment.  (Compl. ¶¶ 25-32).  These regulations are massive, and

massively complicated; the preamble alone is more than 500 pages in the small print used in the

Federal Register.  *See id.* at 30,026-30,572.

Only four provisions, however, are at issue in this suit.  Specifically, for purposes of evaluating federal administrative civil rights complaints, the 2020 Regulations:

- Narrowed the definition of sexual harassment, requiring schools to address only harassment that is "severe" *and* "pervasive," 34 C.F.R. § 106.30(a)(2);

- Excused schools from addressing sexual harassment that occurs outside its educational programs or activities, even if that harassment causes a hostile environment within an educational program or activity, *id.* § 106.44(a);

- Adopted an actual knowledge standard for sexual harassment, under which schools are not responsible for their failures to address harassment they should have known about if they did not actually know about it, *id.* §§ 106.30(a), 106.44(a); and

- Adopted a deliberate indifference standard, under which a school fulfills its obligations under Title IX so long as it does not act "clearly unreasonabl[y]," and under which a school is only required to address the impact of sexual harassment on its target, not on any third parties, *id.* § 106.44(a).

## C.    Injuries Resulting From The 2020 Regulations

Many high school students enrolled in California's Berkeley Unified School District ("BUSD"), including members of WSU, experience sexual harassment, which poses an obstacle to their ability to learn and thrive in school.  For example, at Berkeley High School, students are often told they must either share a classroom with a student who sexually assaulted them off campus – or the victim must leave the class.  Even when learning takes place primarily online, as it does this school year due to COVID-19, victims are required to be in small video "breakout rooms" with their harassers.  The injuries result not just from the initial harassment alone, but because their school fails to respond to the harassment promptly and appropriately.  (Compl. ¶¶ 2-5, 15).

WSU is an approved student body association of BUSD.  WSU's mission includes reducing sexual harassment experienced by students of Berkeley High School by (1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination and sexual harassment; and (2) providing training to the student body about their rights and

responsibilities under school policy, state law, and federal law.  WSU also seeks to address other barriers to success and wellbeing for young women and non-binary students at Berkeley High School.  (Compl. ¶ 16).

In February 2021, WSU filed an administrative complaint with ED against BUSD. *See* page 11, *infra* (explaining administrative complaint process).  That complaint alleged violations of Title IX that, under the 2020 Regulations, are no longer cognizable in the administrative process. The allegations include:

- Permitting harassment that is severe but not pervasive, including unwelcome exposure to others' genitalia.

- Permitting harassment that is pervasive but not severe, including students' circulation of sexualized images of a classmate and regular comments by groups of students, usually young men, concerning the appearances and sexual histories of their classmates, usually young women.

- Failing to take steps to discover and remediate instances of commonplace harassment, such as that occurring in Zoom "breakout rooms," digital spaces in which small groups or dyads of students converse on video without a teacher present.

- Failing to investigate and address harassment that occurs off campus but impacts survivors' education, including sexual assaults committed by students with whom the victims share classes and, during COVID-19, harassing messages sent and received through students' personal phones while students share online classrooms.

- Failing at times to respond to sexual harassment in a prompt and effective manner, and instead, for example, tolerating the open presence of an informal club dedicated to sexually harassing students and placing the burden on victims to avoid contact with their harassers and even transfer out of shared classes, especially when the underlying harassment occurred off campus.

- Failing to take action that addresses all the persons adversely affected by sexual harassment, not just the complainant.

(Compl. ¶ 77).

But for the Department's 2020 Regulations, WSU's complaint would be opened for investigation by ED.  But by the clear terms of the 2020 Regulations, ED will not investigate all of the allegations in WSU's administrative complaint, and will not provide full relief to WSU and

its members for these injuries.  This is because the 2020 Regulations no longer make it unlawful for purposes of administrative enforcement for the BUSD to disregard sexual harassment that is severe but not pervasive (or pervasive but not severe); sexual harassment that originates outside the school's "program or activity," even though it impacts students' ability to participate in the school's program or activity; and sexual harassment that the school should reasonably know about, but of which it lacks actual knowledge.  Even for cognizable sexual harassment that the school knows about, the 2020 Regulations do not require complete relief and, in fact, allow the school to respond unreasonably to the harassment, so long as its response is not *clearly* unreasonable (*i.e.*, deliberately indifferent).  The failure of ED to open WSU's complaint for investigation in its entirety denies WSU and its members the right they had prior to the 2020 Regulations to have an administrative complaint investigated and, if a violation was discovered, remedied.  (Compl. ¶¶ 78-79).

> **D.    Post-Complaint Statements By The Biden Administration Regarding Reregulating**

Although ED has been issuing tentative signals that it will be amending some provisions of the 2020 Regulations, there is no reason to think that will happen in the by the end of this year, or even the end of next year, or that the amendments will address the provisions challenged by WSU.

On March 8, 2021, President Biden signed an Executive Order on *Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity*. Exec. Order No. 14021, 86 Fed. Reg. 13,803 (Mar. 8, 2021).  The Executive Order announced that "[i]t is the policy of [President Biden's] Administration that all students should be guaranteed an educational environment free from discrimination on the basis of sex, including discrimination in the form of sexual harassment, which encompasses sexual

violence, and including discrimination on the basis of sexual orientation or gender identity." *Id.* The Executive Order instructed the Secretary of Education to "review all existing regulations, orders, guidance documents, policies, and any other similar agency actions (collectively, agency actions) that are or may be inconsistent with the [announced] policy." *Id.* Among the agency actions that require review, the Executive Order specified, are the 2020 Regulations. *Id.* The Executive Order did not instruct the Defendant to rescind or stop enforcing the 2020 Regulations, nor did it mention the provisions at issue in WSU's lawsuit. *See id.*

On April 6, 2021, Suzanne Goldberg, the Education Department's Acting Assistant Secretary for Civil Rights, released a letter explaining the process by which the Department would undertake its review. Suzanne B. Goldberg, U.S. Dep't. of Educ., *Letter to Students, Educators, and other Stakeholders re Executive Order 14021* (Apr. 6, 2021), https://www2.ed.gov/about/ offices/list/ocr/correspondence/stakeholders/20210406-titleix-eo-14021.pdf. In that letter, Goldberg indicated that the Department anticipates that – after soliciting public comments – it will "publish[] in the Federal Register a notice of proposed rulemaking to amend the Department's Title IX regulations." *Id.* at 2-3. The letter does not indicate that the Department intends to change any of the provisions WSU challenges and does not suggest that the Department will not enforce the current regulations in the interim. *See id.*

On June 3, 2021, the Biden Administration published its Spring 2021 Unified Agenda of Regulatory and Deregulatory Actions.[1] The Agenda reports that the Administration anticipates publishing a notice of proposed rulemaking regarding Title IX in May 2022, 11 months from now.[2] It offers no estimate when it would issue a final rule.

---

[1] Unified Agenda of Regulatory and Deregulatory Actions, Spring 2021 (June 3, 2021), https://www.reginfo.gov/public/jsp/eAgenda/StaticContent/202104/RiscPreamble.pdf.

[2] *Id.* at https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=1870-AA16.

1

**ARGUMENT**

2

I.   **WSU Has Standing To Sue ED Because The 2020 Regulations Have Deprived It
And Its Members Of A Pre-Existing Procedural Right To A Federal Investigation
Of Its School District By ED**

3

4          WSU agrees with ED (Def.'s Mot. Dismiss at 5-6, ECF 61) that to establish standing "a

5    plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual

6    or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would

7    likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez,* 2021 WL 2599472, at *6

8    (U.S. June 25, 2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).

9

10          WSU and its members have experienced a procedural injury from the 2020 Regulations

11   based on their inability to trigger an investigation of BUSD through ED's administrative complaint

12   system.   These injuries were caused by ED's 2020 Regulations and could be redressed if the

13   provisions of the 2020 Regulations challenged in this lawsuit were set aside.

14

15   A.   **WSU Is Bringing This Suit In Both An Organizational and Representational
Capacity**

16

17          1.   *WSU has a legal existence distinct from its members, and can experience its
own injuries*

18          Citing no authority, ED claims (ECF 61 at 9 & n.6) that WSU cannot possess Article III

19   standing in its own right (as opposed to as a representative of its members) – including its claims

20   of procedural injury – because it is not incorporated.

21          The short answer is that ED is wrong because the U.S. Court of Appeals for the Ninth

22   Circuit has held that an unincorporated association has standing even when it is not suing on behalf

23   of its members.  *See S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 928 (9th Cir. 2014); *see*

24   *also United States v. Mongol Nation*, 370 F. Supp. 3d 1090, 1110 (C.D. Cal. 2019).  Seventy years

25   ago, in *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123 (1951), the Supreme Court

26   likewise sustained the standing of an unincorporated association to sue the federal government to

27

28

vindicate its own rights. *See id*. at 140 & n.14 (plurality); *id*. at 143 (Black, J., concurring); *id*. at 159 (Frankfurter, J., concurring); *id*. at 174-175 (Douglas, J., concurring).

The longer answer is that, contrary to ED's claim, WSU has a distinct legal existence under California law. Pursuant to California Education Code § 48930, Berkeley Unified School District ("BUSD") has recognized WSU as a "student body association" (Compl. ¶ 16). Such student body associations "are to be treated as separate entities from school districts" and may, for example, enter into their own contracts and leases. 14 Cal. Att'y Gen. Op. 210, 211 (1949); 37 Cal. Att'y Gen. Op. 154, 155 (1961).[3]

It is true that WSU is not incorporated. But under California law an "unincorporated association" – which is defined as "an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose," Cal. Corp. Code § 18035 – "possess[es] many characteristics of other legal entities" such as corporations. *Vosburg v. Cty. of Fresno*, 268 Cal. Rptr. 3d 591, 604 (Cal. App. 2020). This includes the right to sue in its own name, *see* Cal. Civ. Proc. Code § 369.5(a), and to hold and enforce rights that are distinct from the rights of its members. *See Mkt. Lofts Cmty. Assn. v. 9th St. Mkt. Lofts, LLC*, 166 Cal. Rptr. 3d 469, 475 (Cal. App. 2014); *H&M Assocs. v. City of El Centro*, 109 Cal. App. 3d 399, 409 (Cal. App. 1980); *see also Vosburg*, 268 Cal. Rptr. at 604 (unincorporated associations may seek an injunction against a public nuisance or unfair competition). As an unincorporated association, WSU thus has a significant legal existence apart from its members.[4]

---

[3] We have attached these opinions as Exhibits A and B to this memorandum because they are not available through Westlaw.

[4] The California Secretary of State website cited by ED (ECF 61 at 9) offers a search of "corporations, limited liability companies, and limited partnerships of record." https://businesssearch.sos.ca.gov/. Unincorporated associations are permitted, but not required, to file information with the California Secretary of State. *See* Cal. Corp. Code § 18200(a) (unincorporated association "may file"); *Mosby v. Superior Ct.,* 117 Cal. Rptr. 588, 595 (Cal.

2. *WSU can sue as a representative of its members*

An association has standing to sue on behalf of its members if "(1) its individual members would have standing in their own right, (2) the interests at stake in the litigation are germane to the organization's purposes, and (3) the case may be litigated without participation by individual members of the association." *California Trucking Ass'n v. Bonta*, 996 F.3d 644, 652 n.7 (9th Cir. 2021). WSU meets these requirements. As discussed below in Parts I.B and I.C, just like WSU, its individual members have experienced a procedural injury that could impact their concrete interest in a non-discriminatory learning environment free from disturbance and annoyances and imminent apprehension of offensive contact. Addressing these procedural injuries and concrete interests is germane to WSU's purposes (Compl. ¶ 16). And because the only relief sought is to set aside certain regulations, individual participation is not required.

Citing no authority, ED asserts (ECF 61 at 9 n.6), that WSU cannot rely on its members' standing because WSU did not identify a particular member in its complaint. That is not the law in the Ninth Circuit. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *Oklevueha Native American Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 839 (9th Cir. 2012); *Service Women's Action Network v. Mattis*, 352 F. Supp. 3d 977, 986 (N.D. Cal. 2018) (Chen, J.) (association had standing, "for pleading purposes," when its complaint alleged that it "has members" in the Marine Corps "who currently are experiencing the harm (*e.g.,* harassment)"); *League of Women Voters of California v. Kelly*, No. 17-CV-02665-LB, 2017 WL 3670786, at *8 (N.D. Cal. Aug. 25, 2017) ("The court cannot discern why—at the pleadings stage—the identity of particular members is required for fair notice of the claims."). WSU has standing to sue on behalf of its members.

---

App. 1974) (interpreting predecessor statute). It is thus doubly irrelevant that WSU does not appear on that Secretary of State's list.

1

2

### B.   ED Has Injured WSU In Both Its Organizational And Representational Capacities By Denying It A Procedural Right

3

4

The alleged immediate injury in this case is a procedural one – the inability of WSU for

5

itself and for its members to take advantage of an administrative enforcement scheme that

6

previously was available to it to protect WSU's and its members' interests.  *Cf. Young v. Trump*,

7

506 F. Supp. 3d 921, 935 (N.D. Cal. 2020) (Chen, J.) (holding that "complete freeze" in

8

consideration of visa applications was the denial of an "important procedural right" that constituted

9

"concrete and particularized injury-in-fact"), *appeal filed*, No. 21-15233 (Feb. 10, 2021).

10

ED's longstanding regulations require it to investigate any administrative complaint it

11

receives from a member of the public that indicates discrimination against any person or class of

12

persons.  The regulations start: "Any person who believes himself or any specific class of

13

individuals to be subjected to discrimination prohibited by this part may by himself or by a

14

representative file with the responsible Department official or his designee a written complaint."

15

34 C.F.R. § 100.7(b); *see id.* § 106.71 (Title IX regulation incorporating the procedural provisions

16

of § 100.7).  In turn, a "responsible Department official or his designee *will* make a prompt

17

investigation whenever a . . . complaint . . . indicates a possible failure to comply with this part.

18

*Id.* § 100.7(c) (emphasis added).  The regulation's use of the word "will" makes clear that ED's

19

20

obligation to a complainant to make a prompt investigation is mandatory.  *See United States v.*

21

*UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1382 (Fed. Cir. 2009) ("'Will' is a mandatory

22

term, not a discretionary one."); *see also* 41 Fed. Reg. 18,394, 18,394 (May 3, 1976) (withdrawing

23

proposal to replace § 100.7 with a regulation "under which the Department would investigate

24

complaints on a discretionary basis").

25

If ED's investigation "indicates a failure to comply" with its regulations, ED "will so

26

27

inform the recipient and the matter will be resolved by informal means whenever possible."  34

28

C.F.R. § 100.7(d)(1).  To avoid the threat of fund termination, school districts almost always are willing to settle with the Department during or after an administrative investigation by agreeing to address sexual harassment through individual relief and systemic change. (Compl. ¶ 24).

Courts have found organizational standing based on a procedural injury under extremely similar regulatory regimes.  In *Committee for Full Employment. v. Blumenthal*, 606 F.2d 1062 (D.C. Cir. 1979), organizational plaintiffs sued a federal agency, the Office of Revenue Sharing, for failing to act on their complaints that recipients of federal funds had engaged in race discrimination against their members.  *Id.* at 1063 n.2.  The agency had adopted regulations, nearly identical to those adopted by ED,[5] that the court interpreted as "entitl[ing] complainants to a review of their complaint by the Secretary and, if the complaint raises a colorable claim of violation, a prompt investigation."  *Id.* at 1065.  The D.C. Circuit held that the allegations were "sufficient to confer standing on the complaining [plaintiff organizations] to challenge [the agency's] inaction."  *Id*.  This is because plaintiffs "are injured if this procedural right is denied them, regardless of whether their complaint is ultimately found meritorious."  *Id.*  The Court noted that "[o]n many occasions we have reviewed agency action or inaction at the request of a party who alleged that its procedural rights (as created either by the agency's own regulations, or the Administrative Procedure Act) had been violated."  *Id*. at 1065 n.11.  This was particularly true when the

---

[5] The regulations interpreted by the D.C. Circuit provided:

> Any person who believes anyone has been subjected to discrimination prohibited by this subpart, may personally or by a representative file with the Secretary a written statement setting forth the nature of the discrimination alleged and the facts upon which the allegation is based . . ..

> (b) Investigations . . .. If the Secretary has reason to believe that the complaint shows that a recipient government has failed to comply with the provisions of this subpart, he will cause a prompt investigation to be made . . .

*Id.* at 1064.

procedural injury related to an underlying injury from discrimination experienced by the organization's members. *Id*. at 1068 (Tamm, J., concurring). The Ninth Circuit cited this decision with approval in *Dellums v. Smith*, 797 F.2d 817, 821 (9th Cir. 1986).

Similarly, in *Californians for Renewable Energy v. EPA*, No. 13-3292, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018), environmental organizations filed administrative complaints with the EPA alleging that various recipients of EPA funds had discriminated on the basis of race in violation of Title VI of the Civil Rights Act of 1964. EPA's regulations provided that the agency would issue a preliminary determination within 180 days, but the agency failed to comply with the deadline, and the organizations sued under the APA to require EPA to issue determinations. The district court rejected the EPA's argument that the organizations lacked standing, reasoning that the organizations had alleged a "procedural injury" resulting from "the violation of a statute or regulation that guarantees a particular *procedure*." *Id*. at *7 (emphasis added).

*Johnson v. EEOC*, No. 94-c-6617, 1995 WL 374058 (N.D. Ill. June 21, 1995), found standing in a case very similar to this one. In that case, EEOC had promulgated a regulation permitting age discrimination in certain apprenticeship programs. Plaintiffs, who had been subjected to age discrimination by such a program, sued the EEOC to invalidate the regulation, arguing the EEOC's regulation injured them because it "denies the plaintiffs the investigative, conciliatory, and enforcement process that the EEOC offers in other cases of alleged age discrimination." *Id*. at *5. The district court agreed plaintiffs had experienced injury at the hands of the EEOC, explaining "that they suffer an 'injury in fact' for standing purposes because they were denied a procedural right designed to vindicate the interest that is the ultimate basis for their standing—freedom from age discrimination." *Id*. at *5 n.6. "Denial of a procedural right constitutes an injury in fact if the procedures are designed to protect an interest that is the ultimate basis of the plaintiff's standing." *Id*. at *5 (citing *Lujan* and *Comm. for Full Employment*).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Contrary to ED's suggestion (ECF 61 at 8-9), this procedural injury is not "speculative" because ED had not yet rejected WSU's administrative complaint at the time this lawsuit was filed. WSU's administrative complaint alleges that BUSD engaged in actions and inactions that, on their face, do not violate the 2020 Regulations (Compl. ¶ 77). If ED adheres to those regulations, as it must, then it will not open an investigation of those allegations.

Indeed, the only allegation in WSU's administrative complaint that ED even hints might state a claim under the 2020 Regulations (ECF 61 at 14) is that BUSD was "fail[ing] to take steps to discover and remediate" sexual harassment that took place in "Zoom 'breakout rooms'" (Compl. ¶ 77). ED argues that it might investigate that claim in its administrative process because such "breakout rooms" fall within the scope of the 2020 Regulations. Be that as it may, the 2020 Regulations only require BUSD to take action if it has "actual knowledge" of the harassment. The alleged failure "to take steps to discover" the sexual harassment in the first place is not a cognizable claim under the 2020 Regulations – although it was previously. Thus, WSU and its members can no longer benefit from ED's administrative process to address even this component of its administrative complaint.

### C.   The Violation Of WSU's Procedural Right Could Impair The Concrete Interests of WSU And Its Members

When a procedural injury is involved, the Supreme Court has required a plaintiff to show only that the violation of the procedural right "could impair a separate concrete interest." *Lujan*, 504 U.S. at 572. In cases involving injury to the aesthetic enjoyment of environment and animals, for example, the potential impairment to a plaintiff's "concrete interest" can be shown by a plaintiff simply alleging current or imminent physical proximity to the location where the loss might occur. *Lujan*, 504 U.S. at 572 (plaintiffs would have standing to challenge the government's failure to comply with a "procedural requirement for an environmental impact statement before a federal

facility is constructed next door to them"); *id.* at 565-566 ("a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity").  Similarly, a plaintiff has a "concrete interest" in what services are provided at a facility if it would like to use those services at that location.  *See Valentini v. Shinseki*, 860 F. Supp. 2d 1079, 1093 (C.D. Cal. 2012).  By analogy, plaintiffs have a concrete interest in the learning environment at the school they are attending.

The Supreme Court's recent decision in *TransUnion* held that an injury is "concrete" if there is "a close historical or common-law analogue for their asserted injury."  2021 WL 2599472, at *7, although the injury need not be "an exact duplicate" of a harm traditionally recognized, *id.* at *11.  Disruption of a learning environment through physical and verbal misconduct is akin to a common law nuisance, which treated disturbance and annoyance of people on a property as actionable injury;[6] a common law assault, which treated imminent apprehension of a harmful or offensive contact by another person as actionable injury – even if there was no physical contact;[7] or a common law battery.  Similarly, the Supreme Court has long recognized people's concrete

---

[6] *See, e.g., Baltimore & P. R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 329-30 (1883) (railroad liable for nuisance to church when its operations "disturbed and annoyed the congregation"; "Whatever prevents the comfortable use of the property for [the purpose public worship] by the members of the corporation, or those who, by its permission, unite with them in the church, is a disturbance and annoyance; as much so as if access by them to the church was impeded and rendered inconvenient and difficult. The purpose of the organization is thus thwarted."); *Virginia Coll., LLC v. SSF Savannah Properties, LLC*, 93 F. Supp. 3d 1370, 1378 (S.D. Ga. 2015) ("Because the College has shown that these ordinary individuals, their students, and their customers have been hurt, inconvenienced, and damaged by the operation of the [in-door go-kart] racetrack [operated above their classrooms], the College has shown a substantial likelihood that it will prove at trial that the operation of the racetrack constitutes a nuisance.").

[7] For cases holding that various forms of verbal sexual harassment can constitute assault, *see, e.g., Dao v. Faustin*, 402 F. Supp. 3d 308, 319 (E.D. Va. 2019); *Kilduff v. Cosential, Inc.*, 289 F. Supp. 2d 12, 21 (D. Conn. 2003); *Stricker v. Cessford Const. Co.*, 179 F. Supp. 2d 987, 1020 (N.D. Iowa 2001); *Rogers v. Loews L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981).

1  interest in not being "personally subject to discriminatory treatment." *Allen v. Wright*, 468 U.S.

2  737, 757 n.22 (1984); *see TransUnion,* 2021 WL 2599472, at *7 (citing *Allen*).

3  WSU can rely on its members' concrete interest in a non-discriminatory learning

4  environment free from disturbance and annoyances and imminent apprehension of offense contact.

5  *See* page 10, *supra*.  WSU also has its own concrete interest in the learning environment of BHS.

6  BUSD is WSU's home.  WSU exists as a separate juridical entity, in part, because of its recognition

7  by BUSD, *see* page 8, *supra*; its members are all enrolled in BUSD; and it devotes its resources to

8  addressing the environment at BHS.  The 2020 Regulations that WSU challenges require less of

9  BUSD than ED previously required and resulted in WSU reallocating its time and resources to

10  educate the school community and administrators (Compl. ¶ 80).  *See Service Women's Action*

11  *Network v. Mattis*, 352 F. Supp. 3d 977, 985 (N.D. Cal. 2018) (Chen, J.) ("the Ninth Circuit has

12  specifically found that diversion of resources for 'outreach campaigns' and educating the public

13  establishes a diversion of resources sufficient to establish organizational standing"); *see also Fair*

14  *Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1224-26 (9th Cir.

15  2012) (Ikuta, J., concurring and dissenting) (collecting Ninth Circuit cases holding that

16  "organizations were 'injured' for standing purposes by the very expenses that advanced their

17  mission").

18  Finally, because WSU seeks injunctive relief, it may establish concrete injury by showing

19  that it or its members are "exposed to a risk of future harm." *TransUnion,* 2021 WL 2599472, at

20  *12.  Here, as alleged in the Complaint, the 2020 Regulations vastly change the incentives of

21  schools to prioritize preventing and deterring sexual harassment.  Under the challenged provisions,

22  a school's failure to effectively prevent and promptly respond to sexual harassment will be much

23  less likely to carry any consequences.  In fact, a school may be incentivized to avoid learning about

24  the harassment its students experience, in order to avoid triggering any obligations under the

Regulations.  ED acknowledged in the preamble to the 2020 Regulations that schools under the new Regulations will be required to engage in fewer investigations of sexual harassment, *see* 85 Fed. Reg. at 30,557/3, and thus will find fewer violations and provide fewer remedies.  Although ED refused to acknowledge it, the inevitable result of fewer investigations and fewer remedies will be an increase in the amount of sexual harassment, as would-be harassers will no longer be deterred by fear of being caught and disciplined, or have the opportunity to learn to change their behavior thanks to an educational intervention.  (Compl. ¶¶ 35, 67-68, 70, 72).  This, in turn, increases the risk that WSU and its members will experience a hostile learning environment.

### D.    WSU's And Its Members' Injuries Were Caused By The 2020 Regulations And Could Be Redressed If The 2020 Regulations Were Set Aside

ED does not expressly challenge the causation or redressability prongs of standing, but suggests (ECF 61 at 7 n.5) that it is merely "speculative" whether the investigation of BUSD would lead to changes in the school environment.  But "[a] showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry, causation and redressability."  *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008).  "When alleging the deprivation of a procedural right, 'instead of needing to establish that compelling the agency to follow the correct procedure *would* lead to a substantive result that favors the petitioner's concrete interests, the petitioner need only show that its concrete interests *could* be better protected.'"  *Young v. Trump*, 506 F. Supp. 3d 921, 935 (N.D. Cal. 2020) (Chen, J.) (citation omitted), *appeal filed*, No. 21-15233 (Feb. 10, 2021).

"Moreover, redressability does not require a showing that the plaintiff will obtain complete relief for all injuries alleged.  Nor need the plaintiff show that judicial relief will remedy any one injury entirely, for '[i]t is enough that the "risk [of the alleged harm] would be reduced to some extent if [the plaintiffs] received the relief they seek."'"  *Id.* (citations omitted; brackets in

original); *see also Californians for Renewable Energy*, 2018 WL 1586211, at *8. As alleged in the Complaint, if ED opens an investigation and finds the alleged violations, BUSD would be required to remedy them or give up its federal funds (Compl. ¶ 24). Thus, "but for" the 2020 Regulations, there is "a high probability that at least some Plaintiffs would see meaningful progress" in the improvement of the learning environment at BUSD. *Young,* 506 F. Supp. 3d at 936.

## II.     WSU's Claim Is Ripe

ED argues (ECF 61 at 11-12) that WSU's claim is not ripe. It acknowledges that its ripeness argument is really just a rehash of its standing argument. *Id.* (citing *Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014)). Just as ED relies on its standing arguments "explained above" (*id.* at 12) in support of its ripeness argument, WSU relies on its arguments above to rebut ED's ripeness argument. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) ("[I]n measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing."). Contrary to ED's repeated assertions, WSU's alleged deprivation of a procedural right amounts to a concrete injury-in-fact, *see supra* pages 11-17, and thus its claims are ripe for adjudication, *see, e.g. California v. Bernhardt*, 460 F. Supp. 3d 875, 890-93 (N.D. Cal. 2020) (finding that plaintiffs' claims were ripe for adjudication because they had established a "procedural injury-in-fact").

## III.    A Suit Against BUSD Alleging Violations Of Title IX Is Not An Adequate Remedy For ED's Constrictions Of Its Administrative Enforcement Of Title IX

Boldly, ED argues that WSU's ability to sue BUSD in court for violating Title IX is an adequate alternative remedy for ED's decision about the substantive standards it will use in its administrative enforcement process, and thus precludes review under the Administrative

Procedure Act's ("APA") exemption for actions for which there is another "adequate remedy in court." 5 U.S.C. § 704.

"When considering whether an alternative remedy is 'adequate' and therefore preclusive of APA review, [courts] look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *Citizens for Responsibility & Ethics in Wash. v. United States Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017). Although the relief need not be identical to the APA, *id.* at 1245, the alternative remedy will not be adequate under the APA if it offers only "doubtful and limited relief," *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988).

Prior to 2020, the standards ED used to determine compliance with Title IX in the administrative process were more demanding of schools than those used by courts in adjudicating private claims. For example, as ED itself explained, prior to the 2020 Regulations, ED would find a violation if the harassment were "severe" or "pervasive," while a court would require that the harassment be "severe" *and* "pervasive," 85 Fed. Reg. at 30,036 n.88; ED would find a violation if the school district should have known of the harassment and failed to respond correctly, while a court would require a showing of actual knowledge and a deliberately indifferent response, *id.* at 30,041/1, /3, 30,044/3.

The 2020 Regulations sought to eliminate those differences between the administrative and judicial standards by changing ED's administrative standards to purportedly match the judicial standards – at least with regards to the provisions challenged by WSU. WSU's injury is its current inability to invoke procedures that use the prior administrative standards. Suing in court under judicial standards identical to the 2020 Regulations offers no relief for injury. To the contrary, the alignment of the administrative and judicial standards shows that the only adequate remedy for

WSU is invalidation of the 2020 Regulations and return to the prior administrative enforcement standards.

The district court in *Californians for Renewable Energy* reached a similar conclusion in a suit against the EPA alleging that it was not timely processing claims alleging that recipients of its federal funds were engaging in conduct that had an unjustified disparate impact on the basis of race in violation of Title VI regulations. EPA argued that plaintiffs had an adequate alternative remedy because they could simply sue the fund recipients under Title VI. The court noted, however, that the private right of action under Title VI only applied to claims of disparate treatment, and claims of disparate impact could only be heard by the agency. "Plaintiffs thus have no means other than the APA to ensure that the agency is enforcing the regulations appropriately." 2018 WL 1586211, at *11; *see also SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019 WL 1434144, at *7 (N.D. Cal. Mar. 29, 2019) ("Plaintiffs seek to vacate the 2017 Guidance and are claiming injury – frustration of organizational mission and diversion of resources – resulting from the *issuance* of the Guidance, not necessarily its implementation by schools. Based on Plaintiffs' alleged injuries and the nature of the relief sought, the alternative remedy offered by the Department – suing individual schools – offers only 'doubtful and limited relief,' and is therefore an inadequate remedy under the APA.").

ED notes (ECF 61 at 13) that WSU explained that it waited to see how BUSD responded to the 2020 Regulations before bringing this suit, which ED suggests means that WSU could obtain relief from BUSD under Title IX. That is wrong. WSU waited because, in some aspects, the 2020 Regulations permit school districts to do what they were previously required to do under ED's administrative requirements. Thus, for example, even though the 2020 Regulations no longer *require* a school to respond to all sexual harassment that occurs off-campus but has deleterious effects on a student's on-campus environment, school districts like BUSD could have elected to

respond such off-campus harassment.  But BUSD did not – it has elected to go no further than the 2020 Regulations require in this regard (Compl. ¶ 77).  *See also* Megha Krishnan, *Berkeley Unified School District addresses sexual harassment concerns*, The Daily Californian (Dec. 13, 2020) (BUSD "cannot discipline students regarding events that took place off campus due to Title IX policy"), https://www.dailycal.org/2020/12/13/berkeley-unified-school-district-addresses-sexual-harassment-concerns/.  And under the 2020 Regulations, ED will no longer investigate and remedy that failure.  A suit against BUSD will not redress the injury WSU alleges: deprivation of a procedural right to draw on ED's administrative enforcement.

## CONCLUSION

For the above reasons, WSU respectfully asks the Court to deny ED's motion to dismiss.

Date: July 15, 2021                                        Respectfully submitted,

Seth M. Galanter*                                          Adele P. Kimmel (CA Bar No. 126843)
National Center for Youth Law                              Alexandra Z. Brodsky*
712 H Street NE, Suite 32020                               Public Justice
Washington, DC 20002                                       1620 L Street NW, Suite 630
Ph: (202) 868-4781                                         Washington, DC 20036
Fax: (510) 835-8099                                        Ph: (202) 797-8600
Email: sgalanter@youthlaw.org                              Fax: (202) 232-7203
                                                           Email: akimmel@publicjustice.net
                                                                  abrodsky@publicjustice.net

  */s/ Lauren A. Khouri*
Linda M. Correia*                                          John C. He (CA Bar No. 328382)
Lauren A. Khouri*                                          Public Justice
Correia & Puth, PLLC                                       475 14th Street, Suite 610
1400 16th Street NW, Suite 450                             Oakland, CA 94612
Washington DC 20036                                        Ph: (510) 622-8150
Ph: (202) 602-6500                                         Fax: (202) 232-7203
Fax: (202) 602-6501                                        Email: jhe@publicjustice.net
Email: lcorreia@correiaputh.com
       lkhouri@correiaputh.com                             * *admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send a notification of the filing to counsel in this case.

/s/ Lauren A. Khouri