# EXHIBIT A

# OPINIONS OF THE ATTORNEY GENERAL OF CALIFORNIA

*with* INDEX DIGEST

VOLUME 14
*July-December, 1949*

EDITED BY
WARREN L. HANNA

*Published and Distributed*
*by*
CALIFORNIA LEGAL PUBLICATIONS
1029 POMONA AVENUE, ALBANY 6, CALIFORNIA

matically become a part of the one union high school district in San Bernardino County and the remaining territory annexed to the other elementary school district would automatically become a part of the second union high school district in the county.

The result of such proceedings, if accomplished, would mean that the territory of the joint elementary school district would be reduced in size and that the elementary pupils in the annexed territory would normally no longer attend the elementary schools of the said joint elementary school district.

---

Opinion No. 49-199—November 9, 1949

**SUBJECT:** STADIUM RENTAL: Power to rent stadium owned by National Orange Show for use for high school football games is possessed by the high school student body association, but not by the governing board of the high school district.

**Requested by:** COUNTY COUNSEL, SAN BERNARDINO COUNTY.

**Opinion by:** FRED N. HOWSER, Attorney General.
T. A. Westphal, Jr., Deputy.

The County Counsel of San Bernardino County has presented the following questions:

1. Does a high school district student body association have legal authority to enter into a particular agreement to rent the stadium owned by National Orange Show where high school football games will be held?
2. Does the governing board of the high school district have this power?

The conclusion reached may be summarized as follows:

The high school student body association has the power but the governing board of the high school district does not.

## ANALYSIS

National Orange Show in San Bernardino County owns a stadium suitable for football contests. One or more of the high schools in the county is desirous of renting the stadium where home high school football games will be held. We have been presented with a form of agreement covering the proposed rental. The agreement form describes the stadium in question. The National Orange Show agrees to put the playing field in proper order for football games and to provide suitable facilities so that football games may be conducted in the stadium on specified dates. The agreement particularly provides that the lessee assumes full responsibility and liability for the conduct of students, agents and employees, will take necessary and reasonable steps to protect against injury or damage to persons or property, will provide adequate public liability and property damage insurance, will repair and pay any damage to the property or equipment of lessor, and will save and hold harmless lessor from any liability occurring as a result of the occupancy of the premises.

Student body organizations at public schools are authorized and recognized by Education Code sections 16141 to 16144 inclusive. By these sections the governing board of a school district may authorize an organization composed of students attending the schools of the district "to maintain such activities as may be approved by the governing board" (Education Code, sec. 16141). Each such student body association is "subject to the control and regulation of the governing board of the district" and "shall have as its purpose the conduct of activities on behalf of students" approved by the school authorities (Education Code, sec. 16142). The governing board of the school district "shall provide for the supervision and auditing of all funds raised" by such student body organization, which cost is a proper charge against the funds of the district (Education Code, sec. 16142). The funds of a student body organization shall be deposited in a bank approved by the school board and must be expended subject to procedures approved by the school board or its designated employee or official (Education Code, sec. 16144).

The above is the extent of specific legislation in the Education Code governing student body organizations. We have found no recorded cases commenting on the nature or scope of authority of such organizations.

We think it clear, however, that the above legislation indicates that student body organizations are to be treated as separate entities from school districts. School districts, through their governing board, are to exercise a guiding control over them, but, save for certain approvals and general regulations, the organizations are comparatively free to function and "conduct activities on behalf of the students."

The promotion of a football game to be played by the school football team would appear to be a proper student body activity. Likewise, renting a stadium wherein to play the game would be a proper activity.

It has been suggested that since the student body would be composed almost exclusively of minors, such a group could not enter into the proposed agreement. There is no law that forbids minors from entering into a contract such as that in question. The only problem is whether such a contract is enforceable against minors, but that problem is not here presented. We conclude therefore that a student body organization may enter into the proposed agreement.

We next consider whether it is proper for the governing board of a school district to enter into the proposed agreement on behalf of the school district.

Education Code section 1029 authorizes the governing board of any school district to insure against the liability of the district and against the personal liability of the members of the board and of the officers, agents and employees of the board, for damages by reason of death or injury to person or property, as the result of any negligent act of the district or of a member of the board, or any officer, agent, or employee when acting within the scope of his office, agency or employment.

This power does not in our opinion authorize the use of district funds to pay for insurance covering the board's liability imposed by the rental agreement in question. Furthermore, we do not believe that the school board can properly agree

to "save and hold harmless lessor from any and all loss or liability, arising directly or indirectly out of lessee's use of said premises" or to agree to "repair and pay for any damage to the property or equipment of lessor, irrespective of negligence, contributory or otherwise, on the part of lessor, resulting from riot, pranks, misconduct, vandalism, or mischief . . . as a consequence directly or indirectly of such game or contest . . ."

These provisions would place the district as lessee in the role of an indemnitor or surety, contrary to the provisions of Article IV, section 31 of the Constitution of California. Thus in *Miller* v. *Johnson,* 4 Cal. 2d 205, the Court held:

"As to the pledging of credit, this precise question has received the attention of a few courts, and an important distinction has been recognized. If the statute or policy subjects the political subdivision to a possible *unlimited assessment* to meet losses, it is objectionable under such constitutional provisions."

Since the assumption of liability in the proposed agreement is unlimited, we conclude that the agreement in this respect would be *ultra vires* as to the school district.

---

Opinion No. 49-205—November 14, 1949

**SUBJECT:** VETERANS MEMORIAL HALL may be used as a place for sale, serving and consumption of alcoholic beverages, if a license is granted and the Board of Supervisors approves.

**Requested by:** DISTRICT ATTORNEY, COUNTY OF IMPERIAL.

**Opinion by:** FRED N. HOWSER, Attorney General.
Norman H. Sokolow, Deputy.

The District Attorney of the County of Imperial has presented the following question:

May a Veterans Memorial Hall, provided and maintained by the county pursuant to section 1262 of the Military and Veterans Code, be used as a place for the sale, serving and consumption of alcoholic beverages, assuming a license is granted?

The conclusion reached is summarized as follows:

1. There is no legal prohibition against such use.
2. The Board of Supervisors, as the governing body having management and control of such buildings, must in its sound discretion decide whether such use would detract from the primary purposes for which the building was erected and is maintained.

## ANALYSIS

The facts, as presented by the District Attorney, are as follows:

"The Board of Supervisors of Imperial County pursuant to Section 1262, Military and Veterans Code, caused to be erected in the Cities of El Centro, Brawley and Holtville, Veterans Memorial Halls. The cost of the construction of these buildings was paid by special tax raised by the