BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>Defendant. | Case No. 21-cv-1626-EMC<br><br>**Defendant's Reply in Support of Its Motion to Dismiss**<br><br>Hon. Edward M. Chen<br>Hearing: August 5, 2021, 1:30 p.m.<br><br>Phillip Burton Federal Building & United States Courthouse, Courtroom 5, 17th Fl., 450 Golden Gate Ave., San Francisco, CA 94102 |

**TABLE OF CONTENTS**

I.    The Complaint Should Be Dismissed Because Plaintiff Lacks Article III Standing.......................1

   A.    Plaintiff's Belated Allegation of Procedural Injury Is too Speculative to
         Constitute an Article III Injury. ......................................................................................1

   B.    Plaintiff May Not Establish Injury by Engaging in Activities That It Would
         Normally Pursue as Part of Its Organizational Mission...............................................6

II.   The Complaint Should Be Dismissed Because the Case Is Unripe. .................................7

III.  Plaintiff Has Failed to State an APA Claim Because It Has an Adequate Alternative
      Remedy Against BUSD. ................................................................................................8

CONCLUSION...................................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Acura of Bellevue v. Reich*,
  90 F.3d 1403 (9th Cir. 1996) ............................................................................. 7

*Am. Diabetes Ass'n v. U.S. Dep't of Army*,
  938 F.3d 1147 (9th Cir. 2019) ........................................................................... 7

*California v. Bernhardt*,
  460 F. Supp. 3d 875 (N.D. Cal. 2020) ............................................................... 8

*Californians for Renewable Energy v. EPA*,
  2018 WL 1586211 (N.D. Cal. Mar. 30, 2018)............................................... 4, 9

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).................................................................................. 2, 3, 5, 7

*Committee for Full Employment v. Blumenthal*,
  606 F.2d 1062 (D.C. Cir. 1979) ......................................................................... 4

*Ctr. for Biological Diversity v. Mattis*,
  868 F.3d 803 (9th Cir. 2017) ............................................................................. 1

*Equal Means Equal v. ED*,
  450 F. Supp. 3d 1, 7–9 (D. Mass. 2020) ............................................................ 7

*Gebser v. Lago Vista Independent Sch. District*,
  524 U.S. 274 (1998) ............................................................................................ 8

*Gonzalez v. U.S. Dep't of Homeland Sec.*,
  500 F. Supp. 3d 1115 (E.D. Cal. 2020).............................................................. 5

*Houseton v. Nimmo*,
  670 F.2d 1375 (9th Cir. 1982) ........................................................................... 5

*Johnson v. EEOC*,
  1995 WL 374058 (N.D. Ill. June 21, 1995) ....................................................... 5

*Know Your IX v. DeVos*,
  2020 WL 6150935 (D. Md. Oct. 20, 2020) .................................................... 2, 6

*National Wrestling Coaches Ass'n v. Dep't of Educ.*,
  366 F.3d 930 (D.C. Cir. 2004)........................................................................ 8, 9

*Navajo Nation v. DOI*,
  876 F.3d 1144 (9th Cir. 2017) ........................................................................... 3

*New York v. Dep't of Educ.*,
   477 F. Supp. 3d 279 (S.D.N.Y. 2020) ............................................................................. 9

*Porter v. Jones*,
   319 F.3d 483 (9th Cir. 2003) ............................................................................................ 7

*Service Women's Action Network v. Mattis*,
   352 F. Supp. 3d 977 (N.D. Cal. 2018) ......................................................................... 6, 7

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) .......................................................................................... 7

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) .......................................................................................................... 7

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .................................................................................................. 2, 5

*Washington Legal Foundation v. Alexander*,
   984 F.2d 483 (D.C. Cir. 1993) ....................................................................................... 8, 9

*Women's Equity Action League v. Cavazos*,
   906 F.2d 742 (D.C. Cir. 1990) .......................................................................................... 8

*Young v. Trump*,
   506 F. Supp. 3d 921 (N.D. Cal. 2020) .............................................................................. 4

**STATUTES**

20 U.S.C. § 1682 ..................................................................................................................... 3

**REGULATIONS**

34 C.F.R. § 100.7 ................................................................................................................. 2, 3

34 C.F.R. § 100.8 ..................................................................................................................... 3

**OTHER AUTHORITIES**

*Questions and Answers on the Title IX Regulations on Sexual Harassment* (July 20, 2021),
   https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf. ........................ 4, 9

U.S. Dep't of Education Office for Civil Rights, Case Processing Manual (effective Aug. 26, 2020),
   https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf. ........................................ 2, 3

1    There is no present case or controversy for this Court to adjudicate. Plaintiff, a student association,

2  bases its standing on its concern that, at some point in the future, Defendant, the Department of Education,

3  may not resolve an administrative complaint to its satisfaction. But the law is clear that such speculation

4  does not give rise to an Article III injury or a case ripe for adjudication. And now, for the first time,

5  Plaintiff argues in its opposition brief that it has incurred a procedural injury based on its inability to

6  trigger an investigation through the Department's administrative complaint process. The Court should

7  reject that theory both because it is not in the Complaint (and thus cannot form the basis of standing) and

8  because it is insufficiently concrete to amount to an Article III injury. Further, even if the Court determines

9  that it has jurisdiction—which it should not—the availability to Plaintiff of an adequate alternative remedy

10  through a lawsuit against the Berkeley Unified School District (BUSD) bars judicial review under the

11  Administrative Procedure Act.

12  **I.    The Complaint Should Be Dismissed Because Plaintiff Lacks Article III Standing.**

13    Plaintiff does not allege an Article III injury that is certainly impending because the harm it pleads

14  is contingent on uncertain future events. Moreover, Plaintiff fails to allege any voluntary diversion of

15  resources. At most, Plaintiff identifies activities that it normally pursues as part of its organizational

16  mission.[1] But actions that an organization would normally undertake cannot form the basis of an Article

17  III injury.

18    **A.    Plaintiff's Belated Allegation of Procedural Injury Is too Speculative to Constitute an
         Article III Injury.**
19

20    Plaintiff's belated attempt to reframe its purported injury in fact as a procedural injury lacks merit.

21  The complaint never mentions "procedural injury" nor invokes any alleged "procedural right," and

22  Plaintiff may not make such allegations for the first time in an opposition brief to a motion to dismiss. *See*

23  *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) (explaining that a plaintiff "bears

24  the burden to establish the elements of standing, which, when challenged in a motion to dismiss, are judged

25

26    [1] The Ninth Circuit has indeed held that in certain circumstances, an unincorporated association
    may establish standing. *See* Pl.'s Opp'n to Dept. of Educ.'s Mot. to Dismiss 8–10, ECF No. 64 [hereinafter
27  Pl.'s Opp'n]. However, for the reasons set forth below, Plaintiff has not plausibly alleged facts in its
    Complaint that would support either organizational or associational standing. Defendant raises the unclear
28  nature of Plaintiff's identity through public records not to suggest that Plaintiff must be incorporated, but
    rather to cast doubt on Plaintiff's ability to allege an organizational injury.

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss
1

based on the *allegations in its complaint*" (emphasis added)).

Even if such allegations were properly before the Court, they would not establish an Article III injury. Where a party's standing rests on future harm, the "threatened injury must be certainly impending to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). The Supreme Court in *Amnesty International USA* rejected the contention by organizational plaintiffs that their alleged harm—an increased risk of communications surveillance—was certainly impending because it was contingent on the occurrence of uncertain future events. *See id*. at 410 (a "highly attenuated chain of possibilities[] does not satisfy the requirement that threatened injury must be certainly impending"). As explained in Defendant's opening brief, Plaintiff here alleges a similarly attenuation chain. Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss at 7–8, ECF No. 61 [hereinafter Def.'s Mem.].

Plaintiff's new argument about its alleged "inability to trigger an investigation of" sexual harassment in the school district "through [the Department's] administrative complaint system," Pl.'s Opp'n 8, is not an Article III injury either. This argument is premised solely on the speculation that the Department's Office for Civil Rights (OCR) might not investigate and resolve the administrative complaint that Plaintiff filed in February of this year to Plaintiff's satisfaction. Def.'s Mem. 7–8. Such a "risk of future harm" is "too speculative to support Article III standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2212 (2021); s*ee also Know Your IX v. DeVos*, 2020 WL 6150935, at *8 (D. Md. Oct. 20, 2020) (finding that organizational plaintiff lacked standing to challenge 2020 Rule because "[a]t this point," the organization's "concerns" about diverting resources "are merely speculative"). Plaintiff does not allege that OCR has dismissed its complaint, has delayed in processing it, or has otherwise refused to proceed. Nor could it—OCR is still evaluating Plaintiff's administrative complaint to determine if the complaint's allegations should be investigated. It would be premature for the Department to state at this time which, if any, of Plaintiff's allegations amount to a violation of Title IX as such a determination requires an investigation of each allegation.

OCR's primary activities include resolving complaints of sex discrimination under Title IX filed by the public. *See* 34 C.F.R. § 100.7(b). To that end, OCR has established procedures for reviewing such complaints. *See generally* U.S. Dep't of Education Office for Civil Rights, Case Processing Manual (effective Aug. 26, 2020), https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf. When OCR

receives an administrative complaint, OCR evaluates the complaint to determine whether the information provided warrants additional review pursuant to the applicable statues and regulations and the Case Processing Manual, including but not limited to an assessment of the timeliness of the complaint and subject matter jurisdiction over the allegations in the complaint. *See id*. art. I. If OCR determines that the complaint meets the criteria for further review, it will open an investigation into the complaint's allegations. *See id*. § 111. If, after investigating a complaint, OCR determines that a recipient is violating Title IX, OCR must first seek to achieve voluntary compliance. *See* 20 U.S.C. § 1682(2) (voluntary compliance); 34 C.F.R. § 100.7(c), (d) (investigation); *id*. § 100.8(d) (voluntary compliance). If voluntary compliance is not achieved, OCR can effectuate compliance with Title IX in one of two ways: (1) it can initiate administrative proceedings to withhold further funds; or (2) it can refer the matter to the Department of Justice with a recommendation to file a civil action to enjoin further violations. *See* 20 U.S.C. § 1682; 34 C.F.R. § 100.8(a). The conclusion of either process could result in the Department's termination of funding, refusal to grant or to continue funding, or decision to take other action authorized by law. *See* 20 U.S.C. § 1682.

Plaintiff seeks to short-circuit OCR's administrative complaint process because OCR's ultimate resolution might be contrary to Plaintiff's preferred outcome. Such conjecture based on uncertain future events does not state Article III injury. *Amnesty Int'l USA*, 568 U.S. at 410–14 (describing speculative chain of events that defeated standing); *Navajo Nation v. DOI*, 876 F.3d 1144, 1163–64 (9th Cir. 2017) (same).

At most, Plaintiff alleges possible future injury by characterizing its administrative complaint as "alleg[ing]" that the school district "engaged in actions and inactions that" Plaintiff believes "do not violate the 2020 Regulations." Pl.'s Opp'n 14 (citing Compl. ¶ 77). This is not enough to establish standing. Plaintiff's conclusion about whether its administrative complaint states a Title IX violation is neither binding on OCR nor indicative of how the agency will resolve the complaint. For example, if OCR opens the case for an investigation pursuant to the Case Processing Manual, OCR will investigate Plaintiff's allegation that the school district permits "unwelcome exposure to others' genitalia" in violation of Title IX, regardless of Plaintiff's characterization that the complaint alleges "harassment that is severe but not pervasive." Compl. ¶ 77. Similarly, if it opens the case for an investigation, OCR will investigate

whether alleged "sexual assaults committed by students with whom the victims share classes and . . . harassing messages sent and received through students' personal phones while students share online classrooms" constitute Title IX violations, regardless of Plaintiff's belief that the fact that these alleged incidents occurred off campus is determinative of whether they constitute such violations. *Id*.[2] What matters is the facts and evidence that OCR obtains to support the allegations, not Plaintiff's conclusory predictions. In short, Plaintiff's characterization of the allegations in its administrative complaint does not dictate the future outcome of OCR's investigation of that complaint.

Nor do any of the cases that Plaintiff cites suggest that an organization may premise procedural injury on the uncertain future outcome of a pending administrative complaint. Pl.'s Opp'n 12–13. Needless to say, a fully-completed freeze in processing of immigrant visa petitions, *Young v. Trump*, 506 F. Supp. 3d 921, 935 (N.D. Cal. 2020), *appeal filed*, No. 21-15233 (9th Cir. Feb. 10, 2021), is a far more certain future action than the actions alleged here. *Committee for Full Employment v. Blumenthal*, 606 F.2d 1062 (D.C. Cir. 1979), is also inapposite. The procedural injury alleged by the organizational plaintiff in that case was that a federal agency had failed to promptly investigate several administrative complaints as required by its regulations "regardless of whether [the] complaint[s are] ultimately found meritorious." *Id*. at 1065. By contrast, here, Plaintiff is neither alleging unreasonable delay in the investigation of its administrative complaint nor a failure to act in accordance with its own regulations. Instead, Plaintiff asserts that the ultimate outcome of its administrative complaint will not be to Plaintiff's satisfaction— which remains a concern about an uncertain possibility at a later point in an administrative process. Similarly, as Plaintiff concedes, the claim asserted by the plaintiffs in *Californians for Renewable Energy v. EPA*, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018), was that the agency had "failed to issue mandatory

---

[2] On July 20, 2021, OCR issued a Question and Answer document clarifying how OCR interprets schools' existing obligations under the 2020 Rule. U.S. Dep't of Educ., Office of Civil Rights, *Questions and Answers on the Title IX Regulations on Sexual Harassment* (July 20, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf. The Q&A demonstrates precisely why Plaintiff's characterizations are not dispositive and are speculative as to OCR's future enforcement intentions. For example, the Q&A indicates that it is a fact-specific inquiry as to whether the 2020 Rule applies to alleged sexual harassment that is perpetrated by a student using a personal electronic device during class. *See id*. at 12 ("As with in-person harassment, 'the factual circumstances of online harassment must be analyzed to determine if it occurred' in circumstances 'over which a school exercised substantial control over the respondent and the context.'").

preliminary findings within 180 days of accepting [the plaintiffs'] respective complaints for investigation," as required by regulation. *Id*. at *8. Unlike in that case, Plaintiff makes no contention here of procedural injury based on unreasonable delay (nor could it).[3] Finally, *Johnson v. EEOC*, 1995 WL 374058 (N.D. Ill. June 21, 1995), is also inapposite. In *Johnson*, the EEOC had dismissed charges of age discrimination filed by the individual plaintiffs because the agency had promulgated a regulation stating that the Age Discrimination in Employment Act did not apply to bona fide apprenticeship programs. *Id*. at *1–2. The plaintiffs then challenged the regulation under the APA. *Id*. at *2. Thus, unlike here, the EEOC had made a final decision to decline to investigate the charges of age discrimination filed by the individual plaintiffs. By contrast, Plaintiff merely speculates as to the outcome of the Department's evaluation of its administrative complaint.[4]

In sum, Plaintiff's contention of procedural injury presents at best "[a]llegations of *possible* future injury" that "are not sufficient" to establish standing. *Amnesty Int'l USA*, 568 U.S. at 409 (citation omitted).[5] Its speculation about future injury cannot provide the basis for standing now. The Court should therefore dismiss for lack of subject matter jurisdiction.

---

[3] A claim of unreasonably delayed agency action under Administrative Procedure Act (APA), which Plaintiff has not asserted, could not proceed either. When analyzing a claim of unreasonable delay, "[a] court may find agency inaction the equivalent of a dismissal or denial of the requested agency action only when the delay is unreasonable and results in serious prejudice to one of the parties." *Houseton v. Nimmo*, 670 F.2d 1375, 1378 (9th Cir. 1982) (citing authority). Plaintiff has made no contention that the Department has unreasonably delayed its investigation of Plaintiff's administrative complaint, nor could it. *See id*. (finding sixteen-month delay in agency administrative review to be unreasonable); *Gonzalez v. U.S. Dep't of Homeland Sec*., 500 F. Supp. 3d 1115, 1128-31 (E.D. Cal. 2020) (finding that complaint alleging that visa applications had been pending for forty-seven months stated claim of unreasonable delay). Plaintiff also cannot plausibly allege "serious prejudice" resulting from the short period of time its administrative complaint has been pending.

[4] Nor may Plaintiff establish injury in fact merely by alleging "that it or its members are 'exposed to a risk of future harm,'" Pl.'s Opp'n 16 (quoting *TransUnion*, 141 S. Ct. at 2210). *TransUnion* did not relax prior Supreme Court precedent such that an allegation of possible future harm now amounts to an Article III injury. Instead, it simply reiterated that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id*. (citing authority). As explained above, Plaintiff has failed to plead injury that is imminent and "certainly impending." *Amnesty Int'l USA*, 568 U.S. at 409.

[5] Because Plaintiff at best only speculates about possible future harm at an unknown later date, there is no need for the Court to determine whether, if Plaintiff had stated a procedural injury, such an injury could have impaired a concrete interest of Plaintiff's. *See* Pl. Opp'n 14–18. Even if Plaintiff had identified such an impairment—which Defendant does not concede—it would be irrelevant because Plaintiff's "standing rests on [asserted] future harm," and its "threatened injury [is not] certainly impending." *Amnesty Int'l USA*, 568 U.S. at 409.

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss

1

2

### B.    Plaintiff May Not Establish Injury by Engaging in Activities That It Would Normally Pursue as Part of Its Organizational Mission.

3    The complaint asserts injury based on the possibility of a voluntary diversion of organizational

4    resources at some future date. *See* Compl. ¶ 80. Specifically, Plaintiff alleges that if the Department were

5    to decide not to open and investigate Plaintiff's administrative complaint in its entirety and provide relief

6    to WSU members, it would have "no choice but to take actions that [would be] both more time consuming

7    and less effective, such as conducting their own investigations into patterns of harassment at Berkeley

8    Unified School District and meeting with school administrators." *Id*. As Defendant explained in its

9    opening brief, this allegation does not state Article III injury for three reasons: (1) it is utterly speculative

10    to assert that the Department will not investigate and resolve Plaintiff's administrative claim against the

11    school district, (2) an organization pleading diversion of resources as its injury must show that it was

12    necessary to divert resources from the organization's normal activities to activities outside of its normal

13    realm, and (3) such an organization must show that it would have suffered some other injury if it had not

14    chosen to divert its resources. Def.'s Mem. 9–11.

15    Plaintiff's opposition brief does not press its assertion that it has suffered injury based on a

16    voluntary diversion of resources. Rather, under the rubric of contending that it has suffered a procedural

17    injury that could impair a concrete interest, Plaintiff contends that the 2020 Rule "resulted in [Plaintiff]

18    reallocating its time and resources to educate the school community and administrators." Pl.'s Opp'n 16.

19    As explained above, Plaintiff does not allege that it has suffered, or imminently will suffer, any procedural

20    injury. *See supra* I.A. And even if the Court were to construe Plaintiff's arguments under this rubric as an

21    independent assertion of injury premised on voluntary diversion of organizational resources, such an

22    assertion would fail.

23    Indeed, the District of Maryland, which dealt with very similar standing allegations, held that

24    organizations lacked standing to challenge the 2020 Rule based on their voluntary decisions to divert

25    resources. *See Know Your IX*, 2020 WL 6150935, at *4–8. Like one of those organizations, "Plaintiff

26    claims that its core mission is carried out through policy advocacy." And there, as here, "[i]f this Court

27    were to allow a party whose organizational mission is to engage in policy advocacy to claim injury on the

28    basis of a need to engage in that exact activity, *any* advocacy group could find standing to challenge laws

when there are changes in policy." *Id*. at \*6; *see also Equal Means Equal v. ED*, 450 F. Supp. 3d 1, 7–9 (D. Mass. 2020) (holding that two advocacy organizations lacked standing to challenge the Department's Title IX guidance for similar reasons).

Moreover, unlike the nonprofit organization in *Service Women's Action Network v. Mattis*, 352 F. Supp. 3d 977 (N.D. Cal. 2018), Plaintiff has not "allege[d] in . . . detail how it has been forced to divert resources in response to" an agency decision that has actually been adopted. *Id*. at 984. Instead, Plaintiff asserts that it "suffer[s] present costs and burdens that are based on a fear" that the Department will not investigate Plaintiff's administrative complaint and resolve the complaint to its satisfaction. *Amnesty Int'l USA*, 568 U.S. at 416. Such a "contention that [Plaintiff has] standing because [it] incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm [Plaintiff] seek[s] to avoid is not certainly impending." *Id*. "In other words, [Plaintiff] cannot manufacture standing merely by inflicting harm on [itself] based on [its] fears of hypothetical future harm that is not certainly impending." *Id*. (citations omitted). Moreover, Ninth Circuit precedent finding organizational standing based on a diversion of resources is premised on a determination that "the plaintiffs were not 'simply going about their "business as usual,"' . . . but had altered their resource allocation to combat the challenged practices." *Am. Diabetes Ass'n v. U.S. Dep't of Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (quoting *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040–41 (9th Cir. 2015)). By contrast, here, in taking such as actions as "conducting . . . investigations into patterns of harassment at [the school district] and meeting with school administrators," Compl. ¶ 80, Plaintiff "did not divert any resources but was merely going about its business as usual." *Am. Diabetes Ass'n*, 938 F.3d at 1155.

Consequently, even if the Court were to construe Plaintiff's assertions regarding its voluntary diversion of resources as alleging a possible independent ground for standing, such an allegation does not state an Article III injury.

## II.    The Complaint Should Be Dismissed Because the Case Is Unripe.

Defendant agrees with Plaintiff that "[i]n measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." Pl.'s Opp'n 18 (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). However, a claim is not ripe if it depends upon "contingent

1   future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide*

2   *Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (citation omitted)). As explained above, Plaintiff's claim

3   of procedural injury depends on contingent events—*viz.*, that in the future, the Department will not

4   investigate Plaintiff's pending administrative complaint and resolve that complaint to Plaintiff's

5   satisfaction—that "may or may not occur." *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003) (citation

6   omitted). Thus, here, as in *Acura of Bellevue v. Reich*, 90 F.3d 1403 (9th Cir. 1996), Plaintiff's challenge

7   is unripe because the agency has not yet rendered a final determination. In contending otherwise, *see* Pl.'s

8   Opp'n 18, Plaintiff misplaces its reliance on *California v. Bernhardt*, 460 F. Supp. 3d 875 (N.D. Cal.

9   2020), because Plaintiff is not a U.S. State. *See id.* at 885 (explaining that states "are not normal litigants

10  for the purposes of invoking federal jurisdiction," but are instead "entitled to special solicitude in [the]

11  standing analysis") (citations omitted), *id.* at 893 ("Where the sufficiency of a showing of injury-in-fact

12  is grounded in potential future harms, the analysis for both standing and ripeness is essentially the same.")

13  (citation and alterations omitted). The Court should therefore dismiss this case as unripe.

14  **III.    Plaintiff Has Failed to State an APA Claim Because It Has an Adequate Alternative**
         **Remedy Against BUSD.**

15

16          Plaintiff has an adequate alternative remedy for claims that comprise BUSD's actions that are not

17  required by the 2020 Rule: a lawsuit against BUSD. The availability of this remedy bars judicial review

18  under the APA. Even if such a lawsuit were less likely to result in the requested relief than an APA lawsuit

19  against the Department, *see* Pl.'s Opp'n 19–20, the APA's restrictions on judicial review are not limited

20  to cases in which there is an equally *likely* alternative remedy. Rather, they apply when the alternative

21  remedy is "adequate." And, "situation-specific litigation affords an adequate, even if imperfect, remedy."

22  *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990).

23          This case presents a similar situation to that which D.C. Circuit confronted in *National Wrestling*

24  *Coaches Association v. Department of Education*, 366 F.3d 930 (D.C. Cir. 2004), in which an "adequate"

25  remedy was deemed available in a private lawsuit under Title IX. To apply the D.C. Circuit's reasoning

26  to this case, just as "*Cannon* suggests that Congress considered private suits to end discrimination not

27  merely adequate but in fact the *proper* means for individuals to enforce Title VI," *Washington Legal*

28  *Foundation v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993), so too does *Gebser* suggest that Congress

considered private suits to end sex discrimination the proper means for individuals to enforce Title IX. *See Gebser v. Lago Vista Independent Sch. District*, 524 U.S. 274, 280–81 (1998) (distinguishing administrative enforcement from private rights of action).

Plaintiff's only legal authority for the proposition that a private lawsuit against BUSD is an inadequate remedy is an unpublished district court opinion, *Californians for Renewable Energy*, No: C 15-3292 SBA, 2018 WL 1586211 (N.D. Cal. Mar. 30, 2018). In the first place, the district court in that case focused incorrectly on the theories of liability, rather than the remedies that would be available to the plaintiff in a private right of action against environmentally hazardous facilities. The APA precludes judicial review based on an adequate alternative *remedy*, and in that case, the *remedy* in a successful disparate treatment enforcement action would be the same as that in a successful private right of action. Even assuming that the district court's focus on *how* to obtain the remedy was correct, however, the delta between obtaining judicial versus administrative relief in that case was far greater than it is here. Whereas the regulations in that case clearly provided for relief if there was discriminatory impact, Plaintiff has not alleged with any certainty that if the 2020 Rule were vacated, its administrative complaint would result in a determination that BUSD violated Title IX. And, once again, courts have held that a private lawsuit against a school provides an *adequate* remedy relative to an APA action against the Department, despite the relative difficulty in obtaining relief in a private right of action under Title IX. *See National Wrestling Coaches Association*, 366 F.3d at 274–75; *cf. Washington Legal Foundation*, 984 F.2d at 486 (holding that the remedy in a Title VI private right of action was adequate for similar reasons).[6]

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss.

Dated: July 22, 2021

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

---

[6] Plaintiff also asserts, without any support, that the Department "will no longer investigate and remedy" off-campus sexual harassment. Pl.'s Opp'n 21. As Defendant has explained, Def.'s Mem. 14, this is an incorrect reading of the 2020 Rule, which prohibits sexual harassment in a recipient's education program or activity regardless of whether it physically occurs on campus. *See also* Questions and Answers on the Title IX Regulations on Sexual Harassment 8–10 (July 2021), https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf.

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss

9

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

*Benjamin T. Takemoto*
BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*