UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>        Defendant. | Case No. 21-cv-01626-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 61 |

Plaintiff the Women's Student Union (WSU) filed this action against Defendant the U.S. Department of Education (the "Department") to set aside regulations enacted in 2020 that reduce federal protections for students enrolled in public schools from sexual harassment and sexual violence under Title IX of the Education Amendments of 1972, 20 U.SC. § 1681(a). *See* Docket No. 1 ("Compl.") ¶ 8 (citing 85 Fed. Reg. 30,026 (May 19, 2020) (codified at various places in 34 C.F.R. Pt. 106) (the "2020 Regulations")). Plaintiff alleges that the 2020 Regulations violate the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(2)(A), (C), because they are contrary to the text and purpose of Title IX. Compl. ¶ 84.

Pending before the Court is the Department's motion to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. *See* Docket No. 61 ("Mot"). For the following reasons, the Court **GRANTS** the Department's motion because Plaintiff lacks standing.[1]

---

[1] Because the Court concludes that Plaintiff lacks standing, it need not address the Department's arguments that Plaintiff failed to plausibly state a claim pursuant to Rule 12(b)(6).

## I. BACKGROUND

A. Title IX Enforcement Before the 2020 Regulations

Title IX of the Education Amendments states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C § 1681(a). The statute defines "program or activity" as "all of the operations" of a school, "any part of which is extended Federal financial assistance." *Id.* § 1687. Federal agencies that disburse funds to educational institutions—including the Department of Education—are "authorized and directed" by Congress to "effectuate the provisions of" Title IX "by issuing rules, regulations, or orders of general applicability." *Id.* § 1682. These agencies can compel school districts to comply with the provisions of Title IX—and its implementing regulations—by threatening to withhold federal education funds from noncompliant school districts. *Id.*

There are two ways to enforce Title IX. First, a plaintiff (usually a student) can sue a school for damages in federal court as Title IX provides a private right of action. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992). In such cases, however, students can recover "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit," and they must prove the school's "deliberate indifference to known acts of harassment in its programs or activities." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). This standard is met only if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). This strict definition of sexual harassment and the requirements of actual knowledge and deliberate indifference are known as the "*Gebser/Davis* framework." 85 Fed. Reg. at 30,032.

Second, Title IX may be enforced administratively by the Department through the issuance of rules, regulations, and guidance documents. *See Gebser*, 524 U.S. at 292 ("Agencies generally have authority to promulgate and enforce requirements that effectuate the statute's

nondiscrimination mandate, 20 U.S.C. § 1682, even if those requirements do not purport to represent a definition of discrimination under the statute."). The Department's own regulations require its Office for Civil Rights (OCR) to investigate any administrative complaint it receives from a member of the public that indicates gender-based discrimination or sexual harassment. *See* 34 C.F.R. § 100.7(c) ("[R]esponsible Department official or his designee *will* make a prompt investigation whenever a . . . complaint . . . indicates a possible failure to comply." (emphasis added)); *Id.* § 106.71 (Title IX regulation incorporating the procedural provisions of the Department's Title VI regulations). If the investigation "indicates a failure to comply" with the regulations, the OCR "will so inform the recipient and the matter will be resolved by informal means whenever possible." *Id.* § 106.7(c). Because investigations are required, Plaintiff alleges school districts are almost always willing to settle to avoid the termination of their federal funding. *See* Docket No. 1 ("Compl.") ¶ 76.

Importantly, Plaintiff alleges that, until the 2020 Regulations were enacted, the Department's OCR had "consistently" issued guidance to school districts "rejecting the view that the courts' standards for determining whether a private damages action could be brought against a school should be incorporated into its administrative enforcement process." Docket No. 1 ("Compl.") ¶¶ 27–28 (citing Sexual Harassment Guidance, 62 Fed. Reg. 12,034 (Mar. 13, 1997) (the "1997 Guidance"); Revised Sexual Harassment Guidance, 66 Fed. Reg. 5,512-01 (Jan. 19, 2001) (the "2001 Guidance")). Indeed, the 2001 Guidance adopted a broader scope of liability for administrative enforcement of Title IX than under the *Gebser/Davis* framework by (1) defining sexual harassment as "unwelcome conduct of a sexual nature" that is "severe, persistent, **_or_** pervasive;" and (2) concluding that a schools is liable "whether or not it has 'notice' of the harassment." U.S. Dep't of Educ., Off. for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (Jan. 19, 2001), https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (emphasis added).

B.  The 2020 Regulations Incorporated the *Gebser/Davis* Framework

On May 19, 2020, under the leadership of then-Secretary of Education Elisabeth DeVos, the Department issued the 2020 Regulations, which repudiated the Department's prior guidance,

3

and largely aligned the standards for the OCR's adjudication of Title IX administrative complaints with the *Gebser/Davis* framework. *See* 85 Fed. Reg. at 30,033 ("The Department believes that adapting the *Gebser/Davis* framework is appropriate for administrative enforcement, because the adapted conditions (definitions of sexual harassment and actual knowledge) and liability standard (deliberate indifference) reflected in these final regulations promote important policy objectives with respect to a recipient's legal obligations to respond to sexual harassment."). Plaintiff complains that, under the 2020 Regulations, schools must respond only to harassment that (1) is "severe, pervasive, ***and*** objectively offensive conduct" (2) "takes place on school grounds (or in an education program), regardless of where its effect is felt;" and (3) "a school employee has actual knowledge of the harassment;" and that (4) a "school may act with indifference to the harassment, as long as it avoids being 'deliberately indifferent.'" Compl. ¶ 66; *see also* 85 Fed. Reg. at 30,032–34.

C.  Plaintiff's Administrative Complaint

Plaintiff is "an approved student body association of the Berkeley Unified School District (BUSD) of Berkeley, California." Compl. ¶ 16. Plaintiff's mission includes reducing sexual harassment experienced by students at Berkeley High School (BHS) by "(1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination, including sexual harassment; and (2) [] providing training to the student body about their rights and responsibilities under school policy, state law, and federal law." *Id*. Plaintiff also explains that it seeks to address "other barriers to success and wellbeing for young women and non-binary students at [BHS]." *Id*. Plaintiff contends that many high school students enrolled in BUSD, including Plaintiff's members, "experience sexual harassment, which poses an obstacle to their ability to learn and thrive in school." *Id.* ¶ 2. Plaintiff specifies that injuries to the students "result not just from the initial harassment alone, but because their school fails to respond to the harassment promptly and appropriately." *Id.* ¶¶ 2-5, 15.

In February 2021, Plaintiff filed an administrative complaint with the Department's OCR against BUSD, alleging several violations of Title IX that Plaintiff contends are "no longer cognizable" under the 2020 Regulations, including:

4

> Permitting harassment that is severe but not pervasive, including unwelcome exposure to others' genitalia.
>
> Permitting harassment that is pervasive but not severe, including students' circulation of sexualized images of a classmate and regular comments by groups of students, usually young men, concerning the appearances and sexual histories of their classmates, usually young women.
>
> Failing to take steps to discover and remediate instances of commonplace harassment, such as that occurring in Zoom "breakout rooms," digital spaces in which small groups or dyads of students converse on video without a teacher present.
>
> Failing to investigate and address harassment that occurs off campus but impacts survivors' education, including sexual assaults committed by students with whom the victims share classes and, during COVID-19, harassing messages sent and received through students' personal phones while students share online classrooms.
>
> Failing at times to respond to sexual harassment in a prompt and effective manner, and instead, for example, tolerating the open presence of an informal club dedicated to sexually harassing students and placing the burden on victims to avoid contact with their harassers and even transfer out of shared classes, especially when the underlying harassment occurred off campus.
>
> Failing to take action that addresses all the persons adversely affected by sexual harassment, not just the complainant.

*Id.* ¶ 77.

According to Plaintiff, "[b]ut for the Department's 2020 Regulations," the OCR would have investigated its administrative complaint. *Id.* ¶ 81. But under the new regulatory framework, the OCR "will not investigate [Plaintiff's] administrative complaint, and will not provide any relief to [Plaintiff]" because the injuries alleged are no longer cognizable under the 2020 Regulations. *Id.* ¶ 77-78. Plaintiff also claims that even if the OCR were to investigate some or all of the allegations in its administrative complaint, "the Department's 2020 Regulations do not require and, in fact, discourage [BUSD] from taking actions that were previously required under the Department's prior interpretations of Title IX and that [Plaintiff] wishes its school to take." *Id.* ¶ 82. Ultimately, Plaintiff contends that "the 2020 Regulations . . . deprive [Plaintiff] of a critical bargaining tool as it seeks to achieve these changes at [BUSD] as part of [Plaintiff's] organizational purpose." *Id.*

5

1  D.     Procedural History and Recent Events

2  On March 8, 2021, Plaintiff filed the original complaint against the Department seeking to enjoin the 2020 Regulations and to declare them invalid under the APA for contravening the text and purpose of Title IX. *Id.* The State of Texas and three groups—the Foundation for Individual Rights in Education, Independent Women's Law Center, and Speech First, Inc.—filed motions to intervene in this case on April 7 and May 24, 2021, respectively. *See* Docket Nos. 19, 35.

Shortly after Plaintiff filed its complaint, President Joseph R. Biden Jr. issued Executive Order 14,021 instructing the new Secretary of Education, Miguel Cardona, "to review the [2020 Regulations] and consider whether [they] should be suspended, revised, or rescinded." *See* Docket No. 44 at 1 (citing Exec. Order No. 14,021, 86 Fed. Reg. 13,803 (Mar. 8, 2021)). As a result, on June 11, 2021, the Department filed a motion to stay the case for sixty days while it reviewed the 2020 Regulations. *Id.* This Court denied the Department's stay motion citing the unlikelihood that the Department would conduct a notice and comment rulemaking process to rescind, or otherwise modify the 2020 Regulations, before the sixty days were over. *See* Docket No. 56. The Department then filed the instant motion to dismiss the case for lack of subject matter jurisdiction on July 1, 2021. *See* Mot.

## II.     LEGAL STANDARD

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II,* 136 S. Ct. at 1547 (quoting

6

1  *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

2  A Rule 12(b)(1) jurisdictional attack may be factual or facial.  *See Safe Air for Everyone v.
3  Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack," "the challenger asserts that the
4  allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."
5  *Id.*  The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):
6  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's
7  favor, the court determines whether the allegations are sufficient as a legal matter to invoke the
8  court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

9  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by
10 themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at
11 1038.  In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court
12 "may review evidence beyond the complaint without converting the motion to dismiss into a
13 motion for summary judgment."  *Id.*  Moreover, the court "need not presume the truthfulness of
14 the plaintiff's allegations."  *Id.*

15 Either way, "it is within the trial court's power to allow or to require the plaintiff to supply,
16 by amendment to the complaint or by affidavits, further particularized allegations of fact deemed
17 supportive of plaintiff's standing."  *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation
18 (Wiyot Tribe) v. Philip Morris, Inc.,* 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the
19 court may consider "the complaint and any other particularized allegations of fact in affidavits or
20 in amendments to the complaint").

## III. DISCUSSION

22 An organization can establish two types of standing under Article III:  (1) organizational
23 standing and (2) associational (also known as representational) standing.  "Organizational standing
24 . . . turn[s] on whether the organization itself has suffered an injury in fact."  *Smith v. Pac. Props.
25 and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citing *Havens Realty Corp. v. Coleman*, 455
26 U.S. 463, 378–79 (1982)).  By contrast, associational standing is where "[an organization] can
27 establish standing only as representative[] of those of [its] members who have been injured in fact,
28 and thus could have brought suit in their own right."  *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S.

1   26, 40 (1976).

2   Plaintiff has failed to establish that it has organizational or associational standing.

3   A.   Organizational Standing

4   "Organizations are entitled to sue on their own behalf for injuries they have sustained." *Havens*, 455 U.S. at 379 n.19. "[A]n organization may satisfy the Article III requirement of injury in fact if it can demonstrate: (1) frustration of its organizational mission [by the defendant's actions]; and (2) diversion of its resources to combat [that frustration]." *Smith*, 358 F.3d at 1105. Because Plaintiff fails to establish that the 2020 Regulations have frustrated its organizational mission under the first prong of the organizational standing test, the Court need not address whether Plaintiff has had to divert its resources under the second prong.

11   1.   Frustration of Plaintiff's Mission

12   "Where a defendant's conduct has 'perceptibly impaired' an organizational plaintiff's 'ability to provide [services to its clients], there can be no question that the organization has suffered injury in fact.'" *SurvJustice Inc. v. Devos*, No. 18-cv-00535-JSC, 2018 LEXIS 169485 (N.D.Cal. Oct. 1, 2018) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). Plaintiff alleges that the 2020 Regulations will frustrate its mission because "schools under the [2020] Regulations will be required to engage in fewer investigations of sexual harassment, and thus will find fewer violations and provide fewer remedies." Compl. ¶ 34. This is because, according to Plaintiff, "the 2020 Regulations' narrowed definition of 'sexual harassment' will undoubtedly reduce reporting even further as students reasonably fear that schools will not provide any meaningful response if they file a report." *Id.* ¶ 45; *see also id.* ¶ 53 ("[The 2020 Regulations] will undoubtedly reduce reporting [of sexual harassment incidents] even further."). As a result of this reduction in sexual harassment reporting, Plaintiff vaguely alleges it will have "no choice but to take actions that are both time consuming and less effective, such as conducting their own investigations into patterns of harassment at [BUSD] and meeting with school administrators . . . [b]ecause WSU cannot count on the [OCR] to investigate the [BUSD] and spur changes to its

8

policies and practices." *Id.* ¶ 80.[2]

These allegations fail to establish that the 2020 Regulations frustrate Plaintiff's mission for at least two reasons. First, and most importantly, Plaintiff's stated mission is not to ensure that specific instances of sexual harassment at BHS are investigated; rather, it is to advocate that the school adopt protective policies and to train the students about their rights and responsibilities under the law. *Id.* ¶ 16. That the subject of its mission—Berkeley High School—may be less cooperative as a result of the new regulations is not the kind of concrete frustration of mission that affords standing. Plaintiff argues the 2020 Regulations frustrate its mission because it leaves it "no choice but to take actions that are both time consuming and less effective, such as conducting their own investigations into patters of harassment at [BUSD] and meeting with school administrators." Compl. ¶ 80. But Plaintiff may not establish injury by engaging in activities that it would normally pursue as part of its organizational mission. It is a fair inference that conducting investigations and meeting with school administrators are valid ways—or even necessary—for Plaintiff to pursue its mission of advocating BHS for more protective policies and training BHS students. Plaintiff does not explain why spending time engaging in these activities would be "time consuming and less effective," let alone contrary to its mission. As another court put it: "[i]f this Court were to allow a party whose organizational mission is to engage in policy advocacy to claim injury on the basis of a need to engage in that exact activity, *any* advocacy group could find standing to challenge laws when there are changes in policy." *Know Your IX v. DeVos*, No. CV RDB-20-01224, 2020 WL 6150935, at *6 (D. Md. Oct. 20, 2020). Therefore, Plaintiffs' allegations are not sufficient to establish that the 2020 Regulations frustrate its mission.

The instant case stands in contrast to *SurvJustice*, 2018 WL 4770741, and *Victim Rights Law Center v. Cardona*, No. CV 20-11104-WGY, 2021 WL 3185743 (D. Mass. July 28,

---

[2] Plaintiff also alleges that it has organizational standing because, "*[w]ithout a doubt*, the [OCR] will not investigate [Plaintiff's] administrative complaint." Compl. at ¶ 78 (emphasis added). Not only is this allegation conclusory and speculative; it also appears to be incorrect. In its briefs and at oral argument the Department clearly stated that it was in the process of reviewing Plaintiff's administrative complaint and that it recently asked Plaintiff for more information. *See* Mot. at 7–8; Docket No. 65 ("Reply") at 7–8. Although the Department did not commit to an exact deadline when it will issue a decision on Plaintiffs' administrative complaint, there is no indication the Department has decided not to investigate the sexual harassment allegations Plaintiff raised there.

2021), where the Department's actions frustrated the missions of organizations that provided legal representation and counseling to sexual harassment survivors. The plaintiffs in *SurvJustice* were challenging the Department's new guidance "related to the procedures by which educational institutions investigate, adjudicate, and resolve allegations of student-on-student sexual misconduct" (the "2017 Guidance"), which preceded the issuance of the 2020 Regulations. 2018 WL 4770741, at *3. The plaintiffs there—unlike Plaintiff here—had missions that included "to increase the prospect of justice for survivors of sexual violence. . . *through legal assistance*;" "to *litigate*[] cases involving issues of gender discrimination in employment and education at all stages. . . [and to] *counsel[] and represent[]* women who have been victims of sexual harassment and/or sexual assault in matters pursuant to Title IX;" and "*to provide legal representation* to victims of rape and sexual assault." 2018 WL 4770741, at *4 (emphases added). Because the 2017 "Guidance discourage[d] survivors of sexual harassment and sexual violence from filing complaints," Magistrate Judge Corley concluded it frustrated these organizations' missions, which involved prosecuting those very same complaints. *Id.* at *6–*7. Similarly, Judge Young of the District of Massachusetts held that Victim Rights Law Center "demonstrate[d] a direct impairment from the [2020 Regulations]" because it "advocate[d] on behalf of victims of sexual assault during the Title IX process," and "experienced a reduction in requests for its services." *Victims Rts. Law Ctr.*, 2021 WL 3185743, at *10; *Cf. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (regulations requiring asylum seekers to "remain detained . . . near the border hundreds of miles away" frustrated organizations' "mission of assisting migrants seeking asylum" because they "cannot represent [those detained] asylum seekers").

Here, by contrast, Plaintiff's mission does not include representing, advocating for, or providing legal assistance to individual sexual harassment survivors. Indeed, unlike in *SurvJustice* and *Victim Rights Law Center*, the complaint here does not explain how fewer reports and investigations of sexual harassment make it harder, *i.e.*, "perceptively impair," Plaintiff's ability to advocate for more protective policies at BHS or to train BHS's students.

Indeed, the instant case is similar to *Know Your IX*, where Judge Bennett of the District of Maryland recently concluded two organizations—Know Your IX and Gender Equity—failed to

establish that the 2020 Regulations frustrated their missions for purposes of organizational standing. 2020 WL 6150935, at *5. Like Plaintiff here, the plaintiffs in *Know Your IX* alleged that

> [g]iven the diminished responsibility under federal law for schools to respond to reports of sexual harassment and assault under the challenged provisions of the final Rule, [the plaintiffs] will need to dedicate additional staff time and resources to advocate at the local and state levels for measures that are proven to prevent the occurrence of sexual harassment and assault....

*Id.* at *5. Gender Equity "claim[ed] that its core mission [was] carried out through policy advocacy," and Know Your IX's "goal [was] to empower high school and college students to end sexual and dating violence in their schools through legal rights education; training, organizing, and supporting student-survivor activists; and advocating for campus, state, and federal policy change." *Id.* at *6–*7. Like Plaintiff here, neither organization represented or offered legal services to sexual harassment survivors who filed complaints. *Id.* at *6. Although the *Know Your IX* plaintiffs argued they had to spend more time and resources to accomplish their mission, the court concluded that "resource reallocations motivated by the dictates of preference, however sincere, are not cognizable organizational injuries because no action by the defendant *has directly impaired the organization's ability to operate and function*." *Id.* at *7 (emphasis added) (quoting *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 239 (4th Cir. 2020)). Plaintiff here has also failed to explain how the Department's actions would directly impair its ability to operate and function as a policy advocacy and training organization.

Second, Plaintiff's allegations would be insufficient—even assuming Plaintiff explained how a reduction in reporting of sexual harassment incidents could "perceptively impair" its policy advocacy and training efforts—because Plaintiff fails to specifically allege that such a reduction in reporting is actually taking place or is imminent. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and *actual or imminent*." (emphasis added)). The complaint also assumes, without a clear factual basis, that BHS will not protect students from sexual harassment because, as a result of the 2020 Regulations, the Department is less likely to

11

investigate instances of sexual harassment on campus. But there is nothing stopping BHS from addressing instances of sexual harassment on campus, adopting more protective policies, or allowing Plaintiff to train its students, *even if* the Department is less likely to withhold funding under the 2020 Regulations. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing that rest on speculation about the decisions of independent actors."); *Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1, 8 (D. Mass. 2020) (organizational plaintiff's mission was not frustrated by the Department's 2017 Guidance because it "d[id] not allege that colleges and universities [were] in fact using the clear and convincing standard of proof, thus making it more difficult for [the plaintiff's] clients to obtain beneficial outcomes"). Thus, to properly plead that the 2020 Regulations frustrate its mission, Plaintiff needs to add specific facts to the complaint establishing that, as a result of the 2020 Regulations, BHS is unwilling to adopt policies that protect students from sexual harassment or to allow Plaintiff to train BHS students.

In *Equal Means Equal*, Judge Saris of the District of Massachusetts held that the National Coalition Against Violent Athletes (NCAVA) had not established that the Department's 2017 Guidance frustrated its stated mission "to advocate for the equal treatment of victims of sex-based harms under civil rights laws," even though NCAVA "provide[d] legal referrals, counsel and advocacy to [survivors] of sex-based harms." 450 F. Supp. 3d at 8. She reasoned that NCAVA "[had] not demonstrated a particularized injury traceable to the [2017 Guidance] beyond a general statement that victims have expressed an unwillingness to report sex-based harm to campus authorities." *Id.* at *7–*8. In fact, NCAVA's allegation was simply that "victims ha[d] expressed an unwillingness to report sex-based harm to campus authorities and law enforcement officials." *Id.* at *6. Plaintiff's allegation in the case at bar that "the 2020 Regulations' narrowed definition of 'sexual harassment' will undoubtedly reduce reporting" is just as conclusory. Compl. ¶ 45.

By contrast, the plaintiffs in *SurvJustice* specifically alleged "an *observed* decrease in student-filed complaints following issuance of the 2017 Guidance," and "that their clients ha[d] directly attributed their hesitancy in filing those complaints to the 2017 Guidance." 2018 WL 4770741, at *6–*7. The organizational plaintiff in *Victims Rights Law Center* was also able to

12

"attest that it ha[d] actively experienced unwillingness and hesitance from student [survivors] to continue their Title IX complaints" because the 2020 Regulations included a "requirement that the complainant be cross-examined at the Title IX hearing." 2021 WL 3185743, at *4. Plaintiff here has not alleged that there is an actual or imminent reduction in sexual harassment reporting at BHS with this kind of detailed allegations.

Accordingly, Plaintiff does not have organizational standing because it has not plausibly alleged that the 2020 Regulations frustrated its stated mission of advocating BHS for more protective policies or training BHS students about their rights.

B. Associational Standing

An entity has associational standing where (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *AlohaCare v. Hawaii*, 572 F.3d 740, 747 (9th Cir. 2009). Because Plaintiff fails to plausibly allege that its members would otherwise have standing to sue in their own right under the first prong of the associational standing test, the Court need not address the other two prongs.

To show that a member would have standing to sue in his or her own right, the organization "must show that a member suffers an injury-in-fact that is traceable to the defendant and likely to be redressed by a favorable decision." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). Plaintiff's complaint includes only speculative and conclusory allegations that the 2020 Regulations deny its members—survivors of sexual harassment at BHS—of "the benefit of having the department investigate and redress many types of harassment [they] have experienced and are currently experiencing." Compl. ¶ 15. Indeed, according to Plaintiff,

> the [OCR] . . . will not provide any relief to WSU and its members, because the 2020 Regulations no longer make it unlawful for purposes of administrative enforcement for the [BUSD] to disregard sexual harassment that is severe but not pervasive (or pervasive but not severe); sexual harassment that originates outside the school's "program or activity," even though it impacts students' ability to participate in the school's program or activity; and sexual

13

> harassment that the school should reasonably know about, but of which it lacks actual knowledge.

*Id.* at ¶ 78. These boilerplate allegations merely speculate that the 2020 Regulations will lead BUSD to disregard certain sexual harassment complaints; there are no specific allegations in the complaint that BUSD has in fact disregarded a single sexual harassment complaint or that a single student has chosen not to report or file a complaint after suffering sexual harassment; let alone that there has been a noticeable decline in sexual harassment reports at BHS or BUSD. In other words, there are no allegations that Plaintiff's members have been injured or will imminently be injured by the 2020 Regulations. *Cf. Young v. Trump*, No. 20-CV-07183-EMC, 2020 WL 7319434 (N.D. Cal. Dec. 11, 2020) (plaintiffs properly alleged Article III injury-in-fact because their complaint had "common contentions . . . for each named Plaintiff regarding the suspension and withholding of their beneficiaries' visas under Diplomacy Strong").

Accordingly, Plaintiff has not established that it has associational standing. Although Plaintiff is not required to cite a specific member in its complaint, *see National Council of La Raza v. Cegavsk*, 800 F.3d 1032, 1041 (9th Cir. 2015), to establish associational standing it must allege with sufficient specificity and detail *how* its members have been injured or will imminently be injured by the enactment of the 2020 Regulations.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Department's motion to dismiss for lack of Article III standing **with leave to amend.** Plaintiff shall file its amended complaint on or before September 19, 2021.

///
///
///
///
///
///
///
///

The pending motions to intervene are now moot because they are based on the allegations in the original complaint, which is hereby dismissed. *See* Docket Nos, 19, 35. The movants may re-file their motions to intervene, if they so wish, after Plaintiff files its amended complaint.

This order disposes of Docket Nos. 19, 35, and 61.

**IT IS SO ORDERED**.

Dated: September 2, 2021

_____
EDWARD M. CHEN
United States District Judge