**CONSOVOY MCCARTHY PLLC**
William S. Consovoy*
E-Mail: will@consovoymccarthy.com
Bryan K. Weir (CA Bar. #310964)
E-Mail: bryan@consovoymccarthy.com
Cameron T. Norris*
E-mail: cam@consovoymccarthy.com
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Telephone: (703) 243-9423
Counsel for [Proposed] Intervenor-Defendants
Speech First, Inc. and Independent Women's Law Center

**COOPER & KIRK, PLLC**
Charles J. Cooper*
E-mail: ccooper@cooperkirk.com
Brian W. Barnes*
E-mail: bbarnes@cooperkirk.com
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
Counsel for [Proposed] Intervenor-Defendants
Foundation for Individual Rights in Education
*Pro Hac Vice

*Additional Counsel for Proposed Intervenors Listed on Signature Page*

The Women's Student Union,

        *Plaintiff,*

    v.

U.S. Department of Education,

        *Defendant,*

Foundation for Individual Rights in Education, Independent Women's Law Center, Speech First, Inc.,

    *[Proposed] Intervenor-Defendants*

Case No. 3:21-cv-01626-EMC

**MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF INTERVENOR-DEFENDANTS MOTION TO INTERVENE AS DEFENDANT**

Judge: Hon. Edward M. Chen

**Date:**    **December 16, 2021**
**Time:**   **1:30 p.m.**
**Crtrm: 5, 17th Floor**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND .............................................................................................................. 1

    A. The Department of Education's Title IX Rule ............................................... 1

    B. Proposed Intervenors ...................................................................................... 3

ARGUMENT .................................................................................................................... 6

I.      Movants are entitled to intervene as of right ............................................... 6

    A. This motion is timely. ..................................................................................... 6

    B. Movants have a protected interest in this action. ......................................... 7

    C. This action threatens to impair Movants' interests ....................................... 8

    D. The existing parties do not adequately represent Movants' interests ............ 9

II.    The Court should grant Movants permissive intervention. ........................... 14

CONCLUSION ................................................................................................................ 17

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                           <u>Page</u>

*Am. C.L. Union of N. California v. Burwell*,
    No. 16-CV-03539-LB, 2017 WL 492833 (N.D. Cal. Feb. 7, 2017) ........................................17

*Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108 (3d Cir. 1992) ...................................................7

*California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989 (9th Cir. 2012) .................14

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006).......................7, 8, 10, 13

*California v. Health & Hum. Servs.*, 330 F.R.D. 248 (N.D. Cal. 2019) ........................................16

*Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998).................................................................................................12

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011)..................................................8, 9, 10, 11, 12, 13, 14

*Clark v. Putnam Cnty*, 168 F.3d 458 (11th Cir. 1999)..................................................................13

*Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312 (D.C. Cir. 2015) .......................10

*Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999) ...............................................1

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007).........................................................................8, 9

*DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008) ..................................................................2

*Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640 (W.D. Wis. Mar. 28, 2020)............16

*E&B Nat. Res. Mgmt. Corp. v. Cnty. of Alameda*,
    2019 WL 5697912 (N.D. Cal. Nov. 4, 2019)..............................................................................6

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489 (9th Cir. 1995)...................10, 13

*Foundation for Individual Rights in Education v. Victim Rights Law Ctr.*,
    Petition for a Writ of Certiorari, No. 21-84 (July 19, 2021) ....................................................10

*Freedom from Religion Found., Inc. v. Geithner*, 262 F.R.D. 527 (E.D. Cal. 2009) ....................10

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) ..........................14

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) .............................................7

*Idaho v. Freeman*, 625 F.2d 886 (9th Cir.1980) ..........................................................................7

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002) .....................................15, 16

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) .................6, 15, 16

*League of Women Voters of Michigan v. Johnson*, 902 F.3d 572 (6th Cir. 2018)........................16

*Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944 (N.D. Cal. 2020) .....15

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020).....14

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

*New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279 (S.D.N.Y. 2020) .........................3

*Nw. Env't Advocs. v. United States Dep't of Com.*, 769 F. App'x 511 (9th Cir. 2019)................13

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ..............................................15

*Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667 (1973) ....................................................7

*Pennsylvania v. DeVos*, 480 F. Supp. 3d 47 (D.D.C. 2020) ............................................................3

*Piekkola v. Klimek*, 2016 WL 6072354 (D. S.D. Oct. 17, 2016) .....................................................7

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)............................................................................9

*PrimeSource Bldg. Prod., Inc. v. United States*, 494 F. Supp. 3d 1307 (Ct. Int'l Trade 2021)......14

*Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326 (9th Cir. 1977) ..........................................17

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) ..............................................................5

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ............................................................5

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019)..........................................................5

*Speech First, Inc. v. Wintersteen*, No. 4:20-cv-2 (S.D. Iowa) .........................................................5

*Students & Parents for Privacy v. U.S. Dep't of Educ.*,
    2016 WL 3269001 (N.D. Ill. June 15, 2016) ............................................................................16

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ...................................8, 17

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ..............................................12

*United States v. Blue Lake Power, LLC*, 215 F. Supp. 3d 838 (N.D. Cal. 2016) ..........................15

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ..........................................7, 10

*United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988) ............................................................11, 13

*Victim Rights Law Ctr v. Cardona*,
    20-cv-11104, 2021 WL 3185743 (D. Mass. July 28, 2021) ...............................................3, 11

*Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556 (1st Cir. 2021) ...............................................11

*W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*,
    643 F.3d 701 (9th Cir. 2011)..............................................................................................15, 16

*Washington State Bldg. & Constr. Trades v. Spellman*, 684 F.2d 627 (9th Cir.1982) ...................7

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)....................................6, 7, 15

**Statutes, Regulations and Rules**

5 U.S.C. § 706 ................................................................................................................................14

85 Fed. Reg. 30,026 (May 19, 2020) ......................................................................................1, 2, 12

Fed. R. Civ. P. 24(a)..........................................................................................................................6

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

FED. R. CIV. P. 24(a)(2) ................................................................8

FED. R. CIV. P. 24(b)(3) ..............................................................15

**Other Authorities**

Bianca Quilantan, *Biden vows 'quick end' to Devos' sexual misconduct rule* (May 6, 2020), https://politi.co/2ZeXwqm ....................................................3

Comment of FIRE in Support of the Department of Education's Proposed Regulations on Title IX Enforcement (Jan. 30, 2019), https://bit.ly/2Nl6qss................................2

Heather Madden, *Title IX and Freedom of Speech on College Campuses*, POLICY FOCUS, Jan. 2016, https://bit.ly/2XgoQPS..........................................5

Independent Women's Law Center & Speech First, Letter to Secretary DeVos and Assistant Secretary Marcus (Apr. 9, 2020), https://bit.ly/3e4vEH0 ......................5

IWF, Comments on the Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance (Jan. 30, 2019), https://bit.ly/2Bw54J5 ......2

Minute Order, *Pennsylvania v. DeVos*, No. 20-1468 (D.D.C. July 6, 2020)..................14

Suzanne B. Goldberg, *Update on Court Ruling about the Department of Education's Title IX Regulations* (Aug. 24, 2021), https://bit.ly/2Z5k2BA ..................3

U.S. Dep't of Educ., Dear Colleague Letter: Harassment and Bullying (Oct. 26, 2010), https://bit.ly/2Bp3rg4 ....................................................1, 2

United States Department of Education, *Department of Education's Office for Civil Rights Launches Comprehensive Review of Title IX Regulations to Fulfill President Biden's Executive Order Guaranteeing an Educational Environment Free from Sex Discrimination* (Apr. 6, 2021), https://bit.ly/3DU7dce..............................3

United States Department of Education, *Questions and Answers on the Title IX Regulations on Sexual Harassment*, (July 20, 2021), https://bit.ly/3DU7ImC ..............................3

1

## INTRODUCTION

2  The Foundation for Individual Rights in Education (FIRE), the Independent Women's Law

3  Center, and Speech, First, Inc., renew their motion to intervene in this important case. Movants

4  include some of America's largest and most prominent advocacy organizations dedicated to

5  promoting free speech and due process at colleges and universities. They seek to intervene to

6  protect their interests and to defend the rule on grounds that the Department of Education will not:

7  that many of the rule's protections for students are not just reasonable policy decisions—they are

8  *constitutionally required*. Movants satisfy the Federal Rules' requirements for both mandatory and

9  permissive intervention, and they should be allowed to intervene to defend their interests which are

10  otherwise unrepresented in this litigation.

11

## BACKGROUND

12

### A.  The Department of Education's Title IX Rule

13  On May 6, 2020, the Department of Education announced that it would issue a final rule

14  imposing certain legal obligations under Title IX on federal funding recipients—a category that

15  includes virtually all colleges and universities in the United States. One of the rule's most important

16  provisions is its definition of conduct that qualifies as the kind of "sexual harassment" that Title IX

17  requires funding recipients to investigate and punish. Among other things, the rule defines "sexual

18  harassment" to include "unwelcome conduct on the basis of sex determined by a reasonable person"

19  that is "so severe, pervasive, and objectively offensive that it effectively denies a person equal

20  access to the recipient's education program or activity." 85 Fed. Reg. 30,026, at 30,177–30,178

21  (May 19, 2020). This definition is drawn from the Supreme Court's decision in *Davis v. Monroe*

22  *County Board of Education*, 526 U.S. 629, 650 (1999), a case where a private plaintiff sued a

23  funding recipient under Title IX for its deliberate indifference to peer sexual harassment.

24  The rule's adoption of the *Davis* standard to define sexual harassment marks a departure

25  from the Department's past guidance, which claimed to follow *Davis* but described the attributes

26  of actionable sexual harassment in the disjunctive ("severe, pervasive, or objectively offensive")

27  and stated that conduct that is "persistent" qualifies as harassment (even if it is not objectively

28  offensive). *See, e.g.*, U.S. Dep't of Educ., Dear Colleague Letter: Harassment and Bullying at 2

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

(Oct. 26, 2010), https://bit.ly/2Bp3rg4. The rule became effective on August 14, 2020. Plaintiff asks the Court to throw out the rule's definition of "sexual harassment" and to force the Department to reinstate a broader and more subjective definition of that critical term. *See* First Am. Compl. for Injunctive and Declaratory Relief Administrative Procedure Act Case at 30–32, Doc. 78 (October 4, 2021) ("Am. Compl.").

Before the rule was promulgated, FIRE and the Independent Women's Forum—two of the proposed intervenors—submitted comments to the Department urging it to adopt the *Davis* standard because any broader definition of sexual harassment would violate the First Amendment. *See* Comment of FIRE in Support of the Department of Education's Proposed Regulations on Title IX Enforcement (Jan. 30, 2019), https://bit.ly/2Nl6qss; IWF, Comments on the Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance (Jan. 30, 2019), https://bit.ly/2Bw54J5. *Davis* itself strongly supports this position. In response to First Amendment concerns raised by Justice Kennedy in dissent, the *Davis* majority took care to define the conduct that funding recipients must punish in a manner that allows public university administrators "to refrain from a form of disciplinary action that would expose [them] to constitutional . . . claims." 562 U.S. at 649. Since *Davis*, courts have looked to that decision for guidance on the scope of "sexual harassment" that public universities may prohibit consistent with the First Amendment. *See, e.g.*, *DeJohn v. Temple Univ.*, 537 F.3d 301, 319 (3d Cir. 2008).

Despite adopting the *Davis* standard in part because it concluded that doing so would help to avoid "a chill on free speech and academic freedom," 85 Fed. Reg. at 30,142, the Department stopped short of saying that the *Davis* standard is required by the First Amendment. That is an important point of disagreement between the Department and Movants: While the Department purports to have selected one of a range of constitutionally permissible definitions of "sexual harassment," Movants' position is that the use of any definition of "sexual harassment" broader than the one that appears in the rule would violate the First Amendment. The disagreement between Movants and the Department on this point has direct implications for this case. If Movants are correct, the canon of constitutional avoidance militates strongly against interpreting Title IX and the APA to mandate the broadened definition of "sexual harassment" that Plaintiff advocates.

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

Notwithstanding attempts to enjoin its implementation, the rule went into effect on August 14, 2010. At the time, the Department defended the new rule in court, though it declined to make Movants' constitutional arguments. Following the rule's implementation, however, a new President took office who had promised as a candidate that if elected he would "put [the rule] to a quick end." Bianca Quilantan, *Biden vows 'quick end' to Devos' sexual misconduct rule*, POLITICO (May 6, 2020), https://politi.co/2ZeXwqm. Since the change in administrations, the Department has taken concrete steps to make the new President's election promise a reality. In just the last nine months, the Department has initiated a rule-making process to reassess the rule, United States Department of Education, *Department of Education's Office for Civil Rights Launches Comprehensive Review of Title IX Regulations to Fulfill President Biden's Executive Order Guaranteeing an Educational Environment Free from Sex Discrimination* (Apr. 6, 2021), https://bit.ly/3DU7dce, issued a question and answer document that purports to interpret the rule in ways that greatly narrow its effects and depart from its text, United States Department of Education, *Questions and Answers on the Title IX Regulations on Sexual Harassment*, (July 20, 2021), https://bit.ly/3DU7ImC, and declined to appeal from a decision by the District of Massachusetts that invalidated a provision of the rule concerning cross-examination that other district courts had upheld, Suzanne B. Goldberg, *Update on Court Ruling about the Department of Education's Title IX Regulations* (Aug. 24, 2021), https://bit.ly/2Z5k2BA; *compare Victim Rights Law Center et al. v. Cardona*, 20-cv-11104, 2021 WL 3185743, at *16 (D. Mass. July 28, 2021), *with Pennsylvania v. DeVos*, 480 F. Supp. 3d 47 (D.D.C. 2020), *and New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279, 293 (S.D.N.Y. 2020). Together, these actions rebut any basis in fact or law for presuming that the Department can adequately represent Movants' interests in this litigation.

## B. Proposed Intervenors

Movants are nonprofit organizations dedicated to promoting free speech and due process on college campuses.

Proposed Intervenor FIRE is a nonprofit membership organization with approximately 50 employees and a student network with members on college campuses throughout the United States. FIRE staff work directly with students and faculty who are subjected to disciplinary proceedings

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

for engaging in conduct protected by the First Amendment. In instances when a disciplinary proceeding threatens to chill unpopular but constitutionally protected speech, FIRE staff educate the accused of his or her rights and communicate with school administrators about their obligations under the First Amendment. Considerable staff time and funds are devoted to these activities, and in recent years a significant share of these resources have been used to counter sexual misconduct proceedings at universities with conduct codes that use broad, amorphous definitions of prohibited "sexual harassment." The use of the *Davis* standard in the Department's rule has reduced the frequency with which universities attempt to punish free speech on sensitive issues of gender and sex and thus has enabled FIRE to shift its resources to addressing other threats to protected speech on campus. FIRE does not have enough staff time or money to assist every student who approaches it for help. The rule's definition of sexual harassment now frees up resources for use in cases that do not involve allegations of sexual harassment.

In addition to its involvement in individual disciplinary proceedings, FIRE also devotes considerable staff time and money to working with its Student Network members to educate college students about their free-speech and due process rights. Members of FIRE's Student Network work to promote their own constitutional rights as well as the constitutional rights of other students through messaging about the constitutional limits on the authority of public schools and universities to punish speech, including speech on gender, sex, and other controversial topics that have routinely been the basis for discipline under conduct codes that prohibit "sexual harassment." FIRE also spends money preparing printed materials on these issues for distribution on college campuses. The implementation of the rule has permitted FIRE and its student members to shift resources and efforts to promoting free speech on other topics. Some members of the FIRE Student Network have also been subjects of university disciplinary proceedings relating to alleged sexual harassment in the past.

The Independent Women's Law Center ("Center") is a project of the Independent Women's Forum ("Forum"), a nonprofit, non-partisan 501(c)(3) organization founded by women to foster education and debate about legal, social, and economic policy issues. The Center supports this mission by devoting time and resources to advocating—in the courts, before administrative

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

agencies, in Congress, and in the media—for equal opportunity, individual liberty, and access to the marketplace of ideas. The Center participates in free-speech litigation challenging universities' "bias" and "harassment" policies, and the Forum has long studied and advocated for greater free-speech and due-process protections for college students. *See, e.g.*, Heather Madden, *Title IX and Freedom of Speech on College Campuses*, POLICY FOCUS, Jan. 2016, https://bit.ly/2XgoQPS. Unsurprisingly then, the Center and Forum were leading proponents of the rule. In addition to the comment in support, the Center (along with Speech First) helped defeat proposals to delay the rule's effective date. *See* Independent Women's Law Center & Speech First, Letter to Secretary DeVos and Assistant Secretary Marcus (Apr. 9, 2020), https://bit.ly/3e4vEH0.

Speech First is a membership association of college students, parents, faculty, alumni, and concerned citizens. Speech First is committed to restoring the freedom of speech on college campuses through advocacy, education, and litigation. And its student members have been subject to speech codes and disciplinary procedures that violate the First Amendment but that, according to universities, comply with the Title IX guidance that the rule has replaced. For example, Speech First has challenged speech-chilling "harassment" policies at the University of Michigan, *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019); the University of Texas, *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020); the University of Illinois, *Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020); and Iowa State University, *Speech First, Inc. v. Wintersteen*, No. 4:20-cv-2 (S.D. Iowa). If the rule stands, schools will be required to keep their policies in line with it, freeing Speech First to spend its resources on other pressing constitutional concerns. And like FIRE, Speech First has student members who have been subject in the past, and could be subject in the future, to Title IX disciplinary proceedings.

Proposed intervenors' missions are related and complementary, and their views on the issues in this case are aligned. But still, they are three separate organizations with different counsel, independent resources, and unique missions. To conserve the Court's and the parties' resources, and to minimize their footprint in this case, proposed intervenors are jointly moving to intervene and, if their intervention is granted, will make their arguments in one consolidated brief. Proposed intervenors will also follow whatever deadlines govern the existing defendants.

**ARGUMENT**

The Federal Rules allow "intervention of right" under Rule 24(a) and "permissive intervention" under Rule 24(b). Under either standard, "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citing *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)). Movants satisfy the standards for both intervention as of right and permissive intervention.

## I.     Movants are entitled to intervene as of right.

Under Rule 24(a), a court "must permit anyone to intervene who" (1) makes a timely motion to intervene, (2) has an "interest relating to the property or transaction that is the subject of the action," (3) is "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) shows that he is not "adequately represent[ed]" by "existing parties." FED. R. CIV. P. 24(a). Movants meet each of those four requirements.

### A.  This motion is timely.

Movants' motion to intervene is timely. To determine whether a motion is timely under Rule 24(a), courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citing *Cnty. of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir.1986)). "[T]imeliness is not an issue" where, as here, proposed intervenors move "relatively early in the proceedings," represent that they "will not . . . disturb the schedule set by [the] court," and "when few substantive issues have been addressed." *See E&B Nat. Res. Mgmt. Corp. v. Cnty. of Alameda*, 2019 WL 5697912, at *7 (N.D. Cal. Nov. 4, 2019). Here, within weeks of the Amended Complaint, before Defendant has answered or moved to dismiss, and well before any substantive issues have been addressed, Movants have filed a motion to intervene to protect their interests. Intervention at this early stage would not impede the progress of this litigation, and Movants would not disturb any schedules set by the Court.

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

**B. Movants have a protected interest in this action.**

Movants have "'significant protectable' interest[s]" in the subject of the action. *Wilderness Soc.*, 630 F.3d at 1177–78 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). First, Movants are public interest groups that advocate for the free speech and due process rights the rule protects. Ninth Circuit precedent is clear that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Washington State Bldg. & Constr. Trades v. Spellman*, 684 F.2d 627 (9th Cir.1982); *Idaho v. Freeman*, 625 F.2d 886 (9th Cir.1980). Indeed, Movants have a protectable interest even if they only work on an issue "generally." *See United States v. City of Los Angeles*, 288 F.3d 391, 402 n.5 (9th Cir. 2002).

Second, Movants have a significantly protectable interest in safeguarding the free-speech rights of themselves and their members. Expansive definitions of "sexual harassment" in school conduct codes have a chilling effect on speech concerning gender, sex, and related topics, and even speech on those subjects that many find offensive is valuable and protected by the First Amendment. *See Papish v. Bd. of Curators of Univ. of Mo.*, 410 U.S. 667, 670 (1973) ("[T]he mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'"). The First Amendment rights of Movants and their members are at stake in this case, and those rights plainly qualify as an "interest" under Rule 24(a)(2). *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1125 (3d Cir. 1992); *see also Piekkola v. Klimek*, 2016 WL 6072354, at *2 (D. S.D. Oct. 17, 2016) (finding where proposed intervenor's "First Amendment rights are implicated, her interest is substantial and protectable.").

Third, the rule affects Movants' allocation of resources. The Ninth Circuit has long recognized a diversion-of-resources theory of organizational standing, and any interest sufficient to confer standing is also by necessary implication an interest within the meaning of Rule 24. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("[T]he same evidence that bolsters the [Plaintiff's] standing to sue also bolsters the case for intervention."). For years, Movants spent time and treasure on efforts to safeguard the free-speech rights of their members and other faculty and students. The promulgation of the rule was a significant step in

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

guaranteeing those rights on campuses around the country and has enabled Movants to divert their resources to other mission-related endeavors. Plaintiff's attack on the rule and the Department's refusal to make constitutional arguments in its defense puts Movants' rights at stake in this case and establishes their interest under Rule 24(a)(2).

### C. This action threatens to impair Movants' interests.

If Plaintiff succeeds in its action, Movants' significant interests and their ability to protect those interests will be impaired. FED. R. CIV. P. 24(a)(2). The Ninth Circuit has found where a proposed intervenor can show a significant protectable interest, there is "little difficulty concluding that the disposition of the case may, as a practical matter, affect it." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (cleaned up). It is a premise of Plaintiff's lawsuit that the rule's definition of "sexual harassment" will significantly narrow the types of speech and expressive conduct that schools prohibit and punish. If that premise is correct— as it must be for Plaintiff's injuries to be fairly traceable to the rule—then Movants unquestionably stand to gain or lose by the direct legal operation of the outcome of this case. *See Sw.Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). For the same reasons that Plaintiff stands to gain from a decision in its favor, Movants stand to lose.

Moreover, Movants' interests will be affected not only by whether this Court upholds the rule's use of the *Davis* standard but also on what grounds. As Plaintiff's complaint documents, the Department's guidance on the definition of "sexual harassment" has changed over time. Am. Compl. ¶¶ 25–36. If the Court considers and accepts Movants' First Amendment argument, it will establish that the Department cannot constitutionally revert to the vague and overbroad definitions it has used in the past. If, on the other hand, the Court upholds the rule's definition of "sexual harassment" as one of a range of approaches that are permissible under Title IX, the Department could abandon its current position in the future. Without intervention, Movants' interests may be impaired as a practical matter because they have "no alternative forum where they can mount a robust defense" of the rule's inclusion of the *Davis* standard. *California ex rel. Lockyer*, 450 F.3d at 442. The potential *stare decisis* effects of the judicial opinions that will be generated in this case thus provide a basis for intervention as of right. *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007)

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

(intervention granted where disposition "may impede [movant's] ability to protect [its] interest, not the least because the Opinion may have a precedential impact"). The point of Rule 24(a)(2) is to provide parties such as Movants with the ability to intervene in litigation and protect their interests *before* those interests are impaired.

Furthermore, participating in this case as amici would not enable Movants to adequately protect their interests. This Court would not be required to consider Movants' constitutional arguments if they were presented only in an amicus brief, and if Movants were only accorded the status of amici they could not file motions or appeal from an adverse judgment. In short, intervention is necessary for Movants to safeguard their significant interests in this case and any subsequent appeal. *See Freedom from Religion Found., Inc. v. Geithner*, 262 F.R.D. 527, 530 (E.D. Cal. 2009) ("The filing of an amicus brief to the court seems a meager substitute in comparison, and would deny the potential intervenors a voice in key junctures of this litigation."); *City of Los Angeles*, 288 F.3d at 400 ("[A]micus status is insufficient to protect the [intervenor's] rights because such status . . . gives it no right of appeal.").

**D.  The existing parties do not adequately represent Movants' interests.**

The Department does not, and indeed cannot, adequately represent Movants' significant interests in this action. To assess adequate representation, courts in the Ninth Circuit consider "whether a present party will undoubtedly make all of the intervenor's arguments, whether a present party is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (cleaned up) (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d at 900–01 ("intervention of right does not require an absolute certainty that . . . existing parties will not adequately represent its interests."). In cases where the defendant is a governmental body or officer,

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

the Ninth Circuit has employed "a presumption of adequate representation."[1] *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). This presumption, however, is not as strong as the similar presumption recognized by some other courts of appeals and can be overcome by establishing that a movant has "distinctly different, and likely conflicting, interests" from those currently represented in suit. *California ex rel. Lockyer*, 450 F.3d at 443–44.

Movants have distinctly different interests from the Department. First and foremost, since the change in presidential administrations earlier this year, the Department has taken actions relevant to Title IX that threaten significant harm to Movants' interests. While Movants recognize that each presidential administration is entitled to pursue its own set of policy objectives, the divergent policy positions of this administration and the one it replaced call into question the likelihood that the Department's current leadership will offer a robust defense of all portions of the rule. This is especially so for those provisions that Movants seek to protect. As discussed above, in the first three-quarters of this year, the Department initiated a rule-making process to reassess the 2020 rule, issued a question and answer document that all but explicitly greenlights violations of the rule, and declined to appeal from a decision by the District of Massachusetts that invalidated a provision of the rule concerning cross-examination that other district courts had upheld. Taken together, these actions highlight the chasm between the interests Movants seek to protect and what the Department is willing to defend.

To be sure, in another lawsuit challenging the Department's Title IX rule, the First Circuit

---

[1] Movants respectfully preserve the argument that no such presumption should exist. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) ("[W]e look skeptically on government entities serving as adequate advocates for private parties."); *see also Foundation for Individual Rights in Education v. Victim Rights Law Ctr.*, Petition for a Writ of Certiorari, No. 21-84 (July 19, 2021).

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

affirmed a district court's ruling that prior to the change in administrations the Department adequately represented the interests of Movants. *See Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556 (1st Cir. 2021). But in contrast to the more modest presumption deployed by the Ninth Circuit, the First Circuit imposes an unusually robust presumption of adequate representation by the government that can only be overcome by " 'a strong affirmative showing' that the [government] is not fairly representing the applicants' interests." *Id.* at 561 (citing *Cotter v. Mass. Ass'n of Minority L. Enf't Officer*, 219 F.3d 31, 35 (1st Cir. 2000), and *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998)). In contrast, the focus of the inquiry under the Ninth Circuit's precedents is whether a government's representation of a proposed intervenor's interests *may be* inadequate—there is no requirement to show that the government "is not fairly representing the applicants' interests." *Compare Victim Rights Law Ctr.*, 988 F.3d at 561, *with Citizens for Balanced Use*, 647 F.3d at 899. And while the First Circuit concluded that intervenors' "interest in making an additional constitutional argument in defense of government action does not render the government's representation inadequate," *Victim Rights Law Ctr.*, 988 F.3d at 562, this reasoning has been rejected by the Ninth Circuit because it "stands the relevant provisions of Rule 24 on its head by defining adequacy in terms of what existing parties are going to argue rather than in terms of the interests of the applicants in the subject matter of the litigation," *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988). Moreover, the Department's subsequent failure to appeal the adverse ruling of the District of Massachusetts calls into question the accuracy of the First Circuit's earlier determination that Movants were adequately represented.

Second, even to the extent that the Department will take actions to generally defend the Rule in this action, Movants' narrower and distinct interests cannot be properly represented by a governmental defendant that must balance competing public interests. In issuing the Rule, the Department explicitly sought to "balance protection from sexual harassment with protection of

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

freedom of speech and expression." 85 Fed. Reg. at 30,165. Movants, in contrast, represent interests

on one side of those scales: the free-speech rights of students.

It follows that Movants are not adequately represented by the Department under the

Supreme Court's decision in *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972).

In that case, the Secretary of Labor brought an action to set aside an election of officers of the

United Mine Workers of America. *Id.* at 529. The union member whose complaint led the Secretary

to sue sought to intervene in the action. *Id.* The district court denied his motion to intervene and the

court of appeals affirmed, but the Supreme Court reversed. *Id.* at 530. The Court reasoned that,

while the Secretary of Labor was charged with representing the union member's interest in the

litigation, it also was charged with protecting the "vital public interest in assuring free and

democratic union elections that transcends the narrower interest of the complaining union

member." *Id.* at 539. Because of the presence of this additional interest and its potential to affect

the Secretary's approach to the litigation, it was "clear" to the Court "that in this case there is

sufficient doubt about the adequacy of representation to warrant intervention." *Id*. at 538. So too

here.

Similarly, in *Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*, the

Ninth Circuit permitted a union to intervene as a defendant in an action against state agencies

regarding the preemption of California's Prevailing Wage Law. 152 F.3d 1184, 1190 (9th Cir.

1998). The Court noted that the employment interests of the union members in receiving the

prevailing wage "were . . . more narrow and parochial" than the state's broader interest in defending

the law generally, and therefore the union had made a sufficient showing of inadequacy. *Id*.; *see

also Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public

interest may not be 'identical to the individual parochial interest' of a particular group just because

'both entities occupy the same posture in the litigation.'"); *Forest Conservation Council*, 66 F.3d

at 1499 (citing 3B Moore's Federal Practice, ¶ 24.07[4] at 24–78 (2d ed. 1995) ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public"); *Nw. Env't Advocs. v. United States Dep't of Com.*, 769 F. App'x 511, 512 (9th Cir. 2019). As in *Mendonca*, Movants and their members have narrower interests than the Department in defending the rule from Plaintiff's challenge. Because the Department is tasked with balancing Movants' interest against other competing interests, it cannot adequately represent Movants. *See also Clark v. Putnam Cnty*, 168 F.3d 458, 461 (11th Cir. 1999).

Third, Movants' distinct and different interests from those of the Department will have direct consequences for the kinds of arguments each will make. The Department has a long-term interest in preserving the scope of its discretion to issue rules under Title IX. Consistent with that interest, which Movants do not share, the Department has been careful not to say that the First Amendment requires it to use the *Davis* standard in its definition of "sexual harassment." Movants, on the other hand, believe that this argument is an essential element to defending the Rule from Plaintiff's attack. Indeed, the Ninth Circuit has found intervention to be appropriate in cases in which a movant seeks to raise an argument implicating a constitutional issue that is the existing parties wish to avoid discussing. *See California ex rel. Lockyer*, 450 F.3d at 444;  *Oregon*, 839 F.2d at 638 (government did not adequately represent intervention applicants' interests because it was "apparent that the government's arguments will not include the constitutional deficiencies raised by the applicants").

Further, Movants' constitutional arguments have important implications not just for the merits of this lawsuit but also the appropriate remedy if Plaintiff prevails in its challenge to the rule's definition of "sexual harassment." Specifically, there are at least two scenarios in which the Court might rule in favor of Plaintiff on the merits but elect to leave in place the rule's definition. First, if Movants are correct that the definition of sexual harassment employed in the 2020 Rules is

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

a constitutional floor, then it would be appropriate for the Court to deem any legal deficiencies in

the Department's explanation for the definition to have been harmless error. *See* 5 U.S.C. § 706

(instructing Court to take "due account" of "the rule of prejudicial error"). Second, the Court must

consider whether vacatur is an appropriate remedy in light of the seriousness of the agency's errors

and disruption that vacatur would cause. *See California Communities Against Toxics v. U.S. E.P.A*.,

688 F.3d 989, 993–94 (9th Cir. 2012). Because Movants seek intervention to make highly relevant

arguments that none of the existing parties are prepared or willing to advance, there is a compelling

reason to conclude that their interests are not adequately represented. *See Citizens for Balanced

Use*, 647 F.3d at 900–01 (intervention particularly appropriate where the original party may be

"unable or unwilling to pursue vigorously all available arguments in support of the [intervenor's]

interest.").[2]

## II.    The Court should grant Movants permissive intervention.

Movants were granted permissive intervention in a parallel lawsuit challenging the rule in

the District of Columbia. *See* Minute Order, *Pennsylvania v. DeVos*, No. 20-1468 (D.D.C. July 6,

2020). Consistent with the district court's exercise of its discretion in that case, Movants should be

granted permissive intervention here. The prerequisites for permissive intervention are whether the

movant shows "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

---

[2] Plaintiffs opposed Movants' previous motion to intervene by arguing that Movants do not have Article III standing. But Movants are seeking to intervene on the side of the *defendants*, who at this stage need not demonstrate Article III standing. Moreover, Movants are not seeking any formal relief "that is broader than or different from" the relief sought by the Department of Education. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). Accordingly, no standing requirement applies. *See PrimeSource Bldg. Prod., Inc. v. United States*, 494 F. Supp. 3d 1307, 1320 (Ct. Int'l Trade 2021) (observing that *Little Sisters* "definitively resolved the persistent circuit split" over whether a putative intervenor must "demonstrate independent constitutional standing" in cases where it brings no new claims; *see also Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) ("Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away."). Furthermore, Movants' concrete, protectable interests are jeopardized by Plaintiff's lawsuit, and Movants satisfy any Article III standing requirement this Court could impose.

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) (citing *Greene v. United States*, 996 F.2d 973, 978 (9th Cir.1993), aff'd, 64 F.3d 1266 (9th Cir.1995)). Unlike Rule 24(a)(2), Rule 24(b) does not require the intervening party to demonstrate an interest at stake in the litigation or inadequacy of representation. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). Instead, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

The requirements of Rule 24(b) are satisfied here. To start, in federal question cases, "the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff." *Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944, 968 (N.D. Cal. 2020) (citing *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011)). "Where . . . proposed intervenors do not raise new claims, 'the jurisdiction concern drops away.'" *Levin Richmond Terminal Corp.*, 482 F. Supp. 3d at 968. Since Plaintiff is asserting federal claims under the APA, and Movants do not seek to add additional claims to the case, the first requirement is satisfied. Second, as explained above, it is beyond cavil that this motion is timely. *See United States v. Blue Lake Power, LLC*, 215 F. Supp. 3d 838, 842 (N.D. Cal. 2016) (intervention timely where motion filed in "early stage of the proceedings before the complaint had been answered . . . or substantive proceedings had occurred."). Lastly, Movants' defenses—which "squarely respond" to Plaintiff's claims and rebut their prayer for relief—obviously share common questions with the main action. *Kootenai Tribe*, 313 F.3d at 1111.

Moreover, intervention will not cause any undue delay or prejudice. Rule 24(b) only mentions *undue* delay, and normal delay does not require denying intervention—"otherwise every intervention motion would be denied out of hand because it carried with it, almost [by] definition, the prospect of prolonging the litigation." *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 710 (9th Cir. 2011) (citing *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir.1997)). Granting Movants permissive intervention would not

slow this case down at all, as nothing of substance has happened apart from dismissal of the original complaint without prejudice and the filing of an amended complaint. Nor could Movants' participation possibly prejudice Plaintiff (which must prove its case anyway) or Defendant (which should have to grapple with the constitutional implications of its arguments). *See League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 577–79 (6th Cir. 2018). Movants have further reduced any possible burden by joining forces, intervening together, and agreeing to submit consolidated briefs.

Allowing Movants to permissively intervene will have other benefits as well. For one, there is a substantial possibility that "allowing intervention will promote judicial economy and spare the parties from needing to litigate [in other courts.]" *California v. Health & Hum. Servs.*, 330 F.R.D. 248, 255 (N.D. Cal. 2019) (citing *Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989)). Before the rule went into effect, FIRE and Speech First regularly challenged universities' harassment policies in court. But if the rule is upheld—particularly on the constitutional grounds that Movants seek to raise—then many of these lawsuits can be avoided. Most universities accept federal funds, and most universities will follow the definition of actionable harassment adopted by the rule. Because that definition complies with the First Amendment, Movants can reduce the number of lawsuits they file—conserving substantial resources for the judicial system as a whole. *See Students & Parents for Privacy v. U.S. Dep't of Educ.*, 2016 WL 3269001, at *3 (N.D. Ill. June 15, 2016).

Moreover, "the magnitude of this case is such that [Movants'] intervention will contribute to the equitable resolution of this case." *Kootenai Tribe*, 313 F.3d at 1111. This case "impact[s] large and varied interests" but, without Movants' intervention, important perspectives will be missing. *Id.* For example, only Movants represent the students who "directly" benefit from the rule's protections for free speech and due process. *League of Women Voters of Mich.*, 902 F.3d at 579. And as supporters of the rule, Movants "represent the 'mirror-image' interests of the plaintiff[]" and are thus "uniquely qualified" to permissively intervene. *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (quoting *Builders Ass'n*, 170 F.R.D. at 441).

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

Movants also have a wealth of experience and expertise that bear on the historical, factual, and legal questions in this case—questions that Movants have been actively studying, discussing, promoting, and litigating for years. As thought leaders and repeat players in this field, Movants' participation as parties will meaningfully assist the Court. *See, e.g.*, *Berg*, 268 F.3d at 823 ("Applicants would likely offer important elements to the proceedings that the existing parties would likely neglect."); *Am. C.L. Union of N. California v. Burwell*, No. 16-CV-03539-LB, 2017 WL 492833, at *3 (N.D. Cal. Feb. 7, 2017) (granting intervention because "[proposed intervenor's] participation will contribute to the development of the factual and legal landscape.").

This Court should exercise its broad discretion over determinations of permissive intervention and allow Movants to join this case as defendants to provide their unique expertise, interests, constitutional arguments, and perspectives. *See Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

## CONCLUSION

For the foregoing reasons, the Court should grant Movants' motion to intervene.

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS

1   Dated: November 3, 2021                  Respectfully submitted,

2    /s/ Bradley A. Benbrook                  /s/ Bryan K. Weir

3   Bradley A. Benbrook (CA Bar. #177768)    William S. Consovoy*
    Stephen M. Duvernay (CA Bar. #250957)    Bryan K. Weir (CA Bar. #310964)
4   BENBROOK LAW GROUP, PC                   Cameron T. Norris*
    400 Capitol Mall, Suite 2530             CONSOVOY MCCARTHY PLLC
5   Sacramento, CA 95814                     1600 Wilson Blvd., Ste. 700
    (916)447-4900                            Arlington, VA 22209
6   brad@benbrooklawgroup.com                (703) 243-9423
    steve@benbrooklawgroup.com               will@consovoymccarthy.com
7   Counsel for all Proposed Intervenors     bryan@consovoymccarthy.com
                                             cam@consovoymccarthy.com
8    /s/ Charles J. Cooper
                                             Counsel for Speech First, Inc. and
9   Charles J. Cooper*                       Independent Women's Law Center
    Brian W. Barnes*
10  COOPER & KIRK, PLLC
    1523 New Hampshire Ave., NW
11  Washington, D.C. 20036
    (202) 220-9600
12  ccooper@cooperkirk.com
    bbarnes@cooperkirk.com
13
    Counsel for Foundation for
14  Individual Rights in Education
              *Admitted Pro Hac Vice
15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] INTERVENOR-DEFENDANTS' MOT. TO INTERVENE AS DEFENDANTS