1  BRIAN M. BOYNTON
   Acting Assistant Attorney General
2  Civil Division

3  CARLOTTA P. WELLS
   Assistant Branch Director
4  Civil Division, Federal Programs Branch

5  BENJAMIN T. TAKEMOTO
   (CA Bar No. 308075)
6  Trial Attorney
   United States Department of Justice
7  Civil Division, Federal Programs Branch
   P.O. Box No. 883, Ben Franklin Station
8  Washington, DC 20044
   Phone: (202) 532-4252
9  Fax: (202) 616-8460
   E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>　　　　Defendant. | Case No. 21-cv-1626-EMC<br><br>**Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Amended Complaint**<br><br>Hon. Edward M. Chen<br>Hearing: December 16, 2021, 1:30 p.m.<br><br>Phillip Burton Federal Building & United States Courthouse, Courtroom 5, 17th Fl., 450 Golden Gate Ave., San Francisco, CA 94102 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT ................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................................1

I.   Background ..............................................................................................................2

II.  Legal Standard .........................................................................................................3

III. Argument .................................................................................................................3

    A.   Plaintiff Lacks Organizational Standing. ....................................................4

        1.   The 2020 Rule Does Not Frustrate Plaintiff's Mission and Has Not Forced It to Divert Resources. .........................................................4

        2.   The Amended Complaint Lacks Plausible Allegations That the 2020 Rule Has Led to a Decline in Sexual Harassment Reporting at BHS. ......6

    B.   Plaintiff Lacks Associational Standing. .......................................................7

    C.   Plaintiff Has Not Plausibly Alleged an Injury Arising from Its Administrative Complaint. .............................................................................................9

IV.  Conclusion ..............................................................................................................11

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Mot. Dismiss Pl.'s Am. Compl.

i

# TABLE OF AUTHORITIES

**CASES**

*AlohaCare v. Hawaii Dep't of Human Servs.*,
    572 F.3d 740 (9th Cir. 2009) ............................................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 3, 6

*Ashley Creek Phosphate Co. v. Norton*,
    420 F.3d 934 (9th Cir. 2005) .......................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 3

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987) ..................................................................................................... 5, 6

*Equal Means Equal v. Dep't of Educ.*,
    450 F. Supp. 3d 1 (D. Mass. 2020), *appeal dismissed*,
    *Doe v. U.S. Dep't of Educ.*, 2020 WL 6039917 (1st Cir. June 22, 2020) ........................................ 6, 8

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ............................................................................................ 4

*Know Your IX v. DeVos*,
    Civ. A. No. RDB-20-01224, 2020 WL 6150935 (D. Md. Oct. 20, 2020) ........................................... 5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ......................................................................................................... 3

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) .......................................................................................... 4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................................... 4

*Or. Advocacy Ctr. v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) .......................................................................................... 7

*Pennsylvania v. DeVos*,
    480 F. Supp. 3d 47 (D.D.C. 2020) .................................................................................... 7

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ......................................................................................................... 7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..................................................................................................... 4

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985) .................................................................................................................. 9

**REGULATIONS**

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal
    Financial Assistance,
    85 Fed. Reg. 30,026 (May 19, 2020) ............................................................................... 1, 7, 9

**OTHER AUTHORITIES**

Annual Report to the Secretary, the President, and the Congress (Jan. 2021),
    https://www2.ed.gov/about/reports/annual/ocr/report-to-president-and-secretary-of-
    education-2020.pdf ................................................................................................................ 10

Case Processing Manual,
    https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf. ............................................... 10

*Questions and Answers on the Title IX Regulations on Sexual Harassment* (July 2021),
    https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf ................................. 7

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

PLEASE TAKE NOTICE THAT on December 16, 2021, at 1:30 p.m., before the Honorable Edward M. Chen, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant U.S. Department of Education will and hereby does move the Court for an order dismissing the Amended Complaint filed by Plaintiff The Women's Student Union (WSU).

Defendant's Motion is based on this Notice; the accompanying Memorandum of Points and Authorities; the transcript for the August 5, 2021, hearing; the Court's September 2, 2021, Order; the Court's files and records in this action; Plaintiff's Amended Complaint; any matter that may be judicially noticed; and any other matter that the Court may consider at any oral argument that may be presented in support of this Motion.

Plaintiffs' Opposition must be filed by December 1, 2021, and Defendants' Reply must be filed by December 8, 2021.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Earlier this year, WSU, a student body association in the Berkeley Unified School District (BUSD), filed this action against the Department of Education, alleging that a sexual harassment regulation promulgated in 2020—Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) (the 2020 Rule) —violates the Administrative Procedure Act (APA). Two months ago, the Court granted the Department's Motion to Dismiss, holding that WSU lacked Article III standing. Order, ECF No. 75. The Court reasoned that WSU's mission—"to advocate that the school adopt protective policies and to train the students about their rights and responsibilities under the law"—was not frustrated by the 2020 Rule because Plaintiff could continue to press that mission both before and after promulgation of the 2020 Rule. *Id.* at 9. The Court also reasoned that Plaintiff's members failed to plausibly allege an injury traceable to the 2020 Rule. Plaintiff's Amended Complaint contains additional allegations about specific instances of sexual harassment that its members have experienced. These allegations are without question serious. However, even combined with Plaintiff's disagreement with the 2020 Rule, they do not address the Court's previous holding that the 2020 Rule does not frustrate Plaintiff's mission or otherwise injure Plaintiff's members. Accordingly, the Court should reiterate these holdings and dismiss the Amended Complaint.

I.  **Background**

Plaintiff "is an unincorporated association and an approved student body association of the Berkeley Unified School District" (BUSD). Am. Compl. ¶ 16, ECF No. 78. It alleges that there are "systemic" problems involving sexual harassment at BUSD, *id.* ¶ 83, pointing to examples of anonymous students who have been sexually harassed, *see, e.g.*, ¶¶ 91–92, 98–99. In response to these problems, Plaintiff has organized "to advocate to address barriers to success and wellbeing for young women and non-binary students at [Berkeley High School (BHS)], including, but not limited to, its members." *Id.* ¶ 78. This "includes reducing sexual harassment experienced by students of BHS by (1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination, including sexual harassment; and (2) providing training to the student body about sexual consent as well as their rights and responsibilities under school policy, state law, and federal law." *Id.* ¶ 79.

On March 8, 2021, Plaintiff filed a Complaint against the Department, alleging that the 2020 Rule, which requires recipients of federal funds to address certain forms of sexual harassment, violates the APA. ECF No. 1. After arguing that the 2020 Rule was bad policy, *id.* ¶¶ 37–74, Plaintiff provided a handful of allegations attempting to connect it to the 2020 Rule, focusing on an administrative complaint that it filed with the Department's Office for Civil Rights (OCR) earlier this year, *id.* ¶ 75–82.

Because Plaintiff had not explained how *it* was injured by the 2020 Rule, the Department filed a Motion to Dismiss, arguing the Plaintiff lacked standing, the case was unripe, and Plaintiff had an adequate alternative remedy in the form of a lawsuit against BUSD. ECF No. 61. The Court granted Defendant's Motion, holding that Plaintiff had failed to establish organizational or associational standing. ECF No. 75.

With respect to organizational standing, the Court explained that "Plaintiff may not establish injury by engaging in activities that it would normally pursue as part of its organizational mission" and that Plaintiff's alleged "injuries" (e.g., investigating allegations of sexual harassment, meeting with school administrators) were typical pursuits. *Id.* at 9–11. The Court recognized that certain other organizations, whose missions were to provide legal representation to students, had standing to challenge the Rule because of an experienced decline in sexual harassment reporting following the Rule's issuance. But the Court distinguished Plaintiff from these organizations, reasoning that even if Plaintiff were a legal advocacy organization—which it is not—it would still lack standing "because Plaintiff fails to specifically

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Mot. Dismiss Pl.'s Am. Compl.

2

allege that such a reduction in reporting is actually taking place or is imminent." *Id.* at 11–13. Similarly, on associational standing, the Court explained, "Plaintiff fails to plausibly allege that its members would otherwise have standing to sue in their own right," so it could not establish standing on their behalf. *Id.* at 13–14.

Following dismissal, the Court granted leave to amend the Complaint. On October 4, 2021, Plaintiff filed its Amended Complaint. Once again, Plaintiff argues that the 2020 Rule is bad policy, Am. Compl. ¶¶ 37–64, and references systemic sexual harassment issues within BUSD, *id.* ¶¶ 81–85. And, once again, WSU attempts to connect its role as a student body association, formed to advocate for policy change and provide training, to the alleged effects of the 2020 Rule. Specifically, WSU alleges that certain forms of harassment "would not trigger an Office for Civil Rights investigation and resolution" under the Rule, *see, e.g.*, *id.* ¶ 88, and that OCR has not responded to its administrative complaint against BUSD, *id.* ¶¶ 107–114.

For the same reasons as set forth in that the Department's initial Motion to Dismiss, the Department files this Motion to Dismiss the Amended Complaint.

## II.     Legal Standard

Defendants move to dismiss for lack of standing and ripeness pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "Federal courts are courts of limited jurisdiction," so "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). To defeat such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

## III.    Argument

The Amended Complaint should be dismissed because Plaintiff lacks standing and the case is unripe. The "'irreducible constitutional minimum' of standing" provides that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff often establishes

standing when it demonstrates that it is directly subject to a regulation. However, when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed." *Defs. of Wildlife*, 504 U.S. at 562.

Plaintiff continues to allege two injuries: (1) that it has "experienced injuries that are no longer cognizable under the 2020 Regulations," Am. Compl. at 20, and (2) that it has suffered a procedural harm because it believes that OCR will dismiss its administrative complaint against BUSD. These allegations are just as speculative as the first Complaint and should accordingly result in dismissal once again.

### A. Plaintiff Lacks Organizational Standing.

The Court previously held that Plaintiff lacked organizational standing because (1) it had not established that the 2020 Rule frustrated Plaintiff's mission and (2) it had not plausibly alleged that the 2020 Rule had led to a reduction in reporting at BHS. *See* Order 8–13. None of the additional allegations in the Amended Complaint undermine that holding.

#### 1. The 2020 Rule Does Not Frustrate Plaintiff's Mission and Has Not Forced It to Divert Resources.

To establish standing in its capacity as an organization, WSU must plausibly allege that it has "suffered 'both a diversion of its resources and a frustration of its mission.'" *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). Crucially, however, an organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. . . . It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.*

Plaintiff still has not established that the 2020 Rule frustrates its mission. The mission, as alleged, has not changed between the Complaint and the Amended Complaint: "reducing sexual harassment experienced by students of BHS by (1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination, including sexual harassment; and (2) providing training to the student body about sexual consent as well as their rights and responsibilities under school policy, state law, and federal law." *Compare* Am. Compl. ¶ 79, *with* Compl. ¶ 16; *see also* Am. Compl. ¶ 78 (additionally alleging that its "mission is to advocate to address barriers to success and wellbeing for

young women and non-binary students at BHS, including, but not limited to, its members"). The Court's holding in response to the first Complaint is as true now as it was two months ago: "That the subject of its mission—Berkeley High School—may be less cooperative as a result of the new regulations is not the kind of concrete frustration of mission that affords standing." Order 9. Despite the Rule, Plaintiff remains able to provide training to students and advocate for policy change at BHS.

Plaintiff also has not plausibly alleged that it has had to divert resources *because of the 2020 Rule*, another necessary condition to establish organizational standing. In fact, any resources that Plaintiff may have spent on advocacy or training would be in furtherance of its mission, not against it. As this Court previously held, such voluntary resource expenditures—particularly when they are consistent with the organization's mission—do not support standing. *See* Order 11 (observing that "resource reallocations motivated by the dictates of preference, however sincere, are not cognizable organizational injuries because no action by the defendant *has directly impaired the organization's ability to operate and function*" (quoting *Know Your IX v. DeVos*, Civ. A. No. RDB-20-01224, 2020 WL 6150935, at *7 (D. Md. Oct. 20, 2020)).

Furthermore, even if Plaintiff had plausibly alleged that the 2020 Rule forced it to divert resources, it still would lack standing because such diversion of resources would not be within Title IX's zone of interest. "[W]hen . . . the plaintiff is not 'the subject of the contested regulatory action, the [zone of interest] test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 940 (9th Cir. 2005) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)). For example, the *Know Your IX* court held that a legal services organization seeking to vacate the 2020 Rule was not within Title IX's zone of interest. *See* 2020 WL 6150935, at *5 ("Congress's goals in enacting Title IX were to (1) avoid the use of federal resources to support discriminatory practices and (2) provide individual citizens effective protection against those practices. . . . Congress was not concerned with the revenue flow of private attorneys. An attorney does not gain standing any time a change in the law causes her legal practice to shift or become less lucrative.") (citation omitted). Similarly here, in enacting Title IX, Congress did not address how student organizations spend their time advocating for certain policies or training. Therefore, even if

1  Plaintiff plausibly alleged that, as a result of the 2020 Rule, it was forced to spend more resources on
2  advocacy or training, its interest in spending fewer resources is "so marginally related to . . . the statute
3  that it cannot reasonably be assumed that Congress intended to permit the suit." *See Ashley Creek*
4  *Phosphate Co.*, 420 F.3d at 940 (quoting *Clarke*, 479 U.S. at 399).

### 2. The Amended Complaint Lacks Plausible Allegations That the 2020 Rule Has Led to a Decline in Sexual Harassment Reporting at BHS.

The Amended Complaint should be dismissed for another independent reason: Plaintiff has failed to establish that "a reduction in reporting is actually taking place or is imminent." Order 11. The Court previously explained, "to properly plead that the 2020 Regulations frustrate its mission, Plaintiff needs to add specific facts to the complaint establishing that, as a result of the 2020 Regulations, BHS is unwilling to adopt policies that protect students from sexual harassment or to allow Plaintiff to train BHS students." *Id.* at 12.

The Amended Complaint is devoid of plausible allegations that there has been a reduction in sexual harassment reporting at BHS because of the 2020 Rule. Instead, Plaintiff repeats the same conclusory assertions that various aspects of the 2020 Rule "undoubtedly reduce reporting," Am. Compl. ¶¶ 45, 53, without pointing to supporting "factual matter," *Iqbal*, 556 U.S. at 678, demonstrating that this is actually the case. The Court previously held that such conclusory allegations were insufficient to establish standing, analogizing to *Equal Means Equal v. Dep't of Educ.*, 450 F. Supp. 3d 1 (D. Mass. 2020), *appeal dismissed*, *Doe v. U.S. Dep't of Educ.*, 2020 WL 6039917 (1st Cir. June 22, 2020), a similar case involving a similar challenge to certain sexual harassment guidance documents: "Plaintiff's allegation in the case at bar that 'the 2020 Regulations' narrowed definition of sexual harassment will undoubtedly reduce reporting' is just as conclusory." Order 12 (citation omitted). The Court should adopt the same analogy in response to the Amended Complaint and hold that conclusory and speculative allegations about how the 2020 Rule might affect reporting are not "factual matter" that support standing.

Beyond these conclusory assertions, Plaintiff alleges that BUSD has been unwilling to address certain sexual harassment. Crucially, however, this unwillingness is not plausibly "a result of the 2020 Regulations." Order 11. One allegation, for example, states, "BUSD has publicly represented that it will not investigate reports of sexual harassment that occur off campus, even if that harassment creates a hostile

environment on campus." Am. Compl. ¶ 85. However, BUSD's alleged off-campus policy is flatly inconsistent with the Title IX Rule, which requires schools to respond to sexual harassment, regardless of where it physically takes place. *See* 2020 Rule, 85 Fed. Reg. at 30,093 (stating that schools must respond to sexual harassment that occurs in an education program or activity, which "may also include situations that occur off campus"); *see also Pennsylvania v. DeVos*, 480 F. Supp. 3d 47, 60 (D.D.C. 2020) (dispelling a similar characterization of the 2020 Rule as imposing a "geographic restriction[]" to on campus conduct: "The operative inquiry is not *where* the sexual harassment occurred, but rather, whether it occurred at an operation 'over which the recipient exercised substantial control over both the respondent and the context in which the sexual harassment occurs'") (citation omitted); *Questions and Answers on the Title IX Regulations on Sexual Harassment* 8–9 (July 2021), https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf (last accessed Nov. 9, 2021) (clarifying the circumstances under which a school must respond to off-campus sexual harassment). Any decision not to investigate off-campus sexual harassment, therefore, is the result of BUSD's independent choices, not the 2020 Rule.

At bottom, there is no doubt that Plaintiff's interest in the 2020 Rule is sincere. "But a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). Plaintiff simply lacks standing.

**B.     Plaintiff Lacks Associational Standing.**

Plaintiff has also failed to add allegations that would support its standing as an association. "An entity has associational standing where '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *AlohaCare v. Hawaii Dep't of Human Servs.*, 572 F.3d 740, 747 (9th Cir. 2009) (quoting *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003)). The Court dismissed the original complaint because "Plaintiff fail[ed] to plausibly allege that its members would otherwise have standing to sue in their own right under the first prong of the associational standing test." Order 13. It explained that the Complaint's "boilerplate allegations merely speculate that the 2020 Regulations will lead BUSD to disregard certain

sexual harassment complaints; there are no specific allegations in the complaint that BUSD has in fact disregarded a single sexual harassment complaint or that a single student has chosen not to report or file a complaint after suffering sexual harassment; let alone that there has been a noticeable decline in sexual harassment reports at BHS or BUSD." *Id.* at 14.

Plaintiff's Amended Complaint fares no better. In many instances, Plaintiff repeats these boilerplate allegations without providing additional supporting factual material. *See, e.g.*, Am. Compl. ¶ 103 (alleging that the 2020 Rule altered Title IX's "liability standard" without explaining how any such alteration has specifically injured Plaintiff or its members). In other instances, although Plaintiff has added factual allegations about sexual harassment that its members have experienced, Plaintiff fails to connect such harassment to the 2020 Rule. For example, Plaintiff alleges that BUSD has not investigated several incidents in which its members were sexually harassed off campus. Am. Compl. ¶¶ 91, 92. But the Amended Complaint does not provide *factual matter* demonstrating that BUSD failed to investigate because of the 2020 Rule. Rather, Plaintiff speculates that BUSD has not investigated because "the 2020 Regulations do not require BUSD to respond to this harassment." *Id.* ¶ 92; *see also id.* ¶ 93 (alleging that "BUSD will not investigate reports of sexual harassment that occur off campus, even if that harassment creates a hostile environment on campus, and appears to attribute that decision to the 2020 Regulations"). Simply saying that the 2020 Rule does not require BUSD to investigate, however, does not show that BUSD failed to investigate *because of the 2020 Rule*.

Indeed, the Amended Complaint itself demonstrates the implausibility of a connection between BUSD's failure to investigate and the 2020 Rule. First, Plaintiff acknowledges that its members have not reported incidents of sexual harassment to BUSD. *See, e.g.*, *id.* ¶ 91 (explaining that a student "did not report the harassment to BUSD because, based on her classmates' experiences reporting harassment to BUSD, she did not believe BUSD would take any action in response"). Given the members' decision not to alert the school of harassment, it is pure speculation to suggest that BUSD would decline to investigate had the members reported. And it is yet another layer of speculation to suggest that, if BUSD were alerted, BUSD would decline to investigate because of the 2020 Rule, as opposed to some other reason. In fact, certain assertions in the Amended Complaint suggest that any decision not to investigate is attributable to BUSD's independent choices, not the 2020 Rule. After all, Plaintiff claims that BUSD's failure to respond

to sexual harassment has been longstanding: "Over at least the last decade, students and parents have repeatedly asked BUSD to improve its handling of sexual harassment against students" to no avail. *Id.* ¶ 81. Without allegations connecting BUSD's actions to the 2020 Rule, it is implausible to assume that, after failing to respond to sexual harassment for at least a decade, BUSD would have changed course but for the 2020 Rule. This assertion is especially implausible because the policies that have allegedly led to this lack of response were, by Plaintiff's own admission, enacted long before the 2020 Rule came into effect. *See id.* ¶ 84 (explaining that "BUSD has not revised its sexual harassment policies for the better in the 20 months since students protested" in 2020).

Second, the only instance in which Plaintiff attempts to connect a BUSD decision to the 2020 Rule is highly attenuated. Plaintiff vaguely asserts that BUSD "*appears* to attribute [its] decision [not to investigate reports of sexual harassment that occur off campus] to the 2020 Regulations." *Id.* ¶ 93 (emphasis added). But this attribution, made in a student newspaper article, is to "Title IX," not the 2020 Rule. *See id.* ¶ 85. In any event, once again, the 2020 Rule actually requires schools to respond to off-campus sexual harassment. *See, e.g.*, 2020 Rule, 85 Fed. Reg. at 30,093. Accordingly, any decision by BUSD to investigate only on campus sexual harassment would be based on its own flawed understanding of Title IX, not the 2020 Rule. Plaintiff still has not alleged sufficient factual matter to draw a plausible connection between BUSD's actions against Plaintiff's members and the 2020 Rule. Plaintiff lacks associational standing.

### C. Plaintiff Has Not Plausibly Alleged an Injury Arising from Its Administrative Complaint.

Plaintiff's other theory of standing—that OCR *may* dismiss Plaintiff's administrative complaint because of the 2020 Rule—is patently unripe, and at any rate does not amount to an injury in fact.

First, there is no decision for the Court to review. A claim is unripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (citation omitted)). Plaintiff acknowledges that since filing its administrative complaint, it has corresponded with OCR on a number of occasions, and that no final decision has been made. *See* Am. Compl. ¶¶ 108–112. Furthermore, it is an additional layer of speculation to suggest that OCR would dismiss the administrative complaint because of the 2020 Rule.

1  OCR dismisses administrative complaints for a variety of reasons, many having nothing to do with the 2020 Rule. For example, "[w]hen it is necessary to disclose the identity of the complainant to the recipient and witnesses in order to resolve the complaint, OCR will require written consent before proceeding." Case Processing Manual § 105, https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf (last accessed Nov. 9, 2021). And "[i]f OCR does not receive a signed written Consent Form, and it is necessary in order to resolve the complaint, the complaint will be dismissed and the complainant so informed in writing." *Id.*; *see also id.* § 108 (setting forth additional bases for dismissal). Because the manner in which OCR will resolve Plaintiff's administrative complaint is contingent on many future events, any injury arising from the administrative complaint is unripe.

Second, Plaintiff still has not articulated a procedural injury based on OCR's ongoing review of the administrative complaint. Plaintiff argues that 220 days to review an administrative complaint is an improper length of time and "offer[s] further support that [OCR] will not be opening WSU's complaint for investigation." Am. Compl. ¶ 107. Although OCR endeavors to resolve 80 percent of administrative complaints within 180 days of receipt, Annual Report to the Secretary, the President, and the Congress 11 (Jan. 2021), https://www2.ed.gov/about/reports/annual/ocr/report-to-president-and-secretary-of-education-2020.pdf (last accessed Nov. 9, 2021), it is under no obligation to resolve all complaints in that time period. And because OCR's procedures for adjudicating administrative complaints is reticulated, *see* Def.'s Reply in Supp. of its Mot. to Dismiss, 2–3, ECF No. 65, in addition to the volume of complaints that OCR receives, administrative complaints may take longer than 180 days to resolve. That Plaintiff's administrative complaint is unresolved after 180 days is no indication that OCR will dismiss it, let alone because of the 2020 Rule. The Court should not permit Plaintiff to short-circuit this administrative process by assuming OCR will dismiss the complaint for the reasons Plaintiff speculates.

IV. **Conclusion**

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

Dated: November 10, 2021             Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*