Adele P. Kimmel (CA Bar No. 126843)
Alexandra Z. Brodsky*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
Fax: (202) 232-7203
Email: akimmel@publicjustice.net
       abrodsky@publicjustice.net

*admitted pro hac vice

*Listing continues on next page*

Counsel for Plaintiff The Women's Student Union

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>    *Plaintiff*,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>    *Defendant*. | **PLAINTIFF OPPOSITION TO MOVANT'S MOTION TO INTERVENE AS DEFENDANTS**<br><br>Civil Action No. 3:21-cv-01626-EMC<br><br>Judge: Honorable Edward M. Chen<br><br>Hearing: January 20, 2021, 1:30 PM (virtual) Courtroom 5, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102 |

John He (CA Bar No. 328382)
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
Ph: (510) 622-8150
Fax: (202) 232-7203
Email: jhe@publicjustice.net

Linda M. Correia*
Lauren A. Khouri*
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington DC 20036
Ph: (202) 602-6500
Fax: (202) 602-6501
Email: lcorreia@correiaputh.com
         lkhouri@correiaputh.com

*admitted pro hac vice

## **TABLE OF CONTENTS**

INTRODUCTION...................................................................................................... 1

ARGUMENT .............................................................................................................. 1

I. Movants Are Not Entitled To Intervene As Of Right........................................1

    A.   Movants Lack Standing ...............................................................................2

        1.   Movants' Fear That Universities Will Adopt Unconstitutional Policies If the 2020 Regulations' Definition of Sexual Harassment Is Set Aside Is Insufficient to Establish Standing ................................................. 3

        2.   The Threatened Injury to Movants' Student Members Is Insufficient for Article III Standing .................................................................... 7

    B.   Movants Have Not Established a Protectable Interest Related to WSU's Claims .......7

    C.   Movants Have Not Overcome the Presumption of Adequate Representation ..........10

        1.   Movants Have Not Demonstrated that the Defendant Does Not Share Their Objective to Defend the 2020 Regulations ..................................... 10

        2.   Movants' Desire to Add Constitutional Arguments Does Not Establish Inadequacy ................................................................................. 12

            i.   The 2020 Regulations May Not Be Defended on the Novel Constitutional Grounds Movants Advance .................................. 13

            ii.   Movants' Argument Runs Headlong Into Principles of Constitutional Avoidance............................................................ 14

            iii.   Movants' Argument Is Not Relevant to the Remedy................... 16

        3.   Movants' Different Motivations for Defending the Rule Do Not Establish Inadequacy ............................................................................... 17

    D.   Movants' Interests Will Not Be Impaired in the Absence of Intervention ...............19

II.   The Court Should Deny Movants Permissive Intervention .........................................21

    A.   Movants' Alleged Interests are Too Speculative and Attenuated from WSU's Claims ...........................................................................................21

    B.   Movants Have Not Overcome the Presumption that the Defendant Will Represent its Interests .............................................................................22

    C.   Movants' Intervention Will Cause Undue Delay and Prejudice ...............................22

**III.**   **If the Court Grants Some Form of Intervention, It Should Limit Movants' Involvement** ...................................................................................................**23**

**CONCLUSION** ........................................................................................................ **24**

**CERTIFICATE OF SERVICE** ............................................................................. **25**

## TABLE OF AUTHORITIES

**CASES**

*Apple Inc. v. Iancu*, No. 5:20-CV-06128-EJD, 2021 WL 411157 (N.D. Cal. Feb. 5, 2021) . 26, 27

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003).................................................. 13, 14, 19, 22

*Bates v. Jones*, 127 F.3d 870 (9th Cir. 1997)............................................................... 12

*C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142 (9th Cir. 2016) ....................................... 10

*California ex rel. Lockyer*, 450 F.3d 436 (9th Cir. 2006)............................................... 13

*Californians for Safe & Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184
(9th Cir. 1998),........................................................................................................... 23

*Carroll v. Wells Fargo & Co.*, No. 15-CV-02321-EMC, 2016 WL 3951650 (N.D. Cal. July 22,
2016) ............................................................................................................................ 26

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011)................. 19

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ......................................................... 6

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................... 5, 6, 7, 9

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) ........................................................... 24

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ....................... 17

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ..................................................... 25

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) .......................... 5

*Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059 (9th Cir.) ................. 20

*Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) ............................................... 12, 24

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 627 F. App'x 662 (9th Cir. 2015).................... 13

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). ................................................... 12

*Haynie v. Harris*, 658 F. App'x 834 (9th Cir. 2016) ...................................................... 9

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) ........................................ 12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* 894 F.3d 1030
(9th Cir. 2018).............................................................................................................. 5

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ........................ 22

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)................................................................ 6

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988)............................... 18

*Manin v. Nat'l Transp. Safety Bd.*, 627 F.3d 1239 (D.C. Cir. 2011) ................................. 20

*Marsh v. Colvin*, 792 F.3d 1170 (9th Cir. 2015)................................................................ 20

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010) ............................................... 9, 10

*Med. Advocates for Healthy Air v. EPA*, No. CV 11-3515 SI, 2011 WL 4834464 (N.D. Cal. Oct. 12, 2011) ...................................................................................................................... 25

*Michigan v. EPA*, 576 U.S. 743 (2015) ............................................................................. 17

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-CV-02502 EJD, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012) ................................................................................. 25

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) ........................................ 6

*New York v. U.S. Dep't of Educ.*, No. 20-CV-4260 (JGK), 2020 WL 3962110 (S.D.N.Y. July 10, 2020) .................................................................................................................................. 16

*Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647 (N.D. Cal. 2004).................................. 12

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)......................... 11, 12, 13, 17

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) ...................... 22, 25, 27

*Pesticide Action Network N. Am. v. EPA*, No. C 08-01814 MHP, 2008 WL 11404954 (N.D. Cal. July 8, 2008)........................................................................................................................ 5

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)........................................................... 21

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ................................................................... 17

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ....................................................... 10

*Sierra Club v. EPA*, No. 13-CV-2809-YGR, 2013 WL 5568253 (N.D. Cal. Oct. 9, 2013)........ 27

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976).................................................... 6

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 101 F.3d 503 (7th Cir. 1996) .................................................................................................................................. 15

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) .......................... 25, 26

*SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019 WL 1427447

(N.D. Cal. Mar. 29, 2019)................................................................................................... 5

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ........................................ 5

*Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). .............. 10

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ........................................... 22

*UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) ..................... 26, 27

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ....................................... 13, 23

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ............................... 11, 13, 23

*United States v. Oregon*, 839 F.2d 635 (9th Cir. 1988) ............................................................. 18

*United States v. Sprint Comm., Inc.*, 855 F.3d 985 (9th Cir. 2017) ........................................... 11

*Valley View Health Care, Inc. v. Chapman*, No. 1:13-CV-0036-LJO-BAM, 2013 WL 4541602 (E.D. Cal. Aug. 27, 2013) ................................................................................................... 14

*Victim Rts. L. Ctr. v. Cardona*, -- F.Supp.3d ---, 2021 WL 3185743 (D. Mass. July 28, 2021) .. 15

*Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021)…………………. 10, 14, 15, 16

**FEDERAL STATUTES,  REGULATIONS, AND RULES**

5 U.S.C. § 553(c) ........................................................................................................... 23

5 U.S.C. § 706 ................................................................................................................. 24

34 C.F. R. § 106 ....................................................................................................... 7, 8, 15

34 C.F.R. § 75.500(b)(1) .................................................................................................... 8

85 Fed. Reg. 30,026, 30,289 (May 19, 2020) ..................................................................... 7

85 Fed. Reg. 59,916, 59,916 (Sept. 23, 2020) .................................................................... 8

85 Fed. Reg. 61,732 (Sept. 30, 2020) ................................................................................ 9

85 Fed. Reg. at 30,044 ..................................................................................................... 11

85 Fed. Reg. at 30,419 ....................................................................................................... 8

85 Fed. Reg. at 59,924 ....................................................................................................... 9

Federal Rule of Civil Procedure 24 ........................................................................... 5, 25, 26

**U.S DEPARTMENT OF EDUCATION DOCUMENTS**

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, RIN: 1870-AA16, Reginfo.gov (Spring 2021), https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=1870-AA16.... 23

Office for Civil Rights Blog – 20200522 (May 22, 2020), https://www2.ed.gov/about/offices/list/ocr/blog/20200522.html ............................................ 15

U.S. Dep't. of Educ., *Questions and Answers on the Title IX Regulations on Sexual Harassment* 4-8 (2021), https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf ................ 15

**OTHER AUTHORITIES**

Foundation for Individual Rights in Education, Comment Letter on the Department of Education's Proposed Regulations on Title IX Enforcement at 5 (Jan. 30, 2019), https://bit.ly/2Nl6qss .......................................................................................................... 8

Katherine Mangan, *3 Universities Face U.S. Inquiries Into Free-Speech Controversies*, The Chron. of Higher Educ. (Oct. 1, 2020), bit.ly/2YSdjv0 .............................................. 9

Wright & Miller, Harmless Error, 33 Fed. Prac. & Proc. § 8394 (2d ed. 2021) .......................... 20

**INTRODUCTION**

This case is about the Title IX regulations that the U.S. Department of Education promulgated in 2020. The sole question presented is whether four components of those regulations (the "2020 Regulations") complied with the Administrative Procedure Act ("APA"). The Foundation for Individual Rights in Education, Independent Women's Law Center, and Speech First, Inc. (collectively "Movants") seek to turn this suit into something far different: a fight over the constitutional bounds of sexual harassment law writ large, the results of which Movants hope will hamstring any future rulemaking the Defendant might pursue. Movants are free to develop litigation that will raise the momentous First Amendment question it wants answered. But this case does not. Because the scope of the Court's inquiry here is circumscribed by the APA, the constitutional argument proffered by Movants can have no influence on the outcome of this suit. And Movants' true objective—to thwart the Defendant from adopting an alternative definition of sexual harassment in the future—can be neither advanced nor frustrated by WSU's case. As a result, Movants cannot uphold their burden to show an entitlement to mandatory or permissive intervention.

**ARGUMENT**

**I.     Movants Are Not Entitled To Intervene As Of Right**

Under Federal Rule of Civil Procedure 24(a)(2), "a stranger to a lawsuit may intervene 'of right' where . . . letting the lawsuit proceed without that person could imperil some cognizable interest of his." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 894 F.3d 1030, 1037 (9th Cir. 2018). That Rule is satisfied where (1) the motion is timely; (2) the would-be intervenor has "a 'significantly protectable' interest relating to the property or transaction which is the subject of the action;" (3) "the disposition of the action may as a practical matter impair or impede [the movant's] ability to protect that interest;" and (4) the movant's "interest [is] inadequately represented by the parties to the action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011). The movant "bears the burden of showing each of the four elements is met," and its "[f]ailure to satisfy any one of the requirements is fatal to the

application." *Id*. Here, Movants are not entitled to mandatory intervention because they do not satisfy three of these elements and cannot establish standing, a threshold requirement.[1]

### A.      Movants Lack Standing

The Ninth Circuit has held that Rule 24(a)'s requirement that an applicant seeking to intervene as of right must have a significant protectable interest "implicitly" incorporates Article III standing requirements. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001); *SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019 WL 1427447, at *4 (N.D. Cal. Mar. 29, 2019); *Pesticide Action Network N. Am. v. EPA*, No. C 08-01814 MHP, 2008 WL 11404954, at *4 n.2 (N.D. Cal. July 8, 2008).

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). Where a party's standing rests on future harm, the "threatened injury must be *certainly impending* to constitute injury in fact." *Id*. "[A]llegations of *possible* future injury are not sufficient." *Id*. (internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting an alleged "threat of injury must be both 'real and immediate,' not 'conjectural' or hypothetical'"). In addition, and crucially for this motion, where the party that must establish standing is not "the object of the government action or inaction [it] challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (internal quotation marks omitted). Indeed, when, as here, the injury "arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed." *Id.* That is especially so when the threatened injury is "contingent upon the decisions of many independent actors in the causal chain." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 654 (9th Cir. 2017) (citing *Clapper*, 568 U.S. at 413). Likewise, "it must be 'likely,' as opposed to merely 'speculative,' that the inquiry will be 'redressed by a favorable

---

[1] WSU does not contest that Movants' motion to intervene is timely.

1   decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38,

2   43 (1976)).

3           Movants have failed to make these showings. The five sentences describing the

4   Independent Women's Law Center, ECF 88-1 at 4-5, offer no indication how it benefits from the

5   2020 Regulations and how setting aside the Regulations' definition of "sexual harassment" would

6   injure it. The Independent Women's Law Center, then, plainly lacks standing, and we do not

7   address it further. Movants FIRE and Speech First offer slightly more. But their two possible

8   theories—based on predicted effects on their resources and their members' rights–are both too

9   speculative to establish standing.

10              1.  *Movants' Fear That Universities Will Adopt Unconstitutional Policies If the*
11                  *2020 Regulations' Definition of Sexual Harassment Is Set Aside Is Insufficient*
                    *to Establish Standing*

12          Although with slight variations between them, both say the 2020 Regulations' definition

13   of "sexual harassment" has allowed them to shift their resources to First Amendment cases that do

14   not involve allegations of sexual harassment, and that if WSU were successful in having the

15   regulations set aside, they would have to shift those resources back to their prior uses to First

16   Amendment cases involving allegations of sexual harassment. ECF 88-1 at 7-8. But their own

17   accounts make clear that shifting of resources back would only arrive at the end of highly

18   speculative "chain of possibilities," each dependent on third parties making certain discretionary

19   decisions. *Clapper*, 658 U.S. at 410.

20          Movants' theory of standing flows from one legal premise—that the First Amendment bars

21   universities from prohibiting sexual harassment unless it is severe, pervasive, and objectively

22   offensive—and a number of factual premises: (1) before the 2020 Regulations were adopted, some

23   universities violated this First Amendment limitation in defining sexual harassment because they

24   believed the Department would otherwise find them in violation of Title IX and Movants devoted

25   some of their resources to opposing violations caused by those beliefs; (2) the 2020 Regulations'

26   definition of sexual harassment "has reduced the frequency," ECF 88-1 at 4, with which

27   universities violate the First Amendment because the universities comply with the Regulations and

28

the Regulations do not require universities to prohibit sexual harassment unless it is severe, pervasive and objectively offensive, thus permitting Movants to shift their resources elsewhere; and (3) if the 2020 Regulations' definition of sexual harassment is set aside, universities will abandon that definition and return to a definition that violates the First Amendment, thus requiring Movants to shift their resources back.

FIRE and Speech First present the first two factual premises in conclusory terms and provide no factual support—which would, indeed, be difficult to do given that the 2020 Regulations expressly allow schools to address sexual harassment that does not meet the new definition. *See* 34 C.F.R. § 106.45(b)(3)(i); 85 Fed. Reg. 30,026, 30,289 (May 19, 2020). But even if each factual premise were true, Movants would still bear their burden of making plausible allegations (and later introducing evidence) that if the 2020 Regulations' definition of "sexual harassment" is set aside, universities will then make the decision to adopt a definition that violates the First Amendment (as understood by Movants) to align with earlier Department guidance. To the contrary, there are several significant legal reasons why such an allegation is implausible.

First, a separate provision of the 2020 Regulations would prohibit universities from changing their definition of sexual harassment if, as Movants claim, the current definition is required by the First Amendment in higher education. The 2020 Regulations amended 34 C.F.R. § 106.6 to make clear that nothing in the regulations implementing Title IX requires an educational institution to "[r]estrict any rights that would otherwise be protected from government action by the First Amendment." 34 C.F.R. § 106.6(d)(1). The Department explained that "§ 106.6(d)(1) acts as a saving clause to ensure that institutions do not violate the First Amendment's requirements." 85 Fed. Reg. at 30,419. In the comment it submitted during the rulemaking, which Movants link to in their memorandum, ECF 88-1 at 2, FIRE told the Department that the "plain declaration that Title IX enforcement will be conducted within a framework that recognizes the essentiality of constitutional rights" was "an important component of the proposed regulations." Foundation for Individual Rights in Education, Comment Letter on the Department of Education's Proposed Regulations on Title IX Enforcement at 5 (Jan. 30, 2019), https://bit.ly/2Nl6qss. FIRE

explained that this provision was "helpful, and unfortunately necessary, in light of" university constitutional violations in adjudicating sexual harassment complaints. *Id*. Movants offer no grounds to believe that § 106.6(d)(1)—which this lawsuit does not challenge—would not be effective at preventing precisely the kinds of third-party decisions that might create the basis of Movants' standing.

Further, the Department has recently taken other steps in the higher education arena "to promote the First Amendment's guarantees of free expression and academic freedom." 85 Fed. Reg. 59,916, 59,916 (Sept. 23, 2020). Separate from its Title IX regulations, the Department has promulgated new regulations that provide that each "grantee that is [a public] institution of higher education . . . must also comply with the First Amendment to the U.S. Constitution . . . as a material condition of the Department's grant." 34 C.F.R. §§ 75.500(b)(1), 76.500(b)(1). A finding that a university violated the First Amendment, and thus a material condition of its grant, would allow the Department to "impose special conditions aimed at remedying noncompliance, temporarily withhold cash payments pending correction of the institution's deficiency, suspend or otherwise terminate a Federal award, or potentially disbar the institution." 85 Fed. Reg. at 59,924. The Department has also opened multiple investigations to assess whether universities' actions adhered to their public representations that they comply with the First Amendment and indicated that fines might be assessed if the universities did not. *See*, *e.g.*, 85 Fed. Reg. 61,732 (Sept. 30, 2020); Katherine Mangan, *3 Universities Face U.S. Inquiries Into Free-Speech Controversies*, The Chron. of Higher Educ. (Oct. 1, 2020), bit.ly/2YSdjv0.

Such consequences would surely encourage schools to tread carefully, if the First Amendment means what Movants say it means. Yet, in predicting that universities will return to their old policies and practices if WSU succeeds, Movants disregard the Department's new free speech regulations and recent enforcement actions. And even if some universities *might* nonetheless decide to implement unconstitutional definitions absent the challenged provision of the 2020 Regulations, *perhaps* requiring Movants to shift resources, such a speculative "chain of possibilities" surely does not constitute the kind of "certainly impending" harm required for

standing. *Clapper*, 568 U.S. at 414; *Haynie v. Harris*, 658 F. App'x 834, 836 (9th Cir. 2016) (noting it is "entirely speculative" to assume a third party will act unlawfully); *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (noting that ordinarily "[p]ast exposure to harmful or illegal conduct" does not confer standing where the party does not seek retrospective relief). Courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment," *Clapper*, 568 U.S. at 413, which is exactly what Movants demand.

Finally, we note that the implausibility of Movants' assertion—that universities will change their definition of sexual harassment if the 2020 Regulations' definition is set aside even if, as Movants assert, such a change would violate the First Amendment—in no way suggests that WSU would not benefit from the Court setting aside the 2020 Regulations' definition of "sexual harassment." Movants are laser focused on the First Amendment in *higher education*—that is where they devote their resources, where their student members are enrolled, and where the case law they cite applies.[2] Movants do not allege, however, that the definition of "sexual harassment" adopted in the 2020 Regulations embodies a constitutionally-required standard *when applied to public elementary and secondary schools*. Nor could they. First Amendment rights of students in public school environments are governed by the more forgiving standard laid out in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). Applying *Tinker*, the Ninth Circuit held that a school district could suspend a seventh-grade student for participating in "sexual harassment," which was defined by the school to include "'verbal . . . conduct of a sexual nature' including 'sex-oriented verbal kidding, teasing, or jokes.'" *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1148 (9th Cir. 2016). The Court concluded that schools "must have the authority to discipline students for engaging in sexual inappropriate and harassing speech." *Id.* at 1152. Thus, WSU would benefit from the Department enforcing Title IX's prior definition of sexual harassment

---

[2] FIRE explained in its comment its "mission is exclusively to defend the rights of students and faculty in the higher education setting" and thus it did "not address sections of the proposed regulations that regulate K-12 schools." FIRE Comment, *supra*, at 4 n.4.

against its school district even if that same definition could not be enforced against universities under the First Amendment, as Movants' claim.

### 2. The Threatened Injury to Movants' Student Members Is Insufficient for Article III Standing

FIRE and Speech First also claim that they have college student members who "have . . . been subjects of university disciplinary proceedings relating to alleged sexual harassment in the past." ECF 88-1 at 4 (FIRE); *see also* 5 (Speech First). But Movants do not explain or allege how the definition of "sexual harassment" was relevant to any particular member's past disciplinary proceedings. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (holding that past injury could not suffice for standing where "it was not tied to application of the challenged regulations"). Even if they did plausibly allege that they were injured in the past by a university using a definition of sexual harassment that differs from the 2020 Regulations, such past injury cannot establish current standing. *See Mayfield*, 599 F.3d at 970 (noting that ordinarily "[p]ast exposure to harmful or illegal conduct" does not confer standing where the party does not seek retrospective relief). And Speech First's allegation, not repeated by the other Movants, that its members "could be subject" to disciplinary proceedings by their colleges "in the future," ECF 88-1 at 5, is far too tenuous to support standing. That threatened injury is not "clearly impending" or "fairly traceable" to the relevant part of the 2020 Regulations that Movants seek to intervene to defend.

* * *

For the above reasons, Movants lack Article III standing, and so cannot intervene by right in WSU's suit.

### B. Movants Have Not Established a Protectable Interest Related to WSU's Claims

Even if Movants could establish Article III standing, they lack a "significant protectable interest" in the subject of this litigation, as is required for intervention as of right. *Geithner*, 644 F.3d at 841. "An applicant seeking intervention is held to have a significant protectable interest in an action if (1) the applicant asserts an interest that is protected under some law, and (2) there is a

relationship between the applicant's legally protected interest and the plaintiff's claims." *United States v. Sprint Comm., Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (internal quotation marks and alterations omitted). Here, Movants' three putative interests do not satisfy these conditions.

*First*, Movants are not entitled to intervene simply because they supported the 2020 Regulations' definition during the regulatory notice-and-comment process. ECF 88-1 at 7. True, where a public interest group is "directly involved" in establishing a state statute or federal regulation, they may have a significant protectable interest in that statute or regulation. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996); *see United States v. City of Los Angeles*, 288 F.3d 391, 402 n.5 (9th Cir. 2002) (stating that "special interest groups" may intervene in suits "challenging measures the organizations *helped to create*" (emphasis added)). But Movants submitted two of the over 124,000 public comments the Department received on its proposed Regulations prior to their promulgation in 2020. 85 Fed. Reg. at 30,044. Surely, not every one of these commenters is entitled to intervene as of right. Such a minimal degree of participation in an administrative proceeding falls well short of the "direct involve[ment]" courts in this Circuit have found to justify the intervention of public interest groups in the past. *See, e.g.*, *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (conservation group permitted to intervene in action to delist the Spring Snail as an endangered species where it had filed the suit that compelled the agency to list the Spring Snail as endangered in the first place); *see also Nw. Forest Resource Council*, 82 F.3d at 837-38 (collecting cases).

Nor can Movants simply rest on the fact that they are "public interest groups that advocate for the free speech and due process rights the rule protects." ECF 88-1 at 7. That the 2020 Regulations adopted a definition "of the type that [each group] supports and promotes" is insufficient to establish a significantly protectable interest in the subject of this action. *Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997) (denying intervention to a public interest group that advocated for term limits in a case challenging term limits). Plus, to the extent Movants' argument relies on their interest in due process rights, those are entirely disconnected from the claims at

issue here, which do not concern challenges to the 2020 Regulations' procedural provisions. *See generally* Am. Compl., ECF 78.

*Second*, Movants do not have a legally protectable interest in allocating their resources any particular way. A parties' diversion of resources may be sufficient to show injury-in-fact for purposes of standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 369 (1982). But injury-in-fact is merely necessary, not sufficient, to establish a legally protectable interest required for mandatory intervention under Rule 24. Relevant here, to establish a legally protectable interest, it is not enough for an applicant to have an economic interest in a suit; the economic interest must be protected by law. *See, e.g.*, *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) ("An economic stake in the outcome of the litigation, even if significant, is not enough."); *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650-51 (N.D. Cal. 2004) (holding movant's economic interest in lawsuit was not protectable absent legal entitlement); ECF 27 at 15-16 (collecting cases). It is certainly true that, as Movants' case notes, "evidence that bolsters [a plaintiff's] standing to sue" may, in some cases, "also bolster[] the case for intervention." *California ex rel. Lockyer*, 450 F.3d 436, 442 (9th Cir. 2006). But that does not mean Article III standing and a "legally protectable interest" are identical. Besides, as explained above, FIRE and Speech First's diversion-of-resources theory is highly speculative, and the Independent Women's Law Center does not even attempt to lay out such an argument. *See supra* pages 3-6.

*Third*, Movants cannot demonstrate the necessary non-speculative "relationship" between the free speech and due process rights of their members and the claims at issue here. *See United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (noting legally protectable interest must be "non-speculative" and "related to the underlying subject matter of the action"); *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 627 F. App'x 662, 663 (9th Cir. 2015) (denying intervention because alleged interest was too speculative). As explained above, FIRE and Speech First have not plausibly alleged that vacating the 2020 Regulations would actually threaten the constitutional rights of their members. *See supra* pages 3-7. And the Independent Women's Law Center does not indicate it has any student members at all. ECF 88-1 at 4-5.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.      Movants Have Not Overcome the Presumption of Adequate Representation**

To the extent that Movants have shown standing and a significant and legally protectable interest in this litigation, they have not overcome the presumption that the Defendant will adequately represent that interest. "Where [a] party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies." *Geithner*, 644 F.3d at 841 (internal quotation marks omitted). And "[i]n the absence of a very compelling showing to the contrary, it will be presumed that a [government] adequately represents its citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003) (internal quotation marks omitted). Crucially, strategic differences do not amount to different ultimate objectives. *See United States v. City of Los Angeles*, 288 F.3d at 402-03 ("[D]ifferences in strategy . . . are not enough to justify intervention as a matter of right."); *Nw. Forest Res. Council*, 82 F.3d at 838 (same). Here, Movants contend that, for three reasons, the Defendant does not adequately represent their interests. Those arguments are far from "very compelling." *Arakaki*, 324 F.3d at 1086.

*1.   Movants Have Not Demonstrated that the Defendant Does Not Share Their Objective to Defend the 2020 Regulations*

Movants' objective within to scope of the litigation is to protect the 2020 Regulations. *See* ECF 88-1 at 1, 10. The organizations assert that "the divergent policy positions of this administration and the last call into question the likelihood that the Department's current leadership will offer a robust defense of all portions of the [2020 Regulations]." ECF 88-1 at 10. But courts generally assume a government will defend its own policies. *See, e.g.*, *Geithner*, 644 F.3d at 841; *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021), *cert. filed*, No. 21-84 (S. Ct. July 21, 2021); *Valley View Health Care, Inc. v. Chapman*, No. 1:13-CV-0036-LJO-BAM, 2013 WL 4541602, at *8 (E.D. Cal. Aug. 27, 2013). Indeed, it has. Since this lawsuit's inception, the Department has vigorously and skillfully defended against it. It successfully moved to dismiss WSU's first complaint, *see* ECF 75, and has now moved to dismiss WSU's amended

complaint, *see* ECF 89. The Court does not need to predict, then, whether the Department will defend this lawsuit, because the Court knows the Department is already doing so.

Moreover, the Movants have offered nothing to demonstrate that the Department has changed its positions on the four provisions WSU challenges, only one of which the Movant discusses in its motion. As this Court previously noted, "[t]here is no guarantee that the Department will rescind the Regulations," given that President Biden's executive order "only instructs the Department to 'review' the Regulations" and "Secretary Goldberg's letter does not indicate exactly how the Department intends to change the Regulations." ECF 56 at 2 (denying Defendant's motion to stay). Plus, none of the Administration's statements say anything at all about the four particular provisions WSU challenges here. Nor does the Department's 2021 guidance reflect a lack of fidelity to the challenged provisions, as Movants assert without any explanation at all. ECF 88-1 at 3, 10. That guidance document is faithful to the 2020 Regulations, indicating that the Department continues to enforce the Trump-era rules as written. *See, e.g.*, U.S. Dep't. of Educ., *Questions and Answers on the Title IX Regulations on Sexual Harassment* 4-8 (2021), https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf (explaining definition of sexual harassment under 2020 Regulations); *id*. at 8-10 (explaining geographic limitations imposed by 2020 Regulations); *id*. at 10-13 (explaining notice requirement imposed by 2020 Regulations); *id*. at 13-14 (explaining deliberate indifference requirement imposed by 2020 Regulations).

The Department's decision not to cross-appeal the district court's ruling in *Victim Rights Law Center v. Cardona* is also insufficient to establish inadequate of representation at this stage. In that case, a group of plaintiffs challenged the entirety of the 2020 Regulations. *Victim Rts. L. Ctr. v. Cardona*, -- F.Supp.3d ---, 2021 WL 3185743, at *1 (D. Mass. July 28, 2021), *order clarified*, No. CIV 20-11104-WGY, 2021 WL 3516475 (D. Mass. Aug. 10, 2021). The Department's defense was largely successful, save for one ancillary evidentiary rule applicable only to hearings conducted by colleges and universities. *See id*. at *19. That rule is not at issue in this suit, *see generally* Am. Compl.; ECF 78; WSU would not have standing to challenge it, since

it does not apply to K-12 schools at all, *see* 34 C.F.R. § 106.45(b)(6)(i). And it is little surprise that the Department decided not to defend that portion further on appeal: The provision was so facially nonsensical that, even before the effective date, the Department was forced to publish a notice explaining that it would not enforce that evidentiary rule according to its plain text, given the absurd results that would follow. *See* Office for Civil Rights Blog – 20200522 (May 22, 2020), https://www2.ed.gov/about/offices/list/ocr/blog/20200522.html. The Defendant's decision not to file a cross-appeal to defend one narrow provision irrelevant to this litigation, then, is insufficient to overcome the uncontroverted evidence that the Defendant has, and will continue to, defend against WSU's suit. Besides, if Movants fear that the Department will fail to appeal an adverse outcome in this case, the solution is simple: Movants could intervene at that juncture, just as Texas did in *Victim Rights Law Center*. *See* ECF 84 at 2 n.2; *see also Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 101 F.3d 503, 509 (7th Cir. 1996) (Posner, J.) (explaining "[t]he proper way to handle" the possibility that a government defendant will not appeal "when as here no present inadequacy of representation can be shown").

### 2. *Movants' Desire to Add Constitutional Arguments Does Not Establish Inadequacy*

Movants argue that the Defendant does not adequately represent their interests because the Defendant, in its defense of the 2020 Regulations, will not make their favored constitutional argument—an argument that, if successful, might foreclose the Department from adopting some alternative positions in the future. ECF 88-1 at 13. But these putative differences are not enough to defeat the presumption of adequate representation because Movants' objectives only diverge from the Defendant's with respect to matters outside the scope of this case. *New York v. U.S. Dep't of Educ.*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *4 (S.D.N.Y. July 10, 2020) (denying Movants' attempt to intervene in a different challenge to the Regulations because "*[i]n the scope of issues presented in this case*, the objectives of the [Movants] and [the Defendant] are aligned" (emphasis added)), *order vacated on other grounds*, *appeal dismissed* (Mar. 10, 2021).

1

2

      *i. The 2020 Regulations May Not Be Defended on the Novel*
        *Constitutional Grounds Movants Advance*

3

   To start with the basics: WSU's lawsuit is about the 2020 Regulations and the 2020

4

Regulations alone. The sole question before the Court is whether four portions of those rules were

5

adopted in compliance with the APA. WSU asserts that, in adopting its definition of sexual

6

harassment, the Defendant failed to grapple with tradeoffs and provide reasoned explanations—

7

procedures required by the APA. ECF 1 at 22-23, ¶¶ 85-89. WSU's claim, then, does not call on

8

the Court to identify the full set of definitions the Department could ever adopt. It only asks

9

whether *this* one, promulgated in *this* way, is legal.[3]

10

   "It is a 'foundational principle of administrative law' that judicial review of agency action

11

is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland*

12

*Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (quoting *Michigan v. EPA*, 576

13

U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). As a result, the 2020

14

Regulations can only be defended based on a fixed universe of justifications already endorsed by

15

the Department. And Movants are clear that their constitutional argument is not one the

16

Department used to explain its adoption of the 2020 Regulations; after all, that is why Movants

17

are confident the Defendant will not advance its favored arguments. ECF 88-1 at 13. To the extent

18

---

19

[3] WSU does not, as Movants claim, argue that Title IX and the APA "mandate" one particular

20

"broadened definition of 'sexual harassment.'" ECF 88-1 at 2. That is, WSU does not make a
*Chevron* step one argument that, in passing Title IX, Congress expressed a clear view on what

21

definition of sexual harassment the Department should employ. *See, e.g., Chevron, U.S.A., Inc. v.
Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Bicycle Trails Council of Marin v.*

22

*Babbitt*, 82 F.3d 1445, 1452 (9th Cir. 1996), *as amended* (June 17, 1996).

23

For their part, although the Movants at times suggest the 2020 Regulations' definition is
constitutionally required, their actual argument is a little different: They say that "any broader

24

definition of sexual harassment [than the one in the 2020 Regulations] would violate the First

25

Amendment" as applied to higher education. ECF 88-1 at 2. They never suggest that a narrower
definition would be unconstitutional. Like the Defendant, then, Movants also defend the 2020

26

Regulations' definition of sexual harassment as one within a "range of constitutionally permissible
definitions," *id.* —specifically, one at the outer bound of that range. Perhaps Movants and the

27

Defendant disagree about the precise contours of the universe of constitutional definitions (though
that is not apparent from Movants' briefing). But both agree the 2020 Regulations adopted a

28

definition of sexual harassment from within a set of constitutionally permissible options.

Movants support the current definition of sexual harassment for a reason different than that given by the Defendant, such reasoning cannot play into the outcome of this suit. Movants thus cannot offer anything to this litigation beyond what the Defendant already provides. *See Nw. Forest Res. Council*, 82 F.3d at 838 (evaluating advocacy based on whether applicants would "offer" anything to the proceedings that existing parties would "neglect").[4]

No wonder, then, that other courts have already denied Movants' intervention into APA challenges to the 2020 Regulations on the grounds that their concerns about the constitutionality of alternative definitions are outside the bounds of those cases. *Victim Rts. L. Ctr.*, 988 F.3d at 562-63; *New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3, *order vacated on other grounds*, *appeal dismissed* (Mar. 10, 2021). The Defendant's sound decision not to try to turn an APA challenge to an existing regulation into a sweeping survey of all the hypothetical positions the Department can and cannot take going forward would not render the government an inadequate representative. *Victim Rts. L. Ctr.*, 988 F.3d at 562-63; *New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *4.

### ii. *Movants' Argument Runs Headlong Into Principles of Constitutional Avoidance*

As the First Circuit noted in denying Movants' intervention in a similar challenge, "[c]ourts are obliged to avoid rulings on constitutional questions when non-constitutional grounds will suffice to resolve an issue." *Victim Rts. L. Ctr.*, 988 F.3d at 563; *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). "The [M]ovants' putative interest in having certain constitutional issues addressed now rather than later," the Court explained, "does not obviate the principle of constitutional avoidance." *Victim Rts. L. Ctr.*, 988 F.3d at 563; *see also New York*, No. 20-CV-

---

[4] Intervenors might be allowed to advance alternative justifications not relied on by the agency in one circumstance: *Chevron* step one arguments, in which they contend "Congress has directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842, and so no analysis of the agency's reasoning is necessary. *See Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 331 n.12 (D.C. Cir. 2020) (citing cases). For the reasons described above, the challenge to the 2020 Regulations' definition of sexual harassment requires instead a step two inquiry. *See supra* page 13 n.3.

4260 (JGK), 2020 WL 3962110, at *3 n.2 (explaining that constitutional avoidance advises against Movants' intervention in challenge to 2020 Regulations).

Such avoidance is particularly appropriate here because the constitutional questions are not only unnecessary but unhelpful in resolving the case. *Cf. California ex rel. Lockyer*, 450 F.3d at 444 (holding government was inadequate representative where movants' unique positions related to constitutional questions might influence case outcome); *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (same). Even if Movants were correct that the Department's previous sexual harassment definitions were unconstitutional, that would not resolve the question of whether the Department's adoption of *this* definition, from among the permissible options, complied with the APA's procedural requirements. *See supra* pages 13-14 & n.3. Movants' constitutional concerns, then, are neither necessary nor sufficient to resolve this case.

Movants fail to distinguish their motion to intervene in this case from their unsuccessful attempt to intervene in *Victim Rights Law Center v. Rosenfelt*, which the First Circuit rejected largely on constitutional avoidance grounds. Cherry-picking language, Movants suggest that the Ninth Circuit requires a lesser showing of inadequate government representation than does the First. ECF 88-1 at 11. Not so. To be sure, the Ninth Circuit generally does not require an applicant demonstrate inadequacy with "absolute certainty." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). But neither does the First Circuit. *See, e.g.*, *Victim Rts. L. Ctr.*, 988 F.3d at 561 ("Generally, an applicant for intervention need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate." (internal quotation marks omitted)). And, like the First Circuit, the Ninth Circuit requires a "very compelling showing" to overcome the presumption that the government will adequately represent an applicant's interest. *Arakaki*, 324 F.3d at 1086; *see also Victim Rts. L. Ctr*, 988 F.3d at 561 (requiring "a strong affirmative showing that the [government] is not fairly representing the Movants' interests" (internal quotation marks omitted)). Indeed, Movants' intervention is even less justified in this case than it was in *Victim Rights Law Center*. In the latter, plaintiffs challenge the 2020 Regulations not only on APA grounds, but also as a violation of the equal protection

guarantee of the Fifth Amendment—a claim for which novel constitutional defenses might be appropriate. *See Victim Rts. L. Ctr*, 988 F.3d at 559, 560 n.1. Movants' arguments that their constitutional arguments were permissible grounds to defend the rule, then, were stronger in the First Circuit.[5]

### iii. *Movants' Argument Is Not Relevant to the Remedy*

Perhaps realizing its constitutional argument is not a permissible reason for upholding the 2020 Regulations' definition, Movants newly contend that its argument might relate to the remedy available if WSU succeeds on the merits. ECF 88-1 at 13-14. Its brief assertions in support, though, do not hold water.

*First*, Movants contend that the Court might "deem any legal deficiencies in the Department's explanation for the definition to have been harmless error. *Id*. But "harmless error" analysis, like all other review of agency decision-making, is limited to the same reasons the government originally gave for its challenged action. *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("If the district court had applied harmless error in a way that affirmed the agency on a ground not invoked by the ALJ, then the district court would have violated the *Chenery* principle."); *Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1072 (9th Cir.) ("An explanation that 'even if the [agency] had not used the incorrect regulatory definition, the same outcome would have resulted' is a post-hoc decision explanation that is disfavored."), *amended*, 387 F.3d 968 (9th Cir. 2004); Wright & Miller, Harmless Error, 33 Fed. Prac. & Proc. § 8394 (2d ed. 2021) (explaining *Chenery*'s constraints on harmless error review). Movants, then, are out of luck once again: The argument they insist they must be allowed to make is one simply unavailable in this case.

Besides, the "harmless error" doctrine only applies "when there is not the slightest uncertainty as to the outcome of a proceeding on remand." *Manin v. Nat'l Transp. Safety Bd.*, 627

---

[5] In trying to distinguish *Victim Rights Law Center*, Movants also suggest, in passing, that the Ninth Circuit has rejected the First Circuit's logic in explaining that adequacy should not be "defin[ed] . . . in terms of what existing parties are going to argue," but instead "in terms of the interests of the [Movants] in the subject matter of the litigation." ECF 88-1 at 11 (quoting *Oregon*, 839 F.2d at 638). But the core problem with Movants' constitutional argument as a justification for intervention is not that the Defendant will not make it. It is that the Defendant, and any intervenor, *could not* and *should not* make it. *See Victim Rts. L. Ctr*, 988 F.3d at 562-63; *supra* pages 13-14.

F.3d 1239, 1243 n.1 (D.C. Cir. 2011) (internal brackets and quotation marks omitted); *see also Gifford Pinchot Task Force*, 378 F.3d at 1071 ("The [harmless error] doctrine may be employed only 'when a mistake of the administrative body is one that *clearly* had *no bearing* on the procedure used or the substance of decision reached.'"). Movants do not and cannot contend that would be true here, because they do not and cannot contend that the 2020 Regulations' definition is the only permissible one; they assert only that it is a "constitutional floor" with respect to discipline of students in higher education.[6] ECF 88-1 at 14; *see also supra* page 13 n.3. By Movants' own account, then, there is some "uncertainty" as to how the Department would write the definition on remand, so the harmless error doctrine cannot apply. The Department's predicted failure to make this argument, then, cannot render it an inadequate representative.

*Second*, Movants say that vacatur might not be the appropriate remedy "in light of the seriousness of the agency's errors and disruption that vacatur would cause." *Id.* But, as just explained, Movants' arguments do not pertain to the seriousness of the Department's mistakes. And they fail to point to any relationship between their constitutional theory and what disruption might occur upon vacatur. Without more, there is no basis for the Court to conclude the Department will inadequately represented Movants with respect to remedies.

### 3. *Movants' Different Motivations for Defending the Rule Do Not Establish Inadequacy*

Movants also argue that the Defendant is an inadequate representative because the government cares about both protecting free speech and stopping sexual harassment, and Movants are concerned only with the former. ECF 88-1 at 11-12. But this purported difference in motivations does not, on its own, establish inadequacy. After all, government actors will always have unique institutional concerns about how to balance different constituencies' needs and

---

[6] To illustrate why Movants must be correct this definition is not the only possible one: Suppose Movants were right and the definition challenged here corresponded to the least serious harassment for which a student at a public institute of higher education could be punished. The Department could still adopt a definition more stringent than the constitutional baseline. It could adopt a broader definition for K-12 schools than would be permissible for colleges and universities; after all, Movants' arguments relate only to the definition as applied to higher education. *See supra* page 6 & n.2. The Department could also adopt one definition for when a school must initiate a disciplinary investigation into sexual harassment and a broader definition for when a school must offer supportive services, such as counseling, to a victim. *See* 34 C.F.R. §§ 106.30(a), 106.44(a).

priorities. Yet they are specially presumed to serve as adequate representatives for those who share their ultimate goals in the litigation. *See supra* page 10; *see also Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) (rejecting proposed reason to find inadequate representation that would apply to governments in general, and so "eliminate the presumption of adequate representation when the government and the intervenor-applicant share the same interest"). Movants' "purely speculative" notion that the Defendant's interest, even if presently aligned with Movants', may "at some other unspecified time in the future[] diverge" in the event of a future rulemaking does not justify intervention. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997).

In assessing adequacy of representation, courts look not to parties' and movants' motivations broadly, but to their goals within the litigation. *See Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 949 (9th Cir. 2009) (finding that movant effectively had "identical interests" to existing parties where they shared an "ultimate bottom line": "uphold[ing]" challenged legislation). The Ninth Circuit's decision in *Arakaki v. Cayetano* illustrates that principle. There, a group of native Hawaiians (collectively "Hoohuli") sought to intervene in a lawsuit challenging the provision of benefits by Hawaiian state agencies. *Arakaki*, 324 F.3d at 1081. Undoubtedly, Hoohuli, as recipients of the benefits, had different motivations than the state defendants, the providers of the benefits. But the Ninth Circuit concluded that, because the defendants shared the goal of defending the state's actions, and were ready and able to make all relevant arguments, they adequately represented Hoohuli. *Id.* at 1086-88.

Both Movants and the Defendant seek to defend the 2020 Regulations. *See supra* pages 10-12. To the extent the Movants pursue an additional objective—hamstringing future agency action—that is well outside the scope of this case. *See supra* pages 12-17. And Movants do not explain how their exclusive concern for free speech protection will, practically, lead to different strategic decisions given that no party can defend the 2020 Regulations on grounds not advanced by the Department during its rulemaking. *See supra* pages 13-14. That distinguishes this case from *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), where the applicant urged additional grounds for the court to reach the existing party's shared objective, *id.* at 529-30, and

also sought unique injunctive relief beyond that requested by the plaintiff, *id*. at 530 & n.3. There, intervention could give rise to different "approach[es] to the conduct of the litigation." *Id.* at 539. But there is no way for Movants' preferred constitutional arguments to come into play as the Court adjudicates this APA challenge, and thus no reason to find the Defendant's existing representation inadequate.

      *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), is similarly inapposite. There, a union-intervenor provided specific reasons to think the mismatch between the scope of its interest and the state defendants' would result— and indeed already had resulted—in meaningfully different litigation positions that rendered the existing parties' representation inadequate. Br. for Appellee, *Californians for Safe & Competitive Dump Truck Transp.*, 1997 WL 33551014 at *41 (9th Cir. Oct. 6, 1997). Because the only additional "point of view" Movants bring falls outside the scope of this litigation, they fail to overcome the presumption of adequate representation.

      **D.**    **Movants' Interests Will Not Be Impaired in the Absence of Intervention**

      Movants are also not entitled to mandatory intervention because they will have many other opportunities to protect their asserted interests. *See, e.g.*, *Alisal*, 370 F.3d at 918 (holding that applicant had protectable interest but could protect that interest through separate avenues); *United States v. City of Los Angeles*, 288 F.3d at 402 (same). There are many other ways in which Movants will be able to advocate for their preferred definition. *First*, so long as they can establish standing, Movants and their members could file lawsuits against schools that continue to use a "severe *or* pervasive" definition of sexual harassment, in hopes of striking down those policies and establishing precedent that a narrow definition is constitutionally required in higher education. *See New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3 (denying FIRE intervention in part because it "is at liberty to initiate litigation alleging that the [2020 Regulations are] required by the Constitution"). *Second*, when the Department initiates rulemaking on Title IX, Movants will be able to make their views known in the notice and comment period. 5 U.S.C. § 553(c); *see also Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal*

1   *Financial    Assistance*,    RIN:    1870-AA16,    Reginfo.gov    (Spring    2021),

2   https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202104&RIN=1870-AA16

3   (noting the Department intends to engage in unspecific rulemaking under Title IX sometime in or

4   after May 2022). They can, in that forum, share their view that any definition of sexual harassment

5   broader than the one the Department adopted in the 2020 Regulations would run afoul of the

6   Constitution. *Third*, if the Department nonetheless adopted a view contrary to Movants' policy

7   preferences, the organizations and their members could file their own APA or constitutional

8   challenge if they can establish standing. 5 U.S.C. § 706. In short, if Movants wish to challenge

9   future action the Department might take, they will have plenty of chances to do so. But not here.

10       Movants are wrong to suggest the "potential stare decisis effects" of the Court's ruling will

11   impair their ability to stop the Department from adopting a different definition of sexual

12   harassment in the future. ECF 88-1 at 8. Even by their own account, Movants will not be hurt by

13   this Court upholding the 2020 Regulations on reasons other than Movants' favored constitutional

14   argument; that is, they will not be in a worse position than they are now or before WSU brought

15   suit. As explained above, the Court is not called, in this case, to judge any sexual harassment

16   definitions other than the one contained in the 2020 Regulations. *See supra* pages 13-14 & n.3.

17   The Court's decision, then, will in no way foreclose Movants from arguing, in the future, that any

18   broader definition the Department might adopt is unconstitutional. *New York*, No. 20-CV-4260

19   (JGK), 2020 WL 3962110, at *3 ("Because the issue of what rules the Constitution requires is not

20   an issue the Court needs to reach to resolve the claims in the Complaint . . . the movant's interest

21   will not be 'adversely affected . . . by principles of stare decisis, arising out of the final judgment

22   to be entered in this case.'"). To be sure, Movants might like for the Court to proclaim

23   unnecessarily on the alleged unconstitutionality of other potential definitions, and so provide a

24   citation useful for potential future advocacy related to potential future agency action. But their

25   interests will not be impaired, in either the colloquial or technical sense of the word, if the Court

26   does not do so—a far cry from the sort of injury-by-precedent that can justify intervention. *See*

27   *Greene*, 996 F.2d at 977 (finding that *stare decisis* concerns only come into play where the

1  "precedential impact" will "clear[ly]" and "directly" affect "subsequent relief sought by the

2  [applicant]"); *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (noting state's interest in

3  protecting its lands and resultant proceeds might be impeded if a precedential opinion established

4  a right of action to challenge the use of those proceeds).

5                                                    ***

6          For the above reasons, Movants are not entitled to intervention as of right.

7  **II.     The Court Should Deny Movants Permissive Intervention**

8          Movants also fail to meet the requirements for permissive intervention. Under Federal Rule

9  of Civil Procedure 24(b)(1)(B), a court may exercise discretion to grant permissive intervention to

10 an applicant that "shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3)

11 the applicant's claim or defense, and the main action, have a question of law or a question of fact

12 in common." *Perry*, 587 F.3d at 955. Even if an applicant meets the threshold jurisdictional,

13 timeliness, and commonality requirements, a district court nonetheless retains broad discretion to

14 deny permissive intervention. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). In

15 exercising that discretion, courts "must consider whether the intervention will unduly delay or

16 prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court may

17 also consider factors—sometimes known as "*Spangler* factors" after an influential case—

18 including "the nature and extent of the intervenors' interest, their standing to raise relevant legal

19 issues, the legal position they seek to advance, and its probable relation to the merits of the case

20 . . . , [and] whether the intervenors' interests are adequately represented by other parties." *Spangler*

21 *v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

22         **A.     Movants' Alleged Interests are Too Speculative and Attenuated from WSU's**
23                 **Claims**

24         As with mandatory intervention, permissive intervention is not appropriate where, as here,

25 the movant's interests are "nonexistent, contingent on future events, or tangential to th[e]

26 proceeding." *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-CV-02502 EJD,

27 2012 WL 4717814, at *6 (N.D. Cal. Sept. 28, 2012), *aff'd*, 534 F. App'x 665 (9th Cir. 2013). In

28

such a circumstance, the applicant's defense and the main action lack a common question of law or fact—a threshold requirement for permissive intervention. *See id.*; *see also Med. Advocates for Healthy Air v. EPA*, No. CV 11-3515 SI, 2011 WL 4834464, at *5 (N.D. Cal. Oct. 12, 2011) (holding applicant failed to make threshold showing for permissive intervention because its alleged interests were speculative and too attenuated from plaintiff's case). The discretionary *Spangler* factors also weigh against granting intervention when a movant's interests are so speculative and attenuated from the plaintiff's action. *See Spangler*, 552 F.2d at 1329 (noting court may consider "the nature and extent of the intervenors' interest" and their positions' "probable relation to the merits of the case").

As described above, Movants' alleged interests in this litigation are highly speculative with no established connection to WSU's claims. *See supra* pages 3-7, 9. Movants clearly like the 2020 Regulations and would prefer the Department not deviate from those in the future. But they have not established that WSU's success would affect them in any concrete, non-speculative way. As such, Movants cannot establish the requisite common question of law or fact related to the specific claims at issue in this case, and the *Spangler* factors discourage permissive intervention as well.

### B.    Movants Have Not Overcome the Presumption that the Defendant Will Represent its Interests

As with intervention as of right, "the adequacy of representation alone is a sufficient ground to deny permissive intervention." *Carroll v. Wells Fargo & Co.*, No. 15-CV-02321-EMC, 2016 WL 3951650, at *1 (N.D. Cal. July 22, 2016) (Chen, J.); *see also Spangler*, 552 F.2d at 1329 (noting court may consider "whether the intervenors' interests are adequately represented by other parties"). For the reasons explained above, Movants have failed to overcome the presumptions that the Defendant will adequately represent their putative interests. *See supra* pages 10-19.

### C.    Movants' Intervention Will Cause Undue Delay and Prejudice

Just as important here is a concern that uniquely dominates consideration of permissive intervention: potential "undu[e] delay or prejudice [of] the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Intervention will cause such an effect if it will insert into the case

"extraneous legal and factual issues that [the plaintiff's] lawsuit would not otherwise invoke." *Apple Inc. v. Iancu*, No. 5:20-CV-06128-EJD, 2021 WL 411157, at *5 (N.D. Cal. Feb. 5, 2021) (quoting *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414 (N.D. Cal. 2004)). "Such allegations would divert time and resources from the principal thrust of [the plaintiff's] lawsuit and entangle the legal and factual issues involved therein within a web that is not of the original parties' making." *Id.*; *see also Sierra Club v. EPA*, No. 13-CV-2809-YGR, 2013 WL 5568253, at *5 (N.D. Cal. Oct. 9, 2013) (denying permissive intervention because applicant's claims were "not at issue in th[e] litigation" and "opening the door to . . . additional contentions would only serve to confuse the matters at issue in the complaint").

Movants' intervention would have exactly this effect. As discussed above, Movants seek intervention to make arguments that are well outside the scope of WSU's suit. *See supra* pages 12-14. These arguments cannot, as a matter of administrative law, influence the Court's adjudication of this APA challenge one way or the other. *See supra* pages 13-17. Movants' participation would thus serve as a pure distraction, furthering neither the Court's ability to adjudicate this case nor Movants' purported interests in this litigation. *See Perry*, 587 F.3d at 956 (weighing the "value added" by an applicant in assessing permissive intervention). For that reason, the Court should deny permissive intervention. *Cf. Apple Inc.*, No. 5:20-CV-06128-EJD, 2021 WL 411157, at *6 (denying permissive intervention because it "[ran] the risk of transforming th[e] case from one assessing . . . a single discretionary agency rule to one evaluating an effort to compel rulemaking").

## III. If the Court Grants Some Form of Intervention, It Should Limit Movants' Involvement

For the reasons explained above, the Court should not grant Movants either mandatory or permissive intervention. If the Court nonetheless decides to do so, it should grant Movants intervention only with respect to the definition of sexual harassment—the one part of WSU's claim that Movants address in their briefing. Movants have not attempted to provide any reasoning as to why they should be permitted to intervene to defend the three other challenged portions of the 2020 Regulations. As a result, they should not be allowed to do so. By like token, if the Court

determines that Movants' constitutional arguments are irrelevant the whether the 2020 Regulations are lawful but potentially relevant to the appropriate remedy, it should permit the Movants to intervene only for purposes of establishing the correct remedy if WSU succeeds on the merits.

## CONCLUSION

For the above reasons, WSU respectfully asks the Court to deny Movants' motion to intervene.

Date: November 17, 2021                              Respectfully submitted,

Adele P. Kimmel (CA Bar No. 126843)
Alexandra Z. Brodsky*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
Fax: (202) 232-7203
Email: akimmel@publicjustice.net
              abrodsky@publicjustice.net

John C. He (CA Bar No. 328382)
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
Ph: (510) 622-8150
Fax: (202) 232-7203
Email: jhe@publicjustice.net

 */s/ Lauren A. Khouri*
Linda M. Correia*
Lauren A. Khouri*
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington DC 20036
Ph: (202) 602-6500
Fax: (202) 602-6501
Email: lcorreia@correiaputh.com
              lkhouri@correiaputh.com

*admitted pro hac vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send a notification of the filing to counsel in this case.

*/s/ Lauren A. Khouri*