**CONSOVOY MCCARTHY PLLC**
William S. Consovoy*
   E-Mail: will@consovoymccarthy.com
Bryan K. Weir
   E-Mail: bryan@consovoymccarthy.com
Cameron T. Norris*
   E-mail: cam@consovoymccarthy.com
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
Telephone: (703) 243-9423
Counsel for [Proposed] Intervenor-Defendants
Speech First, Inc. and Independent Women's Law Center

**COOPER & KIRK, PLLC**
Charles J. Cooper**
   E-mail: ccooper@cooperkirk.com
Brian W. Barnes**
   E-mail: bbarnes@cooperkirk.com
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
Counsel for [Proposed] Intervenor-Defendants
Foundation for Individual Rights in Education
     *Pro Hac Vice
     **Motion to Appear Pro Hac Vice Forthcoming

*Additional Counsel for Proposed Intervenors Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| The Women's Student Union,<br><br>    *Plaintiff*,<br><br>v.<br><br>U.S. Department of Education,<br><br>    *Defendant*,<br><br>Foundation for Individual Rights in Education, Independent Women's Law Center, Speech First, Inc.,<br><br>    *[Proposed] Intervenor-Defendants* | Case No. 3:21-cv-01626-EMC<br><br>**PROPOSED INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Judge: Hon. Edward M. Chen<br><br>Date:  **January 20, 2022**<br>Time:  **1:30 p.m.**<br>Crtrm: **5, 17th Floor** |

**ARGUMENT**

**I. Movants Do Not Need Article III Standing to Intervene as Defendants but Have Standing Nonetheless.**

Plaintiff argues that "Movants lack Article III standing, and so cannot intervene by right in WSU's suit." Pl. Opp'n to Movant's Mot. to Intervene as Defs., Doc. 94 at 7 (Nov. 17, 2021) ("Pl. Opp'n"). But Movants need not establish Article III standing to intervene as defendants. *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)); *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019) (a party who "intervene[s] in support of *defendants* in the trial court" does "not need to establish standing" due to its "defensive posture."). The Supreme Court's decision in *Little Sisters* "definitively resolved the persistent circuit split" over whether a putative intervenor must "demonstrate independent constitutional standing" in cases where it brings no new claims. *See PrimeSource Bldg. Prod., Inc. v. United States*, 494 F. Supp. 3d 1307, 1320 (Ct. Int'l Trade 2021). Here, Plaintiff invokes the Court's jurisdiction, while Movants seek to intervene as defendants. Movants thus need not establish independent Article III standing.

Nevertheless, Movants have standing. The Supreme Court has made plain that a "concrete and demonstrable injury to [an] organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests" and thus suffices for standing. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982); *see also La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (An organization has standing to sue on its own behalf when it suffers "both a diversion of its resources and a frustration of its mission." (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.2002)). Movants provide various services to students accused of sexual harassment who are in university misconduct proceedings. If the 2020 rule (the "Rule")

is invalidated and schools return to their pre-Rule procedures, Movants will be forced once again to allocate additional resources to providing such services, diverting resources away from other activities. That is enough to establish that if Plaintiff prevails in this lawsuit, Movants will sustain a "concrete and demonstrable injury" under *Havens Realty* and its progeny.

Plaintiff argues that Movants' organizational injuries are too speculative because "shifting of resources back would only arrive at the end of highly speculative 'chain of possibilities,'" and future disciplinary proceedings are "far too tenuous to support standing." Pl. Opp'n at 3, 7. But Plaintiff's own complaint alleges that the Rule will lead schools to "engage in fewer investigations of sexual harassment, and thus will find fewer violations and provide fewer remedies," Am. Compl., Doc. 78 at ¶ 34 (Oct. 4, 2021)—an allegation that is essential for Plaintiff to establish its own standing. Plaintiff's prayer for relief asks the Court to throw out the Rule's definition of sexual harassment in its entirety—at post-secondary as well as secondary schools. If Plaintiff has standing to seek such relief, then Movants have standing to oppose it.

Plaintiff also implies that injuries that depend upon the future conduct of third parties are always too speculative to qualify as an injury-in-fact under Article III, but Supreme Court and Ninth Circuit precedents say otherwise. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997); *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014). As the Supreme Court recently explained, a litigant has standing where an injury is caused by "the predictable effect of Government action on the decisions of third parties." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019). Here, the predictable effect of invalidating the Rule's definition of sexual harassment is a return to the use of unconstitutionally vague and overbroad conduct codes by Title IX funding recipients and more of Movants' members being punished in violation of the First Amendment.

**II.     Movants Have a Right To Intervene Under Rule 24(a)(2).**

Movants have established all the requirements for intervention as of right under Federal

Rule of Civil Procedure 24(a)(2). Neither party contests the timeliness of Movants' motion, and the other requirements are likewise satisfied.

### A. Movants have a significant protectable interest in this case.

Movants have established a " 'significantly protectable' interest" in the subject of this action. *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177–78 (9th Cir. 2011) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Ninth Circuit precedent is clear that public interest groups satisfy this requirement for intervention as of right when a measure they supported is challenged. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). This understanding of the law is confirmed by *United States v. City of Los Angeles*, a case Plaintiffs cite, in which the Ninth Circuit found a protectable interest even when an organization had only worked on an issue "generally," but had not engaged in advocacy specific to the particular measure at hand, 288 F.3d 391, 402 n.5 (9th Cir. 2002). Here, Movants have long been on the front lines of free speech issues on college campuses and directly engaged the Department during the rulemaking process, specifically urging the adoption of the *Davis* standard for defining sexual harassment. The *Davis* standard's inclusion in the Rule demonstrates the impact of Movants' involvement and significant interest in these issues. That others also participated does not diminish those interests.

Second, Plaintiff and Defendant challenge Movants' diversion-of-resources theory as speculative and unsupported, respectively. Pl. Opp'n at 9; Def.'s Opp'n to the Organizational Movants' Mot. to Intervene, Doc. 93 at 3 ("Def.'s Opp'n"). These arguments miss the mark. Movants' opening brief outlines the direct impact of the Rule on Movants. With the Rule in place, Movants have shifted resources from costly efforts of challenging university policies and defending individual students in fundamentally unfair "sexual harassment" proceedings to furthering other aspects of their missions. If the use of the *Davis* standard is invalidated, Movants will be forced to divert significant additional resources to helping students and faculty who are accused under the

vague and subjective sexual harassment policies favored by Plaintiffs.

Third, Plaintiff says that it is unable to conceive of a "relationship" between this litigation and the free speech rights of Movants and their members. Pl. Opp'n at 9. For years, Movants spent time and treasure on efforts to safeguard the free-speech rights of their members and other faculty and students. The promulgation of the Rule was a significant step in safeguarding those rights on campuses around the country. Plaintiff's attack on the Rule and the Department's refusal to make constitutional arguments in its defense puts Movants' rights at stake in this case and establishes their interest under Rule 24(a)(2).

### B. Movants' interests may be impaired, as a practical matter, by the disposition of this case.

Movants have also established that a disposition of this case in favor of Plaintiff will practically impair their interests. The Ninth Circuit, in similar circumstances, has found that there is "little difficulty concluding that the disposition of the case may, as a practical matter, affect it." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (cleaned up). The Rule provides significant protections to Movants and their members, which they stand to lose by the direct legal operation of the outcome of a final judgment in Plaintiff's favor in this case. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). Plaintiff argues that Movants are "not entitled to mandatory intervention because they will have many other opportunities to protect their asserted interest." Pl. Opp'n. at 19. Specifically, Plaintiff asserts that Movants may participate in a future rulemaking and additional litigation if their significant protectable interests are eviscerated in this case. *Id.* at 18–19. But the point of Rule 24(a)(2) is to provide parties such as Movants with the ability to intervene in litigation and protect their interests *before* those interests are impaired.

Moreover, Plaintiff's suggestion that Movants could take part in a future Department rulemaking disregards the reality that, during the interim, the return of unconstitutional disciplinary

hearings would force Movants to divert significant resources to assisting university students and faculty who are accused under vague and subjective sexual harassment policies. Plaintiff offers no explanation for how Movants could remedy this impairment of their protectable interests.

### C.  The Department does not adequately represent Movants' interests.

Despite the Department's arguments to the contrary, Movants and the Department do not share the same ultimate objective in this litigation. Although the Ninth Circuit recognizes a presumption of adequate representation where a proposed intervenor shares an ultimate objective with an existing party, *Geithner*, 644 F.3d at 841, and especially so "where the Department of Justice deploys its formidable resources" to defend government action, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006), a proposed intervenor can overcome the presumption by showing "distinctly different, and likely conflicting, interests" than those currently represented by the parties in suit, *id*. While the Department may currently have a general objective of defending the Rule as it stands, Movants have a narrower interest in how and why the Rule is upheld. *See Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1176 (9th Cir. 2011) ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public."). Despite Plaintiff's efforts to generalize the parties' "objectives," the very real divergence between the Department's need to balance competing interests and Movants' more singular focus on defending the Rule is just the type of divergence of interests that the Ninth Circuit has found to underpin inadequate representation. *See, e.g.*, *Californians for Safe and Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998); *United States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988); *see also Pennsylvania v. President of the United States*, 888 F.3d 52 (3d Cir. 2018).[1]

---

[1] This disconnect is further emphasized by the Department's effort to dispose of Plaintiff's

Plaintiff attempts to analogize this case to *Arakaki v. Cayetano,* 324 F.3d 1078 (9th Cir. 2003), but ignores critical context from that ruling. Specifically, in *Arakaki* the Ninth Circuit found the Hoohuli tribe failed to overcome the presumption of adequate representation where government defendants were willing to make all necessary arguments, where those defendants had "specific statutory and constitutional obligations" to advance the proposed-intervenor's interests, and where a "similarly situated intervenor" was *already present* in the case. *Id*. at 1087. This case presents none of those facts. Here, the Department has made it abundantly clear that it is not willing to make Movants' arguments—nor is it statutorily or constitutionally required to do so—and there is no other intervenor already in the case who will do so. Instead, Movants' motion is akin to the collection of cases which the *Arakaki* Court found distinguishable, where the movants' interests were "narrower than that of the government" and thus could not be adequately represented. *Id.* (citing *Southwest Ctr.*, 268 F.3d at 823; *Mendonca*, 152 F.3d at 1190; and *Forest Conservation Council*, 66 F.3d at 1499).

The Department argues "it is not enough to suggest that a change in administration implies inadequate representation." Def.'s Opp'n at 5. But Movants' claim of inadequate representation does not rest solely upon a change in administrations. Instead, Movants offer concrete evidence—based on the current administration's actions over the last ten months—that the change in administrations has materially affected Defendant's ability to adequately represent Movant's interests. Plaintiff, which shares the Department's hostility to the Rule, makes the puzzling argument that the Department's capitulation in *Victim Rights Law Center*, is "insufficient" to establish inadequacy because the Rule's cross-examination requirement "is not at issue in this suit." Pl. Opp'n at 11. That a certain portion of the Rule is not at issue here is of no moment. The Department's

---

claims through a motion to dismiss, whereas Movants seek consideration of those claims, and Movants' defenses, on the merits.

behavior is emblematic of its new posture to the Rule, and perfectly encapsulates the diminished vigor with which it offers to protect Movants' interests.

Furthermore, the Department and Plaintiff argue that even if Movants' legal position differs from that of the Department, this difference is insufficient to establish inadequate representation. The Department and Plaintiff are wrong. To be sure, in *Lockyer*, the Ninth Circuit noted that the proposed intervenor's desire to argue for a broader statutory construction was not by itself sufficient to overcome the presumption of adequate representation. 450 F.3d at 444. But in the very next breath, the Ninth Circuit explained that a "very compelling showing" of inadequate representation would be made if a proposed intervenor could "demonstrate a likelihood that the government will abandon or concede a potentially meritorious reading of the statute." *Id.* In *Lockyer*, the proposed intervenors sought to inject an argument that would raise constitutional issues far broader than the limiting construction that the government proposed to employ to "assuage . . . constitutional doubts." *Id.* The Ninth Circuit found these divergent strategies "far more than differences in litigation strategy between the United States and the proposed intervenors"—it was a difference that went "to the heart of the defense of the [statute]." *Id.* at 444–45 (internal citations omitted). Movants' constitutional arguments likewise go to the heart of the defense of the Rule. Yet the Department has steadfastly refused to make them, because it seeks to "leav[e] room for any policy changes to the existing rule." Def.'s Opp'n at 6. The Department has now had two opportunities to assure the Court that it is willing to make Movants' arguments, yet it has not done so. That the Department will forgo a potentially meritorious defense further shows that it does not adequately represent Movants' interests.

Plaintiff argues that Movants' constitutional arguments cannot be properly raised in the context of APA litigation and run "headlong into principles of constitutional avoidance." Pl. Opp'n at 13–14. The Ninth Circuit's ruling in *Lockyer* says otherwise. By reversing the lower court's

denial of intervention, the Court expressly allowed intervenors into a case so that they could raise constitutional issues that the existing parties refused to present. 450 F.3d at 444. Though constitutional avoidance requires that a court consider non-constitutional defenses before constitutional defenses, it does not permit the court to *ignore* constitutional defenses altogether, as Plaintiff proposes.

Lastly, Plaintiff contends that Movants' constitutional arguments are irrelevant to the appropriate remedy in this case if the Court ultimately concludes that the Department's explanation for the Rule's definition of sexual harassment is legally deficient. Pl. Opp'n. at 17. Plaintiff's argument misconstrues APA harmless error jurisprudence. The burden of establishing that agency error affected the outcome rests firmly with Plaintiff. *See Shinseki v. Sanders*, 556 U.S. 396 (2009); *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 989 (9th Cir. 2012); *see also Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1109 (9th Cir.2011) (J. Ikuta, *dissenting*) (explaining that "[u]nder *Sanders*, we may neither presume prejudice nor place the burden of proof on the agency to disprove prejudice"). It would be senseless to vacate a definition of harassment that is constitutionally required. Should this case reach the remedy stage, it will, at that point, be incumbent upon Plaintiff to establish prejudicial error—not for the defendants to prove the inverse. Moreover, Plaintiff's reliance on principles from *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943), equally misses the mark. None of the cases cited by Plaintiff involve a situation where an agency was sued for failing to adopt a particular policy that the agency lacked legal authority to adopt. *Cherney* does not require vacatur and remand for the empty formalism of a new explanation by the agency for why it failed to do something it was legally prohibited from doing.

**III.   Alternatively, the Court Should Grant Movants Permissive Intervention.**

Movants have also met the requirements for permissive intervention. As all parties agree, permissive intervention requires a proposed intervenor show "(1) independent grounds for

jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996) (citing *Greene v. United States*, 996 F.2d 973, 978 (9th Cir.1993), *aff'd*, *Greene v. Babbitt*, 64 F.3d 1266 (9th Cir.1995)). Plaintiff challenged both the first and third requirements, while Defendant challenges only the third requirement. Pl. Opp'n at 21–22; Def.'s Opp'n at 7–8. Additionally, Plaintiff argues that adequate representation and undue delay discourage permissive intervention. Pl. Opp'n at 22–23. None of these arguments are persuasive.

### A. Movants' defense shares a common question of law or fact with the main action.

The Department argues that Movants "have no 'defense' that is common to the government, as no plaintiff could bring an APA claim against any entity other than the federal government." Def. Opp'n at 8. But the logic of that argument implies that permissive intervention on the government's side is *never* appropriate in APA cases—a contention that is clearly wrong. *See, e.g.*, *Friant Water Auth. v. Jewell*, 2014 WL 6774019, at *5 (E.D. Cal. Dec. 1, 2014). The operative question is not whether a proposed intervenor-defendant could be sued in its own right, but whether the issues it proposes to raise share a common question of law or fact with the main action. Movants' defenses—which "squarely respond" to Plaintiff's claims—share common questions with the main action. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc.*, 630 F.3d at 1173.

Plaintiff's argument on this issue fares no better. Plaintiff contends that Movants' arguments are too attenuated from the subject of the action. Pl. Opp'n at 21–22. To support this position, Plaintiff points to *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, 2012 WL 4717814, at *6 (N.D. Cal. Sept. 28, 2012), *aff'd*, 534 F. App'x 665 (9th Cir. 2013). But *Mishewal* is clearly distinguishable. There, after first granting intervention, the court dismissed the intervenor-defendants from the case when the complaint was amended to drop the claim that had been the

basis for intervention. *Id.* at *4. It is unsurprising that a Court would find attenuated from the case defenses that focused on claims the plaintiff was no longer pressing. Here, however, Movants' constitutional defense responds directly to Plaintiff's effort to invalidate the Rule's definition of "sexual harassment." As such, the defense shares a common question of law or fact with the main action.

### B. Movants will cause no undue delay or prejudice in this litigation.

Movants' intervention, at the early stages of this case, would cause no delay or prejudice to the existing parties. Plaintiff's argument to the contrary is unavailing. As outlined in Movants' opening brief, granting permissive intervention would not create any delay—let alone *undue* delay. To defend its position, Plaintiff relies on out-of-context quotations from *Apple Inc. v. Iancu*, 2021 WL 411157, at *5 (N.D. Cal. Feb. 5, 2021), while ignoring the obvious differences between that case and this one. *Apple* concerned a group of proposed-intervenor-*plaintiffs* who sought to inject new claims and a demand for an injunction against the defendant in an existing action even though they had the "option to bring a separate action" against the defendant. *Id.* at *6. Movants here, in contrast, seek to intervene as defendants to raise an important constitutional defense that the Department will not present. Requiring Plaintiff to prove its case and rebut reasonable constitutional defenses would not cause undue delay or prejudice.[2]

### CONCLUSION

For the foregoing reasons, the motion to intervene should be granted.

---

[2] As explained at greater length in the previous section on intervention as of right and in Movants' opening brief, the Department is unwilling to make an argument that the First Amendment required it to use the *Davis* standard in its definition of "sexual harassment." Mem. of Points and Authorities in Support of Intervenor-Defs.' Mot to Intervene, Doc. 88-1 at 1 (Nov. 3, 2021). Because Movants have narrower interests than the Department, and the Department has shown outward hostility to the Rule, it is simply not the case that the Department adequately represents Movants in this litigation. Regardless, "[u]nlike Rule 24(a), subsection (b) 'does not require a showing of inadequacy of representation.' " *Arizona Democratic Party v. Hobbs*, No. CV-20-01143-PHX-DLR, 2020 WL 6559160, at *1 (D. Ariz. June 26, 2020).

Dated: November 24, 2021

 /s/ Bradley A. Benbrook 

Bradley A. Benbrook (No. 177768)
Stephen M. Duvernay (No. 250957)
BENBROOK LAW GROUP, PC
400 Capitol Mall
Suite 2530
Sacramento, CA 95814
(916)447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com


 /s/  Charles J. Cooper 

Charles J. Cooper**
Brian W. Barnes**
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, D.C. 20036
(202) 220-9600
ccooper@cooperkirk.com
bbarnes@cooperkirk.com

*Counsel for Foundation for Individual Rights in Education*
        *Pro Hac Vice
        **Pro Hac Vice Forthcoming

Respectfully submitted,

 /s/ Cameron T. Norris 

William S. Consovoy*
Bryan K. Weir (CA Bar. #310964)
Cameron T. Norris*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
bryan@consovoymccarthy.com
cam@consovoymccarthy.com

*Counsel for Speech First, Inc. and Independent Women's Law Center*