**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
PATRICK K. SWEETEN,
  E-Mail: Patrick.Sweeten@oag.texas.gov
KATHLEEN T. HUNKER
  E-Mail: Kathleen.Hunker@oag.texas.gov
P.O. Box 12548 (MC-009)
Austin, TX 78711-2548
Telephone: 512.936.1414
Facsimile: 512.936.0545

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
MICHAEL K. JOHNSON, CA Bar No. 130193
  E-Mail: Michael.Johnson@lewisbrisbois.com
2185 North California Boulevard, Suite 300
Walnut Creek, California 94596
Telephone: 925.357.3456
Facsimile: 925.478.3260
Attorneys for [Proposed] Intervenor-Defendant
KEN PAXTON IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF TEXAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>Defendant.<br><br>STATE OF TEXAS,<br><br>[Proposed] Intervenor-Defendant. | Case No. 3:21-cv-01626-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMBINED REPLY IN SUPPORT OF TEXAS'S MOTION TO INTERVENE**<br><br>**Hearing Date:** December 16, 2021<br>**Time:** 1:30 p.m.<br>**Ctrm::** 5, 17th Floor<br><br>Judge: Hon. Edward M. Chen |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    Texas Has a Right to Intervene Under Rule 24(A)(2) ................................................ 2

        A.    Texas has a legally protectable interest in this case. .................................... 2

        B.    Disposition of this action would impair or impede Texas' ability to protect its interests. .................................................................................... 4

        C.    The Department is not capable of representing Texas's interests or providing an adequate defense of the regulations. ....................................... 5

    II.    In The Alternative, The Court Should Grant Permissive Intervention ...................... 9

CONCLUSION ....................................................................................................................... 12



# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allentown Mack Sales & Serv., Inc. v. NLRB.*,
 522 U.S. 359 (1998) ........................................................................................................... 9

*California v. Health & Human Servs.*,
 330 F.R.D. 248 (N.D. Cal. 2019) ..................................................................................... 10

*California v. Wheeler*,
 467 F. Supp. 3d 864 (N.D. Cal. 2020) ............................................................................... 9

*In re Charles Schwab Corp. Sec. Litig.*,
 C 08-01510 WHA, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) ...................................... 5

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
 647 F.3d 893 (9th Cir. 2011) .................................................................................. 4, 6, 11

*City & Cty. of San Francisco v. United States Citizenship & Immigr. Servs.*,
 992 F.3d 742 (9th Cir. 2021), *cert. granted in part sub nom. Arizona v. City & Cty. of San Francisco*, No. 20-1775, 2021 WL 5024620 (U.S. Oct. 29, 2021) ....................... 9

*Commonwealth of Pennsylvania v. DeVos*,
 1:20-cv-01468-CJN (D.D.C. Feb. 4, 2021) ................................................................ 10, 11

*Daggett v. Comm'n on Gov't Ethics*,
 172 F.3d 104 (1st Cir. 1999) (Lynch, J., concurring) ...................................................... 10

*Doe v. Baum*,
 903 F.3d 575 (6th Cir. 2018) ............................................................................................. 6

*Doe v. Brandeis Univ.*,
 177 F. Supp. 3d 561 (D. Mass. 2016) ................................................................................ 6

*Doe v. Univ. of Scis.*,
 961 F.3d 203 (3d Cir. 2020) .......................................................................................... 5, 6

*Freedom from Religion Found., Inc. v. Geithner*,
 644 F.3d 836 (9th Cir. 2011) ............................................................................................. 9

*Fresno Cty. v. Andrus*,
 622 F.2d 436 (9th Cir. 1980) ........................................................................................... 11

*Idaho Farm Bureau Fed'n v. Babbitt*,
 58 F.3d 1392 (9th Cir. 1995) ..................................................................................... 11, 12

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) .......................................................................................... 3, 4

*Portland Audobon Soc'y v. Hodel*,
    866 F.2d 302 (9th Cir. 1989), *abrogated by Wilderness Soc'y v. U.S. Forestry
    Serv.*, 630 F.3d 1173 (9th Cir. 2011) ................................................................................ 11

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ............................................................................................... 2

*S.E.C. v. Private Equity Mgmt. Group, Inc.*,
    CV 09-2901 PSG (EX), 2009 WL 2488044 (C.D. Cal. Aug. 10, 2009) .................................. 8

*S.F. NAACP v. S.F. Unified Sch. Dist.*,
    59 F. Supp. 2d 1021 (N.D. Cal. 1999) ................................................................................ 8

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983) ............................................................................................... 8

*Scholl v. Mnuchin*,
    483 F. Supp. 3d 822 (N.D. Cal. 2020) ............................................................................... 10

*UMG Recordings, Inc. v. Bertelsmann AG*,
    222 F.R.D. 408 (N.D. Cal. 2004) ..................................................................................... 4, 5

*United States v. Alisal Water Corp.*
    370 F.3d 915 (9th Cir. 2004) ............................................................................................... 5

*Wilderness Soc'y v. U.S. Forestry Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ..................................................................................... 11, 12

**Federal Statutes**

National Environmental Policy Act ............................................................................................ 11

**Other Authorities**

34 C.F.R. § 106.30(a) .................................................................................................................. 2

34 C.F.R. § 106.44(a) .................................................................................................................. 3

34 C.F.R. § 106.45(b)(6)(i) ......................................................................................................... 6

85 Fed. Reg. 30321 n.1226 ......................................................................................................... 6

86 Fed. Reg. 13,803 (Mar. 11, 2021) .......................................................................................... 1

FRCP 24 ............................................................................................................................. *passim*

# MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

## INTRODUCTION

When push comes to shove, the Department of Education admits what Texas has asserted all along—that the Biden Administration has not and cannot commit to defending the Final Rule. The Department has been instructed by the Biden Administration to conduct a thorough review of the Final Rule and suspend, revise, or rescind any portion the Department finds inconsistent with the Biden Administration's objectives. *See* Exec. Order No. 14021, 86 Fed. Reg. 13,803 (Mar. 11, 2021).[1] The Department argues that it can adequately represent Texas's interests while it internally reviews the Final Rule and that it can defend the rule without compromising any changes it may seek to make, but ultimately urges this Court to wait until the Department knows what it *will* do based on its review of the Final Rule before allowing Texas to intervene.

As Texas explained in its Motion to Intervene, this "wait and see" approach has harmed proposed intervenors before and should not be accepted by this Court now. The Department's inability to take a position on any merits issues means that it is already operating with one hand tied behind its back in this litigation. By the time the Department admits the obvious—that the Biden Administration has no interest in protecting a rule that it has called "a green light to ignore sexual violence and strip survivors of their civil rights under Title IX," *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden.com/womens-agenda/ (last visited May 11, 2021)—intervention may be prejudicial to the parties or too late to raise and preserve key merits issues. The government has used this exact strategy in the past and gives no assurance that it will not do so again.

Neither party explains how it would be inconvenienced if Texas were allowed to intervene to defend the Final Rule, and neither party shares Texas's interests. Texas is regulated by the Final Rule, relies on Title IX federal funding, and benefits from the clarity the rule provides. Under these circumstances, Texas should be allowed to intervene, either as of right or this Court's permission.

/ / /

---

[1] Available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/03/08/executive-order-on-guaranteeing-an-educational-environment-free-from-discrimination-on-the-basis-of-sex-including-sexual-orientation-or-gender-identity/.

# ARGUMENT

## I.  Texas Has a Right to Intervene Under Rule 24(A)(2).

Texas satisfies the four-part test in Federal Rule of Civil Procedure 24(a)(2): its motion is timely,[2] Texas has a legally protected interest in the action and the action threatens to impair that interest, and Texas's interest is not adequately represented by the existing parties. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). This Court should grant Texas's motion to intervene as of right.

### A.  Texas has a legally protectable interest in this case.

Although the Department wisely declines to challenge Texas's protectable interest in this case, Plaintiff the Women's Student Union ("WSU") is not so restrained. Its position—that a State, whose public educational system relies on Title IX funding, would not have a protectable interest in regulations concerning the "'what,' 'where,' 'when,' and 'how'" of Title IX protections, ECF 78 ¶ 9—strains credulity. As Texas explained in its Motion, the Final Rule provided much-needed legal guidance on what triggers a Title IX funding recipient's statutory obligations, what process the recipient can afford to both the victim and the accused, and when the recipient can legally be excused from any alleged failure to meet those obligations. ECF 84 at 4–5, 11–13. WSU's insistence in its opposition that Texas has not shown why it has an interest in the four provisions at issue in this case seems facetious. ECF 97 at 6–7. Those provisions are *fundamental*—they *define* sexual harassment, provide "deliberate indifference and actual knowledge" defenses, and confine the scope of Texas's Title IX obligation to sexual harassment to school grounds. *See* 34 C.F.R. §§ 106.30(a), 106.44(a).

In its opposition, Plaintiff also scoffs at the idea that prior to the Final Rule, there existed confusion and a high risk of litigation. But that is exactly what the Department said, and a reason it promulgated the Final Rule. ECF 97 at 7–8. The Department acknowledged that its prior approach "result[ed] in litigation" as recipients that "complied with the Department's recommendations in

---

[2] Texas sought intervention within one month of the Complaint being filed and before the Department appeared. In accordance with the Court's deadlines, Plaintiff submitted its First Amended Complaint on October 4, 2021. Texas filed a new motion to intervene just two weeks later. Based on this timeline, there can be no doubt that the motion is timely. *See* ECF 84 9-10. Neither party contests that Texas meets this factor.



past guidance may have risked not providing adequate due process protections." Final Rule, *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,* 85 Fed. Reg. 30026, 30093 (May 19, 2021) (to be codified at 34 C.F.R. pt. 106). According to the Department (and as Texas urged in its Motion), the Final Rule will reduce the risk of litigation because it provides defenses to Title IX claims that will discourage litigation. *See id.* In fact, the Final Rule cited the same provisions Plaintiff now challenges as the bases for lessening recipients' risk of Title IX liability. *Id.*[3]

Plaintiff argues that Texas's interest in limiting its liability is "speculative" and "attenuated" from Plaintiff's claims. ECF 97 at 7. But this Court has held that a proposed intervenor's interest in defending regulations that mitigate or limit its liability suffices for intervention. In *California ex rel. Lockyer v. United States*, 450 F.3d 436, 439-41 (9th Cir. 2006), health care providers were permitted to intervene in a challenge to the Weldon Amendment, which "provide[d] [them] an important layer of protection against state criminal prosecution or loss of their medical licenses" by exempting abortions from the medical services States may require of emergency health care providers. The Ninth Circuit observed that if California succeeded in having the Amendment declared unconstitutional or narrowed, the providers would "be more likely to be forced to choose between adhering to their beliefs and losing their professional licenses." *Id.* at 441. As a result, the providers' interest was "sufficiently direct, non-contingent, and substantial." *Id.* (cleaned up).

So too, here. The Final Rule provides important protections for Title IX funding recipients who were not "deliberately indifferent" to or "actually aware" of sexual harassment in schools and on campuses. *See, e.g.*, 34 C.F.R. § 106.44(a). If those protections are struck as arbitrary and capricious or otherwise violative of the APA in this litigation, Texas loses those protections. As a result, Texas's interest is *both* the mirror image of and inextricably entwined with Plaintiff's—the self-same protections Plaintiff seeks to eliminate are those Texas seeks to retain.

---

[3] Plaintiff points to Title IX literature at some of Texas's schools as evidence that Texas was not confused about its obligations. ECF 97 at 9 n.7. But as the Department acknowledged, even if Texas was *internally* consistent, Texas and other Title IX funding recipients risked litigation because they could not rely on anything other than informal guidance to prove to students, faculty, and staff that they were sufficiently fulfilling their Title IX obligations.

### B. Disposition of this action would impair or impede Texas' ability to protect its interests.

The next FRCP 24(a)(2) inquiry—whether Texas's ability to protect its interest would be impaired or impeded if Plaintiff succeeded in its suit—is just as straightforward. As a general matter, if a proposed intervenor has a significant protectable interest, courts have "little difficulty concluding" that the disposition of the case "may, as a practical matter, affect it." *California ex rel. Lockyer*, 450 F.3d at 442. As explained above, the Final Rule provides important benefits to Texas, its schools, and its citizens. It both limits the scope of potential Title IX liability and provides clarity that helps schools follow the law. When a movant benefits from a regulation, invalidation of that regulation would necessarily impair the movant's interests. *See, e.g.*, *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). Those practical consequences are more than sufficient to show impairment of Texas's interests.

In its opposition to Texas's motion, Plaintiff claims that Texas cannot intervene as of right because it has alternative avenues by which to obtain relief: (1) "press its view of the statute's proper definition and standards" while being subject to a Title IX examination, (2) seek to establish the same regulations in the Department's notice-and-comment period after Plaintiff has them enjoined as being unconstitutional; or (3) file suit asserting that they are constitutional. ECF 97 at 10–11. But this Court requires that the alternatives be "reasonable," *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 415 (N.D. Cal. 2004), and none of those options are.

The first requires that Texas wait until one of its academic institutions is believed to be non-compliant and at risk of losing federal funds. This supposed remedy is almost completely non-responsive to the harms that Texas would experience should the four challenged provisions be enjoined. Under the status quo, Texas's academic institutions have a smaller likelihood of triggering a federal enforcement action. Indeed, Texas has sought intervention, in part, to prevent Plaintiff from expanding recipients' potential liability by means of its lawsuit, so Plaintiff's proposed remedy demands that Texas participate in a proceeding that it sought to avoid and that would not have been necessary but for disposition of this lawsuit. In any event, the proposed remedy addresses only the worst-case scenario: the possible loss of federal funds. It does nothing to redress the collateral consequences of expanding liability under Title IX, such as private litigation, monetary judgments,

and the (often unconstitutional) changes that publicly funded institutions make to their sexual harassment policies to avoid the stigma of noncompliance. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 213 (3d Cir. 2020) (describing the pressure universities faced as a result of earlier Title IX policies).

As for the second, there is no guarantee that the Department will initiate rulemaking in response to the resolution of this lawsuit. However, even if the Department did initiate rulemaking, the notice and comment period is open to all interested persons. Texas's comments would be submitted alongside thousands of others. The option is a far cry from the court-run proceeding available in *United States v. Alisal Water Corp.*, which Plaintiff cites in support. 370 F.3d 915, 921 (9th Cir. 2004); *see also In re Charles Schwab Corp. Sec. Litig.,* C 08-01510 WHA, 2011 WL 633308, at *4 (N.D. Cal. Feb. 11, 2011) (noting that movant's objection was previously heard and considered by the court at a hearing). In addition, notice and comment rulemaking takes years. Plaintiff has not explained how Texas will remedy its impaired interests during the interim.

As for initiating litigation, Texas would first need to wait until it lost the benefit of the Final Rule. In any event, as this is an APA action, to defend the four provisions challenged here, Texas must show only that the Department did not act arbitrarily and capriciously in adopting the regulations Texas prefers. It is not a reasonable alternative to require Texas to force the Department to adopt a particular sexual harassment standard on constitutional or statutory grounds, which requires a much higher showing. In any event, even if these were viable alternatives (and they are not), the availability of alternatives is "hardly dispositive." *UMG Recordings, Inc.*, 222 F.R.D. at 415. Here, the more efficient and reasonable solution is to allow Texas to intervene.

### C. The Department is not capable of representing Texas's interests or providing an adequate defense of the regulations.

The Biden Administration has promised to put the Final Rule "to a quick end," *The Biden Agenda for Women*, JOEBIDEN.COM, https://joebiden.com/womens-agenda/ (last visited May 11, 2021), and it has taken immediate and unmistakable strides to fulfill that promise. *See, e.g.*, ECF 84 at 6-7; Exec. Order No. 14021, *supra*. Nevertheless, the parties contend that Texas must rely on the Department to represent Texas's interests in defending the Final Rule simply because the Department is a governmental entity and has the nominal designation of being the named defendant

in this action. Rule 24(a)(2), however, does not require that the courts close their eyes to reality, nor does the case law in this jurisdiction. The Ninth Circuit recognizes a presumption of adequate representation when "the government is acting on behalf of a constituency that it represents," but it also has held that an intervenor may rebut this presumption with a "compelling showing" to the contrary. *Citizens for Balanced Use*, 647 F.3d at 898. Texas has made such a showing here. *See* ECF 84 at 15-17.

**1.**     As Texas explained in its Motion, the Biden Administration's campaign promises have returned as effective policy now that President Biden is in office. *See* ECF 84 at 6–7; Exec. Order No. 14021, *supra*. The Executive Order, wherein the Biden Administration has charged the Department with reviewing the Final Rule to ensure it conforms with the administration's views (and according to this administration, it does not), is only one sign that, regarding the Final Rule, the Department and Texas are diametrically opposed. Another is the Department's failure to appeal the First Circuit's rejection of its cross-examination rule.

As Texas explained in its Motion to Intervene, the Department failed to appeal the First Circuit's rejection of a key provision of the Final Rule concerning available evidence at hearings. ECF 84 at 7, 16). Plaintiff creatively proposes a reason why that provision was not appealed, ECF 97 at 13, but that is not the explanation the Government provides in its opposition, ECF 98 at 4–5— and both explanations are inconsistent with the Department's (pre-Biden administration) representations concerning the importance of that provision with regard to the Final Rule as a whole.

The relevant provision prohibits reliance on out-of-hearing statements in Title IX hearings unless the speaker can be cross-examined. *See* 34 C.F.R. § 106.45(b)(6)(i). This is important in the sexual harassment context because cross-examination "highlights the errors of well-intentioned and deceptive witnesses alike." 85 Fed. Reg. 30321 n.1226. It allows the decisionmakers to assess such factors as "specific details, inherent plausibility, internal consistency, [and] corroborative evidence . . . in a way that no other procedural device does." *Id.* at 30321. Absence of any opportunity for an accused student to test the credibility of his or her accuser through some form of cross-examination (either direct or indirect) has been one of the chief criticisms of the prior regime. *See Univ. of Scis.*, 961 F.3d at 215; *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018); *Doe v. Brandeis Univ.*, 177 F.

Supp. 3d 561, 604-05 (D. Mass. 2016). The adoption of a cross-examination requirement is one of the most controversial aspects of the Final Rule. *E.g.*, Laura Perry, *From Brock Turner to Brian Banks: Protecting Victims and Preserving Due Process in the New Area of Title IX*, 14 DePaul J. for Soc. Just. 1, 50 (2021). To be sure, Plaintiff does not challenge hearing procedural rules in this suit, but the fact that the Department allowed such a critical improvement to fail APA review suggests the four provisions here, if struck by this Court, will merit no greater defense from the Department.

Moreover, the alleged concern that stayed the Department's decision to defend the cross-examination provision (that appealing one provision could upset the lot, *see* ECF 98 at 4) is applicable to any provision and to all cases, regardless of how fundamental the provision is for the new regulations to work as intended. In other words, there is no indication from the Department's lukewarm response that its "strategic" decision for letting such a critical part of the Final Rule fall to the wayside will not be used to excuse failing to appeal other important provisions as part of an overall effort to leave the Final Rule toothless.

**2.**     Plaintiff claims in its opposition that the Department "has vigorously and skillfully defended this lawsuit," and that the government's review of the Rule is only to ensure it is "consistent with the administration's belief that sex discrimination is bad," and therefore may not require drastic changes. ECF 97 at 12 –13. But Plaintiff does not speak for the Department, and the Department's reluctance to speak on this point is telling.

The Department responds to Texas's proof that it cannot adequately represent Texas's interests by arguing that it "is *capable* of defending this litigation, while leaving room for any policy changes to the existing rule to be made through the ordinary administrative process" ECF 98 at 4 (emphasis added). But it does not—and cannot—say it *will* defend this litigation. The Government acknowledges that it has said *nothing* indicating its "legal position on the merits of the case," and does not volunteer to do so. *Id.* at 4 n.1. In fact, it argues only that "it would be premature to conclude that the government is an inadequate representative" "[u]ntil the Department of Education's review of the regulations" is complete. *Id.* at 4.  It suggests that this Court could have Texas renew its motion to intervene "at a later date"—presumably, once the Department has formally withdrawn

1  from the defense of the Final Rule. *Id.* at 4 n.1.

2  But if this Court invalidates one of the challenged provisions before Texas can intervene, the Department need only let the adverse judgment stand for the relevant provisions in the Final Rule to be effectively repealed. The Biden Administration employed this exact strategy to jettison the 2019 public charge rule. *See* Press Release, U.S. Dep't. of Homeland Security, *DHS Secretary Statement on the 2019 Public Charge Rule* (March 9, 2021), https://www.dhs.gov/news/2021/03/09/dhs-secretary-statement-2019-public-charge-rule. There, once one court invalidated the rule, the Department of Homeland Security ordered DOJ to immediately dismiss pending appeals in multiple circuits, which permitted a judgment from the Northern District of Illinois, vacating the 2019 public charge rule, to go into effect. *Id.* Crucially, the announcement came one month after the President ordered a review of the policy.

The same danger is present here. Unless Texas is made a party to this litigation, not only would it be precluded from filing motions or introducing an issue or defense not raised by the parties, but it also could lack standing to object to a collusive settlement or to appeal. *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1033 (N.D. Cal. 1999); *cf. S.E.C. v. Private Equity Mgmt. Group, Inc.*, CV 09-2901 PSG (EX), 2009 WL 2488044, at *6 n.5 (C.D. Cal. Aug. 10, 2009) (describing amicus curiae "as non-parties who can only provide general information and assistance" to the court). In fact, absent Texas's intervention, there is nothing preventing the Department from ordering DOJ to enter into a settlement agreement with WSU that enjoins the challenged provisions. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 529 (9th Cir. 1983) (finding inadequate representation because agency had a conflict of interest and DOJ did not act "totally independent of the administration's concerns"). Texas would have no means of defending the status quo.

**3.** At bottom, both Plaintiff and the Department attempt to buy themselves time by advising this Court to consider intervention later—either, as the Department suggests, when it takes a legal position on the rule, or as Plaintiff suggests if the Department fails to appeal an unfavorable judgment. But that wait-and-see approach can, whether deliberately or not, prevent Texas from intervening at all. When, earlier this year, States sought to defend the public charge rule against an APA challenge, "the federal government robustly defended the rule for more than a year in courts

across the nation before suddenly acquiescing in its vacatur and dismissing all public charge cases without prior notice." *City & Cty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 992 F.3d 742, 743 (9th Cir. 2021), *cert. granted in part sub nom. Arizona v. City & Cty. of San Francisco*, No. 20-1775, 2021 WL 5024620 (U.S. Oct. 29, 2021) (VanDyke, J., dissenting). Although "states quickly intervened when they discovered that the federal government had abandoned their interests," "[t]he plaintiffs and the federal government argue[d] against intervention . . . at this late stage in the litigation." *Id.* at 750 (cleaned up). Through "carefully coordinated actions," the government "effectively removed the Trump-era rule and installed the Clinton-era guidance as the de facto new rule—without any formal agency rulemaking or meaningful notice to the public," and "harmed the state intervenors by preventing them from seeking any meaningful relief through agency channels." *Id.* at 751. The government should not be allowed to use that tactic again.

Texas should be allowed to intervene given the Department's concessions concerning its inability to support the Final Rule on the merits[4], the Biden Administration's track record of using litigation strategically to rid itself of Trump Administration-era regulations, and the risk of undue delay on the fairness of the proceedings and Texas's ability to defend the Final Rule.

## II.   In The Alternative, The Court Should Grant Permissive Intervention.

Even if Texas were not entitled to intervention as of right (and it is), this Court should grant permissive intervention under FRCP 24(b). Not only does Texas satisfy all three threshold requisites for permissive intervention,[5] *see* ECF 84 at 17-18, but the argument for intervention also has

---

[4] It should also be noted that any argument establishing the challenged provisions as reasonable, effective, or beneficial to students undermines the Department's effort to overhaul the Final Rule since it provides evidence that changing the policy, as Biden Administration urges, is irrational. *See Allentown Mack Sales & Serv., Inc. v. NLRB.*, 522 U.S. 359, 374 (1998) (requiring administrative agencies to engage in "reasoned decisionmaking" that is both "logical and rational"); *see also California v. Wheeler*, 467 F. Supp. 3d 864, 872 (N.D. Cal. 2020).

[5] Although in some cases, this Circuit has also required that the intervenor have an independent jurisdictional ground, where, as here, "the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

"particular force where the subject matter of the lawsuit is of great public interest, the intervenor has a real stake in the outcome and the intervention may well assist the court in its decision through . . . the framing of issues." *Daggett v. Comm'n on Gov't Ethics*, 172 F.3d 104, 116-17 (1st Cir. 1999) (Lynch, J., concurring). This is precisely one of those cases. As Texas explained in its Motion to Intervene, Texas is a common provider of education, who is represented by experienced counsel and whose schools, universities, and other academic programing are subject to Title IX. Texas therefore has the ability and, unlike the federal government, the incentive to vigorously defend the Final Rule, including by providing this Court with the best arguments available for why the Final Rule is consistent with both the Department's organic statutes and the APA.

Neither party has presented a credible argument as to why this Court should deny permissive intervention. As recently as two years ago, this Court allowed the State of Oregon to intervene in a similar challenge under the APA against federal regulations related to the contraception mandate. *California v. Health & Human Servs.*, 330 F.R.D. 248, 255 (N.D. Cal. 2019) (allowing Oregon to permissively intervene in a state challenge under the APA against federal rules). Many of the considerations that this Court found persuasive in that case apply here as well. Additionally, the D.C. District Court granted Texas's motion to intervene in a parallel suit contesting the Final Rule. *See Commonwealth of Pennsylvania v. DeVos*, 1:20-cv-01468-CJN (D.D.C. Feb. 4, 2021). The rationale for granting intervention here is even stronger, as Texas filed its motion much earlier in the litigation, and the Biden Administration has since initiated the process for repealing the Final Rule. *See Scholl v. Mnuchin*, 483 F. Supp. 3d 822, 825 (N.D. Cal. 2020) (listing timeliness and adequate representation as relevant factors).

Allowing Texas to intervene also would not unduly delay or prejudice the parties in this suit. Texas's intervention, if anything, would avert a potential disruption to this case should the Department withdraw its support of the Final Rule and refuse to defend it, which the Biden Administration's recent actions regarding the 2019 public charge rule suggest is likely. *See supra* at Section I.C.2–3.

Plaintiff does not challenge Texas's ability to meet the requirements of FRCP 24(b). But in addition to re-issuing its earlier objections to Texas's interests and inadequate representation

arguments, Plaintiff makes much of what it describes as Texas's insistence that it has "crucial arguments and defenses" to make that the Government will not by speculating that Texas will raise issues outside the bounds of an APA suit. ECF 97 at 17–18. Plaintiff is incorrect. The snippets upon which Plaintiff relies are in reference to Texas's assertion that the Government does not intend to defend the Final Rule, so Texas must, not that Texas seeks to "press an affirmative defense." *See Id.* (relying on ECF 84 at 14, 18). To the extent Plaintiff insists that (despite Texas's repeated denials) Texas will raise every constitutional concern it identified in its Answer, this Court is well-placed to police the scope of the litigation to cabin it to appropriate APA issues. *Id.* at 15 n.10, 18. Plaintiff's speculation does not suffice to support its claim that Texas's intervention will "distract from the legal issues actually present in the case." *Id.* at 18. Rather, Texas's intervention will ensure that the present parties cannot evade review of the legal issues in the case.

The Department argues that Texas has no claim or defense in common with the Government, because Texas seeks to intervene as a defendant (thus no claim) and only the Government can be sued under the APA (so no defense).ECF 98 at 5. If that argument could win the day, permissive intervention on behalf of the defendant would never be allowed in APA actions—and yet it is. Frequently. *E.g.*, *Citizens for Balanced Use*, 647 F.3d at 898-99 (allowing organization to defend Forest Service Rule from APA challenge when Forest Service was simultaneously seeking to appeal order forcing it to promulgate the Rule); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392 (9th Cir. 1995) (allowing organization to intervene as of right to defend U.S. Fish and Wildlife Service Rule); *Fresno Cty. v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) (allowing organization to intervene to uphold rule against APA challenge when Department failed to appeal grant of preliminary injunction against rule's enforcement).

The Ninth Circuit already examined and rejected a similar argument in *Wilderness Soc'y v. U.S. Forestry Serv.*, 630 F.3d 1173 (9th Cir. 2011). There, the court rejected the "federal defendants" rule, which prohibited non-governmental plaintiffs from intervening as defendants in National Environmental Policy Act ("NEPA") cases. *Id.* at 1177. The initial justification for prohibiting intervention by those plaintiffs was that NEPA did not provide protection for the economic interests those plaintiffs asserted. *Id*. (citing *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 309 (9th Cir.

1989), *abrogated by Wilderness Soc'y v. U.S. Forestry Serv.*, 630 F.3d 1173 (9th Cir. 2011)). In rejecting the rule, the Ninth Circuit held that "the 'federal defendant' rule mistakenly focuses on the underlying legal claim instead of the property or transaction that is the subject of the lawsuit. No part of Rule 24(a)(2)'s prescription engrafts a limitation on intervention of right to parties liable to the plaintiffs on the same grounds as the defendants." *Id*. at 1178-79.

The same applies to the Government's argument. Limiting the parties who can intervene based on the specific causes of action in the relevant statute "is at odds with the normal standards we apply in all other intervention of right cases," and with this Circuit's "consistent approval of intervention of right on the side of the federal defendant" in other statutory and APA challenges. *Id*. at 1179-80 (citing, as an example, *Idaho Farm Bureau Fed'n v. Babbitt*). It is enough that the court apply "practical and equitable considerations" and its "traditionally liberally policy in favor of intervention." *Id*. at 1179. Those considerations favor allowing Texas to intervene here.

## CONCLUSION

The State of Texas respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a) or, in the alterative, for permissive intervention under Rule 24(b) likewise are "clearly weighed in favor of permissive intervention." *Skaggs*, 867 F.2d at 530.

Dated: December 6, 2021                    Respectfully submitted.

*/s/ Patrick K. Sweeten*
Patrick K. Sweeten
Deputy Attorney General for Special Litigation
Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Grant Dorfman
Deputy First Assistant Attorney General
William T. Thompson
Deputy Chief, Special Litigation Unit
Kathleen T. Hunker
Special Counsel

Dated: December 6, 2021

LEWIS BRISBOIS BISGAARD & SMITH LLP

*/s/ Michael K. Johnson*
Michael K. Johnson
Attorneys for [Proposed] Intervenor-Defendant KEN PAXTON IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS