John C. He (CA Bar No. 328382)
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
Ph: (510) 622-8150
Fax: (202) 232-7203
Email: jhe@publicjustice.net

*Listing continues on next page*

Counsel for Plaintiff The Women's Student Union

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE WOMEN'S STUDENT UNION, <br><br> *Plaintiff*, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, <br><br> *Defendant*. | **PLAINTIFF'S OPPOSITION TO THE DEPARTMENT OF EDUCATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> Civil Action No. 3:21-cv-01626-EMC <br><br> Judge: Honorable Edward M. Chen <br><br> Hearing: January 20, 1:30 PM (virtual) Courtroom 5, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102 |

John T. Lewis^
Karianne M. Jones^
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Ph: (202) 448-9090
Email: jlewis@democracyforward.org
          kjones@democracyforward.org

Adele P. Kimmel (CA Bar No. 126843)
Alexandra Z. Brodsky*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
Fax: (202) 232-7203
Email: akimmel@publicjustice.net
          abrodsky@publicjustice.net

Linda M. Correia*
Lauren A. Khouri*
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington DC 20036
Ph: (202) 602-6500
Fax: (202) 602-6501
Email: lcorreia@correiaputh.com
          lkhouri@correiaputh.com

* admitted *pro hac vice*
^ *pro hac vice* pending

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

    A.   ED's longstanding administrative enforcement of Title IX .......................................2

    B.   The 2020 Regulations.................................................................................................3

    C.   WSU's mission and injuries resulting from the 2020 Regulations ...........................4

    D.   Procedural history.......................................................................................................8

LEGAL STANDARD............................................................................................................9

ARGUMENT .......................................................................................................................9

I.    WSU has standing because the 2020 Regulations deprive it and its members of
their procedural right to trigger a federal investigation of their school district. .................9

    A.   The 2020 Regulations deprive WSU and its members of an important
procedural right. ......................................................................................................10

    B.   ED's deprivation of WSU and its members' procedural rights threatens their
concrete interests. ....................................................................................................13

    C.   WSU's and its members' injuries were caused by the 2020 Regulations and
could be redressed if the 2020 Regulations were set aside. .....................................17

    D.   ED's constructive denial of WSU's administrative complaint provides
additional evidence of standing. ..............................................................................18

CONCLUSION....................................................................................................................20

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Allen v. Wright*,
    468 U.S. 737 (1984) ........................................................................................15

4

5

*Animal Legal Def. Fund, Inc. v. Glickman*,
    154 F.3d 426 (D.C. Cir. 1998) (en banc) ..........................................................17

6

7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................9

8

*Balt. & P. R. Co. v. Fifth Baptist Church*,
    108 U.S. 317 (1883) ..........................................................................................14

9

10

*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*,
    765 F.3d 1277 (11th Cir. 2014) ........................................................................18

11

12

*Cal. Trucking Ass'n v. Bonta*,
    996 F.3d 644 (9th Cir. 2021) ............................................................................9

13

*California v. Bernhardt*,
    460 F. Supp. 3d 875 (N.D. Cal. 2020) ..............................................................10

14

15

*Californians for Renewable Energy v. EPA*,
    2018 WL 1586211 (N.D. Cal. 2018) ..................................................12, 15, 19

16

17

*Cannon v. Univ. of Chi.*,
    441 U.S. 677 (1979) ......................................................................................2, 13

18

19

*Carr v. Saul*,
    141 S. Ct. 1352 (2021) ..................................................................................5, 11

20

*Citizens for Better Forestry v. U.S. Dep't of Agric.*,
    341 F.3d 961 (9th Cir. 2003) ............................................................................13

21

22

*Ctr. for Auto Safety, Inc. v. Nat'l Highway Traffic Safety Admin.*,
    342 F. Supp. 2d 1 (D.D.C. 2004) ......................................................................9

23

24

*Ctr. for Biological Diversity v. Mattis*,
    868 F.3d 803 (9th Cir. 2017) ............................................................................10

25

*Committee for Full Employment v. Blumenthal*,
    606 F.2d 1062 (D.C. Cir. 1979) ........................................................................12

26

27

*Dao v. Faustin*,
    402 F. Supp. 3d 308 (E.D. Va. 2019) ................................................................14

28

*Davis v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999) ............................................................................2

*Franklin v. Gwinnett Cnty. Pub. Sch.*,
   503 U.S. 60 (1992) ..............................................................................2

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998) ............................................................................2

*Greater Los Angeles Council on Deafness, Inc. v. Baldrige*,
   827 F.2d 1353 (9th Cir. 1987) ...........................................................18

*GTE California, Inc. v. FCC*,
   39 F.3d 940 (9th Cir. 1994) ...............................................................11

*Hall v. Norton*,
   266 F.3d 969 (9th Cir. 2001) .............................................................17

*Kilduff v. Cosential, Inc.*,
   289 F. Supp. 2d 12 (D. Conn. 2003) ..................................................14

*Know Your IX v. DeVos*,
   2020 WL 6150935 (D. Md. 2020) ......................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..............................................................................9

*McGarry v. Sec'y of Treasury*,
   853 F.2d 981 (D.C. Cir. 1988) ...........................................................19

*Nat'l Fam. Farm Coal. v. EPA*,
   966 F.3d 893 (9th Cir. 2020) ........................................................13, 16

*Nat'l Fed'n of the Blind v. ED*,
   407 F. Supp. 3d 524 (D. Md. 2019) ...................................................12

*People for the Ethical Treatment of Animals v. USDA*,
   797 F.3d 1087 (D.C. Cir. 2015) .........................................................12

*Rogers v. Loews L'Enfant Plaza Hotel*,
   526 F. Supp. 523 (D.D.C. 1981) ........................................................15

*Stricker v. Cessford Const. Co.*,
   179 F. Supp. 2d 987 (N.D. Iowa 2001) ..............................................15

*Sun v. Ashcroft*,
   370 F.3d 932 (9th Cir. 2004) .............................................................11

*Thomas v. Union Carbide Agric. Prods. Co.*,
   473 U.S. 568 (1985) ...........................................................................19

*Tinian Women Ass'n v. U.S. Dep't of the Navy,*
  976 F.3d 832 (9th Cir. 2020) .......................................................................17

*TransUnion LLC v. Ramirez,*
  140 S. Ct. 2190 (2021) .......................................................................9, 14, 15

*United States v. UPS Customhouse Brokerage, Inc.,*
  575 F.3d 1376 (Fed. Cir. 2009).....................................................................10

*Valentini v. Shinseki,*
  860 F. Supp. 2d 1079 (C.D. Cal. 2012) .........................................................14

*Virginia Coll., LLC v. SSF Savannah Props., LLC,*
  93 F. Supp. 3d 1370 (S.D. Ga. 2015).............................................................14

*Wash. Env't Council v. Bellon,*
  732 F.3d 1131 (9th Cir. 2013) .......................................................................17

*Wolfe v. Strankman,*
  392 F.3d 358 (9th Cir. 2004) .....................................................................9, 15

*Women's Equity Action League v. Cavazos,*
  879 F.2d 880 (D.C. Cir. 1989) .......................................................................17

*Yeganeh v. Mayorkas,*
  2021 WL 5113221 (N.D. Cal. 2021) ..............................................................19

*Young v. Biden,*
  2021 WL 3507648 (9th Cir. 2021), ................................................................12

*Young v. Trump,*
  506 F. Supp. 3d 921 (N.D. Cal. 2020), ...............................................12, 17, 18


**Statutes, Rules, and Regulations**

5 U.S.C. § 706 .......................................................................................................8

20 U.S.C.
  § 1681.................................................................................................. *passim*
  § 1682........................................................................................................2

34 C.F.R.
  § 100.7................................................................................................ *passim*
  § 106...........................................................................................................1
  § 106.30...............................................................................................3, 4, 8
  § 106.71................................................................................................2, 10
  § 106.44...............................................................................................4, 8

*Consolidated Procedural Rules for Administration and Enforcement of Certain*
 *Civil Rights Laws and Authorities,*
 41 Fed. Reg. 18,394 (May 3, 1976) ........................................................10

*Nondiscrimination on the Basis of Sex in Education Programs or Activities*
 *Receiving Federal Financial Assistance,*
 85 Fed. Reg. 30,026 (May 19, 2020) ................................................ *passim*


**Other Authorities**

*Q&A on Campus Sexual Misconduct,*
 U.S. Dep't of Educ. (Sept. 22, 2017) ...................................................11

*Q&A on Title IX and Sexual Violence,*
 U.S. Dep't of Educ. (Apr. 29, 2014) .....................................................11

# INTRODUCTION

In this case, Plaintiff the Women's Student Union ("WSU") challenges regulations promulgated by the U.S. Department of Education ("ED") that narrow the scope of Title IX and thereby limit the circumstances in which ED must investigate a school's noncompliance with that statute. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 Fed. Reg. 30,026 (May 19, 2020) (codified at various places in 34 C.F.R. § 106) (the "2020 Regulations"). In September, the Court dismissed WSU's complaint on the grounds that WSU had failed to plausibly allege that its mission had been frustrated or that its members would be injured by the Regulations but granted leave to amend.

Although WSU maintains that its initial complaint sufficiently established its standing, it has since filed a First Amended Complaint, ECF No. 78 ("FAC"), that bolsters its allegations. Most important, the Complaint makes plain that the basis for WSU's standing is *procedural* injury: that, by limiting which forms of unchecked sexual harassment will trigger an investigation, the 2020 Regulations deny WSU and its members an important procedural mechanism for obtaining redress. The Complaint also alleges, at length, how that procedural deprivation impairs WSU and its members' concrete interest in ensuring that their school district is free from sexual harassment. Specifically, the Complaint alleges numerous examples of unremedied sexual harassment at their school that can no longer trigger an investigation—one backed by the potential loss of federal funding—under Title IX. That is more than sufficient to establish WSU's standing.

ED's motion to dismiss is nevertheless centered around rebutting an organizational diversion-of-resources theory of standing. But, whether WSU has diverted resources or not, its procedural injuries provide an independent basis for standing, one that requires WSU to allege only that the procedural deprivation threatens WSU's or its members' interests. Simply put, WSU and its members can no longer trigger a federal investigation of their school's lack of concern for certain forms of sexual harassment—an investigation that, previously, would have resulted in administrative remedies on its own and also provided WSU and its members leverage to pressure the school to implement new policies. The Court should therefore deny ED's motion to dismiss.

1

## BACKGROUND

Title IX of the Education Amendments of 1972 provides, subject to certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX defines "program or activity" in relevant part as "all of the operations" of a school, "any part of which is extended Federal financial assistance." *Id.* § 1687.

### A.      ED's longstanding administrative enforcement of Title IX

The U.S. Supreme Court has long held that Title IX's prohibition against sex discrimination includes protection against sexual harassment—a protection that injured students can enforce in federal court through an implied private right of action for compensatory damages and injunctive relief. *See, e.g.*, *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639-40 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 281 (1998); *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 65-66 (1992); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 689 (1979). To recover damages in a court action, a private plaintiff must show that a school district had actual knowledge of severe, pervasive, and objectively offensive harassment and acted with deliberate indifference. *See, e.g.*, *Davis*, 526 U.S. at 633.

But Title IX is also administratively enforced by federal agencies that disburse funds to educational institutions. Congress "authorized and directed" federal agencies that provide financial assistance to education programs or activities to "effectuate the provisions of" Title IX "by issuing rules, regulations, or orders of general applicability." 20 U.S.C. § 1682. ED—which has, for decades, been the agency primarily charged with enforcing Title IX administratively—has an administrative complaint process, which allows "[a]ny person who believes himself or any specific class of individuals to be subjected to discrimination prohibited by [Title IX and its implementing regulations to] by himself or by a representative file with the responsible Department official or his designee a written complaint." 34 C.F.R. § 100.7(b); *see also id.* § 106.71 (Title IX regulation incorporating the procedural provisions of § 100.7). In turn, a "responsible Department official or

his designee *will* make a prompt investigation whenever a … complaint … indicates a possible failure to comply with this part." *Id.* § 100.7(c) (emphasis added).

ED has also issued consistent guidance to school districts about how it interpreted Title IX in the context of sexual harassment. Although different guidance documents varied in their level of detail and emphasis, they informed schools of ED's consistent view that:

- unlawful "sexual harassment" means unwelcome sex-based conduct that denies or limits a student's ability to participate in or benefit from the school's program and can include conduct that is severe, persistent, or pervasive—in other words, sex-based harassment that is sufficiently serious that it adversely affects a student's ability to participate in or benefit from the school's program;

- schools are required to address all harassing conduct that creates a hostile environment in an education program or activity, even if the conduct occurs outside an education program or activity;

- schools are responsible for any sexual harassment of students that they knew or, in the exercise of reasonable care, should have known about; and

- schools must take prompt and effective action to end the unlawful harassment, prevent it from recurring, and remedy its effects.

FAC ¶ 28.

B.     **The 2020 Regulations**

In 2020, former Secretary of Education Elisabeth DeVos promulgated the 2020 Regulations concerning how the Department would judge schools' responses to sexual harassment in evaluating federal administrative civil rights complaints. The 2020 Regulations constitute a dramatic departure from the Department's longstanding interpretation of Title IX in evaluating those complaints, as well as from its continued standards for race and disability-based harassment. FAC ¶¶ 25-32.

Four provisions are at issue in this suit. Specifically, for purposes of evaluating federal administrative civil rights complaints, the 2020 Regulations:

- Narrowed the definition of sexual harassment, requiring schools to address only harassment that is "severe" *and* "pervasive," 34 C.F.R. § 106.30(a)(2);

- Excused schools from addressing sexual harassment that occurs *outside* their educational programs or activities, even if that harassment causes a hostile environment *within* an educational program or activity, *id.* § 106.44(a);

- Adopted an actual knowledge standard for sexual harassment, under which schools are not responsible for their failures to address harassment they *should* have known about if they did not *actually* know about it, *id.* §§ 106.30(a), 106.44(a); and

- Adopted a deliberate indifference standard, under which a school fulfills its obligations under Title IX so long as it does not act "clearly unreasonabl[y]," and under which a school is required only to address the impact of sexual harassment on its target, not on any third parties, *id.* § 106.44(a).

### C.   WSU's mission and injuries resulting from the 2020 Regulations

WSU is an approved student body association of California's Berkeley Unified School District ("BUSD"). FAC ¶ 76. Its mission is to reduce instances of sexual harassment and address barriers to success and wellbeing for young women and non-binary students at Berkeley High School ("BHS") by (1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination and sexual harassment; and (2) providing training to the student body about their rights and responsibilities under school policy, state law, and federal law. *See id.* ¶¶ 78-79.

Many high school students enrolled at BUSD, including members of WSU, have been subject to various forms of sexual harassment. FAC ¶¶ 88-89, 91-93, 97-98. Those experiences result in significant obstacles to those students' ability to learn and thrive in school—obstacles that result not just from the initial harassment alone, but also because their school fails to respond to the harassment promptly and appropriately. *Id.* ¶¶ 2-5, 15. BUSD's inadequate policies and practices with respect to sexual harassment have been a source of public controversy for years. *Id.* ¶¶ 81-84. Indeed, BUSD has been the subject of multiple private lawsuits for money damages concerning its response to sexual harassment of students. *Id.* ¶ 82. And a former Title IX Coordinator at BUSD quit the job after only six months, stating that she was "appalled" by BUSD's lack of support for her office—which she described as being in "shambles." *Id.* ¶ 83.

Because BUSD has consistently failed to address sexual harassment adequately, WSU would like ED to investigate BUSD and spur policy changes. FAC ¶ 83. In February 2021, WSU filed an administrative complaint with ED against BUSD.[1] *Id.* ¶ 104. And it would like to file an additional complaint about events that have since transpired. *Id.* ¶ 105. Unfortunately, under the 2020 Regulations, the harassment and school policies that WSU included in that complaint—and in any additional complaint WSU would file but for its futility, *cf. Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021)—are no longer cognizable in the administrative process. That is, ED is closed for business when it comes to the issues about which WSU has complained or would like to complain.

1.      ***Off-campus harassment***: Much of the sexual harassment that WSU members and other BHS students experience occurs off BUSD property, and outside of any school activity, but creates a hostile environment in school. FAC ¶ 90. Nevertheless, BUSD has an official and explicit policy of not addressing any harassment that occurs outside of school, even if it affects students' ability to learn in school. *Id.* ¶ 93). Although ED used to require schools to address such off-campus harassment, under the 2020 Regulations, schools no longer need to do so. *Id.* ¶¶ 94-95. Indeed, in explaining its policy about off-campus harassment to the press, BUSD appeared to attribute it to the 2020 Regulations. *Id.* ¶¶ 85, 93.

In communications with ED about its complaint, WSU complained specifically about harassment that a WSU member, "Jane," had been subjected to by a classmate named "John." FAC ¶¶ 91, 104. John repeatedly texted Jane, often making unwanted sexual comments about her body, especially her breasts. *Id.* ¶ 91. In just one night in March 2021, Jane received eight calls, eight direct messages on Instagram, and eight text messages from him. *Id.* Although John sent his texts from off school grounds and mostly outside school hours, they made Jane uncomfortable sharing a class with him. *Id.* (John's pattern of sexual harassment is well-known among the student body, and he has been reported to BUSD for sexual harassment multiple times before. *Id.* ¶¶ 91, 98.)

---

[1] At the time, multiple lawsuits were pending against the regulations, and WSU hoped one might succeed, meaning its administrative complaint could be assessed under the Department's previous standards. FAC ¶ 104.

Since the February 2021 administrative complaint, another WSU member, "Jamie," has been repeatedly sexually harassed off school grounds by John. *Id.* ¶ 92. John sat next to Jamie on the public bus they both take to school and made unwanted sexually explicit comments to Jamie; for instance, John shared explicit details about his sex life and asked Jamie invasive questions about their sexual preferences. *Id.* John also sometimes touched Jamie's leg and shoulders while making unwanted sexual comments. *Id.* Jamie shares several classes with John, and John's sexual harassment on the bus makes Jamie uncomfortable in those classes. *Id.* WSU would complain of these events to ED if the 2020 Regulations did not make that futile. *Id.* ¶ 105.[2]

**2.      *"Severe or pervasive" harassment*:** Much of the sexual harassment that WSU members and other BHS students experience is severe but not pervasive, or pervasive but not severe, but not both severe *and* pervasive—and so is not actionable under the 2020 Regulations. FAC ¶ 87. For example, before and since the 2020 Regulations went into effect, many WSU members and other BHS students have been subjected to pervasive unwanted sexual comments about their bodies while in class or walking through the halls of BHS. *Id.* ¶ 88. Often, no single classmate makes more than one comment to any given student, but the target receives multiple comments from multiple classmates that, together, create a hostile environment. *Id.*

Additionally, on one occasion in or around September 2021, John harassed WSU member Jamie in their shared class. FAC ¶ 89. Without invitation, John told Jamie and a small group of other classmates explicit details about his penis, and shared information regarding what he thinks makes a "good" penis. *Id.* Because this conduct was severe but not pervasive—it only occurred once—the 2020 Regulations do not require BUSD to respond and similarly do not permit ED to require BUSD to investigate or remediate the harassment or its effects. *Id.* Again, WSU would complain of these events to ED if the 2020 Regulations did not make that futile. *Id.* ¶ 105.

---

[2]   Indeed, ED has dismissed administrative complaints for precisely this reason. *See* FAC ¶ 95 (citing Letter of Dismissal from Office for Civil Rights regarding Dickinson College, No. 03-21-2082, at 1 (Feb. 24, 2021) ("The incident you reported did not occur within the College's education program or activity. As such, the College did not have an obligation to provide a response to you that complies with the requirements of Title IX.")).

3.      ***Harassment of which BUSD should know***: Much of the sexual harassment that WSU members and other BHS students experience is not reported to BUSD officials, but it is harassment about which BUSD should know. FAC ¶ 96. That is, it is harassment of which BUSD has constructive but not actual knowledge and so, because of the 2020 Regulations, BUSD has no duty to address it. *Id.* ¶¶ 96, 100-02.

In its February 2021 complaint, WSU specifically complained about hostile environments that occurred in Zoom "breakout rooms" during remote learning, about which the school had constructive but not actual knowledge. FAC ¶¶ 97-99, 104. Although WSU members told multiple BHS teachers whom they trust about the general problem of sexual harassment and breakout rooms, including in a conversation in Spring 2021, the students did not share specifics, such as the identities of the students involved or the particular classes in which the problem has arisen. *Id.* ¶ 99. And WSU member Jane understands from a teacher that a supermajority of the girls in one of the classes she shared with John during the 2020-2021 academic year requested not to share a Zoom breakout room with him. *Id.* ¶ 98. The requests by numerous girls not to be paired with a single boy would have been enough prior to the 2020 Regulations to find that the school should have been aware of possible sexual harassment and taken steps to inquire. *Id.* But, because WSU does not have reason to believe the teacher was expressly told by those other girls that their requests regarding John were based on sexual harassment, WSU cannot allege that the teacher had actual knowledge that John had harassed those other girls and so cannot, under the 2020 Regulations, ask the ED to provide relief for failure to discover and remediate these instances. *Id.*

In sum, WSU members and other students have experienced harmful harassment that, prior to the 2020 Regulations, would have required ED to open WSU's complaint for investigation. FAC ¶¶ 88, 94, 100. But now, because of the 2020 Regulations, ED cannot. *Id.* ¶¶ 88-89, 94, 101-102. This is because the 2020 Regulations no longer make it unlawful for purposes of administrative enforcement for BUSD to disregard sexual harassment that originates outside the school's "program or activity," even though it impacts students' ability to participate in the school's program or activity; sexual harassment that is severe but not pervasive (or pervasive but

1    not severe); or sexual harassment that the school should reasonably know about, but of which it

2    lacks actual knowledge. 34 C.F.R. §§ 106.30(a); 106.44(a). And, even for cognizable sexual

3    harassment that the school knows about, the 2020 Regulations do not require complete relief. In

4    fact, the school may respond unreasonably to the harassment, so long as its response is not *clearly*

5    unreasonable—*i.e.*, deliberately indifferent. *Id*. § 106.44(a).

6        It is entirely predictable, then, that ED has not taken even the minimal step of opening an

7    investigation into WSU's February 2021 administrative complaint, even though ED said it aimed

8    to evaluate the complaint by April 1, 2021, and ED resolves nearly all complaints within 180 days

9    of filing. FAC ¶¶ 86-114. The 2020 Regulations have therefore denied WSU and its members their

10   procedural right to an investigation.

11       **D.    Procedural history**

12       On March 8, 2021, WSU filed the present lawsuit challenging the 2020 Regulations as

13   unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). WSU alleges that

14   the 2020 Regulations are arbitrary and capricious and not supported by a reasoned explanation.

15   FAC at 30-31. On September 2, 2021, this Court granted ED's motion to dismiss the complaint

16   for lack of jurisdiction. Sept. 2, 2021 Opinion at 1, ECF No. 75 ("Op."). The Court held that WSU

17   had failed to sufficiently allege organizational standing—specifically, that WSU had not alleged

18   facts to show that the 2020 Regulations impeded WSU's mission, *see id*. at 8-12, or that its

19   members faced an actual or imminent injury, *id*. at 13-14. The Court therefore granted ED's motion

20   to dismiss but with leave to amend. *Id*.

21       On October 4, 2021, WSU filed the First Amended Complaint, which includes numerous

22   additional allegations that demonstrate standing. Specifically, the Complaint explains, at length:

23   (1) how the 2020 Regulations deprive WSU and its members of access to a remedial administrative

24   process, FAC ¶¶ 65-75; (2) that BUSD's refusal to properly address sexual harassment against

25   students is a long-standing problem that BUSD has refused to solve despite years of public

26   criticism, *id*. ¶¶ 81-85; (3) that WSU members and other students have experienced sexual

27   harassment that is no longer cognizable under Title IX, as interpreted by the 2020 Regulations, *id*.

28

¶¶ 86-103; (4) that WSU and its members would file additional administrative complaints with ED, but for the 2020 Regulations, *id.* ¶¶ 105-06; (5) that ED has refused to open WSU's existing administrative complaint, which alleges conduct that does not violate Title IX under the 2020 Regulations, *id.* ¶¶ 107-14; and (6) that the procedural deprivation experienced by WSU and its members has resulted in injury, *id.* ¶¶ 115-19.

## LEGAL STANDARD

"In reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction" on facial grounds, the Court must generally "take the allegations in the plaintiff's complaint as true," and "draw all reasonable inferences in [the plaintiff's] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Ultimately, a complaint need only contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

I. **WSU has standing because the 2020 Regulations deprive it and its members of their procedural right to trigger a federal investigation of their school district.**

In general, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 140 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An organization like WSU can sue in its own right or on behalf of its members where, among other things, those members "would have standing in their own right." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 652 n.7 (9th Cir. 2021).

However, "[a] special standing doctrine applies when litigants attempt to vindicate procedural rights," as is the case here. *Ctr. for Auto Safety, Inc. v. Nat'l Highway Traffic Safety Admin.*, 342 F. Supp. 2d 1, 11-12 (D.D.C. 2004). "A plaintiff shows a procedural injury-in-fact 'when a procedural requirement has not been met, so long as the plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with that requirement." *Ctr. for Biological*

*Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017); *see also California v. Bernhardt*, 460 F. Supp. 3d 875, 890 (N.D. Cal. 2020) (explaining that when a plaintiff challenges a rule as arbitrary and capricious because the agency "failed to follow the 'basic procedural requirement' of providing a reasoned explanation, a procedural standing analysis is appropriate").

WSU and its members have suffered just such an injury: the 2020 Regulations strip them of their procedural right to trigger an investigation of BUSD through ED's administrative complaint system for certain types of sexual harassment that WSU members have experienced and that is no longer considered a violation of Title IX. By eliminating that mechanism for redress, the 2020 Regulations threaten WSU and its members' concrete interest in a non-discriminatory learning environment free from sexual harassment. And that injury stands separate and apart from any organizational diversion-of-resources theory of standing. WSU therefore has standing in its own right and on behalf of its members.

### A.    The 2020 Regulations deprive WSU and its members of an important procedural right.

The 2020 Regulations narrow and weaken an administrative enforcement scheme that was previously available to WSU and its members. ED's longstanding regulations provide that "[a]ny person who believes himself or any specific class of individuals to be subjected to discrimination prohibited by this part may by himself or by a representative file with the responsible Department official or his designee a written complaint." 34 C.F.R. § 100.7(b); *see id.* § 106.71 (Title IX regulation incorporating the procedural provisions of § 100.7). Those regulations further mandate that a "responsible Department official or his designee *will* make a prompt investigation whenever a … complaint … indicates a possible failure to comply with this part," *id.* § 100.7(c) (emphasis added)—language that makes clear that ED's obligation to make a prompt investigation is "mandatory," not "discretionary." *United States v. UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1382 (Fed. Cir. 2009); *see also Consolidated Procedural Rules for Administration and Enforcement of Certain Civil Rights Laws and Authorities*, 41 Fed. Reg. 18,394, 18,394 (May 3,

1976) (withdrawing proposal to replace § 100.7 with a regulation "under which the Department would investigate complaints on a discretionary basis").

In other words, ED's interpretation of the substantive scope of Title IX determines the availability of its administrative enforcement mechanism. If a complaint does not allege conduct that, if true, would violate Title IX, then ED cannot investigate. *See, e.g.*, FAC ¶ 72. But if it does, ED *must* open an investigation—and if that investigation further reveals conduct that violates Title IX, ED must provide appropriate remedies.

In this respect, the First Amended Complaint contains significant new allegations concerning the scope of WSU's procedural rights and the degree to which it will now be unable to press certain claims through ED's administrative process. *See, e.g.*, FAC ¶¶ 86-119. Specifically, the First Amended Complaint alleges BUSD policies and practices, and numerous instances of unchecked harassment suffered by students, that can no longer trigger an investigation by ED— rendering any complaint by WSU futile.[3] *See supra* pages 5-8. Consider, for example, BUSD's explicit policy of refusing to address off-campus harassment like John's off-campus harassment of WSU members Jane and Jamie. Prior to the 2020 Regulations, ED had consistently stated that schools must address sexual harassment that occurred off campus (and outside any school activity) if it created a "hostile environment" on campus. *See, e.g.*, *Q&A on Campus Sexual Misconduct*, U.S. Dep't of Educ. 1 n.3 (Sept. 22, 2017) ("2017 Q&A"); *Q&A on Title IX and Sexual Violence*, U.S. Dep't of Educ. 29 (Apr. 29, 2014). Now, however, because of the 2020 Regulations, BUSD's official policy of not addressing such harassment—a policy it publicly attributes to the Regulations, *id.* ¶ 93—does not violate Title IX for purposes of administrative enforcement. *See* 85 Fed. Reg. at 30,099. Accordingly, WSU's allegations regarding BUSD's failure to address off-

---

[3]   It is futile to raise an issue before an agency where, for instance, "the agency's position … appears already set, and it is very likely what the result of recourse to administrative remedies would be," *Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004), or where the "agency lacked either the power or the jurisdiction to decide" the issue, *GTE California, Inc. v. FCC*, 39 F.3d 940, 949 (9th Cir. 1994). Either way, "[i]t makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested." *Carr*, 141 S. Ct. at 1361 (2021).

1   campus harassment simply no longer "indicate[] a possible failure to comply with" the 2020

2   Regulations, 34 C.F.R. § 100.7(c), and so cannot trigger an ED investigation.

3       Courts have repeatedly found that regulations that narrow avenues for redress give rise to

4   procedural injury. In *Young v. Trump*, for example, this Court held that freezing immigrant visa

5   petitions deprived the plaintiffs of an "important procedural right" to have those petitions

6   adjudicated. 506 F. Supp. 3d 921, 935 (N.D. Cal. 2020), *appeal dismissed sub nom. Young v.*

7   *Biden*, 2021 WL 3507648 (9th Cir. 2021). Without the freeze, there would have been "a high

8   probability that at least some Plaintiffs would see meaningful progress" in the adjudication of their

9   claims. *Id.* The same is true here: without the 2020 Regulations, ED would have been *required* to

10  investigate WSU and its members' claims. But because of the 2020 Regulations, that

11  administrative scheme has been eliminated.

12      This case is also comparable to *Committee for Full Employment v. Blumenthal*, which

13  involved an agency's failure to process administrative complaints of discrimination in a timely

14  manner. 606 F.2d 1062 (D.C. Cir. 1979). The D.C. Circuit held that complainants were "entitle[d]

15  to a review of their complaint by the Secretary and, if the complaint raises a colorable claim of

16  violation, a prompt investigation. Complainants are injured if this procedural right is denied them,

17  regardless of whether their complaint is ultimately found meritorious." *Id.* at 1065. That procedural

18  injury gave rise to the requisite "direct stake" in the litigation, rather than a mere "generalized

19  grievance." *Id.* So too here. And courts have also found procedural standing in other cases where

20  regulations put existing civil rights complaints at risk of dismissal, *see Nat'l Fed'n of the Blind v.*

21  *ED*, 407 F. Supp. 3d 524, 533-34 (D. Md. 2019), where regulations eliminate administrative

22  complaint schemes entirely, *see People for the Ethical Treatment of Animals v. USDA*, 797 F.3d

23  1087, 1094-95 (D.C. Cir. 2015), or where agencies have failed to respond to complaints by a

24  deadline, *see Californians for Renewable Energy v. EPA*, 2018 WL 1586211, at *7 (N.D. Cal.

25  2018). The 2020 Regulations therefore deprive WSU and its members of the procedural right to

26  an investigation of whether BUSD properly responded to the incident of sexual harassment

27  experienced by Jamie and other similar instances.

28

1

2

**B.    ED's deprivation of WSU and its members' procedural rights threatens their concrete interests.**

3

4

5

6

7

8

9

10

11

12

"In the context of procedural violations, the injury-in-fact requirement is met if 'the procedures in question are designed to protect some threatened concrete interest of [the plaintiff] that is the ultimate basis of his standing.'" *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 909 (9th Cir. 2020) (quoting *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008)). "'[A] credible threat of harm is sufficient to constitute actual injury for standing purposes'"—meaning that the plaintiff "need only show that the exercise of a procedural right '*could* protect [its] concrete interests.'" *Id.* (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002), and *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1082 (9th Cir. 2015)); *see also Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003) ("reasonable probability" of threat).

13

14

15

16

17

18

19

20

21

That is the case here. The administrative procedures described above are designed to protect students, like WSU's members, from sexual harassment and to ensure that they can learn in an environment safe from unlawful discrimination. That is why the regulations expressly permit students and their representatives, among others, *see* 34 C.F.R. §§ 100.7(b), 106.71, to file administrative complaints—a process which is, by definition, intended to allow them an opportunity to protect their interest in equal access. *Cf. Cannon*, 441 U.S. at 694 ("Title IX explicitly confers a benefit on persons discriminated against on the basis of sex, and petitioner is clearly a member of that class for whose special benefit the statute was enacted.").[4] By the same token, narrowing that scheme will credibly harm those whom the scheme is intended to protect.

22

23

24

In this respect, Title IX and its implementing regulations are no different from other schemes intended to provide procedural protections for plaintiffs who might otherwise be exposed

25

26

27

28

[4]    For similar reasons, ED's assertion that the interests of WSU and its members fall outside of Title IX's zone of interests, MTD at 5-6, is particularly odd. WSU does not claim an interest in "the revenue flow of private attorneys"—its interest is in "provid[ing] individual citizens effective protection against [discrimination]," which lies at the heart of Title IX. *Know Your IX v. DeVos*, 2020 WL 6150935, at *5 (D. Md. 2020).

to harm. In cases involving injury to the aesthetic enjoyment of environment and animals, for example, the potential impairment to a plaintiff's "concrete interest" can be shown by a plaintiff alleging current or imminent physical proximity to the location where the loss might occur. *Lujan*, 504 U.S. at 572 (plaintiffs would have standing to challenge the government's failure to comply with a "procedural requirement for an environmental impact statement before a federal facility is constructed next door to them"); *id.* at 565-66 ("[A] plaintiff claiming injury from environmental damage must use the area affected by the challenged activity."). Or take disabilities law, where a plaintiff is deemed to have a "concrete interest" in accessing services at a facility if he or she intends to use those services. *Valentini v. Shinseki*, 860 F. Supp. 2d 1079, 1093 (C.D. Cal. 2012).

Students' concrete interest in a safe and harassment-free educational environment is also well-established at common law. The Supreme Court's recent decision in *TransUnion* held that an injury is "concrete" if there is "a close historical or common-law analogue for their asserted injury." 140 S. Ct. at 2204, although the injury need not be "an exact duplicate" of a harm traditionally recognized, *id.* at 2209. Disruption of a learning environment through physical and verbal misconduct is akin to: a common law nuisance, which treats disturbance and annoyance of people on a property as actionable injury;[5] a common law assault, which treats imminent apprehension of a harmful or offensive contact by another person as actionable injury, even if there is no physical contact;[6] or a common law battery. And the Supreme Court has long recognized

---

[5]     *See, e.g.*, *Balt. & P. R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 329-30 (1883) (railroad liable for nuisance to church when its operations "disturbed and annoyed the congregation"; "Whatever prevents the comfortable use of the property for [the purpose of public worship] by the members of the corporation, or those who, by its permission, unite with them in the church, is a disturbance and annoyance; as much so as if access by them to the church was impeded and rendered inconvenient and difficult. The purpose of the organization is thus thwarted."); *Virginia Coll., LLC v. SSF Savannah Props., LLC*, 93 F. Supp. 3d 1370, 1378 (S.D. Ga. 2015) ("Because the College has shown that these ordinary individuals, their students, and their customers have been hurt, inconvenienced, and damaged by the operation of the [in-door go-kart] racetrack [operated above their classrooms], the College has shown a substantial likelihood that it will prove at trial that the operation of the racetrack constitutes a nuisance.").

[6]     For cases holding that various forms of verbal sexual harassment can constitute assault, *see, e.g.*, *Dao v. Faustin*, 402 F. Supp. 3d 308, 319 (E.D. Va. 2019); *Kilduff v. Cosential, Inc*., 289 F.

---

1    people's concrete interest in not being "personally subject to discriminatory treatment." *Allen v.*

2    *Wright*, 468 U.S. 737, 757 (1984); *see TransUnion*, 140 S. Ct. at 2205 (citing *Allen*).

3          Moreover, because WSU seeks injunctive relief, it may establish concrete injury by

4    showing that it is, or its members are, "exposed to a risk of future harm." *Id.* at 2210. BUSD's

5    policies and practices allow sexual harassment to continue unchecked and deprive student victims

6    of much-needed support. FAC ¶¶ 81-102. The inevitable result of fewer investigations and fewer

7    remedies is more sexual harassment, as would-be harassers will no longer be deterred by fear of

8    being caught and disciplined or have the opportunity to learn to change their behavior thanks to an

9    educational intervention. *Id.* ¶¶ 35, 67-68, 70, 72. That hurts not only the students specifically

10   targeted for sexual harassment, but also their peers. *Id.* ¶ 119. WSU's lost procedural right to spur

11   BUSD to change its ways, then, increases the risk that WSU and its members will experience a

12   hostile learning environment. *Cf. Californians for Renewable Energy*, 2018 WL 1586211, at *8

13   (finding procedural standing where complaint "could result in relief").

14         The First Amended Complaint contains significant new factual allegations that corroborate

15   that harm. Specifically, the Complaint identifies deficient BUSD policies and practices, and

16   numerous instances of unchecked sexual harassment that, because of the 2020 Regulations, cannot

17   trigger an investigation by ED. FAC ¶¶ 86-103. Because of the 2020 Regulations, WSU and its

18   members lack a previously available administrative process for spurring BUSD to take these

19   instances seriously and change its policies and practices with respect to sexual harassment. These

20   allegations, which must be taken as true on a motion to dismiss, *see Wolfe v. Strankman*, 392 F.3d

21   358, 362 (9th Cir. 2004), plausibly establish that the 2020 Regulations credibly threaten WSU and

22   its members' concrete interest in reducing sexual harassment at BHS.

23         ED's responses miss the mark. The crux of the motion to dismiss is that WSU has failed

24   (in ED's view) to allege frustration of mission and diversion of resources, as it must to establish

25   organizational standing. MTD at 4-7. But WSU does not allege an organizational standing theory;

26

27   Supp. 2d 12, 21 (D. Conn. 2003); *Stricker v. Cessford Const. Co.*, 179 F. Supp. 2d 987, 1020 (N.D. Iowa 2001); *Rogers v. Loews L'Enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981).

28

*Plaintiff's Opposition to ED's Motion to Dismiss the First Amended Complaint -*      15
*3:21-cv-01626-EMC*

WSU argues instead that it has been deprived of a procedural right designed to protect the concrete interests of WSU and its members. Without the backstop of that avenue for redress, students have lost a critical tool for encouraging schools to take sexual harassment seriously. Because of the 2020 Regulations, ED's doors are now shut to WSU's existing administrative complaint and other future complaints WSU would like to lodge. That will remain true unless and until the 2020 Regulations are set aside.

ED's other responses rely on its mistaken view of WSU's standing. For example, ED repeatedly complains that WSU has failed to draw a link between the 2020 Regulations and BUSD's unwillingness to act on sexual harassment complaints or BUSD students' reporting. MTD at 6-7, 8. The 2020 Regulations certainly discourage BUSD from even attempting to discover or respond to allegations of sexual harassment, like those highlighted in the First Amended Complaint. FAC ¶¶ 96-103. And the 2020 Regulations have encouraged BUSD to, for example, double down on its policy of refusing to address off-campus harassment that creates a hostile environment in school. *Id.* ¶¶ 90-95. But, more important, WSU's standing does not depend on the 2020 Regulations causing students to stop reporting or BUSD to respond even less effectively than it did previously. The 2020 Regulations deprive WSU of a procedural mechanism for obtaining *redress* for BUSD's unwillingness to act. *Id.* ¶¶ 118, 127. Sexual harassment at BUSD is not a new problem, nor is BUSD's recalcitrance. Regardless of why BUSD is choosing not to act, students can no longer seek a federal investigation, backed by the threat of losing federal aid, as a way to get BUSD to change course. That is enough to demonstrate that a decision by this Court setting aside the 2020 Regulations—and thereby reopening that process—"*could* protect [WSU's] concrete interests." *Nat'l Fam. Farm Coal.*, 966 F.3d at 909 (quotation omitted).

ED also asserts that BUSD could choose to act on sexual harassment complaints even without the stick of a Title IX investigation. But that is always true where a plaintiff challenges the government's failure to regulate a third party; nevertheless, "the causation requirement for constitutional standing is met when a plaintiff demonstrates that the challenged agency action authorizes the conduct that allegedly caused the plaintiff's injuries, if that conduct would allegedly

1    be illegal otherwise." *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 440 (D.C. Cir.

2    1998) (en banc). If not for the 2020 Regulations, BUSD could be compelled to act on those

3    complaints. And while its failure to do so on its own contributes to WSU's harm, standing does

4    not require that the defendant's actions "be the sole source of injury," *Wash. Env't Council v.*

5    *Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013). Taking away an administrative scheme that can yield

6    financial penalties—*e.g.*, the potential loss of federal funding—will logically make a recalcitrant

7    actor like BUSD less likely to change its ways for the better. *Cf. Women's Equity Action League*

8    *v. Cavazos*, 879 F.2d 880, 885-86 (D.C. Cir. 1989) ("We have heretofore determined … that

9    'initiating federal fund termination proceedings [is] highly effective in gaining compliance with

10   federal antidiscrimination laws.'" (quoting *Comm. for Full Employment*, 606 F.2d at 1066)). WSU

11   has therefore established that the elimination of a right to initiate a Title IX investigation impairs

12   its concrete interest in preventing a sexually hostile school environment.

### C.    WSU's and its members' injuries were caused by the 2020 Regulations and could be redressed if the 2020 Regulations were set aside.

15      WSU's "successful showing of a procedural injury lightens its burden on the remaining

16   Article III standing requirements." *Tinian Women Ass'n v. U.S. Dep't of the Navy*, 976 F.3d 832,

17   840 (9th Cir. 2020). Specifically, a plaintiff "can establish standing without meeting all the normal

18   standards for redressability and immediacy." *Hall v. Norton*, 266 F.3d 969, 975-77 (9th Cir. 2001)

19   (quotation omitted). As this Court has explained, "[w]hen alleging the deprivation of a procedural

20   right, 'instead of needing to establish that compelling the agency to follow the correct procedure

21   *would* lead to a substantive result that favors the petitioner's concrete interests, the petitioner need

22   only show that its concrete interests *could* be better protected.'" *Young*, 506 F. Supp. 3d at 935

23   (quoting *Narragansett Indian Tribal Historic Pres. Office v. FERC*, 949 F.3d 8, 13 (D.C. Cir.

24   2020)).

25      Given these lenient standards, it is unsurprising that ED does not expressly contest that

26   WSU has satisfied the causation and redressability requirements. As alleged in the First Amended

27   Complaint, if the 2020 Regulations were set aside, ED would be required to open an investigation

1   into BUSD's response to the conduct experienced by WSU members—conduct which, prior to the

2   2020 Regulations, constituted a violation of Title IX. And, after completing its investigation,

3   BUSD could be required to either remedy these issues or give up its federal funds. FAC ¶ 24. Thus,

4   "but for" the 2020 Regulations, it is probable that WSU and its members would see meaningful

5   progress in the improvement of the learning environment at BUSD. *Young,* 506 F. Supp. 3d at 936.

6   That is sufficient to establish WSU's standing.

        D.   **ED's constructive denial of WSU's administrative complaint provides**
7            **additional evidence of standing.**

8

9          In case there was any doubt that WSU and its members have been deprived of an

10  administrative mechanism because of the 2020 Regulations, ED has constructively denied WSU's

11  administrative complaint, which WSU filed in the hope that the 2020 Regulations would be

12  vacated or rescinded. FAC ¶¶ 104-15. It is well-established that the denial of such a complaint can

13  give rise to standing. *See, e.g.*, *Greater Los Angeles Council on Deafness, Inc. v. Baldrige*, 827

14  F.2d 1353, 1358 (9th Cir. 1987) ("As a complainant, he was entitled to a response. He therefore

15  alleges an injury which can be redressed by this cause of action." (citation omitted)). But for the

16  2020 Regulations, ED would generally be required to investigate WSU's administrative complaint,

17  *see supra* pages 2-3, 5-8—showing that the 2020 Regulations have caused a distinct injury-in-fact

18  by dooming that complaint. These allegations therefore provide an additional basis for standing.

19         WSU's administrative complaint has been pending for 286 days without even a decision

20  from ED on whether it will investigate BUSD. FAC ¶ 104. Yet ED's stated policy is to *resolve*

21  complaints within 180 days of receipt—an aim that it achieves 90% of the time. *Id.* ¶ 114. It has

22  also been over 90 days since ED last contacted WSU with any questions. *Id.* ¶ 113. Whether or not

23  such a delay constitutes injury in its own right, *cf.* MTD at 10, such a lengthy and unreasonable

24  delay amounts to a constructive denial of the complaint. *Cf. Bhogaita v. Altamonte Heights Condo.*

25  *Ass'n, Inc.*, 765 F.3d 1277, 1286 (11th Cir. 2014) (quoting *Groome Res. Ltd. v. Parish of Jefferson*,

26  234 F.3d 192, 199 (5th Cir. 2000)) ("[T]he failure to make a timely determination after meaningful

27

28

1    review amounts to constructive denial of a requested accommodation, 'as an indeterminate delay

2    has the same effect as an outright denial.'").

3           Regardless, requiring WSU to wait any longer before challenging the 2020 Regulations

4    would be pointless. In the Ninth Circuit, a challenge relating to an administrative proceeding is

5    ripe once the Court is able to "firmly predict" the outcome of that proceeding—*i.e.*, because a

6    complainant is plainly ineligible for the relief he or she seeks. *See Yeganeh v. Mayorkas*, 2021 WL

7    5113221, at *8 (N.D. Cal. 2021) (Chen, J.). And that makes good sense as a matter of ripeness

8    principles. There are no "contingent future events," *Thomas v. Union Carbide Agric. Prods. Co.*,

9    473 U.S. 568, 580-81 (1985), that would shed light on WSU's injuries or on the issues presented

10   by this case; ED does not dispute that WSU's administrative complaint alleges that BUSD engaged

11   in actions and inactions that, on their face, do not violate the 2020 Regulations, and which no

12   longer provide cause for initiating an investigation. ED speculates that OCR might, after sitting on

13   the complaint for 286 days, find additional unspecified grounds for denying it, MTD at 10, but that

14   does not change the fact that the Court can predict with certainty that it will be denied.[7] Besides,

15   "[i]t is a well-established rule that a party suing to vindicate [procedural] rights need not make a

16   showing that the agency would have acted differently." *McGarry v. Sec'y of Treasury*, 853 F.2d

17   981, 985 (D.C. Cir. 1988); *see also Californians for Renewable Energy*, 2018 WL 1586211, at *9

18   ("[T]he plaintiff need not demonstrate that the defendant's compliance with its procedural

19   obligations will necessarily result in a favorable outcome for the plaintiff.").

20          Ultimately, the denial of WSU's administrative complaint is but one example of how the

21   2020 Regulations injure WSU and its members. Before the 2020 Regulations, WSU could seek

22   administrative redress for certain instances of sexual harassment. Now, it cannot. That procedural

23   deprivation threatens WSU and its members' concrete interest in an educational environment free

24

25

26   [7]   Even if ED were to somehow investigate the administrative complaint, the 2020 Regulations
     also discourage BHS from taking certain actions that were previously required by Title IX—
27   making it even more difficult for WSU and its members to pursue their concrete interest in a safe
     and equitable learning environment. FAC ¶ 127.
28

*Plaintiff's Opposition to ED's Motion to Dismiss the First Amended Complaint -*          19
*3:21-cv-01626-EMC*

from sexual harassment and discrimination. WSU and its members therefore possess standing to challenge the 2020 Regulations.

**CONCLUSION**

For the above reasons, WSU respectfully asks the Court to deny ED's motion to dismiss.

Date: December 8, 2021                                    Respectfully submitted,

John T. Lewis^                                           Adele P. Kimmel (CA Bar No. 126843)
Karianne M. Jones^                                       Alexandra Z. Brodsky*
Democracy Forward Foundation                             Public Justice
P.O. Box 34553                                           1620 L Street NW, Suite 630
Washington, DC 20043                                     Washington, DC 20036
Ph: (202) 448-9090                                       Ph: (202) 797-8600
Email: jlewis@democracyforward.org                       Fax: (202) 232-7203
          kjones@democracyforward.org                    Email: akimmel@publicjustice.net
                                                                   abrodsky@publicjustice.net
_/s/ Lauren A. Khouri_
Linda M. Correia*                                        John C. He (CA Bar No. 328382)
Lauren A. Khouri*                                        Public Justice
Correia & Puth, PLLC                                     475 14th Street, Suite 610
1400 16th Street NW, Suite 450                           Oakland, CA 94612
Washington DC 20036                                      Ph: (510) 622-8150
Ph: (202) 602-6500                                       Fax: (202) 232-7203
Fax: (202) 602-6501                                      Email: jhe@publicjustice.net
Email: lcorreia@correiaputh.com
          lkhouri@correiaputh.com                        * admitted _pro hac vice_
                                                         ^ _pro hac vice_ pending

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on December 8, 2021, a true and accurate copy of the foregoing was

3

electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send a

4

notification of the filing to counsel in this case.

5

6                                                                    */s/ Lauren A. Khouri*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28