BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>Defendant. | Case No. 21-cv-1626-EMC<br><br>**Defendant's Reply in Support of Its Motion to Dismiss the Amended Complaint**<br><br>Hon. Edward M. Chen<br>Hearing: January 20, 2022, 1:30 p.m.<br><br>Phillip Burton Federal Building & United States Courthouse, Courtroom 5, 17th Fl., 450 Golden Gate Ave., San Francisco, CA 94102 |

## <u>**TABLE OF CONTENTS**</u>

I.      Plaintiff's Alleged Injury Regarding the 2020 Rule Is Not Procedural.............................................1

II.     Plaintiff's Alleged Injury is Speculative and Unripe.....................................................................3

III.    Plaintiff Has Not Plausibly Alleged an Injury Arising from Its Administrative
Complaint...........................................................................................................................................5

CONCLUSION.............................................................................................................................................7

# TABLE OF AUTHORITIES

**CASES**

*Comm. for Full Emp. v. Blumenthal*,
   606 F.2d 1062 (D.C. Cir. 1979) ........................................................................................... 3

*Juliana v. United States*,
   947 F.3d 1159 (9th Cir. 2020) ......................................................................................... 2, 3

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................................... 1, 2, 4

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ........................................................................................................... 3

*Matera v. Google Inc.*,
   No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ........................... 2

*Nat'l Fam. Farm Coal. v. EPA*,
   966 F.3d 893 (9th Cir. 2020) ............................................................................................. 3

Sibbach v. Wilson & Co.,
   312 U.S. 1 (1941) ............................................................................................................... 2

Summers v. Earth Island Inst.,
   555 U.S. 488 (2009) ....................................................................................................... 2, 4

Thomas v. Union Carbide Agric. Prods. Co.,
   473 U.S. 568 (1985) ........................................................................................................... 5

*Yeganeh v. Mayorkas*,
   No. 21-CV-02426-EMC, 2021 WL 5113221 (N.D. Cal. Nov. 3, 2021) ............................ 6

*Young v. Trump*,
   506 F. Supp. 3d 921 (N.D. Cal. 2020) .............................................................................. 3

**STATUTES**

20 U.S.C. § 1681 *et seq.* .......................................................................................................... 6

**REGULATIONS**

34 C.F.R. § 106.8 ...................................................................................................................... 6

34 C.F.R. § 106.30 .................................................................................................................... 6

34 C.F.R. § 106.44 .................................................................................................................... 6

34 C.F.R. § 106.45 .................................................................................................................... 6

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,
    85 Fed. Reg. 30,026 (May 19, 2020) ................................................................................................ 1

**OTHER AUTHORITIES**

13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3532 (1984) ............................. 5

Annual Report to the Secretary, the President, and the Congress (Jan. 2021),
    https://www2.ed.gov/about/reports/annual/ocr/report-to-president-and-secretary-of-education-2020.pdf ............................................................................................................................................. 5

Case Processing Manual,
    https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf. ....................................................... 2

Fall 2021 Unified Agenda of Regulatory and Deregulatory Actions, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, RIN 1870-AA16,
    https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202110&RIN=1870-AA16. .............. 6

*Procedural Right*, Black's Law Dictionary (10th ed. 2014) ..................................................................... 2

*Substantive Right*, Black's Law Dictionary (10th ed. 2014) .................................................................... 2

Plaintiff Women's Student Union has abandoned its organizational standing theory. Pl.'s Opp'n Def.'s Mot. Dismiss 1st Am. Compl. 15, ECF No. 103 [hereinafter Pl.'s Opp'n]. Instead, to circumvent holdings from numerous courts, including this one, that organizations like Plaintiff lack standing to challenge the Department of Education's 2020 regulation on sexual harassment,[1] Plaintiff now attempts to rely on a different jurisdictional hook: that the 2020 Rule has caused it a "procedural injury." However, Plaintiff's Amended Complaint sets forth neither allegations nor a claim supporting its new theory that the process by which the Department of Education's Office for Civil Rights (OCR) adjudicates administrative complaints has caused a procedural injury. Rather, Plaintiff continues to argue that the *substance* of the 2020 Rule is legally invalid. And nothing in the Amended Complaint sheds new light on how the 2020 Rule has allegedly made the Berkeley Unified School District (BUSD) "unwilling to adopt policies that protect students from sexual harassment or to allow Plaintiff to train BHS students," the basis for which the Court dismissed the original Complaint. *See* Order Granting Def.'s Mot. Dismiss 12, ECF No. 75. Furthermore, Plaintiff's administrative complaint remains pending, rendering Plaintiff's claims about that complaint unripe. For these reasons, the Court should once again dismiss Plaintiff's complaint for lack of jurisdiction.

## I.    Plaintiff's Alleged Injury Regarding the 2020 Rule Is Not Procedural.

Although Plaintiff has previously argued that it incurred a procedural injury only from its pending administrative complaint,[2] it has now reframed its entire theory of standing as a procedural injury. The reason for this reframing is clear: a "person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992). However, to avail itself of this beneficial theory, Plaintiff must actually invoke a procedural right. Its alleged injuries stemming from the 2020 Rule, which does not alter OCR's procedures for adjudicating administrative complaints, are

---

[1] Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) [hereinafter 2020 Rule].

[2] Indeed, in its Amended Complaint, Plaintiff lists its alleged injuries related to the 2020 Rule, *id.* ¶¶ 86–103, followed by "WSU's *procedural right* to obtain an investigation and resolution of its administrative Title IX complaint against BUSD," *id.* at 25 (emphasis added).

decidedly substantive.

The first element of Article III standing, injury-in-fact, may be substantive or procedural in nature. Whereas a substantive right is "protected or enforced by law; a right of substance rather than form," *Substantive Right*, Black's Law Dictionary (10th ed. 2014); *see also Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941) (explaining that substantive rights are "conferred by law to be protected and enforced in accordance with the adjective law of judicial procedure"), a procedural right "derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right," *Procedural Right*, Black's Law Dictionary (10th ed. 2014); *see, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (involving "standards and procedures . . . for Forest Service appeals"); *see also Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *12–13 (N.D. Cal. Sept. 23, 2016) (distinguishing substantive and procedural rights). The benefit afforded to a plaintiff who has been injured by a failure to conform to procedure also helps explain this distinction. The normal standards for redressability and immediacy are relaxed in such cases because it is never certain how the failure to follow a procedure will affect the outcome, even if such failure affects the plaintiff's concrete interest nevertheless. *See Juliana v. United States*, 947 F.3d 1159, 1171 (9th Cir. 2020) (holding that the plaintiff could not establish standing based on the "likely" success of relief because the plaintiffs asserted a substantive, rather than procedural, right). Thus, for example, "one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years." *Defs. of Wildlife*, 504 U.S. at 572 n.7.

Other than the allegations regarding how OCR is processing Plaintiff's administrative complaint, which for the reasons discussed *infra* are unripe, Plaintiff's alleged injuries are not procedural. In contrast to a plaintiff who alleges that an agency failed to prepare an environmental impact statement before approving a dam project, Plaintiff does not challenge OCR's procedures for adjudicating administrative complaints, which are set forth in the Case Processing Manual, https://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.pdf. Rather, Plaintiff alleges that the *substance* of the 2020 Rule affects its student members by, for example, defining "sexual harassment" in a manner that allegedly does not cover the

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss Am. Compl.

2

1  harassment that one of those members experienced. *See* Am. Compl. ¶¶ 87–89.

2  Plaintiff's contention "that regulations that narrow avenues for redress give rise to procedural

3  injury," Pl.'s Opp'n 12, proves too much. Such a definition of "procedural" would render every law

4  procedural. After all, *every* change to substantive law affects the type of complaints that may be filed: for

5  example, a tort reform law that eliminates certain torts narrows the type of complaints that may be filed;

6  prohibiting discrimination on the basis of sexual orientation broadens the type of charges that may be filed

7  with the Equal Employment Opportunity Commission; and establishing what forms of sexual harassment

8  violate Title IX affects the type of administrative complaints that may be filed with the Department.

9  Furthermore, the cases that Plaintiff cites offer no support for this broad definition and, in fact, involve

10  patently procedural rights, such as "the complete freeze of . . . immigrant visa petitions," *Young v. Trump*,

11  506 F. Supp. 3d 921, 935 (N.D. Cal. 2020), or the failure to process discrimination charges pursuant to an

12  agency's procedural regulations, *Comm. for Full Emp. v. Blumenthal*, 606 F.2d 1062, 1065 (D.C. Cir.

13  1979).

14  Plaintiff's definition is also inconsistent with the reasons for distinguishing substantive and

15  procedural rights when assessing a party's standing. The redressability and immediacy standards are

16  relaxed for procedural rights because remedying a procedural defect is, by nature, often uncertain to affect

17  the outcome. Rather, it only "prompt[s] the injury-causing party to reconsider the decision that allegedly

18  harmed the litigant." *See Juliana*, 947 F.3d at 1171 (quoting *Massachusetts v. EPA*, 549 U.S. 497, 517-18

19  (2007)). By contrast, a substantive injury, which involves the outcome itself, requires a requisite degree

20  of certainty. *See id.* (explaining that relief for substantive injuries must be more than "likely"). Plaintiff's

21  argument that it has standing because vacating the 2020 Rule "*could* protect its concrete interests," Pl.'s

22  Opp'n 13 (quoting *Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 909 (9th Cir. 2020)), turns this reasoning

23  on its head. Vacating the 2020 Rule would not affect the process by which OCR adjudicates administrative

24  complaints; it would simply vacate the Department's interpretation of Title IX reflected in the 2020 Rule.

25  Lowering the redressability and immediacy standards under these circumstances serves no purpose other

26  than to diminish Article III's case or controversy requirement. The Court should not serve that end.

27  **II.    Plaintiff's Alleged Injury is Speculative and Unripe.**

28  Whether its standing theory is cast as "organizational" or "procedural," Plaintiff must still

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss Am. Compl.

3

plausibly allege that the 2020 Rule has injured it. *See Earth Island Inst.*, 555 U.S. at 496–97 (emphasizing that "deprivation of a procedural right without some concrete interest that is affected by the deprivation— a procedural right *in vacuo*—is insufficient to create Article III standing"); Tr. of Proceedings via Zoom Webinar 26:8–13 (Aug. 5, 2021), ECF No. 74 ("But I see that the number of, sort of, holes that need to be filled in, in order to make a claim of actual injury, even procedural injury, it has to be shown that someone is actually injured. And it seems to me that you've got to show somebody, you know, whose ability to complain or actual complaint has been affected or will be affected by the 2020 regulation."). And yet, the Amended Complaint fares no better than the Complaint in articulating a specific injury to Plaintiff.

Instead, Plaintiff argues that the 2020 Rule *generally* creates a weaker enforcement scheme that limits certain students' ability to file administrative complaints. *See* Pl.'s Opp'n 10–12. Assuming this to be true, the existence of a weaker enforcement regime does not automatically confer standing; rather, the plaintiff must plausibly allege that *it in particular* has been injured by that weakened regime. *See Defs. of Wildlife*, 504 U.S. at 571–73. Crucially, Plaintiff still has not pointed to a specific instance in which its administrative complaint was dismissed because of the 2020 Rule. The supposed "new allegations concerning the scope of WSU's procedural rights and the degree to which it will now be unable to press certain claims through ED's administrative process," Pl.'s Opp'n 11, in fact, echo the allegations in the original Complaint. For example, Plaintiff continues to posit that the 2020 Rule no longer requires schools to address off campus sexual harassment. *Id.* But as the Department has repeatedly explained, that is not true: schools' obligation to address harassment does not depend on whether such harassment occurred on or off campus. *See* Def.'s Mem. P. & A. Supp. Mot. Dismiss. Am. Compl. 6–7 [hereinafter Def.'s Mem.]. It is therefore not inevitable that OCR will dismiss Plaintiff's administrative complaint because the 2020 Rule no longer prohibits "BUSD's explicit policy of refusing to address off-campus harassment like John's off-campus harassment of WSU members Jane and Jamie," Pl.'s Opp'n 11. Rather, assuming that Plaintiff's administrative complaint is not dismissed for another reason, *see* Def.'s Mem. 9–10, any investigation into this allegation would hinge on facts other than whether the harassment occurred off campus.

Perhaps recognizing that the Amended Complaint offers no further specificity, Plaintiff claims that its "standing does not depend on the 2020 Regulations causing students to stop reporting or BUSD to

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss Am. Compl.

4

1   respond even less effectively than it did previously." Pl.'s Opp'n 16. Rather, it claims that the 2020 Rule

2   "deprive[s] WSU of a procedural mechanism for obtaining *redress* for BUSD's unwillingness to act." *Id.*

3   But, once again, what is that procedural mechanism? The 2020 Rule changed substantive law regarding

4   the meaning of sexual harassment under Title IX. It did not alter OCR's procedures for adjudicating

5   administrative complaints. As the Court previously held, "Plaintiff needs to add specific facts to the

6   complaint establishing that, as a result of the 2020 Regulations, BHS is unwilling to adopt policies that

7   protect students from sexual harassment or to allow Plaintiff to train BHS students." Op. 12. Having failed

8   to do so, Plaintiff lacks standing.

9   **III.    Plaintiff Has Not Plausibly Alleged an Injury Arising from Its Administrative Complaint.**

10          The only alleged injury that is procedural—that OCR may dismiss Plaintiff's administrative

11   complaint—is unripe. At present, Plaintiff's administrative complaint is pending. Plaintiff's belief that

12   OCR will dismiss the administrative complaint at all, let alone because of the 2020 Rule, is pure

13   speculation. Because this claim depends upon "contingent future events that may not occur as anticipated,

14   or indeed may not occur at all," it should be dismissed as unripe. *Thomas v. Union Carbide Agric. Prods.*

15   *Co.*, 473 U.S. 568, 580–81 (1985) (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice &

16   Procedure § 3532 (1984)).

17          Plaintiff responds that the length of time for which its administrative complaint has been pending

18   constitutes a "constructive denial of the complaint" because it violates an alleged "policy . . . to *resolve*

19   complaints within 180 days of receipt." Pl.'s Opp'n 18. But OCR has no such policy. As the Department

20   explained in its opening brief, Def.'s Mem. 10, OCR *endeavors* to resolve 80 percent of administrative

21   complaints within 180 days of receipt, Annual Report to the Secretary, the President, and the Congress 11

22   (Jan.    2021),    https://www2.ed.gov/about/reports/annual/ocr/report-to-president-and-secretary-of-

23   education-2020.pdf, but it is under no obligation to resolve all complaints in that time period. Resolving

24   administrative complaints can take longer than 180 days for many reasons, including information

25   gathering and the overall volume of complaints. But the length of time it takes to resolve a complaint has

26   no bearing on whether OCR will investigate or dismiss it, let alone the reasons for doing so.

27          Plaintiff also argues that the Court can "firmly predict" that OCR will dismiss the administrative

28   complaint because it does not include allegations that violate the 2020 Rule. Pl.'s Opp'n 19. In support,

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss Am. Compl.

5

1   Plaintiff incorrectly asserts, "ED does not dispute that WSU's administrative complaint alleges that BUSD

2   engaged in actions and inactions that, on their face, do not violate the 2020 Regulations, and which no

3   longer provide cause for initiating an investigation," *id.* The Department has made no such statement, nor

4   could it at this juncture: OCR is still reviewing the administrative complaint and associated information

5   that Plaintiff provided. And as Plaintiff's incorrect description of the 2020 Rule's application to off-

6   campus conduct illustrates, it is far from clear that its administrative complaint will be denied, let alone

7   for the reasons that it expects. At any rate, the "firm prediction rule" applies to "benefit-conferring rule[s],"

8   such as regulations that award immigrant visas. *Yeganeh v. Mayorkas*, No. 21-CV-02426-EMC, 2021 WL

9   5113221, at *8 (N.D. Cal. Nov. 3, 2021). By contrast, neither the 2020 Rule nor the Case Processing

10  Manual confer any benefits.

11                                                          ✱✱

12          Finally, as the Department has previously explained, it is in the process of reviewing the 2020

13  Rule. *See generally* Def.'s Mot. Hold Case Abeyance, ECF No. 44. As part of that review, the Department

14  announced that it anticipates issuing a notice of proposed rulemaking in April 2022. Off. of Info. & Regul.

15  Affs., Off. of Mgmt. & Budget, Exec. Off. of the President, RIN 1870-AA16, Fall 2021 Unified Agenda

16  of Regulatory and Deregulatory Actions, Nondiscrimination on the Basis of Sex in Education Programs

17  or     Activities     Receiving     Federal     Financial     Assistance,     https://www.reginfo.gov/

18  public/do/eAgendaViewRule?pubId=202110&RIN=1870-AA16. The Department stated that it "plans to

19  propose to amend its regulations implementing Title IX of the Education Amendments of 1972, 20 U.S.C.

20  1681 et seq., consistent with the priorities of the Biden-Harris Administration" and that "this rulemaking

21  may include, but would not be limited to, amendments to 34 CFR 106.8 (Designation of coordinator,

22  dissemination of policy, and adoption of grievance procedures), 106.30 (Definitions), 106.44 (Recipient's

23  response to sexual harassment), and 106.45 (Grievance process for formal complaints of sexual

24  harassment). *Id.* If the Court has any doubts about whether this litigation should proceed—which it should

25  not—judicial economy clearly weighs against further litigation.

26

27

28

*WSU v. ED*, No. 21-cv-1626-EMC, Def.'s Reply ISO Mot. Dismiss Am. Compl.

6

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's Motion to Dismiss the Amended Complaint.

Dated: December 22, 2021

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

CARLOTTA P. WELLS
Assistant Branch Director
Civil Division, Federal Programs Branch

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO
(CA Bar No. 308075)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendant*