United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE WOMEN'S STUDENT UNION,

Plaintiff,

v.

U.S. DEPARTMENT OF EDUCATION,

Defendant.

Case No. 21-cv-01626-EMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, AND DENYING AS MOOT MOTIONS TO INTERVENE**

Docket Nos. 82, 88, 89

Plaintiff the Women's Student Union ("WSU") sues Defendant the U.S. Department of Education (the "Department") to set aside regulations enacted in 2020 that reduce federal protections for students enrolled in public schools from sexual harassment and sexual violence under Title IX of the Education Amendments of 1972, 20 U.SC. § 1681(a). *See* Docket No. 78 ("FAC") ⁋ 8 (citing 85 Fed. Reg. 30,026 (May 19, 2020) (codified at various places in 34 C.F.R. Pt. 106) (the "2020 Regulations")). Plaintiff alleges that the 2020 Regulations violate the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(2)(A), (C), because they are contrary to the text and purpose of Title IX. FAC § Claim ¶¶ 1-7. The Court previously dismissed Plaintiff's complaint because, as alleged, the complaint did not demonstrate that Plaintiff had standing under Article III to pursue its claims. Docket No. 75 ("Dismissal Order"). The Court granted Plaintiff leave to amend its complaint, which Plaintiff did.

Now pending before the Court is the Department's motion to dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* Docket No. 89 ("MTD"). Also pending before the Court are motions to intervene as Defendants by the State of Texas and three groups – the Foundation for Individual

United States District Court
Northern District of California

Rights in Education, Independent Women's Law Center, and Speech First, Inc. Docket Nos. 82, 88.

For the following reasons, the Court **GRANTS** the Department's motion because Plaintiff lacks standing. Accordingly, the Court **DENIES as moot** the motions to intervene.

## I. BACKGROUND

### A. Title IX Enforcement Before the 2020 Regulations

Title IX of the Education Amendments states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C § 1681(a). The statute defines "program or activity" as "all of the operations" of a school, "any part of which is extended Federal financial assistance." *Id.* § 1687. Federal agencies that disburse funds to educational institutions—including the Department of Education—are "authorized and directed" by Congress to "effectuate the provisions of" Title IX "by issuing rules, regulations, or orders of general applicability." *Id.* § 1682. These agencies can compel school districts to comply with the provisions of Title IX—and its implementing regulations—by threatening to withhold federal education funds from noncompliant school districts. *Id.*

There are two ways to enforce Title IX. First, a plaintiff (usually a student) can sue a school for damages in federal court as Title IX provides a private right of action. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992). In such cases, however, students can recover "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit," and they must prove the school's "deliberate indifference to known acts of harassment in its programs or activities." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). This standard is met only if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). This strict definition of sexual harassment and the requirements of actual knowledge and deliberate indifference are known as the "*Gebser/Davis* framework." 85 Fed. Reg. at 30,032.

Second, Title IX may be enforced administratively by the Department through the issuance of rules, regulations, and guidance documents. *See Gebser*, 524 U.S. at 292 ("Agencies generally have authority to promulgate and enforce requirements that effectuate the statute's nondiscrimination mandate, 20 U.S.C. § 1682, even if those requirements do not purport to represent a definition of discrimination under the statute."). The Department's own regulations require its Office for Civil Rights (OCR) to investigate any administrative complaint it receives from a member of the public that indicates gender-based discrimination or sexual harassment. *See* 34 C.F.R. § 100.7(c) ("[R]esponsible Department official or his designee *will* make a prompt investigation whenever a . . . complaint . . . indicates a possible failure to comply." (emphasis added)); *id.* § 106.71 (Title IX regulation incorporating the procedural provisions of the Department's Title VI regulations). If the investigation "indicates a failure to comply" with the regulations, the OCR "will so inform the recipient and the matter will be resolved by informal means whenever possible." *Id.* § 106.7(c). Because investigations are required, Plaintiff alleges school districts are almost always willing to settle to avoid the termination of their federal funding. *See* FAC ⁋ 75.

Plaintiff alleges that prior to the 2020 Regulations, the Department's guidance "consistently rejected the view that the courts' standards for determining whether a private damages action could be brought against a school should be incorporated into its administrative enforcement process." FAC ⁋⁋ 27–28 (citing Sexual Harassment Guidance, 62 Fed. Reg. 12,034 (Mar. 13, 1997) (the "1997 Guidance"); Revised Sexual Harassment Guidance, 66 Fed. Reg. 5,512-01 (Jan. 19, 2001) (the "2001 Guidance")). Instead, the 2001 Guidance adopted a scope of liability for administrative enforcement of Title IX broader than the *Gebser/Davis* framework. It: (1) defined sexual harassment as "unwelcome conduct of a sexual nature" that is "severe, persistent, ***or*** pervasive;" and (2) stated that a school may be liable "whether or not it has 'notice' of the harassment." U.S. Dep't of Educ., Off. for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (Jan. 19, 2001), https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (emphasis added).

B. The 2020 Regulations Incorporated the *Gebser/Davis* Framework

On May 19, 2020, under the leadership of then-Secretary of Education Elisabeth DeVos, the Department issued the 2020 Regulations, which repudiated the Department's prior guidance, and largely aligned the standards for the OCR's adjudication of Title IX administrative complaints with the *Gebser/Davis* framework. *See* 85 Fed. Reg. at 30,033 ("The Department believes that adapting the *Gebser/Davis* framework is appropriate for administrative enforcement, because the adapted conditions (definitions of sexual harassment and actual knowledge) and liability standard (deliberate indifference) reflected in these final regulations promote important policy objectives with respect to a recipient's legal obligations to respond to sexual harassment."). Under the 2020 Regulations which narrowed the scope of liability, according to Plaintiff, schools must respond only to harassment that (1) is severe, pervasive, ***and*** objectively offensive conduct, (2) takes place on school grounds (or in an education program), regardless of where its effect is felt; (3) a school employee has actual knowledge of the harassment; and that (4) a school may act with indifference to the harassment, as long as it avoids being 'deliberately indifferent. FAC ¶¶ 38, 48-49, 54, 60; *see also* 85 Fed. Reg. at 30,032–34.

C. Plaintiff's Injuries as Alleged in the FAC

WSU is an approved student body association of California's Berkeley Unified School District ("BUSD"). FAC ¶ 76. Plaintiff's mission is to reduce instances of sexual harassment and address barriers to success and wellbeing for young women and non-binary students at Berkeley High School ("BHS") by (1) advocating that the school district adopt policies to protect its members and the student body from sex discrimination and sexual harassment; and (2) providing training to the student body about their rights and responsibilities under school policy, state law, and federal law. *See id.* ¶¶ 78-79.

Plaintiff alleges that members of WSU have been subject to various forms of sexual harassment. FAC ¶¶ 88-89, 91-93, 97-98. Those experiences result in significant obstacles to those students' ability to learn and thrive in school—obstacles that "result not just from the initial harassment alone, but also because their school fails to respond to the harassment promptly and appropriately." *Id.* ¶¶ 2-5, 15.

Plaintiff alleges that because BUSD has consistently failed to address sexual harassment adequately, WSU would like the Department to investigate BUSD and spur policy changes. FAC ¶ 83. In February 2021, WSU filed an administrative complaint with the Department's Office of Civil Rights against BUSD alleging several violations of Title IX that Plaintiff contends "are no longer cognizable," *id.* ¶ 86, and, but for the 2020 Regulations, it would seek to allege further violations, including:

- Off-campus harassment: BUSD allegedly has an official and explicit policy of not addressing any harassment that occurs outside of school, even if it affects students' ability to learn. *Id.* ¶ 93. WSU specifically complained to the Department about harassment that a WSU member had been subjected to by a classmate, "John," who repeatedly texted and made unwanted sexual comments about her body. *Id.* ¶¶ 91, 104. Additionally, since the February 2021 complaint, a different WSU member was repeatedly harassed by John on a public bus they both take to school, where he allegedly made sexually explicit comments and touched the members shoulder and legs. *Id.* ¶ 92. WSU alleges it would complain of those events to the Department if the 2020 Regulations did not make it futile to do so. *Id.* ¶ 105.

- Severe or pervasive harassment: Much of the sexual harassment that WSU members and other BHS students experience is severe but not pervasive, or pervasive but not severe, but not both severe *and* pervasive, such as unwanted sexual comments in class or walking through the halls my multiple classmates against a single target individual. FAC ¶ 87. For example, in September 20201, John harassed WSU member "Jamie" in a shared class by telling her of explicit details about his penis. *Id.* ¶ 89.

- Harassment of which BUSD should know: In Plaintiff's February 2021 complaint, it complained about hostile environments that occurred in Zoom "breakout rooms" during remote learning about which the school had constructive but not actual knowledge. *Id.* ¶¶ 97-99.

According to Plaintiff, "but for the Department 2020 Regulations," WSU's administrative complaint would be opened by investigation by the Department's Office for Civil Rights, but because the 2020 regulations no longer make their allegations unlawful, "without a doubt, [OCR} cannot investigate and find BUSD in violation of Title for how it handled" the complained-of sexual harassment. FAC ¶ 106. Plaintiff observes that despite its prompt replies to follow up questions from OCR regarding its February 2021 administrative complaint, to date (nearly one

year after the complaint was filed), OCR has yet to resolve the complaint, let alone open an investigation. *Id.* ¶ 114. Plaintiff alleges that it has not heard anything from OCR about the status of its administrative complaint since July 6, 2021. *Id.* ¶ 113.

Plaintiff alleges that it has suffered "procedural injury" because "the 2020 Regulations deny WSU and its members the right they had prior to the 2020 Regulations to have their administrative complaints investigated." *Id.* ¶ 115. The denial of that "procedural right," Plaintiff contends, "impinges on the concrete interest of WSU and its members to participate in and benefit from BUSD's education program because the denial allows the hostile environment at BUSD to continue unremediated." *Id.* ¶ 116. Plaintiff further alleges that "the cumulative effect of each of the challenged 2020 Regulations" is to "lead to students experiencing more sexual harassment and receiving fewer remedies." *Id.* ¶ 120. The Regulations are also alleged to injure Plaintiff because they create an incentive for schools like BHS to "avoid learning about the harassment its students experience, in order to avoid triggering any obligations under the Regulations" and "discourage students from filing complaints with their schools in the first place." *Id.* ¶¶ 121-22. Finally, Plaintiff alleges that the 2020 Regulations "discourage BUSH From taking action that were previously required under the Department's prior interpretations of Title IX" and, thus, "deprive WSU of a critical bargaining tool as it seeks to achieve. . . changes at BHS as part of WSU's organizational purpose." *Id.* ¶ 127.

D. <u>Procedural Background and Recent Events</u>

On March 8, 2021, WSU filed this action challenging the 2020 Regulations as unlawful under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). WSU alleges that the 2020 Regulations are arbitrary and capricious, not supported by a reasoned explanation, and conflict with Title IX. FAC at 30-31.

On September 2, 2021, the Court granted the Department's motion to dismiss the complaint for lack of jurisdiction because Plaintiff failed to sufficiently allege organizational or associational standing. *See* Dismissal Order. With respect to organizational standing, the Court explained that "Plaintiff may not establish injury by engaging in activities that it would normally pursue as part of its organizational mission" and that Plaintiff's alleged "injuries" (e.g.,

United States District Court
Northern District of California

investigating allegations of sexual harassment, meeting with school administrators) were typical pursuits. *Id.* at 9–11. Similarly, on associational standing, the Court explained, "Plaintiff fails to plausibly allege that its members would otherwise have standing to sue in their own right," so it could not establish standing on their behalf. *Id.* at 13–14. The Court granted Plaintiff leave to amend its complaint.

On October 4, 2021, Plaintiff timely filed an amended complaint which includes additional allegations related to WSU members' experiences of sexual harassment, that WSU and its member would file additional administrative complaints with the Department but for the 2020 Regulations, and that the Department had still not responded to WSU's administrative complaint. *See generally* FAC ¶¶ 86-114.

On January 19, 2022, the Department's Office for Civil Rights issued a letter to Plaintiff's counsel stating that it "understands [Plaintiff's] allegations to be that [BUSD] has allowed a hostile environment on the basis of sex to exist at Berkeley High School by failing to respond promptly and effectively to incidents of sexual harassment at the School from the 2018-19 school year to the present." Docket No. 111-1 at 2. The letter further stated that "OCR is opening the complaint allegation for investigation." *Id.* OCR noted that "with regard to alleged incidents that occurred prior to [August 14, 2020], OCR is evaluating [Plaintiff's] complaint based on the prior Title IX regulation that was in effect at the time when the alleged acts occurred," *id.* at 2 n.1, implying that incidents which occurred *after* August 14, 2020 would be evaluated under the 2020 Regulations. That same day, the Department's OCR issued a letter informing BUSD's Superintendent that it had opened an investigation of the District. Docket No. 112-2.

Now pending is the Department's motion to dismiss Plaintiff's First Amended Complaint for lack of jurisdiction because Plaintiff lacks standing. *See* MTD. Also pending before the Court are motions to intervene as Defendants by the State of Texas and three groups – the Foundation for Individual Rights in Education, Independent Women's Law Center, and Speech First, Inc. Docket Nos. 82, 88.

///

///

United States District Court
Northern District of California

## II. STANDARD OF REVIEW

A. Lack of Subject Matter Jurisdiction/Standing (Rule 12(b)(1))

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011). The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016). These three elements are referred to as, respectively, injury-in-fact, causation, and redressability. *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs*., 946 F.3d 1100, 1108 (9th Cir. 2020). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo II*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack," "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1038. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

Either way, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

## III. DISCUSSION

In response to the Department's motion to dismiss the First Amended Complaint for lack of subject matter because Plaintiff does not have standing, Plaintiff does not argue it has organizational standing, as it did in defending its standing to pursue the initial complaint. *Cf.* Dismissal Order at 8-13. Instead, Plaintiff contends that WSU "has standing in its own right and on behalf of its members" under the "special standing doctrine [which] applies when litigants attempt to vindicate *procedural rights*." Docket No. 103 ("Opp.") at 16-17 (citing *Ctr. for Auto Safety, Inc. v. Nat'l Highway Traffic Safety Admin.*, 342 F. Supp. 2d 1, 11-12 (D.D.C. 2004)) (emphasis added); *see also id.* at 22-23 ("WSU does not allege an organizational standing theory; WSU argues instead that it has been deprived of a procedural right designed to protect the concrete interests of WSU and its members."). Plaintiff argues that the 2020 Regulations "strip them [WSU and its members] of their *procedural right* to trigger an investigation of BUSD through [the Department's] administrative complaint system for certain types of sexual harassment that WSU members have experienced and that is no longer considered a violation of Title IX." Opp. at 17 (emphasis added).

While Plaintiff artfully frames the complaint as a dispute over procedure, at its core, the FAC takes issue with the *substance* of the 2020 Regulations. Plaintiff alleges that the *substance* of the 2020 Regulations violate the APA and Title IX. FAC § Claim ¶¶ 1-7. Plaintiff's allegations of deprivations of *process* are derivative of Plaintiff's challenges to the legality of the *substance* of the Regulations. Therefore, as explained below, the Court finds that Plaintiff has not plausibly alleged procedural injury to establish Article III standing to pursue this action.

United States District Court
Northern District of California

A. Standing Analysis for Procedural Injury

As noted above, WSU does not advance a conventional theory of standing based on organizational or associational standing. Instead, it relies on standing based on procedural injury. "A special standing doctrine applies when litigants attempt to vindicate procedural rights, such as the right to have notice of proposed regulatory action and to offer comments relating to such action." *Ctr. For Auto Safety, Inc.*, 342 F. Supp. 2d at 11-12 (citing *Sugar Cane Growers Coop. of Florida v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002)). To show a cognizable procedural injury for standing purposes, "[a plaintiff] must allege. . . that (1) the [agency] violated certain procedural rules; (2) these rules protect [a plaintiff's] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969–70 (9th Cir. 2003).

As to the first prong, "Procedural injury results from the violation of a statute or regulation that *guarantees* a particular procedure." *Californians for Renewable Energy v. United States Env't Prot. Agency*, No. C 15-3292 SBA, 2018 WL 1586211, at *7 (N.D. Cal. Mar. 30, 2018) (citing *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 930 n.14 (9th Cir. 2000)) (emphasis added); *see also Citizens for Better Forestry*, 341 F.3d at 970–71 ("[W]holesale neglect of the regulations' *mandatory* inclusion of the public in the process results in a procedural injury.") (footnote and citation omitted, emphasis added); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) ("[A] cognizable procedural injury exists for Article III purposes when, *because of a failure to honor a statutorily required procedure*, it is 'reasonably probable that the challenged action will threaten [a plaintiff's] concrete interests.'") (emphasis added); *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) ("a plaintiff may have standing to challenge the failure of an agency to abide by a procedural *requirement*") (emphasis added). Procedural injury flows from the violation of a procedural *right*; a deprivation of a *required* process to which plaintiff is *entitled* as a matter of law.

"[A] substantive injury results from the violation of a statute or regulation that guarantees a particular *result*." *Californians for Renewable Energy*, 2018 WL 1586211, at *7 (emphasis added). In contrast, a procedural right exists irrespective of the ultimate merits or outcome of the

substantive action that may be taken. *See, e.g., City of Sausalito*, 386 F.3d at 1197 ("For purposes of Article III standing, we do not require a plaintiff to demonstrate that a procedurally proper [Environmental Impact Statement] will necessarily protect his or her concrete interest in the park.").

On the second prong, "[i]n the context of procedural violations, the injury-in-fact requirement is met if 'the procedures in question are designed to protect some threatened concrete interest of [the plaintiff] that is the ultimate basis of [its] standing.'" *Nat'l Fam. Farm Coal. V. EPA*, 966 F.3d 893, 909 (9th Cir. 2020) (quoting *Salmon Spawning & Recovery All. V. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008)); *see also Ctr. for L. & Educ. v. Dep't of Educ*., 396 F.3d 1152, 1159–60 (D.C. Cir. 2005) ("Appellants must show both (1) that their procedural right has been violated, and (2) that the violation of that right has resulted in an invasion of their concrete and particularized interest. '[A] prospective plaintiff must demonstrate that the defendant caused the particularized injury, and not just the alleged procedural violation.'") (citation omitted).

And, on the third prong, a plaintiff "need only show that the exercise of a procedural right '*could* protect [its] concrete interests." *Id*. (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002), and *Cottonwood Env't Law Ctr. V. U.S. Forest Serv.*, 789 F.3d 1075, 1082 (9th Cir. 2015). The focus is on process, not outcome.

Accordingly, a plaintiff's "successful showing of a procedural injury lightens its burden on the remaining Article III standing requirements." *Tinian Women Ass'n v. U.S. Dep't of the Navy*, 976 F.3d 832, 840 (9th Cir. 2020). Specifically, a plaintiff "can establish standing without meeting all the normal standards for redressability and immediacy." *Hall v. Norton*, 266 F.3d 969, 975-77 (9th Cir. 2001) (quotation omitted). "When alleging the deprivation of a procedural right, 'instead of needing to establish that compelling the agency to follow the correct procedure *would* lead to a substantive result that favors the petitioner's concrete interests, the petitioner need only show that its concrete interests *could* be better protected.'" *Young v. Trump*, 506 F. Supp. 3d 921, 935 (N.D. Cal. 2020) (quoting *Narragansett Indian Tribal Historic Pres. Office v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020)).

United States District Court
Northern District of California

United States District Court
Northern District of California

B. Plaintiff's Alleged Procedural Injury

Plaintiff argues that it has suffered *procedural* injury-in-fact because "[t]he 2020 Regulations narrow and weaken an administrative enforcement scheme that was previously available to WSU and its members" – the Department's mandatory obligation to "make a prompt investigation whenever. . . a complaint . . . indicates a possible failure to comply" with the protections of Title IX. Opp. at 17 (citing 34 C.F.R. § 100.7). Plaintiff argues that it has adequately alleged *procedural* injury because the FAC "alleges BUSD policies and practices, and numerous instances of unchecked harassment suffered by students, that can no longer trigger an investigation by [the Department]." *Id.* at 18. Plaintiff contends that the procedural mechanism of the Department conducting an Investigation protected Plaintiff's concrete interest in "protect[ing] students, like WSU's members, from sexual harassment and to ensure that they can learn in an environment safe from unlawful discrimination." Opp. at 20.

Plaintiff's theory of injury, however, fails to satisfy the first prong of the procedural injury standard: it does not allege a "violation of a statute or regulation that *guarantees* a particular procedure." *Californians for Renewable Energy*, 2018 WL 1586211, at *7 (emphasis added); *Citizens for Better Forestry*, 341 F.3d at 969-70.

The source of the procedural right which Plaintiff alleges the Department violated is 34 C.F.R § 100.7(c). That provision provides, in relevant part:

> Investigations. The responsible Department official or his designee **will make a prompt investigation whenever a** compliance review, report, **complaint**, or any other information **indicates a possible failure to comply with this part**.

*Id.* (emphases added). There is no guarantee of an investigation. The Department's obligation to "make a prompt investigation" is *contingent* on the Department's receipt of information, including through a complaint, which the Department determines "indicates a possible failure to comply" with the relevant *substantive* law. *Id.* Under § 100.7(c), the Department is not *required* to conduct an investigation upon the receipt of *any* complaint, and Plaintiff is not *entitled* to an investigation by simply submitting a complaint. Instead, an investigation only becomes mandatory upon the Department if the Department determines that there is "a possible failure to

comply" with the substance of the Title IX regulations.

This regulatory provision contrasts with the *unqualified, mandatory, procedural requirements* extant in cases finding procedural injury. *See, e.g., California v. Azar*, 911 F.3d 558, 571 (9th Cir. 2018) (finding procedural injury where agency issued "[interim final rules] without notice and comment as *required* under the [Administrative Procedure Act]") (emphasis added); *Citizens for Better Forestry*, 341 F.3d at 970 ("Citizens were deprived of the opportunity to comment on the USDA's EA and FONSI at all points in the rulemaking process. This deprivation violated their rights under the regulations implementing NEPA. *See* 40 C.F.R. § 1501.4(b) ('The agency shall involve the public, to the extent practicable, in preparing [EAs] ....'); *id.* § 1506.6 ('Agencies shall ... [m]ake diligent efforts to involve the public in preparing and implementing their NEPA procedures[,] ... [p]rovide public notice of ... the availability of environmental documents so as to inform those persons ... who may be interested or affected[,][and] ... [s]olicit appropriate information from the public.')"); *Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035, 1039 (9th Cir. 2006) ("Plaintiffs make out a procedural injury: the failure on the part of the [Pharmacy Benefit Managers] to follow the statutory procedures requiring they conduct studies and provide them to third parties" where the relevant statutory provision stated "study report. . . shall be transmitted by certified mail by each prescription drug claims processor to the chief executive officer or designee, of each client for whom it performs claims processing services. . . no less often than every 24 months"). Plaintiff fails to cite any cases finding procedural injury involving similar procedural rules that are *contingent* on an agency's determination of *substantive* violations of law.

Contrary to Plaintiff's assertions, the harm that Plaintiff alleges – its inability to "trigger an investigation" by the Department pursuant to the pre-2020 rules – does not stem from deficiencies or failures in the Department's compliance with the *process* set out in 34 C.F.R. § 100.7(c). Plaintiff does *not* challenge the Department's *procedures* for reviewing or adjudicating administrative complaints, which are set forth in the Department's Case Processing Manual. FAC ¶ 66. Plaintiff does not allege that any of the Case Processing Manual procedures are unlawful, nor that the Department failed to comply with the Case Processing Manual procedures. Instead,

Plaintiff challenges, in essence, the *substance* of the 2020 Regulations – the Department's changes to the *substantive* definitions of what constitutes sexual harassment, where harassment must take place to trigger affirmative obligations by a school, and the standard by which liability of a school is assessed. *See* FAC ¶¶ 86-103.

Plaintiff's briefing acknowledges that its theory of *procedural* injury is dependent on its argument that the *substance* of the challenged 2020 Regulations is unlawful:

> In other words, [the Department's] *interpretation of the substantive scope of Title IX determines the availability of its administrative enforcement mechanism*. If a complaint does not allege conduct that, if true, would violate Title IX, then [the Department] cannot investigate. But if it does, [the Department] must open an investigation—and if that investigation further reveals conduct that violates Title IX, [the Department] must provide appropriate remedies.

Opp. at 18 (emphasis added).

That Plaintiff's concern is with the substance of the laws it challenges, not the procedure, is further evinced by the relief that Plaintiff seeks in this case -- a "permanent injunction holding unlawful and setting aside the [2020] Regulations challenged in this Complaint." FAC at 32. Such relief would not limited to requiring a *procedure*; it would change the *substantive* meaning of the Title IX regulations.

The Department argues with some merit that Plaintiff's assertion of a procedural injury, if accepted here, would "render every law procedural":

> After all, *every* change to substantive law affects the type of complaints that may be filed: for example, a tort reform law that eliminates certain torts narrows the type of complaints that may be filed; prohibiting discrimination on the basis of sexual orientation broadens the type of charges that may be filed with the Equal Employment Opportunity Commission; and establishing what forms of sexual harassment violate Title IX affects the type of administrative complaints that may be filed with the Department.

Reply at 7.

Indeed, the logic of Plaintiff's standing theory is not limited to changes in Title IX's investigation criteria. If it is claimed that the 2001 regulations were insufficiently protective of victims of sex discrimination and harassment, the claimant could have standing to challenge even

United States District Court
Northern District of California

those regulations under the procedural injury theory; the OCR investigation would not be available on as a broad a basis as that claimant believes is proper. In short, Plaintiff's procedural injury theory is expansive and would not be limited to changes in the Department's regulations.

Plaintiff's reliance on *Young v. Trump*, 506 F. Supp. 3d. 921, 935 (N.D. Cal. 2020), *appeal dismissed sub nom. Young v. Biden*, 2021 WL 3507648 (9th Cir. Mar. 16, 2021), is misplaced. In *Young*, this Court found procedural injury where Plaintiffs alleged a "complete freeze of their beneficiaries' immigrant visa petitions." *Id.* The Court reasoned that Plaintiffs' "important procedural right" was violated by the alleged fact that "consular officials [were] categorically precluded from processing Plaintiffs' immigrant visa applications." *Id.* at 936. The alleged violation was not concerned with the substantive standard for issuance of a visa, but the procedural right conferred by statute of obtaining the timely processing and adjudication of the visa applications. That procedural right obtained irrespective of the ultimate outcome of the adjudication.

Similarly, Plaintiff's citations to three other cases purportedly finding procedural injury, Opp. at 21, are inapposite. Unlike here, two of those cases involved claims challenging specific, mandatory, procedural rules established by law, rights were not qualified by the agency's determination of whether substantive standards were met. *See Nat'l Fed'n of the Blind v. United States Dep't of Educ.*, 407 F. Supp. 3d 524, 533-34 (D. Md. 2019) ("the Amended Complaint alleges that OCR complaints filed by COPAA member Katie Kelly, an attorney for students with disabilities, were subject to dismissal under the March 2018 Manual" pursuant to a "provision requiring dismissal of complaints by individuals who have filed previously"); *Californians for Renewable Energy*, 2018 WL 1586211, at *8 ("The gravamen of Plaintiffs' claims is that the EPA failed to issue mandatory preliminary findings within 180 days of accepting their respective complaints for investigation, as required by 40 C.F.R. § 7.115."). And the third case Plaintiff cites, *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015), applies an organizational standing analysis – it does not examine whether the plaintiff had shown procedural injury.

Plaintiff's reliance on *Committee for Full Employment v. Blumenthal* is similarly misplaced. In *Committee for Full Employment*, the D.C. Circuit held that Plaintiffs had demonstrated procedural injury where they filed numerous charges of discrimination with the Office of Revenue Sharing pursuant to the "agency's procedural regulations" which "entitled complainants to a review of their complaint," but where Plaintiffs had not received any word of action by the agency on their complaints. 606 F.2d 1062, 1065 (D.C. Cir. 1979). The court reasoned that, "Complainants are injured if this procedural right is denied to them, *regardless of whether their complaint is ultimately found meritorious*" and that "the complaints that they have filed with [the agency] have not received the attention due under the Act and regulations." *Id.* (emphasis added). Importantly, the D.C. Circuit found the Plaintiffs had established standing on their theory of procedural injury because "[a] court can redress [their] injury by, e.g., ordering [the agency] to process promptly [Plaintiffs'] complaints." *Id.*

Tellingly, the remedy Plaintiffs seek here is *not* an order directing the Department to "process promptly" Plaintiff's complaint. *Id.* Instead, Plaintiff seeks to set aside and enjoin operation of the 2020 Regulations: a decidedly *substantive* remedy because Plaintiff's complaint challenges *substantive* law. *Cf. California v. Health & Hum. Servs.*, 281 F. Supp. 3d 806, 821–22 (N.D. Cal. 2017), *aff'd in relevant part in California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ("Plaintiffs have stated a procedural injury that is sufficient for the purposes of Article III standing. They assert that Defendants failed to comply with the APA's notice and comment requirement, resulting in Plaintiffs' being denied the opportunity to comment and be heard"). Vacatur of the 2020 Regulations is not a procedural remedy; it is not a request "that the agency follow the correct procedures." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226–27 (9th Cir. 2008). In the final analysis, Plaintiff seeks a "guarantee[d] . . . particular result." *Californians for Renewable Energy*, 2018 WL 1586211, at *7.

Indeed, the procedural injury of not being able to trigger an investigation by the Department, cannot be sustained here. After Plaintiff filed its First Amended Complaint, the Department's Office for Civil Rights adjudicated the administrative complaint and opened an investigation on the basis of Plaintiff's allegations. *See* Docket No. 111-1. Thus, assuming

*arguendo* that Plaintiff had demonstrated a procedural right to an investigation under 34 C.F.R. § 100.7(c), the Department has now acted on Plaintiff's administrative complaint and has opened an investigation into BUSD based on Plaintiff's allegations. *See* Docket No. 111-1, 112-2. Contrary to Plaintiff's assertions, *see* Docket No. 111, nothing in the Department's letter opening an investigation indicates that the Department declined to investigate any portion of Plaintiff's administrative complaint. *Cf.* Docket No. 111-1 at 2 (OCR "understands [Plaintiff's] allegations to be that [BUSD] has allowed a hostile environment on the basis of sex to exist at Berkeley High School by failing to respond promptly and effectively to incidents of sexual harassment at the School from the 2018-19 school year to the present . . . OCR is opening the complaint allegation for investigation.").[1]

Plaintiff contends that because the investigation decision confirms that the Department will evaluate its investigation of incidents that took place after August 14, 2020 under the 2020 Regulations, "the crux of WSU's standing theory—that WSU can no longer raise certain allegations before OCR, depriving it of an important procedural protection—remains the same." Docket No. 111 at 2. However, the Department did open an investigation on the allegations that Plaintiffs fear are not cognizable under the 2020 Regulations. The Department did not decline to conduct an investigation on any grounds.

To the extent Plaintiff contends that *future* complaints of incidents not cognizable under the 2020 Regulations *will not* be investigated by the Department, this assertion is speculative. Not only has the Department in fact opened an investigation of Plaintiff's allegedly non-cognizable allegations, but nothing in 34 C.F.R. 100.7(c) or elsewhere in the regulatory framework prohibits the Department from deciding to open an investigation of a future complaint. At most, the regulations do not mandate an investigation be opened; it does not bar such investigations.

---

[1] Plaintiff asks the Court to read OCR"s summary of Plaintiff's allegations as related to "sexual harassment *at the School*" to imply that OCR will *not* investigate any allegations in the complaint of incidents of sexual harassment that occurred *outside* of the school, per the 2020 Regulations. Docket No. 111. But the letter contains no language indicating that OCR has rejected any part of Plaintiff's administrative complaint, that OCR is declining to address any allegations in the administrative complaints, nor that OCR applied the 2020 Regulations to deny any portion of the administrative complaint.

Plaintiff's response to the Department's decision to investigate the allegations in its administrative complaint underscores the flaws in Plaintiff's theory of procedural injury. Plaintiff is *not* alleging any violations by the Department of procedural *requirements*. The Department has now acted on Plaintiff's complaint, and has initiated the *process* of conducting an investigation.

In summary, Plaintiff has not shown a cognizable injury because it has not satisfied the first prong of the procedural injury analysis: it has not alleged the Department violated its procedural rights in a manner that triggers a more lenient standard for standing. Thus, Plaintiff has not established that it has suffered procedural injury for purposes of Article III standing.

C. Leave to Amend

The Court previously dismissed Plaintiff's initial complaint because it determined that Plaintiff had not alleged facts sufficient to demonstrate organizational or associational standing. *See generally* Dismissal Order. The Court, however, identified the deficiencies in Plaintiff's allegations in support of organizational and associational standing, *see id.* at 8-14, and granted Plaintiff leave to amend its complaint, *id.* at 14. For example, the Court previously held that Plaintiff failed "to plausibly allege that its members would otherwise have standing to sue in their own under the first prong of the associational standing test" because the initial complaint includes only

> boilerplate allegations [that] merely speculate that the 2020 Regulations will lead BUSD to disregard certain sexual harassment complaints; there are no specific allegations in the complaint that BUSD has in fact disregarded a single sexual harassment complaint or that a single student has chosen not to report or file a complaint after suffering sexual harassment; let alone that there has been a noticeable decline in sexual harassment reports at BHS or BUSD.

Dismissal Order at 13-14. Plaintiff bolstered the factual allegations of injury in its amended complaint, *see* FAC ¶¶ 89, 91-92, 98, but did not expressly connect those allegations to the 2020 Regulations. Additionally, Plaintiff pursued, for the first time, a different theory of standing in its opposition brief – associational standing based on procedural injury. *See* Opp. 22-23 ("WSU does not allege an organizational standing theory; WSU argues instead that is has been deprived of a procedural right"); 23 ("WSU's standing does not depend on the 2020 Regulations causing students to stop reporting or BUSD to respond even less effectively than it did previously. The

2020 Regulations deprive WSU of a procedural mechanism for obtaining *redress* for BUSD's unwillingness to act."), 26-27 ("Before the 2020 Regulations, WSU could seek administrative redress for certain instances of sexual harassment. Now, it cannot. That procedural deprivation threatens WSU and its members' concrete interest in an educational environment free from sexual harassment and discrimination. WSU and its members therefore possess standing to challenge the 2020 Regulations."). As explained above, however, Plaintiff failed to establish standing under its theory of procedural injury because Plaintiff's allegations are not cognizable under the doctrine of procedural injury.

Although Plaintiff's theory of procedural injury is insufficient to establish standing, the Court cannot exclude as futile the possibility that Plaintiff might still successfully amend its complaint to establish organizational or traditional associational standing by addressing the deficiencies the Court identified in its initial Dismissal Order. Thus, the Court grants Plaintiff leave to amend its complaint. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." (citation omitted)).

D.  Motions to Intervene

Also pending before the Court are motions to intervene as Defendants by the State of Texas and three groups – the Foundation for Individual Rights in Education, Independent Women's Law Center, and Speech First, Inc. Docket Nos. 82, 88. Because the Court grants the Department's motion to dismiss Plaintiff's Firs Amended Complaint, the Court denies as moot the Proposed Intervenors' motions. The Court's denial without prejudice as to the Proposed Intervenors re-filing their respective motions if and when Plaintiff files a second amended complaint.

///
///
///
///
///

**IV. CONCLUSION**

The Court **GRANTS** Defendant's motion to dismiss the FAC for lack of subject matter jurisdiction because Plaintiff has failed to establish standing. Docket No. 89. Plaintiff's **FAC is dismissed with leave to amend.** Plaintiff may file a second amended complaint within thirty (30) days of entry of this order. The Court **DENIES as moot and without prejudice** the motions to intervene. Docket Nos. 82, 88.

This order disposes of Docket Nos. 82, 88, 89.

**IT IS SO ORDERED.**

Dated: February 16, 2022

EDWARD M. CHEN
United States District Judge